feet of the mean high water mark of any
ocean or tidal pond, with a height exceeding
15 feet (as measured from mean high water
to the crest of the bluff) and the slope of
whose seaward face exceeds 30 percent.

C.   FLOOR AREA:      The total floor area on all levels having a
ceiling height of 6 feet or more and enclosed
by walls and roof, inclusive of floored
cellars and attics.

D.   LOT:             A continuous parcel of land in single owner-
ship with the legally definable boundaries.

E.   STRUCTURE:       A combination of materials assembled at a
fixed location to give support or shelter.
A structure includes any building.  A fence
or wall over 6 feet high is considered a
structure.  An open terrace not more than
3 feet above grade is not considered a struc-
ture.

F.   BODY OF WATER:   Any exposed natural water surface, whether
running or still, permanent or seasonal,
including but not limited to ponds, swamps,
streams, ocean and springs.

G.   NEUTRAL:         Colors which have no strong hue, intensity,
or brightness.  Examples are on file with
the Site Review Committee in the Gay Head
Town Hall.

H.   NATURAL:         Existing in a condition that is not altered
or improved in any way.

I.  NATURALIZE:   (Refers to vegetation)  Plant materials
                  which can be introduced into a region or
                  area and flourish as if they were native

J.  INDIGENOUS:   Originating in or innate to a specific
                  region or area.

K.  SITING:       The position of a structure in relation to
                  the boundaries and size of the lot on which
                  it sits, the contour and general character
                  of the landscape, other structures, drive-
                  ways, walks, and vegetation.

L.  PRIVATE PARK- A defined parcel of land owned privately by
    ING AREA:     an individual(s), association, corporation,
                  trust, or other organization which is used
                  for parking on a regular basis by one or
                  more vehicles.

M.  OPEN AREA:    An expanse of land which is characterized
                  by low-lying groundcover, shrubs, or other
                  vegetation.

N.  ROOFTYPES:    1.  Flat:   A roof with a single plane
                             with no pitch or gable.

                  2.  Shed:   A roof with a single pitch
                             and no gable.

                  3.  Gable:  The verticle triangle shape
                             of a building wall above the
                             cornice height formed by two
                             sloping roof planes.

                  4.  Hip:    A roof with planes that slope

2

| | | |
|---|---|---|
| 5. | Roof Walk: | A porch enclosed by a balustrade placed on or around the roof of a building. |
| 6. | Second Story Porch: | A structure attached to the second story of a building which serves as a semi- or fully enclosed space. |

## SECTION IX:   AMENDMENT

This By-Law may be amended from time to time at an annual or special Town Meeting in accordance with the provisions of Chapter 803.

## SECTION X:   VALIDITY

The invalidity of any section or provision of this By-Law shall not invalidate any other section or provision of it.

## SECTION XI:   PENALTIES

Any violation of this By-Law shall be enforceable pursuant to the authority granted by Massachusetts General Laws, Chapter 40, Section 21D.

Violations shall be disposed of by the Building Inspector. Any person violating any of the provisions of this By-Law shall be fined not more than two-hundred dollars ($200.00) for each offense. Each day that any violation is permitted to exist after written notification thereof by the Building Inspector shall constitute a separate offense.

True Copy & Attest,

Tiensrul T. ~
Town Cl.
November d:

BASELINE GENEALOGY  1870 ROLL    BY NUMBER

| ·NUMBER | NAME      TO WHOM MARRIED |
|---|---|
| 1 | JOHNSON, Simon = Cooper, Hannah |
| 2-12 | DIVINE, Patrick = Pocknett, Louisa |
| 13-22 | JEFFERS, William = Johnson, Laura(1), Cooper, Elizabeth(2) |
| 23-30 | BELAIN, George J. = Peters, Sophia |
| 31-34 | CUFF, Levi = Jeffers, Alice(1), Belain, Melissa(2) |
| 35-41 | MADISON, Michael = Peters, Diane |
| 43-45 | HASKINS, Samuel J. =Madison, Charlotte |
| 46-56 | COOPER, Aaron = Cooper, Abiah |
| 57-59 | SYLVIA, Francis = Peters, Elenora |
| 60-65 | COOPER, Zaccheus = Attaquin, Martha R. |
| 66-79 | VANDERHOOP, William Adrian = Salsbury, Beulah |
| 80-89 | BASSETT, Leander = Jeffers, Huldah |
| 90-96 | ANTHONY, John = Peters, Mary C. (2) |
| 97-99 | MINGO Charles H. = Jeffers, Lydia |
| 100-108 | PETERS, Johnson = Cooper, Mary |
| 109-110 | CORSEY, Landon = Jeffers, Julia F. |
| 111-114 | JAMES, William Spencer = Divine, Avis |
| 115-121 | JEFFERS, Thomas = James, Lucinda |
| 122-131 | MANNING, Thomas = Howwaswee, Rosabella M. |
| 132-135 | RANDOLPH, John P. = Swazey, Serena C. |
| 136-137 | MORTON, William = Mingo, Patience |
| 138-140 | MANNING, Alvin = Lowe, Roxa(1), Kent, Mary(2) |
| 141-146 | DAVID, Prudence = NEVERS, Alexander |
| 147-149 | JERRET, Josiah = Howwaswee, Olive |
| 150-154 | RODMAN, Abraham = Wamsley, Charlotte(1), David, Rosanna Ger.h. |
| 155-162 | WAMSLEY, Hebron = Peters, Elenor |
| 163-170 | JOHNSON, Simon,2nd = Salsbury, Emily G. |
| 171-178 | DIAMOND, James = Manning, Abiah |
| 179-181 | FRANCIS, Jonathan = Weeks, Mary Ann |
| 182-192 | POCKNETT, Moses = Johnson, Julia Ann |
|  | JOHNSON, Peter = Turner, Rachel |
| 193-194 | WAMSLEY, Jane Francis = Wamsley, Hebron |
|  | HOWWASWEE, Esther |
| 195-196 | HOWWASWEE, Zaccheus = Wamsley, Elizabeth |
| 197-200 | WEEKS, Tristram = Bunker, Tamson |
| 201-204 | COOPER, Thomas Green |
|  | BOWYER, James =          , Mehitable |
| 205-208 | ROSE, Isaac D. = Wamsley, Harriet A. |
| 209-217 | DODGE, Betsy |
|  | SEWELL, Maria |
|  | CUFF, Hosea |
|  | COLE, Fanny |
|  | MANNING, Marshal = Talknot, Hannah |
|  | DIVINE,John = Jeffers, Parnell |
| 219-222 | NEVERS, Daniel = Nevers, Ann Elizabeth |
| 223-227 | SALSBURY, HOLMES,OCCOUCH,BROACHER, WILLIAMS |

Census of the Inhabitants of Gay Head—Continued.

| No. | When married. | Parents | | Parents' residence. | Father's birthplace. | Mother's birthplace. | Father's occupation. |
|---|---|---|---|---|---|---|---|
| | | Father. | Mother. | | | | |
| 61 | — | — | Alexander David, | Ann J. Madison, | Gay Head, | Gay Head, | Gay Head, | Seaman. |
| 62 | 1858, Jan. 8, | Amos Haskins, | Bathsheba Orcouch, | Mattapoisett, | Mattapoisett, | " | Boat builder. |
| 63 | — | — | Michael Madison, | Dinna Peters, | Gay Head, | Chaldaquiddick, | " | Seaman. |
| 64 | " | — | Samuel J. Haskins, | Charlotte Madison, | " | Mattapoisett, | " | " |
| 65 | — | — | " | " | " | " | " | |
| 66 | " | — | Thomas Cooper, (2) | Susannah Talknot, | " | Gay Head, | " | |
| 67 | " | — | Aaron Cooper, | Abiah Cooper, | " | " | " | " |
| 68 | " | — | " | Belinda Cooper, | " | " | " | |
| 69 | " | — | Aaron Cooper, | Abiah Cooper, | " | " | " | Seaman. |
| 50 | 1857, Sept. 18, | Moses Pocknet, | Mercy, | Marshpee, | Marshpee, | Marshpee, | |
| 51 | 1858, 27, | Aaron Cooper, | Phebe Pocknet, | Gay Head, | Gay Head, | " | Seaman & farmer. |
| 52 | — | " | " | " | " | " | " " |
| 53 | — | " | " | " | " | " | " " |
| 54 | — | " | " | " | " | " | " " |
| 55 | — | " | " | " | " | " | " " |
| 56 | — | " | " | " | " | " | " " |
| 57 | — | — | Henry Peters, | Dorcas Rogers, | " | " | Gay Head, | " " |
| 58 | — | — | Francis Sylvia, | Eleanora Peters, | " | " | " | Seaman. |
| 59 | — | — | " | Eleanora F. Sylvia, | " | — | " | |
| 60 | 1855, Dec. 18, | Thomas Cooper, (2) | Susannah Talknot, | " | Gay Head, | " | Seaman & farmer. |

| 61 | — | — | George W. Cooper, | Sarah Poknet, | Gay Head, | Gay Head, | Marshpee, | Seaman & farmer. |
| 62 | 1848, April 6, | Thomas Cooper, (2) | Susannah Talknot, | " | " | Gay Head, | " |
| 63 | — | — | — | — | Marshpee, | — | — | — |
| 64 | — | — | Zaccheus Cooper, | Martha R. Attaquin, | Gay Head, | Gay Head, | Marshpee, | Seaman & farmer |
| 65 | — | — | " | " | " | " | Surinam, | Tax receiver. |
| 66 | 1837, Mar. 26, | Frs. F. S. C. Vanderhoop, | Jacquilena De Montell, | Surinam, | Holland, | Gay Head, | Farmer. |
| 67 | — | — | John Salsbury, | Naomi Acrouch, | Gay Head, | — | — | — |
| 68 | — | — | | Beulah Salsbury, | Gay Head, | Surinam, | Gay Head, | Farmer. |
| 69 | — | — | Wm. A. Vanderhoop, | " | " | " | " | " |
| 70 | — | — | " | " | " | " | " | " |
| 71 | — | — | " | " | " | " | " | " |
| 72 | — | — | " | " | " | " | " | " |
| 73 | — | — | " | " | " | " | " | " |
| 74 | — | — | " | " | " | " | " | " |
| 75 | — | — | " | " | " | " | " | " |
| 76 | 1871, Feb. 23, | " | " | — | — | — | — | — |
| 77 | — | — | — | Beulah Salsbury, | Gay Head, | Surinam, | Gay Head, | Farmer. |
| 78 | 1871, Jan. 13, | Wm. A. Vanderhoop, | Julia F. Jeffers. | " | " | " | " | Seaman |
| 79 | — | — | Landon Corsey, | Esther Sharper, | Edgartown, | Farm Neck, | " | " |
| 80 | 1872, July 26, | James Bassett, | Bethiah Cooper, | Gay Head, | Middleborough, | " | " |
| 81 | — | — | Amos Jeffers, | Huldah Jeffers, | " | Farm Neck, | — | |
| 82 | — | — | Leander Bassett, | | | | | |

# Census of the Inhabitants of Gay Head.

| No. | Name | Sex | When Born | Where Born | Residence | Condition | Occupation |
|---|---|---|---|---|---|---|---|
| | Samuel Lasbury David, | M. | 1807, Aug. 6, | Gay Head, | Gay Head, | | Seaman. |
| | Samuel J. Harding, | M. | 1829, Jan. 22, | " | " | | |
| | Charlotte Madison, wife, | F. | 1840, Jan. 10, | " | " | | |
| | Aaron Madison, | M. | 1846, Oct. 10, | " | " | | |
| | Clarissa E. Harding, | F. | 1808, Nov. 29, | " | " | | |
| | Abbid Cooper, | F. | 1808, Apr. 7, | " | " | | |
| | Philada ——, | F. | 1850, July 16, | " | " | | |
| | Andrew Cooper, | M. | 1833, Nov. 16, | " | Lynn, | Wid. of Aaron Cooper, | |
| | Aaron Cooper, | F. | 1821, Jan. 3, | " | Gay Head, | m. Thomas Morse, | |
| | Phebe Pealson, wife, | F. | 1832, Jan. 8, | " | " | m. Lucy Peters, | |
| | Compston E. Cooper, | M. | 1806, Mar. 4, | Marshpee, | " | m. Silvester Powell, | |
| | Abbid E. Cooper, | F. | 1841, Sept. 16, | Gay Head, | " | | Seaman and farmer. |
| | Aaron E. Cooper, | M. | 1837, April 16, | " | " | | |
| | Abm J. Cooper, | M. | 1839, Dec. 26, | " | " | | |
| | James F. Cooper, | M. | 1841, Jan. 15, | " | " | | |
| | Moses F. Cooper, | M. | 1844, June 9, | " | " | | |
| | James F. Cooper, | F. | 1881, June, | " | " | | |
| | Thomas Sylvia, | M. | 1818, Feb. 28, | " | " | Wid. of Francis Sylvia, | |
| | Thomas F. Sylvia, | F. | 1808, Nov. 28, | " | " | | |
| | Hannah F. Sylvia, | F. | 1810, Sept. 7, | " | " | | Seaman and farmer. |
| | Samuel F. Sylvia, | M. | 1841, Oct. 28, | " | " | | |
| | George W. Cooper, | M. | 1814, Feb. —, | " | " | m. Martha R. Attaquin, | Seaman and farmer. |
| 61 | Sarah Cooper, | F. | 1808, June —, | Gay Head, | Gay Head, | | |
| 62 | Zacheus Cooper, | M. | 1822, July 9, | " | " | | |
| 63 | Martha R. Attaquin, wife, | F. | 1823, July —, | Marshpee, | " | | |
| 64 | Abraham F. Cooper, | M. | 1857, Mar. 3, | Gay Head, | " | | |
| 66 | Susannah F. Cooper, | H. | 1854, Nov. 12, | " | " | | |
| 66 | William Adriaan Vanderhoop, | M. | 1816, Jan. 8, | Surinam, | " | | Farmer. |
| 67 | Beulah Salsbury, wife, | F. | 1815, —, | Gay Head, | " | m. Beulah Salsbury, | Teacher. |
| 68 | Charles Hardison, | M. | 1836, Mar. 15, | New Bedford, | " | | Teacher. |
| 70 | Louisa Eva Hardison, | F. | 1841, June —, | " | " | | |
| 71 | Paulina Adeline Vanderhoop, | F. | 1842, May 14, | " | " | m. Charles Hardison, | |
| 79 | Anna Elisabeth Vanderhoop, | F. | 1847, Feb. 12, | Gay Head, | " | | |
| 72 | Edwin LeVries Vanderhoop, | M. | 1866, Dec. 11, | " | " | | Seaman. |
| 73 | Netaerda Caroline Vanderhoop, | F. | 1850, Jan. 4, | " | " | | |
| 74 | Cummings Bray Vanderhoop, | M. | 1852, Mar. 15, | " | " | | |
| 75 | Leonard Lewis Vanderhoop, | M. | 1855, Feb. 20, | " | " | | Seaman. |
| 76 | William A. Vanderhoop, Jr., | M. | 1841, June 26, | " | " | m. Louisa T. Wood, | Seaman. |
| 77 | Louisa T. Wood, wife, | F. | 1846, Mar. 20, | Gay Head, | " | m. Abby Ann Carver, | Seaman. |
| 78 | Julia Prospere Vanderhoop, | M. | 1841, Feb. 24, | " | " | | |
| 79 | Abby Ann Carver, wife, | F. | 1848, Oct. 15, | Farm Neck, Edgart'n, | " | | |
| 80 | Leander Bassett, | M. | 1872, Dec. —, | Gay Head, | " | | |
| 81 | Hesked Jeffers, wife, | F. | —, —, | " | " | | |
| 23 | Fahey S. Bassett, | F. | 1817, July 23, | " | " | | |

† Second wife, Phebe Pocknet.

## Census of the Inhabitants of Gay Head—Continued.

| No. | Date | Father. | Parents. | Mother. | Former residence. | Father's birthplace. | Mother's birthplace | Father's occupation. |
|---|---|---|---|---|---|---|---|---|
| 1 | 1854, Sept. 2. | Simeon Johnson, | | Hannah Cooper, | Gay Head, | Gay Head, | Marshpee, | Seaman & Farmer. |
| 2 | | John Divine, | | " | " | " | " | " |
| 3 | | " | | " | " | " | " | " |
| 4 | | " | | " | " | " | " | " |
| 5 | | " | | " | " | " | " | " |
| 6 | | Patrick Divine, | | Louisa Pocknet, | Gay Head, | Gay Head, | Farmer, | |
| 7 | | " | | " | " | " | | |
| 8 | | " | | " | " | " | | |
| 9 | | " | | " | " | " | | |
| 10 | | Solomon Jeffry, | | Mercy Ann Divine, | " | " | | |
| 11 | | " | | " | " | " | | |
| 12 | | " | | " | " | " | | |
| 13 | 1850, April 10. | William Jeffrey, | | Lois Wretu, | Gay Head, | Gay Head, | Christiantown, | Seaman, |
| 14 | | " | | Louisa Cooper, | " | Christiantown, | " | " |
| 15 | | " | | Laura Johnson, | " | Gay Head, | Seaman, | |
| 16 | | " | | " | " | " | " | |
| 17 | | " | | " | " | " | " | |
| 18 | | " | | " | " | " | " | |

## Census of the Inhabitants of Gay Head—Continued.

| No. | Date | Father. | Parents. | Mother. | Former residence. | Father's birthplace. | Mother's birthplace | Father's occupation. |
|---|---|---|---|---|---|---|---|---|
| 19 | | William Jeffers, | | Elizabeth M. Cooper, | Gay Head, | Christiantown, | Gay Head, | Seaman. |
| 20 | | " | | " | " | " | " | " |
| 21 | | " | | " | " | " | " | " |
| 22 | | " | | " | " | " | " | " |
| 23 | | George J. Belain, | | Sophia Peters, | Chabbaquiddick. | Chabbaquiddick. | Gay Head, | Seaman & Farmer. |
| 24 | | Johnson Peters, | | Mary Cooper G. | | | " | " |
| 25 | | Peter Belain, | | Sarah Johnson, | | | " | " |
| 26 | | David Cuff, | | Mary Doden, | | | " | " |
| 27 | | " | | Melissa Belain, | | | " | " |
| 28 | | " | | " | | | " | " |
| 29 | | Johnson Peters, | | Mary Cooper, | | | " | " |
| 30 | | Michael Madison, | | Susan Peters, | | | " | " |
| 31 | | " | | " | | | " | " |
| 32 | | " | | " | | | " | " |
| 33 | 1854, July 14. | Alexander David, | | Ann J. Madison, | | | Gay Head. | Seaman & Farmer. |

## [B.]
### Census of the Inhabitants of Gay Head.

| No. | Name | Sex | When Born | Where Born | Residence | Condition | Occupation |
|---|---|---|---|---|---|---|---|
| 1 | Simon Johnson (deacon), | M. | 1794, Aug. 22, | Gay Head, | Gay Head, | Never married, | Weaver and farmer |
| 2 | Patrick Divine, | M. | 1808, Aug. 9, | " | " | — | Farmer. |
| 3 | Louisa Pocknet, wife, | F. | 1828, Feb. 10, | Marshpee, | " | — | — |
| 4 | Merry Ann Divine, | F. | 1848, May 10, | Gay Head, | " | — | — |
| 5 | Hannah C. Divine, | F. | 1850, Sept. 27, | " | " | — | — |
| 6 | Patrick Lawrence Divine, | M. | 1854, April 29, | " | " | — | — |
| 7 | Simon Johnson Divine, | M. | 1857, Feb. 11, | " | " | — | — |
| 8 | Grafton Earle Divine, | M. | 1859, July 11, | " | " | — | — |
| 9 | Ida May Divine, | F. | 1861, June 20, | " | " | — | — |
| 10 | Jeanetta Gracia Divine, | F. | 1864, June 17, | " | " | — | — |
| 11 | Louisa Divine, | F. | 1867, Jan. 20, | " | " | — | — |
| 12 | C. Frederick Divine, | M. | 1869, Jan. 27, | " | " | — | — |
| 13 | William Jeffers, | M. | 1811, July 25, | Christiantown, | " | m Laura Johnson, | Seaman and farmer |
| 14 | Elizabeth M. Cooper, 2d wife, | F. | 1835, Sept. 2, | Gay Head, | " | — | — |
| 15 | James W. Jeffers, | M. | 1834, about, | " | " | m Melissa Belain, | — |
| 16 | Laura M., | F. | 1835, about, | " | Chabbaquiddick, | m William Belain, | — |
| 17 | Hepsibah G. Jeffers, | F. | 1848, about, | ", | Gay Head, | Single, | — |
| 18 | Lydia C. Jeffers, | F. | 1850, about, | " | Chabbaquiddick, | m Frederick Webquish, | — |
| 19 | Moses R. Jeffers, | M. | 1860, April 16, | Gay Head, | Gay Head, | — | — |
| 20 | Louisa D. Jeffers, | F. | 1862, March 17, | " | " | — | — |
| 21 | Gilbert Lafayette Jeffers, | M. | 1865, March 26, | " | " | — | — |
| 22 | Serena R. Jeffers, | F. | 1869, Jan. 23, | " | " | — | Seaman and farmer |
| 23 | George J. Belain, | M. | 1813, Nov. —, | Chabbaquiddick. | " | — | — |
| 24 | Sophia Peters, wife, | F. | 1817, May 14. | Gay Head, | " | — | Seaman |
| 25 | Peter Belain, | M. | 1847, March 21, | " | " | — | " |
| 26 | Joseph Belain, | M. | 1845, Nov. 27, | " | " | — | " |
| 27 | Alonzo Belain, | M. | 1850, Dec. 6, | " | " | — | — |
| 28 | Daniel W. Belain, | M | 1854, Aug. 11, | " | " | — | — |
| 29 | John W. Belain, | M. | 1859, Aug. 26, | " | " | m James W. Jeffer ?, | — |
| 30 | Melissa Belain, | F | 1857, April 10, | " | " | m Alice Jeffers, | Seaman. |
| 31 | Levi Cuff, | M. | 1810, Feb. 17, | Gay Head, | Gay Head, | — | — |
| 32 | Nellie Cuff, | F. | 1805, Jan 8, | " | " | — | — |
| 33 | Bessie R. Cuff, | F | 1808, Jan. 3, | " | " | — | — |
| 34 | George B, Cuff, | M. | 1840, Oct. 29, | " | " | Wid of Mich Madis?, | — |
| 35 | Diana Madison, | F | 1807, Apr. 15, | " | " | — | — |
| 36 | Charles B. Madison, | M | 1842, June 12, | " | " | — | — |
| 37 | Isaac E. Madison, | M | 1843, Mar. 18, | " | " | Wid of Alex David, | — |
| 38 | Ann Judson David, | F. | 1836, Nov. 9, | " | " | — | — |
| 39 | Raymond B. Madison, | M | 1858, Aug. 6, | " | " | — | — |
| 40 | Johnson P. David, | M. | 1860, Jan 23, | " | " | — | — |

[1] Died November 6, 1870.   [Second husband, Levi Cuff]   [Here 1 wife, Mo ism Belain.]

2

| | | |
|---|---|---|
| 5. | Roof Walk: | A porch enclosed by a balus-trade placed on or around the roof of a building. |
| 6. | Second Story Porch: | A structure attached to the second story of a building which serves as a semi- or fully enclosed space. |

## SECTION IX:    AMENDMENT.

This By-Law may be amended from time to time at an annual or special Town Meeting in accordance with the provisions of Chapter 803.

## SECTION X:    VALIDITY

The invalidity of any section or provision of this By-Law shall not invalidate any other section or provision of it.

## SECTION XI:    PENALTIES

Any violation of this By-Law shall be enforceable pursuant to the authority granted by Massachusetts General Laws, Chapter 40, Section 21D.

Violations shall be disposed of by the Building Inspector. Any person violating any of the provisions of this By-Law shall be fined not more than two-hundred dollars ($200.00) for each offense. Each day that any violation is permitted to exist after written notification thereof by the Building Inspector shall constitute a separate offense.

*True Copy & Attest,*

BASELINE GENEALOGY 1870 ROLL    BY NUMBER

NUMBER              NAME      TO WHOM MARRIED

| | |
|---|---|
| 1 | JOHNSON, Simon = Cooper, Hannah |
| 2-12 | DIVINE, Patrick = Pocknett, Louisa |
| 13-22 | JEFFERS, William = Johnson, Laura(1), Cooper, Elizabeth(?) |
| 23-30 | BELAIN, George J. = Peters, Sophia |
| 31-34 | CUFF, Levi = Jeffers, Alice(1), Belain, Melissa(2) |
| 35-41 | MADISON, Michael = Peters, Diane |
| 43-45 | HASKINS, Samuel J. =Madison, Charlotte |
| 46-56 | COOPER, Aaron = Cooper, Abiah |
| 57-59 | SYLVIA, Francis = Peters, Elenora |
| 60-65 | COOPER, Zaccheus = Attaquin, Martha R. |
| 66-79 | VANDERHOOP, William Adrian = Salsbury, Beulah |
| 80-89 | BASSETT, Leander = Jeffers, Huldah |
| 90-96 | ANTHONY, John = Peters, Mary C. (2) |
| 97-99 | MINGO Charles H. = Jeffers, Lydia |
| 100-108 | PETERS, Johnson = Cooper, Mary |
| 109-110 | CORSEY, Landon = Jeffers, Julia F. |
| 111-114 | JAMES, William Spencer = Divine, Avis |
| 115-121 | JEFFERS, Thomas = James, Lucinda |
| 122-131 | MANNING, Thomas = Howwaswee, Rosabella M. |
| 132-135 | RANDOLPH, John P. = Swazey, Serena C. |
| 136-137 | MORTON, William = Mingo, Patience |
| 138-140 | MANNING, Alvin = Lowe, Roxa(1), Kent, Mary(2) |
| 141-146 | DAVID, Prudence = NEVERS, Alexander |
| 147-149 | JERRET, Josiah = Howwaswee, Olive |
| 150-154 | RODMAN, Abraham = Wamsley, Charlotte(1), David, Rosanna Ger. ha. |
| 155-162 | WAMSLEY, Hebron = Peters, Elenor |
| 163-170 | JOHNSON, Simon, 2nd = Salsbury, Emily G. |
| 171-178 | DIAMOND, James = Manning, Abiah |
| 179-181 | FRANCIS, Jonathan = Weeks, Mary Ann |
| 182-192 | POCKNETT, Moses = Johnson, Julia Ann |
| | JOHNSON, Peter = Turner, Rachel |
| 193-194 | WAMSLEY, Jane Francis = Wamsley, Hebron |
| | HOWWASWEE, Esther |
| 195-196 | HOWWASWEE, Zaccheus = Wamsley, Elizabeth |
| 197-200 | WEEKS, Tristram = Bunker, Tamson |
| 201-204 | COOPER, Thomas Green |
| | BOWYER, James =          , Mehitable |
| 205-208 | ROSE, Isaac D. = Wamsley, Harriet A. |
| 209-217 | DODGE, Betsy |
| | SEWELL, Maria |
| | CUFF, Hosea |
| | COLE, Fanny |
| | MANNING, Marshal = Talknot, Hannah |
| | DIVINE, John = Jeffers, Parnell |
| 218-222 | NEVERS, Daniel = Nevers, Ann Elizabeth |
| 223-227 | SALSBURY, HOLMES, OCCOUCH, BROACHER, WILLIAMS |

Census of the Inhabitants of Gay Head—Continued.

| No. | When married. | PARENTAGE Father. | Mother. | Parents' residence. | Father's birthplace. | Mother's birthplace. | Father's occupation. |
|---|---|---|---|---|---|---|---|
| 41 | - | Alexander David, | Ann J. Madison, | Gay Head, | Gay Head | Gay Head, | |
| 42 | 1845, Jan. 8, | Amos Haskins, | Bathsheba Gerouch, | Mattapoisett, | Mattapoisett, | " | Seaman. |
| 63 | - | Michael Madison, | Diana Peters, | Gay Head, | Chaldeaquidnick, | " | Boat builder. |
| 64 | - | Samuel J. Haskins, | Charlotte Madison, | " | Mattapoisett, | " | Seaman. |
| 65 | - | " | " | " | " | " | " |
| 66 | - | Thomas Cooper, (2) | Susannah Talknot, | " | Gay Head, | " | " |
| 67 | - | Aaron Cooper, | Ablah Cooper, | " | " | " | " |
| 68 | - | " | Belinda Cooper, | " | " | " | " |
| 69 | - | Aaron Cooper, | Ablah Cooper, | " | " | " | " |
| 60 | 1847, Sept. 15, | Moses Pocknet, | Mercy, | Marshpee, | Marshpee, | Marshpee, | Seaman. |
| 61 | 1866, 27, | Aaron Cooper, | Phebe Pocknet, | Gay Head, | Gay Head, | " | - |
| 62 | - | " | " | " | " | " | Seaman & farmer. |
| 63 | - | " | " | " | " | " | " " |
| 64 | - | " | " | " | " | " | " " |
| 65 | - | " | " | " | " | " | " " |
| 66 | - | " | " | " | " | " | " " |
| 67 | - | Henry Peters, | Dorcas Rogers, | " | " | " | " " |
| 68 | - | Francis Sylvia, | Eleanora Peters, | " | " | Gay Head, | " " |
| 69 | - | - | Eleanora F. Sylvia, | " | " | " | Seaman. |
| 60 | 1835, Dec. 18, | Thomas Cooper, (2) | Susannah Talknot, | " | Gay Head, | " | Seaman & farmer. |

| 61 | - | George W. Cooper, | Sarah Poknet, | Gay Head, | Gay Head, | Marshpee, | Seaman & farmer. |
| 62 | 1846, April 6, | Thomas Cooper, (2) | Susannah Talknot, | " | " | Gay Head, | " " |
| 63 | - | - | - | Marshpee, | - | - | - |
| 64 | - | Zaccheus Cooper, | Martha R. Attaquin, | Gay Head, | Gay Head, | Marshpee, | Seaman & farmer. |
| 65 | - | " | " | " | " | " | " " |
| 66 | 1837, Mar. 26, | Fra. F. S. C. Vanderhoop, | Jacquilena De Montell, | Surinam, | Holland, | Surinam, | Tax receiver. |
| 67 | - | John Salsbury, | Naomi Accouch, | Gay Head, | - | Gay Head | Farmer. |
| 68 | - | " | " | " | - | - | - |
| 69 | - | Wm. A. Vanderhoop, | Beulah Salsbury, | Gay Head, | Surinam, | Gay Head, | Farmer. |
| 70 | - | " | " | " | " | " | " |
| 71 | - | " | " | " | " | " | " |
| 72 | - | " | " | " | " | " | " |
| 73 | - | " | " | " | " | " | " |
| 74 | - | " | " | " | " | " | " |
| 75 | - | " | " | " | " | " | " |
| 76 | 1871, Feb. 23, | " | " | " | " | " | " |
| 77 | - | - | - | - | - | - | - |
| 78 | 1871, Jan. 15, | Wm. A. Vanderhoop, | Beulah Salsbury, | Gay Head, | Surinam, | Gay Head | Farmer. |
| 79 | - | Landon Corsey, | Julia F. Jeffers, | " | " | " | Seaman. |
| 80 | 1872, July 28, | James Bassett, | Esther Sharper, | Edgartown, | Farm Neck, | " | " |
| 81 | - | Amos Jeffers, | Bethiah Cooper, | Gay Head, | Middleborough, | " | " |
| 82 | - | Leander Bassett, | Huldah Jeffers, | " | Farm Neck, | " | " |

# Census of the Inhabitants of Gay Head.

| No. | Name. | Sex. | When Born. | Where Born. | Residence. | Condition. | Occupation. |
|---|---|---|---|---|---|---|---|
|  | Sarah Adams David, | F. | 1807, Aug. 5, | Gay Head, | " |  |  |
|  | Samuel J. Hawking, | M. | 1829, Jan. 22, | " | " |  |  |
|  | Chalcocu Madison, wife, | F. | 1840, Jan. 10, | " | " |  |  |
|  | Asco Haskins, | M. | 1846, Oct. 16, | " | " |  |  |
|  | Asco Haskins, wife, | F. | 1808, Nov. 29, | " | " |  | Seaman. |
|  | Charissa R. Haskins | F. | 1830, Apr. 7, | " | " |  |  |
|  | Abiah J. Cooper, | M. | 1825, July 18, | " | Lynn, | Wid. of Aaron Cooper, |  |
|  | Philoda ———, | F. | 1829, Nov. 16, | " | Gay Head, | m Thomas Morse, |  |
|  | Abiah Cooper, | M. | 1831, Jan. 9, | " | " |  |  |
|  | Andrew Cooper, | F. | 1822, Jan. 9, | " | " |  | Seaman and farmer. |
|  | Aaron Cooper, | F. | 1806, Mar. 8, | " | " | m Lucy Peters, |  |
|  | Thisbe Poolson, wife, | F. | 1851, Sept. 16, | " | Gay Head, | m Silvester Powell, |  |
|  | Georgiana R. Cooper, | M. | 1857, April 14, | " | " |  |  |
|  | Abiah R. Cooper, | M. | 1868, Dec. 26, | " | " |  |  |
|  | Aaron H. Cooper, | M. | 1851, Jan. 13, | " | " |  |  |
|  | Alba J. Cooper, | F. | 1858, June 2, | " | " |  |  |
|  | James F. Cooper, | F. | 1818, Sept. 2, | " | " |  | Seaman. |
|  | Moses F. Cooper, | M. | 1841, Sept. 7, | " | " |  |  |
|  | Deomona Byrins, | F. | 1811, Oct. 26, | " | " |  |  |
|  | Russel F. Byrins, | M. | 1814, Feb. —, | " | " | Wid. of Francis Byrins,— |  |
|  | Discuoca F. Byrins, | F. | 1814, Feb. —, | " | " | Seaman and farmer. |  |
|  | George W. Cooper, | M. | 1854, June —, | " | " |  |  |

| No. | Name. | Sex. | When Born. | Where Born. | Residence. | Condition. | Occupation. |
|---|---|---|---|---|---|---|---|
| 61 | Sarah Cooper, | F. | 1854, June 7, | Gay Head, | " |  |  |
| 62 | Zaccheus Cooper, | M. | 1834, Feb. 16, | " | " |  |  |
| 63 | Martha R. Attaquin, wife, | F. | 1838, July 9, | Marshpee, | " | m Martha R. Attaquin, |  |
| 64 | Abraham F. Cooper, | M. | 1851, Mar. 9, | Gay Head, | " |  |  |
| 65 | Susannah F. Cooper, | F. | 1854, Nov. 12, | " | " |  |  |
| 66 | William Adelann Vanderhoop, | M. | 1848, Jan. 8, | Partmaribo, Surinam, | " |  | Farmer. |
| 67 | Beulah Salsbury, wife, | F. | 1815, | Gay Head, | " | m Beulah Salsbury, |  |
| 68 | Charles Harrison, | M. | 1826, Mar. 7, | Gay Head, | " |  | Teacher. |
| 69 | Louisa Eva Harrison, | F. | 1859, July 13, | New Bedford, | " | m Charles Harrison, | Teacher. |
| 70 | Paulina Adeline Vanderhoop, | F. | 1843, May 9, | Gay Head, | " |  |  |
| 71 | Anna Elizabeth Vanderhoop, | F. | 1847, Feb. 12, | " | " |  | Seaman. |
| 72 | Edwin LeVene Vanderhoop, | M. | 1846, Dec. 17, | " | " |  |  |
| 73 | Nabortia Caroline Vanderhoop, | F. | 1850, June 4, | " | " |  |  |
| 74 | Cummings Bray Vanderhoop, | M. | 1853, Mar. 15, | " | " |  | Seaman. |
| 75 | Leonard Lewis Vanderhoop, | M. | 1855, Feb. 29, | " | " |  |  |
| 76 | William A. Vanderhoop, Jr., | M. | 1841, June 28, | " | " |  |  |
| 77 | Louisa T. Wood, wife, | F. | 1846, Mar. 20, | " | " | m Louisa T. Wood, |  |
| 78 | Julia Prosperu Vanderhoop, | F. | 1841, Feb. 24, | " | " |  | Seaman. |
| 79 | Abby Ann Carey, wife, | F. | 1810, Oct. 13, | Farm Neck, Edgartown, | " | m Abby Ann Carey, |  |
| 80 | Leander Bassett, | M. | 1842, Dec. 15, | Gay Head, | " |  | Seaman. |
| 81 | Hosldal Jeffers, wife, | F. | 1847, July 23, | " | " |  |  |
| 82 | Father S. Bassett. |  |  |  |  |  |  |

1 Second wife, Phebe Pocknet.

## Census of the Inhabitants of Gay Head—Continued.

| No. | When enrolled. | Parentage. Father. | Mother. | Parents' residence. | Father's birthplace. | Mother's birthplace. | Father's occupation. |
|---|---|---|---|---|---|---|---|
| 1 | 1846, April 7, | Simeon Johnson, | Hannah Cooper, | Gay Head, | Gay Head, | Gay Head, | Seaman & farmer. |
| 2 | | John Divine, | " | " | Marblehead, | " | " |
| 3 | | | | | | | |
| 4 | | Patrick Dirias, | Louisa Pocknet, | Gay Head, | Gay Head, | Marshpee, | Farmer. |
| 5 | | " | " | " | " | " | " |
| 6 | | " | " | " | " | " | " |
| 7 | | " | " | " | " | " | " |
| 8 | | " | " | " | " | " | " |
| 9 | | " | " | " | " | " | " |
| 10 | | " | " | " | " | " | " |
| 11 | | " | " | " | " | " | " |
| 12 | | | Mercy Ann Elrine, | " | " | " | " |
| 13 | | Solomon Jeffers, | Love Weeks, | | | Gay Head, | |
| 14 | 1850, April 16, | | Louisa Cooper, | | | Christiantown, | Seaman. |
| 15 | | William Jeffers, | Laura Johnson, | Gay Head, | Christiantown, | Gay Head, | |
| 16 | | " | " | " | " | " | Seaman. |
| 17 | | " | " | " | " | " | |
| 18 | | " | " | " | " | " | |
| 19 | | William Jeffers, | Elizabeth N. Cooper, | Gay Head, | Christiantown, | Gay Head, | Seaman. |
| 20 | | " | " | " | " | " | " |
| 21 | | " | " | " | " | " | " |
| 22 | | " | " | " | " | " | " |
| 23 | 1856, | Peter Belain, | Sarah Johnson, | Chabbaquiddick. | Chabbaquiddick. | Chabbaquiddick. | Seaman & farmer. |
| 24 | | Johnson Peters, | Mary Cooper, | Gay Head, | " | Gay Head, | " " |
| 25 | | George J. Belain, | Sophia Peters, | " | " | " | " " |
| 26 | | " | " | " | " | " | " " |
| 27 | | " | " | " | " | " | " " |
| 28 | | " | " | " | " | " | " " |
| 29 | | " | " | " | " | " | " " |
| 30 | | " | " | " | " | " | " " |
| 31 | | David Cuff, | Mary Dodge, | " | Gay Head. | " | Seaman. |
| 32 | | | Melissa Belain, | " | | " | |
| 33 | | | " | " | | " | |
| 34 | | | " | " | | " | |
| 35 | | Johnson Peters, | Mary Cooper, | " | Chabbaquiddick. | " | Seaman & farmer. |
| 36 | | Michael Madison, | Diana Peters, | " | | " | Seaman. |
| 37 | | " | " | " | | " | " |
| 38 | 1856, July 16, | " | | " | | " | |
| 39 | | | Ann J. Madison, | " | | " | Seaman. |
| 40 | | Alexander David, | " | " | Gay Head, | " | |

## [B.]

## Census of the Inhabitants of Gay Head.

| Nr. | Name | Sex | When Born | Where Born | Residence | Condition | Occupation |
|---|---|---|---|---|---|---|---|
| 1 | Simon Johnson (deacon), | M | 1791, Aug. 9, | Gay Head, | Gay Head, | Never married, | Farmer. |
| 2 | Patrick Divine, | M | 1806, Aug. 9, | " | " | | |
| 3 | Louisa Frobent, wife, | F | 1828, Feb. 10, | Marshpee, | " | | |
| 4 | Mary Ann Divine, | F | 1843, May 10, | Gay Head, | " | | |
| 5 | Hannah C. Divine, | F | 1850, Sept. 27, | " | " | | |
| 6 | Patrick Lawrence Divine, | M | 1854, April 28, | " | " | | |
| 7 | Simon Johnson Divine, | M | 1857, Feb. 11, | " | " | | |
| 8 | Grafton Earle Divine, | M | 1859, July 11, | " | " | | |
| 9 | Ida May Divine, | F | 1861, June 20, | " | " | | |
| 10 | Jenette Gracia Divine, | F | 1864, June 17, | " | " | | |
| 11 | Louisa Divine, | F | 1867, Jan. 30, | " | " | | |
| 12 | C. Frederick Divine, | M | 1869, Jan. 27, | " | " | | |
| 13 | William Jeffers, | M | 1811, July 15, | " | " | | |
| 14 | Elizabeth M. Cooper, 3d wife, | F | 1831, Sept. 2, | Christiantown, | " | | |
| 15 | James W. Jeffers, | M | 1834, about, | Gay Head, | " | m Melissa Belain, | Seaman and farmer. |
| 16 | Laura B., | F | 1853, about, | " | " | m William Belain, | |
| 17 | Hepsibah G. Jeffers, | F | 1844, about, | Chabbaquiddick, | Gay Head, | Single, | |
| 18 | Lydia C. Jeffers, | F | 1850, about, | Chabbaquiddick, | Chabbaquiddick, | m Frederick Webquish, | |
| 19 | Moses B. Jeffers, | M | 1800, April 16, | Gay Head, | Gay Head, | | |
| 20 | Louisa D. Jeffers, | F | 1842, March 17, | " | | m Alice Jeffers? | Seaman. |
| 21 | Gilbert Lafayette Jeffers, | H | 1845, March 28, | " | | | |
| 22 | Serena B. Jeffers, | F | 1860, Jan. 25, | Chabbaquiddick, | | | Seaman and farmer. |
| 23 | George J. Belain, | M | 1843, Nov. , | Gay Head, | | | |
| 24 | Sophia Peters, wife, | F | 1817, May 14, | " | | | |
| 25 | Peter Belain, | M | 1847, March 21, | " | | | |
| 26 | Joseph Belain, | M | 1855, Nov. 27, | " | | | |
| 27 | Alonzo Belain, | M | 1859, Dec. 6, | " | | | |
| 28 | Daniel W. Belain, | M | 1864, Aug. 11, | " | | | |
| 29 | John W. Belain, | M | 1858, Aug. 24, | " | | | |
| 30 | Melissa Belain, | F | 1837, April 10, | Gay Head, | Gay Head, | m James W. Jeffers. | Seaman. |
| 31 | Levi Cuff, | M | 1816, Feb. 17, | " | | | |
| 32 | Nellie Cuff, | F | 1850, Jan. 8, | " | | | |
| 33 | Bessie B. Cuff, | F | 1859, Jan. 7, | " | | | |
| 34 | George B., Cuf., | H | 1849, Oct. 23, | " | | | Seaman and farmer. |
| 35 | Diana Madison, | F | 1807, Apr. 15, | " | | | |
| 36 | Charles B. Madison, | H | 1841, June 15, | " | | | |
| 37 | Isaac E. Madison, | F | 1843, Mar. 14, | " | | | |
| 38 | Ann Judson David, | F | 1838, Nov. 9, | " | | | |
| 39 | Raymond B. Madison, | M | 1856, Aug. 9, | " | | | |
| 40 | Johnson F. David, | M | 1858, Jan. 13, | " | | | |

1 Died December 4, 1870.   2 Found with Elizabeth M. Cooper.   3 Found Husband, Levi Cuff

Exhibits To Complaint -- Page 54

# Census of the Inhabitants of Gay Head.

| No. | Name | Sex | When Born | Where Born | Residence | Condition | Occupation |
|---|---|---|---|---|---|---|---|
| | Beulah J. Bassett, | F. | 1848, July 5, | Gay Head, | Gay Head. | Single, | |
| | Samuel Smalley, | M. | 1879, Nov. 17, | New York, | " | m Julia Ann Bassett, | Seaman. |
| | Julia Ann Bassett, wife, | F. | 1841, June 11, | Gay Head, | " | " | |
| | Josephine Ida Smalley, | F. | 1858, Feb. 1, | Gay Head, | " | " | Seaman. |
| | Evelina Elsworth Smalley, | F. | 1861, Jan. 18, | " | " | " | |
| | Leander Bassett Smalley, | M. | 1863, June 16, | " | " | " | |
| | Samuel Smalley, | M. | 1870, July 21, | " | " | m Betsey Mingo's | |
| | John Anthony, | M. | 1814, Mar. 19, | Abion, | " | " | |
| | Mary C. 2d wife, | F. | 1814, Feb. 14, | Gay Head, | " | " | Seaman and Farmer. |
| | Joseph S. Anthony, | M. | 1848, Feb. 9, | Gay Head, | " | " | |
| | Rachel Anthony, wife, | F. | 1807, April 22, | Christiantown, | " | Gay Head, | Seaman. |
| | John H. Luley, | M. | 1844, Aug. 5, | Sandwich Island, | " | " | |
| | Samuel Johnson Anthony, | M. | 1808, April 18, | Christiantown, | " | New Bedford, | |
| | Charles E. Mingo, | M. | 1857, April 22, | Gay Head, | " | Gay Head, | m Rachel Anthony, |
| | Lydia Jeffers, wife, | F. | 1826, about, | " | " | " | m Lydia Jeffers, |
| | William C. Mingo, | M. | 1852, Feb. 19, | Gay Head, | " | " | Mechanic. |
| | Johnson Peters, | M. | 1778, Jan. 21, | Chaldmay... | " | " | |
| | Mary Cooper, wife, | F. | 1791, June 30, | Gay Head, | " | m Mary Cooper, | Seaman and farmer. |
| | Betsey Peters, | F. | 1811, Aug. 29, | " | " | Single, | |
| | | | | | | | |
| 163 | Mary Cuff, | F. | 1843, Dec. 5, | Gay Head, | Gay Head. | Single, | |
| 164 | Samuel Peters, | M. | 1829, Feb. 17, | " | " | m Sarah Jeffers, | Seaman and farmer. |
| 165 | Frances A. Rose, 2d wife, | F. | 1818, April 27, | " | " | | |
| 166 | Samuel Peters, Jr., | M. | 1860, July 11, | " | " | Whitmer, | Seaman. |
| 167 | Joseph Peters, | M. | 1850, Dec. —, | " | " | Single, | |
| 168 | Frances Peters, | F. | 1852, Aug. —, | " | " | | |
| 169 | Julia F. Carney, | F. | 1848, Nov. 19, | " | " | Wid. of Landon Carney, | |
| 170 | Coombs Washington Carney, | M. | 1844, May 23, | " | " | Single, | Seaman. |
| 111 | William S. James, | M. | 1839, Mar. 24, | Christiantown, | " | m Avis Jeffers, | Farmer. |
| 112 | Henry G. James, | M. | 1841, May 29, | Christiantown, | " | Single, | |
| 113 | Avis Gertrude James, | F. | 1843, Feb. 10, | Gay Head, | " | | |
| 114 | William Wallace James, | M. | 1800, Nov. 29, | Gay Head, | " | m Avis Jeffers, | |
| 115 | Thomas Jeffers, | M. | 18.49, Sept. 13, | " | " | Seaman. | |
| 116 | Lavina James, wife, | F. | 1850, May 4, | " | " | Farmer. | |
| 117 | Thomas Cusaul Jeffers, | M. | 1044, Jan. 10, | " | " | | |
| 118 | Cornelia Howard Jeffers, | F. | 1856, Sept. 1, | Gay Head, | Gay Head. | | |
| 119 | Louisa Alnida Jeffers, | F. | 1863, Dec. 24, | " | " | | |
| 120 | Henry Hubbard Jeffers, | M. | 1857, June 5, | Middleborough, | " | Whitmer, | |
| 121 | Amos Jeffers, | M. | 1783, Nov. 4, | Gay Head, | " | m it ... it ... | Seaman and farmer. |
| 122 | Thomas Manning, | M. | 1811, Oct. 17, | Gay Head, | " | m c... Manning... | |
| 123 | Resabella M. Howamarva, wife, | F. | 1822, Feb. 17, | " | " | | |
| 124 | Isabel Manning, | F. | 1854, Aug. —, | " | " | | |

Census of the Inhabitants of Gay Head.

| No. | Names. | Sex. | When Born. | Where Born. | Residence. | Condition. | Occupation. |
|---|---|---|---|---|---|---|---|
| 208 | Britney Dodge, | F. | 1786, May 24. | Gay Head. | Gay Head. | Single. | — |
| 209 | Maria Sewell, | F. | 1409, about. | Hatfield, | " | " | — |
| 210 | Moses Cuff, | M. | 1810, about. | Gay Head. | " | — | — |
| 211 | Paul Cuff, | M. | 1826, about. | " | " | — | Seaman. |
| 212 | John A. Cole, | M. | 1841, about. | " | " | — | " |
| 213 | Thirza R. Cole, | F | 1846, about. | " | " | Single. | " |
| 214 | Abel Manning, | M. | 1814, about. | " | " | " | — |
| 215 | John Divine, Jr., | M. | 1816, about. | " | " | " | Seaman. |
| 216 | Parnell Divine,[1] | F | 1833, April 24. | " | " | " | " |
| 217 | Daniel Nevers, | M. | 1828, Sept. 4. | " | " | Anna Horuit,[2] | Seaman. |
| 218 | Ann Elizabeth Nevers, wife, | F. | 1844, about, | " | " | — | — |
| 219 | Walter Scott Nevers, | M | 1864, about, | — | — | — | — |
| 220 | Ruth Ellen Nevers, | F | 1866, May —, | — | — | — | — |
| 221 | Eunice Nevers, | F | 1870, Nov. 25. | Christiantown, | — | — | — |
| 222 | Jophanas Salsbury, | M. | 1838, about, | — | — | — | Seaman. |
| 223 | William Holmes, | M. | 1841, about, | New York. | Gay Head. | Single. | " |
| 224 | Catharine Occooch. | F. | 1810, about, | — | New Bedford. | " | — |
| 225 | Georgiana Broacher, | F. | 1833, about. | Gay Head. | — | — | — |
| 226 | Priscilla Williams, | F. | 1838, Sept. —. | Chabbaquiddick, | — | m John Williams, | — |

[1] Died December 27, 1869.   [2] Second wife, Ann Elizabeth Nevers.

Census of the Inhabitants of Gay Head—Concluded.

| No. | When married. | Parentage. Father. | Mother. | Parents residence. | Father's birthplace. | Mother's birthplace. | Father's occupation. |
|---|---|---|---|---|---|---|---|
| 208 | — | Henry Dodge, | Abigail Occooch. | Gay Head. | Gay Head. | Gay Head. | Seaman. |
| 209 | — | Hezekiah Sewell, | Martha. | — | " | " | — |
| 210 | — | — | Aliah Cuff, | Gay Head. | — | " | — |
| 211 | — | David Cuff, | Mary Dodge, | " | Gay Head. | " | Seaman |
| 212 | — | — | Fanny Cole. | " | — | " | — |
| 213 | — | — | " | " | — | " | — |
| 214 | — | Marshall Manning, | Hannah Talknot, | " | Welton, | " | Seaman. |
| 215 | — | John Divine,[*] | Parnell Jeffers, | " | Gay Head. | " | " |
| 216 | — | " | " | " | " | " | — |
| 217 | 1863, Jan 16, | — | — | " | — | — | — |
| 218 | — | — | Louisa Nevers, | Gay Head. | — | Gay Head. | — |
| 219 | — | — | Ann Elizabeth Nevers. | " | — | " | — |
| 220 | — | — | " | " | — | — | — |
| 221 | — | — | " | — | — | — | — |
| 222 | — | — | Abiah Salsbury. | — | — | — | — |
| 223 | — | William Holmes, | Hepzah Occooch, | Gay Head | — | — | — |
| 224 | — | — | Bathsheba Occooch, | — | — | — | — |
| 225 | — | — | — | — | — | — | — |
| 226 | — | — | Betsey Bowes, | Gay Head, | — | Gay Head | — |

## Census of the Inhabitants of Gay Head—Continued.

| No. | When married | Parentage — Father | Parentage — Mother | Parents' residence | Father's birthplace | Mother's birthplace | Father's occupation |
|---|---|---|---|---|---|---|---|
| 167 | | Simon Johnson, 3d, | Emily G. Salsbury, | Gay Head, | Gay Head, | Gay Head, | Seaman & farmer. |
| 168 | | Thaddeus Cook, | " | " | | " | " |
| 169 | | " | " | " | | " | " |
| 170 | | " | Christina P. Cook, | " | | | |
| 171 | 1857, June 6, | Thomas Diamond, | Rachel Fey, | Waterford, N.Y., | Waterford, | Waterford, | Farmer. |
| 172 | " | Marshall Manning, | Hannah Talkoot, | Gay Head, | Easton, | Gay Head, | Seaman |
| 173 | " | James Diamond, | Abiah Manning, | " | Waterford, N.Y., | " | Laborer. |
| 174 | " | " | " | " | " | " | " |
| 175 | " | Lewis Cook, | " | " | Gay Head, | " | Seaman. |
| 176 | " | " | " | " | " | " | " |
| 177 | " | " | " | " | " | " | " |
| 178 | " | " | " | " | " | " | " |
| 179 | " | Nathan Francis, | Sarah Amos, | " | " | " | " |
| 180 | " | " | Love Weeks, | Christiantown, | — | Christiantown, | — |
| 181 | " | Thomas Cooper, (2) | Susannah Talknot, | Gay Head, | Gay Head, | Gay Head, | Seaman. |
| 182 | " | Prince Johnson, | Eliza Hazard, | " | " | Chilmark, | " |
| 183 | 1878, Mar. 8, | " | " | | | | |
| 184 | " | Prince Johnson, | Eliza Hazard, | Gay Head, | Gay Head, | Chilmark, | Seaman. |
| 185 | " | " | Julia Ann Johnson, | — | — | — | — |
| 186 | " | Moses Pocknet, | " | — | — | — | — |

| No. | When married | Parentage — Father | Parentage — Mother | Parents' residence | Father's birthplace | Mother's birthplace | Father's occupation |
|---|---|---|---|---|---|---|---|
| 187 | | — | Mary C. Jeffers, | Gay Head, | — | Gay Head, | — |
| 188 | | Prince Johnson, | Eliza Hazard, | " | Gay Head, | Chilmark, | Seaman. |
| 189 | | — | — | — | — | — | — |
| 190 | | — | Rachel Turner, | — | — | — | — |
| 191 | | Prince Johnson, | Eliza Hazard, | Gay Head, | Gay Head, | Chilmark, | Seaman. |
| 192 | | " | " | " | " | " | " |
| 193 | | Nathan Francis, | Sarah Amos | " | " | Gay Head, | " |
| 194 | | Moses Howwaswee, | Jane Tallman, | " | " | " | " |
| 195 | | — | Margaret Howwaswee, | " | " | " | — |
| 196 | | Salsbury Wamsley, | Jane Robbins, | Gay Head, | Rochester, | Marshpee, | Carpenter. |
| 197 | 1908, April 98, | William Weeks, | Elizabeth Talknot, | " | Gay Head, | Gay Head, | Seaman. |
| 198 | | " | Betsey Bunker, | " | " | " | — |
| 199 | | Tristram Weeks, | Tamson Bunker, | " | Gay Head, | " | Seaman & farmer |
| 200 | | " | " | " | " | " | " |
| 201 | | — | Anna Cooper, | " | — | " | — |
| 202 | 1804, Dec. 1, | David Bowyer, | Jane Honeuy, | Alexandria, Va., | Fairfax Co., Va | Fairfax Co., Va., | — |
| 203 | | — | R. Catharine Francis, | Chilmark, | — | Gay Head | — |
| 204 | | — | Olive B. Francis, | — | — | — | — |
| 205 | | Samuel Rose, | Ruhamah Rovse, | Taunton | — | Connecticut, | Laborer |
| 2d | | Salsbury Wamsley, | Jane Robbins, | Gay Head | Rochester, | Marshpee, | Carpenter. |
| 207 | | Isaac D. Rose, | Harriet A. Wamsley, | " | Taunton, | — | Seaman & farmer |
| 208 | | — | Frances A. Rose, | " | — | Taunton, | — |

## Census of the Inhabitants of Gay Head.

| No. | Name. | Sex. | When Born. | Where Born. | Residence. | Condition. | Occupation. |
|---|---|---|---|---|---|---|---|
| 167 | Leroy Avery Johnson, | M. | 1867, June 1, | Gay Head, | Gay Head, | – – | – |
| 168 | Christina Peters Cook, | F. | 1852, Dec. 18, | " | " | – – | – |
| 169 | Ada Cook, | F. | 1850, Jan. 21, | " | " | – – | – |
| 170 | Mozella Cook, | M. | 1868, June 22, | " | " | – – | – |
| 171 | James Diamond, | M. | 1825, May 10, | Waterford, N. Y., | " | m Abiah Cook, | Laborer. |
| 172 | Abiah Manning, wife, | F. | 1831, Mar. 18, | Gay Head, | " | m Lewis Cook,¹ | – |
| 173 | Rachel Diamond, | F. | 1857, June 6, | " | " | – – | – |
| 174 | Rosetta Ellie Diamond, | F. | 1862, July 18, | " | " | – – | – |
| 175 | Lewis Cook, | M. | 1846, Jan. 11, | " | " | – – | Seaman. |
| 176 | William Harrison Cook, | M. | 1849, June 2, | " | " | – – | " |
| 177 | Faustina Frances Cook, | F. | 1853, May 1, | " | " | – – | – |
| 178 | Maria Inraa Cook, | F. | 1856, Sept. 22, | " | " | – – | – |
| 179 | Jonathan Francis, | M. | 1800, Mar. 1, | " | " | m Mary Ann Weeks, | Seaman and farmer. |
| 180 | Mary Ann Weeks, wife, | F. | 1804, Oct. 25, | Christiantown, | " | – – | – |
| 181 | Thomas Cooper, | M. | 1802, May 8, | Gay Head, | " | Single, | Laborer. |
| 182 | William Prince Johnson, | M. | 1850, Mar. 15, | " | " | – – | Seaman. |
| 183 | Moses Pecknot, | M. | 1841, about, | – | " | m Julia Ann Johnson, | " |
| 184 | Julia Ann Johnson, wife, | F. | 1846, May 11, | Gay Head, | " | – – | – |
| 185 | Eliza Ann Johnson, | F. | 1868, Jan. 7, | " | " | – – | – |
| 186 | Nathan Elton Pecknot, | M. | 1870, May 12, | " | " | – – | – |

| 187 | Mary Ellen Peters, | F | 1865, Dec 17, | Gay Head, | Gay Head, | – – | – |
| 188 | Peter Johnson, | M. | 1835, Oct. 12, | " | " | m Rachel Turner, | Seaman. |
| 189 | Rachel Turner, wife, | F | 1845, stout, | Plymouth, | Plymouth, | – – | – |
| 190 | Nathaniel Turner, | M | 186-, Oct. 1, | " | " | – – | – |
| 191 | Nathan Johnson, | M | 1840, about, | Gay Head, | Gay Head, | – – | Seaman. |
| 192 | Algernon Sidney Johnson, | M. | 1841, about, | Chilmark, | " | Single, | " |
| 193 | Jane Wamsley, | F. | 1796, Feb. 12, | Gay Head, | " | Wid. of Hebron Wamsley, | – |
| 194 | Esther Howwaswee, | F | 1794 Oct. 6, | " | " | Single, | – |
| 195 | Zaccheus Howwaswee, | M. | 1792, Jan. 11, | " | " | m Elizabeth Wamsley, | Seaman and farmer. |
| 196 | Elizabeth Wamsley, | F | 1803 Dec. 26, | " | " | – – | – |
| 197 | Tristram Weeks, | M | 1800 Dec 29, | " | | m Mary Ann Cole,² | man and farmer. |
| 198 | Tamson Bunker, 3d wife, | F. | 1803 July 12, | " | | m William Thomas, | – |
| 199 | Elizabeth Weeks, | F | 1846, Feb 25, | " | | Single, | – |
| 200 | Tristram Weeks, Jr., | M. | 1850, Aug 25, | " | | | Seaman. |
| 201 | Thomas Green Cooper, | M | 1837 about, | " | | | " |
| 202 | James Bowyer, | M | 1842 Feb. 12, | Alexandria, Va. | | m Mehetibel ¹ | – |
| 203 | Olive B Francis, 2d wife, | F | 1846, Sept 17, | Chilmark, | | – | – |
| 204 | Cordelia Francis, | F | 1848 Jan. 24, | " | | – | – |
| 205 | Isaac D. Rose, | M | 1841 Nov. 14, | Taunton Mass | | m Prudence A Wamsley, | Seaman and farmer |
| 206 | Harriet A. Wamsley, 2d wife, | F. | 1821, Sept 7, | Gay Head, | | – | – |
| 207 | Harriet Etta Rose, | F | 1860, Feb 12, | " | | – | – |
| 208 | Minnenla Cassandra Rose, | F | 1863, Nov 3, | Boston, | | – | – |

¹ 2d husband, James Diamond.   ² 2d wife, Margaret Francis; 3d wife, Tamson Bunker 2d wife, Harriet A. Wamsley.   ¹ 2 husband, Tristram Weeks   ¹ 2 wife, Olive B Francis

Census of the Inhabitants of Gay Head—Continued.

| No. | When married. | Father. | Mother. | Parents' residence. | Father's birthplace. | Mother's birthplace. | Father's occupa. |
|---|---|---|---|---|---|---|---|
| | | Thomas Manning, | Rosabella M. Howwasswee, | Gay Head, | Gay Head, | Gay Head, | Seaman & farm |
| | | " | " | " | " | " | " " |
| | | " | " | " | " | " | " " |
| | | " | " | " | " | " | " " |
| | | " | " | " | " | " | " " |
| 130 | | " | " | " | " | " | " " |
| 131 | | " | " | " | " | " | " " |
| 132 | 1846, Feb. 23 | John Randolph, | Margaret ——, | Philadelphia, | San Domingo, | San Domingo, | Laborer. |
| 133 | | " | Eliah Swasey, | Gay Head, | — | Gay Head, | — |
| 134 | | John P. Randolph, | Serena G. S. Swasey, | " | San Domingo, | " | Seaman. |
| 135 | | " | Margaret P. Randolph, | " | — | " | — |
| 136 | | William Morton, | Patience Mingo, | " | — | — | Seaman. |
| 137 | | " | " | " | — | — | — |
| 138 | | Marshall Manning, | Hannah Talkuot, | " | Easton, | Gay Head, | Seaman. |
| 139 | | " | " | — | — | — | — |
| 140 | | Alvin Manning, | Reza Lowe, | — | Gay Head, | Marshpee, | Seaman & farm |
| 141 | | Thomas Cooper, (2) | Susannah Talknot, | Gay Head, | " | Gay Head, | Farmer. |
| 142 | | " | Prudence David, | " | — | " | — |
| 143 | | " | " | " | — | " | — |
| 144 | | " | Elizabeth N. Cooper, | " | — | " | — |

| 145 | 1879, Mar. 5, | — | — | Gay Head, | — | Gay Head, | — |
| 146 | — | George David, | Louisa Cooper, | " | Gay Head, | " | Farmer. |
| 147 | — | Isaiah Howwasswee, | Desire Company, | " | " | " | Laborer. |
| 148 | — | Josiah Jerrett, | Olive Howwasswee, | " | Marshpee, | " | — |
| 149 | — | " | Sally Gershom, | " | " | " | Farmer. |
| 150 | — | Abram Rodman, | Mary Trino, | Rhode Island, | Rhode Island, | Rhode Island, | — |
| 151 | 1855, May 16, | George David, | Louisa Cooper, | Gay Head, | — | Gay Head, | Seaman & farm |
| 152 | — | Abram Rodman, | Charlotte Wamsley, | " | Rhoda Island, | " | " " |
| 153 | — | " | " | " | " | " | " " |
| 154 | — | " | Rosanna G. David, | " | " | Middleborough, | " " |
| 155 | — | Salsbury Wamsley, | Jane Robbins, | " | Rochester, | Gay Head, | Carpenter. |
| 156 | — | Hebron Wamsley, | Eleanor Peters, | " | Middleborough, | " | " |
| 157 | — | " | " | " | " | " | " |
| 158 | — | " | " | " | " | " | " |
| 159 | — | " | " | " | Cape de Verde, | Christiantown, | Seaman. |
| 160 | 1862, June 18, | John Spencer, | Mary James, | Christiantown | Middleborough, | Gay Head, | Carpenter. |
| 161 | — | Hebron Wamsley, | Eleanor Peters, | Gay Head, | Christiantown, | " | Seaman. |
| 162 | — | Francis Spencer, | Amy Wamsley, | " | " | " | — |
| 163 | — | " | Hannah Johnson, | " | " | " | — |
| 164 | — | John Salsbury, | Abiah Johnson, | " | Gay Head, | " | Seaman & far |
| 165 | — | Simon Johnson, 11, | Emily G. Salsbury, | " | " | " | " " |
| 166 | — | " | " | " | — | " | — |

## Census of the Inhabitants of Gay Head.

| No. | Name. | Sex. | When Born. | Where Born. | Residence. | Condition. | Occupation. |
|---|---|---|---|---|---|---|---|
| 125 | Thomas Ellsworth Manning, | M. | 1856, June 28, | Gay Head, | Gay Head, | — | — |
| 126 | Rebecca John Manning, | F. | 1859, May 15, | " | " | — | — |
| 127 | Mary Marshall Manning, | F. | 1862, Mar. 10, | " | " | — | — |
| 128 | Martha Ann Manning, | F. | 1864, Feb. 24, | " | " | — | — |
| 129 | Joseph Franklin Manning, | M. | 1866, Feb. 3, | " | " | — | — |
| 130 | Susan M. Manning, | F. | 1868, May 28, | " | " | — | — |
| 131 | Francis Manning, | M. | 1870, June 11, | " | " | — | — |
| 132 | John P. Randolph, | M. | 1816, Dec. 22, | San Domingo, | " | m Serena C. S. Swasey, | Seaman. |
| 133 | Serena C. Swasey, wife, | F. | 1819, . . . | Gay Head, | " | — | — |
| 134 | Margaret F. Randolph, | F. | 1842, May 9, | " | " | — | — |
| 135 | John P. Randolph, 3d, | M. | 1846, Jan. 23, | " | " | — | — |
| 136 | William Morton. | M. | 1815, June 6, | " | " | Slagle, | Seaman. |
| 137 | Robert Henry Morton, | M. | 1840, Dec. 31, | " | " | " | " |
| 138 | Alvin Manning, | M. | 1816, May 20, | " | " | m Roxa Lowe, | Farmer. |
| 139 | Mary Kent, wife, | F. | 1843, about . | Vermont, | " | — | " |
| 140 | Marshal Manning, | M. | 1866, June —, | Gay Head, | " | — | Seaman. |
| 141 | Louisa David, | F. | 1811, April 6, | " | " | Widow of Geo. David, | — |
| 142 | George Henry David, | M. | 1866, April 23, | " | " | — | — |
| 143 | Alexander David, | M. | 1868, Nov. 18, | " | " | — | — |
| 144 | Isaac H. Cooper, | M. | 1867, Jan. 26, | " | " | — | — |

| No. | Name | Sex | When Born | Where Born | Residence | Condition | Occupation |
|---|---|---|---|---|---|---|---|
| 145 | Alexander Nevers, | M. | 1847, Oct. 19. | Gay Head, | Gay Head, | m Prudence David, | Seaman. |
| 146 | Prudence David, wife, | F. | 1848, Jan. 13. | " | " | m William Mingo, | — |
| 147 | Olive Jerrett, | F. | 1800, Aug. 30. | " | " | Single | Laborer. |
| 148 | Josiah Jerrett, | M. | 1812, Nov. 3, | " | " | " | Seaman. |
| 149 | Abraham Jerrett, | M. | 1821, about, | Rhode Island, | " | m Charlotte Wamsley, | Seaman and farmer |
| 150 | Abram Rodman, | M. | 1809, Sept. 30, | Gay Head, | " | m Joel Jerrett, | Seaman. |
| 151 | Roxanna Gershom David, 2d wife, | F. | 1839, April 26, | " | " | — | — |
| 152 | Benjamin Ephraim Rodman, | M. | 1844, Feb. 18, | " | " | — | — |
| 153 | Elizabeth V. Rodman, | F. | 1850, Mar. 9, | " | " | — | Carpenter & farm |
| 154 | Abraham Lindola Rodman, | M. | 1870, Mar. 18, | " | " | Widower, | — |
| 155 | Hebron Wamsley, | M. | 1818, Jan. 17, | Middleborough, | " | " | — |
| 156 | Hebron Wamsley, Jr., | M. | 1849, Mar. 31, | Gay Head, | " | — | — |
| 157 | Lavina H. Wamsley, | F. | 1847, Feb. 6, | " | " | — | — |
| 158 | Valentine Wamsley, | M. | 1857, Aug. 27, | " | " | — | Seaman. |
| 159 | Priscilla R. Wamsley, | F. | 1855, Dec. —, | " | " | m Amy Wamsley, | — |
| 160 | Francis Spencer, | M. | 1850, June 9, | Christiantown, | " | — | — |
| 161 | Amy Wamsley, wife, | F. | 1845, Dec. 12, | Gay Head, | " | m Emily G. Cook, | seaman & far |
| 162 | Celestine W. Spencer, | F. | 1870, May 24, | " | " | m Thankful Cook | — |
| 163 | Simon Johnson, 2d, | M. | 1811, Jan. 6, | " | " | — | — |
| 164 | Emily G. Salsbury, wife, | F. | 1833, June 23, | " | " | — | — |
| 165 | Hattie Mary Abby Johnson, | F. | 1851, May 23, | " | " | — | — |
| 166 | Hannah Johnson, | F. | 1865, Sept. 26, | " | " | 2d husband, Abram Rodman, | 2d hust and, Simon Johnson, |

1 M wife, Mary Kent.   2 2d husband, Joshua Jerrett.

## Census of the Inhabitants of Gay Head—Continued.

| No. | When married. | Parentage. Father. | Parentage. Mother. | Parents' resi-lence. | Father's birthplace. | Mother's birthplace. | Father's occupation. |
|---|---|---|---|---|---|---|---|
| 85 |  | Leander Bassett, | Huldah Jeffers, | Gay Head, | Farm Neck, | Gay Head, | Seaman. |
| 85 | 1858, Jan. 23, | " | " | " | " | " | " |
| 86 | — | Leander Bassett, | Huldah Jeffers, | Gay Head, | Farm Neck, | Gay Head, | Seaman & farmer. |
| 86 | — | Samuel Smalley, | Julia Ann Bassett, | " | New York, | " | " |
| 87 | — | " | " | " | " | " | " |
| 88 | — | " | " | " | " | " | " |
| 89 | — | " | " | " | " | " | " |
| 90 | — | — | — | Africa, | France, | Africa, o | " |
| 91 | — | Johnson Peters, | Mary Cooper, | Gay Head, | Chabbaquiddick, | Gay Head, | " |
| 92 | — | John Anthony, | Betsey Mingo, | " | Africa, | Christiantown, | " |
| 93 | 1858, Jan. 16, | — | — | Sandwich Isl., | Sandwich Isl., | Sandwich Isl., | — |
| 94 | — | John Anthony, | Betsey Mingo, | Gay Head, | Africa, | Christiantown, | Seaman & farmer. |
| 95 | — | John H. Laley, | Rachel Anthony, | ? | Sandwich Isl., | " | " |
| 96 | — | — | Sarah Johnson, | " | — | — | — |
| 97 | 1861, Nov. 21, | William Mingo, | Olive Howwaswee, | New Bedford, | Fall River, | Gay Head, | Cabinet-maker. |
| 98 | — | Amos Jeffers, | Bethiah Cooper, | Gay Head, | Middleborough, | " | Seaman. |
| 99 | — | — | Mary C. Jeffers, | " | " | " | — |
| 100 | 1857, Oct. | Samuel Peters, | Patty Johnson, | Chabbaquiddick, | Marshfield, | Chabbaquiddick, | Seaman. |
| 101 | — | Thomas Cooper, (1) | Mary Herris, | Gay Head, | Gay Head, | Gay Head, | " |
| 102 | — | Johnson Peters, | Mary Cooper, | " | Chabbaquiddick, | " | Seaman & farmer. |
| 103 | — | Jonathan Cuff, | Hannah Peters, | Gay Head, | Gay Head, | Gay Head, | Seaman & farmer. |
| 104 | — | Johnson Peters, | Mary Cooper, | " | Chabbaquiddick, | " | " |
| 105 | — | Samuel Rose, | Ruhamah Bowes, | Taunton, | Connecticut, | Gay Head, | Laborer. |
| 106 | — | Samuel Peters, | Sarah Jeffers, | Gay Head, | Gay Head, | Gay Head, | Seaman & farmer. |
| 107 | — | " | " | " | " | " | " |
| 108 | — | " | " | " | Middleborough, | " | " |
| 109 | 1839, May | Amos Jeffers, | Bethiah Cooper, | " | — | " | Seaman. |
| 110 | — | Leander Cornoy, | Julia F. Jeffers, | Christiantown, | — | — | — |
| 111 | 1859, Feb. 3, | Thomas James, | Judith Weeks, | " | Christiantown, | Gay Head, | Farmer. |
| 112 | — | William Spencer James, | Avis Divine, | " | " | " | " |
| 113 | — | " | " | " | " | " | Seaman & farmer. |
| 114 | — | " | Bethiah Cooper, | Gay Head, | Gay Head, | " | " |
| 115 | 1857, Apr. 13, | Amos Jeffers, | Mary C. Peters, | Christiantown, | Gay H'd, | " | Farmer. |
| 116 | — | Henry James, | Lucian James, | Gay H'd, | " | " | — |
| 117 | — | Thomas Jeffers, | " | " | " | " | — |
| 118 | — | " | " | " | " | " | — |
| 119 | — | " | " | " | " | " | — |
| 120 | — | " | " | " | " | Gay H'd, | Farmer. |
| 121 | — | " | Hannah Lalknol, | Gay H'd, | " | " | — |
| 122 | 1854, Nov. 22, | Marshall Manning, | Rebecca Howwaswee, | " | " | " | Seaman & farmer. |
| 123 | — | — | Rosabella M. Howwaswee, | " | " | " | — |
| 124 | — | Thomas Manning, | | | | | |



## Census of the Inhabitants of Gay Head.

| No. | Name. | Age | When Born. | Where Born. | Residence. | Condition. | Occupation. |
|---|---|---|---|---|---|---|---|
| 209 | Betsey Dodge, | F. | 1796, May 21. | Gay Head. | Gay Head. | Single. | |
| 210 | Maria Sewell, | F. | 1849, about. | Hatfield | | | |
| 211 | Moses Cuff, | M. | 1840, about. | Gay Head. | | | |
| 212 | Paul Cuff, | M. | 1830, about. | | | | Seaman. |
| 213 | John A. Cole, | M. | 1843, about. | | | Single. | " |
| 214 | Thirza R. Cole, | F. | 1848, about. | | | | |
| 215 | Abel Manning, | M. | 1841 about. | | | | Seaman. |
| 216 | John Divine, Jr., | M. | 1846 about. | | | " | |
| 217 | Parnell Divine,† | F. | 1841, April 23. | | | " | |
| 218 | Daniel Nevers, | M. | 1820, Sept. 4. | | | Ann's Howitt,‡ | |
| 219 | Ann Elizabeth Nevers, wife, | F. | 1841, about. | | | | Seaman. |
| 220 | Walter Scott Nevers | M. | 1866 about. | | | | |
| 221 | Ruth Ellen Nevers, | F. | 1869 May | | | | |
| 222 | Eunice Nevers, | F. | 1871 Nov. 27. | Christiantown, | | | |
| 223 | Jophanus Salsbury, | M. | 1830, about. | | | | Seaman. |
| 224 | William Holmes, | M. | 1841, about. | New York. | Gay Head. | Single. | |
| 225 | Catharine Occouch, | F. | 1810, about. | | New Bedford. | | |
| 226 | Georgiana Broacher, | F. | 1833 about | Gay Head. | | | |
| 227 | Priscilla Williams, | F. | 1828 Sept. | Chabbaquiddick, | | | m John Williams, |

† Died December 17, 1869.    ‡ Second wife Ann Elizabeth Nevers.

## Census of the Inhabitants of Gay Head—Concluded.

| No. | When married. | Father. | Mother. | Parents residence. | Father's birthplace. | Mother's birthplace. | Father's occupation. |
|---|---|---|---|---|---|---|---|
| 209 | | Henry Dodge. | Abigail Occouch. | Gay Head. | Gay Head. | Gay Head. | Seaman. |
| 210 | | Hezekiah Sewell. | Martha. | | | | " |
| 211 | | | Allah Cuff. | Gay Head. | | | |
| 212 | | David Cuff, | Mary Dodge. | | Gay Head | | Seaman |
| 213 | | | Fanny Cole. | | | | |
| 214 | | | | | | | |
| 215 | | Marshall Manning. | Hannah Talbot. | | Mashpee. | | Seaman. |
| 216 | | John Divine. | Patience Gotten. | | Gay Head. | | |
| 217 | | | | | | | |
| 218 | 1869, Jan. 18. | | | | | | |
| 219 | | | Lucian Nevers, | Gay Head. | | Gay Head. | |
| 220 | | | Ann Elizabeth Nevers | | | | |
| 221 | | | | | | | |
| 222 | | | | | | | |
| 223 | | | Ata L. Lokula's | | | | |
| 224 | | William Holmes. | Hepseh Occouch. | Gay Head. | | | |
| 225 | | | Bathsheba Occouch. | | | | |
| 226 | | | | | | | |
| 227 | | | Betsey Howes. | Gay Head. | | Gay Head. | |



# EXHIBIT B

WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH)
ORDINANCE NO. 2011-01

TRIBAL GAMING ORDINANCE
WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH)
ORDINANCE

INDEX

**Section 1**          **In General**
1.1          Definitions
1.2          Short Title
1.3          Statement of Purpose
1.4          Public Policy
1.5          Class I Gaming Authorized
1.6          Class II Gaming Authorized
1.7          Location of Gaming
1.8          Ownership of Gaming
1.9          Use of Gaming Revenue
1.10         Unauthorized Gaming
1.11         Conduct of Games
1.12         Applicability of Ordinance
1.13         Interpretation
1.14         Cooperation with Law Enforcement

**Section 2**          **Tribal Gaming Commission**
2.1          Establishment
2.2          Licensing of Commissioners
2.3          Restrictions on Commissioners
2.4          No Financial Interest in Gaming
2.5          Compensation of Commissioners
2.6          Meetings
2.7          Commission Offices
2.8          Quorum
2.9          Organization
2.10         Recordkeeping
2.11         Reports
2.12         Budget
2.13         Powers
2.14         Promulgation of Gaming Regulations
2.15         Access of Commission Officers
2.16         Removal of Gaming Commissioners

**Section 3**          **Gaming License, Other License and Work Permit Applications and Procedures**
3.1          License and Tribal Work Permits

1

3.2      Standard for License and Tribal Work Permit
3.3      Application for License or Work Permit
3.4      Required Application Forms
3.5      Fingerprint Cards Required
3.6      Continuing Duty to Provide Information
3.7      Facility License
3.8      Certification of Gaming Devices
3.9      Temporary License and Tribal Work Permits
3.10     Temporary Employment Pending Issuance of Gaming License or Tribal Work
         Permit
3.11     Assignment or Transfer
3.12     Identification Badges

**Section 4        Background Investigations and License Decisions**
4.1      Required Background Investigations
4.2      Standards for Background Investigations
4.3      License Suspension
4.4      Term of License; License Fees; Parameters of License

**Section 5        Enforcement and Rules of Procedure for Hearings**
5.1      Notice of Violation
5.2      Order of Temporary Closure
5.3      Civil Fine Assessments
5.4      Appeals Before the Commission
5.5      License Hearings

**Section 6        Audits**
6.1      Audits

**Section 7        Exclusion or Ejection of Individuals**
7.1      Prohibition Against Certain Individuals
7.2      Right to Exclude or Remove

**Section 8        Prohibited Acts**
8.1      Enumeration
8.2      Prohibition Against Cheating Devices

**Section 9        General Requirements**
9.1      Fees
9.2      Regulation of Commission
9.3      Security and Surveillance
9.4      Sovereign Immunity
9.5      Privilege
9.6      Compliance with Federal Law
9.7      Amendments
9.8      Words and terms

2

9.9         Repeal
9.10        Unclaimed Winnings
9.11        Patron Disputes
9.12        Patrons Rights Regarding Disputes
9.13        Gaming Commission Action on Patron Disputes
9.14        Agent for Service of Process
9.15        Consent to Jurisdiction
9.16        Comity and Concurrent Jurisdiction
9.17        Enforcement Provisions
9.18        Effective Date

## SECTION 1.        IN GENERAL

### 1.1. Definitions.

Unless a different meaning is set forth below, the terms used in this Ordinance shall have the same meaning as defined in the Indian Gaming Regulatory Act, Public Law 100-497, 102 Stat. 2467 (Oct. 17, 1988), 25 U.S.C. 2701 et seq., and its implementing regulations, 25 C.F.R. § 500 et seq., as amended from time to time.

(a) "Applicant" means any person, partnership, corporation, joint venture or other entity applying for any license described in or required by this Ordinance.

(b) "Application" means a request for the issuance of a license described in or required by this Ordinance.

(c) "Cheat" or "cheating" means to: employ or attempt to employ any device, scheme, or artifice to defraud any other participant or the operator; engage in any act, practice, or course of operation as would operate as a fraud or deceit upon any other  participant or any operator; engage in any act, practice, or course of operation while participating in Gaming with the intent of defrauding or deceiving any other participant or the operator to gain an advantage in the game over the other participant or operator; altering the selection of criteria which determine the result of the game or the amount or frequency of payment in a game; aid, abet or conspire to commit any of the foregoing conduct.

(d)  "Cheating device" means any machine, mechanism, equipment, card, die, or other device used, or attempted to be used, to Cheat.

(e) "Class I Gaming" means Class I Gaming as defined at 25 U.S.C. § 2703(6), and any regulations promulgated thereunder.

(f) "Class II Gaming" means Class II Gaming as defined at 25 U.S.C. §2703(7), and any regulations promulgated thereunder.

(g) "Commission" means the Wampanoag Tribe of Gay Head (Aquinnah) Gaming Commission.

3

(h) "Commissioner" means an individual member of the Wampanoag Tribe of Gay Head (Aquinnah) Gaming Commission.

(i) "Council" or "Tribal Council" means the Tribal Council of the Wampanoag Tribe of Gay Head (Aquinnah).

(j) "Gaming" means any Class I Gaming, Class II Gaming or Class III Gaming activity, individually or collectively, whether authorized or unauthorized.

(k) "Gaming Device" means any equipment or mechanical, electromechanical or electronic contrivance, component or machine, used remotely or directly in connection with any gaming which affects the result of a wager by determining or predicting the outcome of such game or the odds of winning or losing such game. The term shall be broadly construed to promote the purposes of this Ordinance and shall also include any devices, machines, components or contrivances which do or are capable of affecting, in any way, the playing of any game.

(l) "Gaming Facility" means the room or rooms, building or buildings, or portions thereof located on Indian Lands in which Gaming as authorized by this Ordinance is operated or conducted .

(m) "Gaming Operation" means each economic entity that is owned by the Tribe and which operates the games, receives the revenues, issues the prizes, and pays the expenses.

(n) "IGRA" shall mean the Indian Gaming Regulatory Act, Public Law 100-497, 102 Stat. 2467 (Oct. 17, 1988), 25 U.S.C. § 2701 et seq., as currently enacted and any amendments thereto.

(o) "Indian Lands" means:

> (1) all lands within the limits of the Tribe's reservation;

> (2) any lands title to which is held in trust by the United States for the benefit of the Tribe or individual tribal member of the Tribe, or held by the Tribe or individual member of the Tribe subject to restriction by the United States against alienation and over which the Tribe exercises governmental power; and

> (3) for all lands acquired into trust for the benefit of the Tribe after October 17, 1988, lands that meet the requirements set forth in 25 U.S.C. § 2719.

(p) "Key Employee" means:

> (1) A person who performs one or more of the following functions:

>> (i) Bingo caller,
>> (ii) Counting room supervisor,
>> (iii) Chief of security,

4

(iv) Custodian of gaming supplies or cash,

(v) Floor manager,

(vi) Pit boss,

(vii) Dealer,

(viii) Croupier,

(ix) Approver of credit, or

(x) Custodian of gambling terminals or other devices operated by the management of any gaming operation, including persons with access to cash and accounting records for such devices;

(2) If not otherwise included, any other person whose total cash compensation from employment in any Gaming Operation exceed $50,000.00 per year;

(3) If not otherwise included, the four most highly compensated persons in any gaming operation; or

(4) Any other employee of any Gaming Operation that the Commission designates by its rules as a Key Employee.

(q) "License" means any authorization granted by the Commission, pursuant to this Ordinance, to any person that is required for such person to perform certain acts or engage in certain activities. The issuance of a license shall not create a property or liberty interest in such license for the benefit of the licensee.

(r) "Licensee" means any person who has been issued a valid and current license pursuant to the provisions of this Ordinance.

(s) "Net Revenue" means gross revenues of an Indian gaming activity less amounts paid out as, or paid for, prizes and total Operating Expenses, excluding management fees.

(t) "NIGC" means the National Indian Gaming Commission.

(u) "Operating Expense" means any expense incurred in the operation of gaming which by operation of generally accepted accounting principles, consistently applied, is so treated.

(v) "Ordinance" means this Ordinance, which is the Tribal Gaming Ordinance of the Wampanoag Tribe of Gay Head (Aquinnah), as amended from time to time by the Tribal Council.

(w) "Patron" means any person who participates in gaming or who is physically present on premises where gaming is conducted.

(x) "Person" means any association, partnership, corporation, firm, trust or other form of business association or entity, as well as a natural person.

(y) "Primary Management Official" means:

5

(1) The person(s) having management responsibility over all or any part of any Gaming Operation;

(2) Any person who has authority:

> (i) To hire and fire employees of a Gaming Operation; or
> (ii) To establish working policy for a Gaming Operation;

(3) The chief financial officer or other person who has financial management responsibility for any Gaming Operation; or

(4) Any person the Commission designates by Commission Regulations as a Primary Management Official.

(z) "Regulations" means any regulations governing the conduct of games or the control of internal fiscal affairs of Gaming Operations as may be promulgated by the Commission established pursuant to this Ordinance.

(aa) "Supplier of Gaming Goods and Services" means any person who manufactures, sells, leases, distributes, supplies or makes modifications to any gaming goods and services including, but not limited to any Gaming Device of the Tribe and all Persons holding any direct or indirect financial interest in such supplier.

(bb) "Tribe" means, and "Tribal" shall refer to, the Wampanoag Tribe of Gay Head (Aquinnah).

**1.2 Short Title.**

This Ordinance shall be known and may be cited as the Wampanoag Tribe of Gay Head (Aquinnah) Gaming Ordinance.

**1.3 Statement of Purpose.**

An Ordinance to govern and regulate the operation, conduct and playing of (1) Class I Gaming, and (2) Class II Gaming, as defined by IGRA, so that revenue may be produced for the support of Tribal government programs, to promote economic development, and for the health, education and welfare of the Tribe and its members. The Tribal Council of the Wampanoag Tribe of Gay Head (Aquinnah) enacts this Ordinance in order to regulate all forms of Gaming on the Tribe's Indian Lands.

**1.4 Public Policy.**

(a) All Gaming which is conducted within the Tribe's Indian Lands and which is otherwise authorized by applicable law shall be regulated and licensed pursuant to the provisions of this Ordinance.

6

(b) The Tribal Council hereby finds and declares it to be the public policy of the Tribe that:

(1) Regulation of licensed gaming is important in order that licensed gaming is conducted honestly and that gaming is free from criminal and corruptive elements.

(2) Public confidence and trust can only be maintained by strict regulation of all persons, locations, practices, associations and activities related to the operation of licensed Gaming Facilities and the manufacture or distribution of gaming devices.

(3) All Primary Management Officials, Key Employees, Gaming Facilities and Suppliers of Gaming Goods and Services must therefore be licensed and controlled to protect the public health, safety, morals, good order and general welfare of the Tribe.

## 1.5 Class I Gamiug Authorized.

Class I Gaming is hereby authorized to be conducted on lands within the Tribe's Indian Lands; provided, however, that such Class I Gaming shall be conducted only in accordance with the provisions of this Ordinance, the Regulations, IGRA, and its implementing regulations, as amended from time to time.

## 1.6 Class II Gaming Authorized.

Class II Gaming is hereby authorized to be conducted on lands within the Tribe's Indian Lands; provided, however, that such Class II Gaming shall be conducted only in accordance with the provisions of this Ordinance, the Regulations, IGRA, and its implementing regulations, as amended from time to time.

## 1.7 Location of Gaming.

The Commission shall ensure that (i) such Gaming as it authorizes and licenses pursuant to this Ordinance is conducted on the Tribe's Indian lands, and (ii) such Gaming is not otherwise specifically prohibited by applicable federal law.

## 1.8 Ownership of Gaming.

The Tribe shall have the sole proprietary interest, authority and responsibility for the conduct of Gaming in any Gaming Operation authorized by this Ordinance.  Individually owned Gaming Operations are prohibited.

## 1.9 Use of Gaming Revenue.

(a) Net Revenue from any Gaming authorized under this Ordinance shall be used only for the following purposes:

(1) to fund Tribal government operations and programs;

7

(2) to provide for the general welfare of the Tribe and its members;

(3) to promote Tribal economic development;

(4) to make donations to charitable organizations; or

(5) to help fund operations of local government agencies of the Commonwealth of Massachusetts and its political subdivisions.

(b) The Tribe may make per capita payments of Net Revenue from Gaming to Tribal members as long as such payments are in accordance with IGRA, 25 U.S.C. § 2710(b)(3).

## 1.10 Unauthorized Gaming.

Any person who commits any act of unauthorized Gaming on the Tribe's Indian Lands shall be guilty of a crime and shall be prosecuted in any court of competent jurisdiction.

## 1.11 Conduct of Games.

All Gaming shall be conducted by persons duly licensed by the Commission. No person licensed by the Commission shall engage in, conduct or condone any Gaming that is not conducted in accordance with such Regulations governing the conduct of games as may be promulgated by the Commission under this Ordinance.

## 1.12 Applicability of Ordinance.

Unless specifically indicated otherwise, all provisions of this Ordinance shall apply to all Gaming on the Tribe's Indian Lands.

## 1.13 Interpretation.

This Ordinance shall be deemed an exercise of the sovereign power of the Tribe and all provisions of this Ordinance shall be liberally construed for the accomplishment of the statement of purpose.

## 1.14 Cooperation with Law Enforcement.

Tribal officials may cooperate with law enforcement officials of the Commonwealth of Massachusetts, the Bureau of Indian Affairs, the Federal Bureau of Investigation, and other law enforcement agencies, to assure that fair, honest and efficient Gaming is conducted by the Tribe.

## SECTION 2.          TRIBAL GAMING COMMISSION

## 2.1 Establishment.

8

(a) The Wampanoag Tribe of Gay Head (Aquinnah) Gaming Commission is hereby established. The Commission shall consist of three (3) members appointed by majority vote of the Tribal Council. There shall be among them a Chairperson, Vice-Chairperson, and at least one additional Commissioner, all as designated by a majority vote of the Tribal Council.

(b) Terms of Office for Commissioners shall be as follows: the Chair shall serve an initial term of three years, with subsequent Chairs serving three-year terms. The Vice-Chair shall serve an initial term of two (2) years, with subsequent Vice-Chairs serving three-year terms. The additional Commissioner shall serve an initial term of one year, with subsequent Commissioners serving three-year terms. Any Commissioner may be removed from office prior to the end of the Commissioner's term by the Tribal Council only pursuant to the process set forth in 2.17.

(c) Vacancies on the Commission shall be filled within thirty (30) calendar days by nominations and a majority vote of the Council.

## 2.2 Licensing of Commissioners.

(a) Requirements; application. Nominees for the position of Commissioner must meet the requirements of Sections III and IV of this Ordinance and must obtain a License from the Tribal Council prior to assuming office. A Commissioner shall complete an Application for a License and shall be subject to the same background investigation as a Key Employee and Primary Management Official under this Ordinance. Such background investigation shall be performed at the direction of the Tribal Council by a duly appointed agent. Upon completion of the background investigation, the Tribal Council shall, by majority vote, (i) either approve by Council Resolution the appointment of a Commissioner or (ii) notice the Commissioner for a hearing before the Tribal Council. All investigations and hearings under this section shall be conducted as provided in Section 5 of this Ordinance, except that all hearings shall be conducted by and before the Tribal Council.

(b) Failure to meet License requirements or License violations. If the Tribal Council has reason to believe that a licensed Commissioner fails at any time to meet the License requirements under this Ordinance or that the Commissioner has violated this Ordinance, the Regulations, or IGRA and/or any regulations promulgated thereunder or any other applicable law, the Tribal Council shall direct an investigation to be conducted and may notice the Commissioner for a hearing before the Tribal Council. Any action to remove a Commissioner from office for failure to meet the License requirements, violation of this Ordinance, misfeasance, malfeasance, or nonfeasance in office shall be conducted in compliance with Section 2.17.

## 2.3 Restrictions on Commissioners.

No person shall serve on the Commission if such:

(a) Person's other employment or responsibilities conflict with, or could potentially conflict with, the duties and responsibilities of a member of the Commission;

9

(b) Person is an employee of any Gaming Operation or the person's other employment or responsibilities create an impression or appearance of impropriety in the fulfillment of the duties and responsibilities of a member of the Commission; or

(c) Person is a:

(1) Member of the Tribal Council; or
(2) Judge in any Tribal Court.

## 2.4 No Financial Interest in Gaming.

No Commissioner or any employee of the Commission:

(a)     Shall have any direct or indirect financial interest in a Gaming Operation other than his share of per capita payments;

(b)     Shall provide services to a Gaming Operation or have an interest in an entity (such as retail sales) that is subject to control or oversight by a Gaming Operation; or

(c)     Be directly or indirectly employed by any Gaming Operation.

## 2.5 Compensation of Commissioners.

Commissioners shall be compensated at a rate set forth in a uniform schedule established by the Tribal Council. Commissioners shall be reimbursed for actual expenses incurred on Commission business, including necessary travel expenses.

## 2.6 Meetings.

(a) Regular meetings. The Commission shall meet at least once a month at the Commission's main office or at any other designated meeting place.

(b) Special meetings. Special meetings shall be convened by the Chair of the Commission as necessary to carry out the official duties of the Commission. Notice of each special meeting shall be given by the Commission Chair by telephone, mail, or electronic mail to each Commissioner. Notice shall be received at least 24 hours in advance of such meeting and shall include the date, time and place of the proposed meeting.

(c) Emergency meetings. An emergency meeting may be called by the Chair of the Commission with less than 24 hours' notice; provided, however, that the Chair of the Commission shall use best efforts to ensure that all Commissioners are notified of such meeting, with as much prior notice as possible under the circumstances.

(d) Meetings open to the public. All meetings of the Commission may be open to the public; provided, however, that the Commission may, in its discretion, close any portion of any meeting

10

to the public when discussing any information which the Commission deems confidential pursuant to the provisions of this Ordinance.

## 2.7 Commission Office.

The Commission shall maintain an office on the Tribe's Indian Lands that shall be the site at which the Commission's records and documents are maintained and stored on a permanent basis. No individual, except a Commissioner or a duly authorized employee or agent of the Commission, may possess a key to or may enter any Commission office without the permission of the Commission.

## 2.8 Quorum.

A quorum of the Commission shall consist of three (3) Commissioners. All decisions shall be made by a majority vote of a quorum of the Commission, unless indicated otherwise in this Ordinance.

## 2.9 Organization.

The Commission may organize itself into any functional division it deems necessary, and may alter such plan of organization as it deems expedient.

## 2.10 Recordkeeping.

(a) The Commission shall maintain complete records regarding the following:

  (1) License applications, financial statements, fingerprints, contracts, Licenses, suspension and cancellation notices and correspondences of all Applicants, including Key Employees, Primary Management Officials, Gaming Facilities and Suppliers of Gaming Goods and Services;

  (2) Commission Licenses;

  (3) Meeting minutes from all Commission meetings;

  (4) Compact compliance;

  (5) Reports relating to customer disputes, complaints or other issues that affect the integrity of any Gaming Operation;

  (6) Commission budget and expenditures;

  (7) Tribal Council communications and correspondences;

  (8) Gaming Device list; and

11

(9) Any other records or documents the Commission deems necessary or appropriate.

(b) No person may access such records except a person duly authorized by the Commission.

## 2.11 Reports.

The Commission shall submit written quarterly reports to the Council within 45 days after the end of each quarter. All such reports shall be kept confidential. Such reports shall contain the following information:

(a) Number and types of Licenses issued during the previous quarter;

(b) Information regarding License denials, suspensions or revocations;

(c) Reports of any events of noncompliance, breach or violations of this Ordinance, Regulations, Compact, IGRA and its implementing regulations, any License or any other applicable law or regulation; provided, however, that these reports are not the subject of, or relating to a pending investigation being conducted by the Commission, or a hearing before the Commission;

(d) A summary of any Commission travel and training;

(e) All other information which the Commission deems relevant in order to keep the Tribal Council informed and current on all Gaming regulatory matters.

All information pertaining to a pending investigation being conducted by the Commission or hearing before the Commission shall be kept confidential. Nothing in this section shall authorize or permit the Commission to provide the Tribal Council with any information pertaining to a pending investigation or hearing before the Commission. Any willful or careless breach of this provision shall present due cause for removal of the Commissioner from office. Claims of such disclosure shall be presented to the Commission within sixty (60) calendar days of the act complained of, or within sixty (60) calendar days after the disclosure becomes known, whichever is later.

## 2.12 Budget.

The Commission shall establish a budget for its operations, including personnel costs. It shall acquire such furnishings, equipment, supplies, stationery, books and other items as it deems necessary or desirable to carry out its functions, and incur such other expenses, within the limit of funds available to it, as it deems necessary.

## 2.13 Powers.

The Commission shall exercise all powers necessary to effectuate the purposes of this Ordinance.

12

In addition to and in conjunction with the other powers and responsibilities identified in this Ordinance, Regulations and other applicable laws and regulations, the Commission shall have the power to:

(a) Promulgate Gaming Regulations;

(b) Issue orders of temporary and permanent closure of gaming activities for violations of this Ordinance, Regulations, IGRA and its implementing regulations and any other applicable law;

(c) Initiate civil and criminal actions in court to enforce provisions of this Ordinance, Regulations, IGRA and its implementing regulations and any other applicable law;

(d) Approve, deny or revoke Gaming Licenses;

(e) Make findings of suitability;

(f) Impose fines or sanctions upon any Licensee, subject to the hearing process set forth in Section 5;

(g) Monitor all Gaming conducted on the Tribe's Indian Lands on a continuing basis;

(h) Ensure that background investigations are conducted as required by this Ordinance and the IGRA and its implementing regulations, as well as conduct such additional investigations as the Commission may deem necessary;

(i) Demand access to and inspect, examine, copy and audit all papers, books and records concerning activities and revenues of any Gaming conducted on the Tribe's Indian Lands and any other matters necessary to carry out its duties under this Ordinance;

(j) Conduct such hearings as the Commission may deem appropriate in carrying out its duties, including administering oaths or affirmations to witnesses and issuing subpoenas for documents and/or to compel witnesses to appear at such hearings;

(k) When information is received through audits or other investigations that indicates a violation of Tribal, or applicable federal law or state law, to treat as confidential and provide such information to the appropriate law enforcement officials;

(l) Adopt a Wampanoag Tribe of Gay Head (Aquinnah) Gaming License application; and

(m) Within the limits of its budget, employ and fix the salaries of, or contract for the services of, such professional, technical and operational personnel and consultants as the execution of the Commission's duties may require.

## 2.14 Promulgation of Gaming Regulations.

13

The Commission shall promulgate Regulations governing the conduct of all games authorized by a Compact or IGRA and its implementing regulations, including Regulations governing the equipment, (chips, cards, tiles, etc.), used in such games. These Regulations shall include Tribal Internal Control Standards that meet or exceed the requirements of the NIGC's Minimum Internal Control Standards as provided at 25 C.F.R. Part 543. The rules of each authorized game offered at any duly licensed Gaming Facility shall be posted in a conspicuous location in such Gaming Facility.

## 2.15 Access of Commission Officers.

The Commission shall be present in the Gaming Operations during all hours of operation through Commission Officers, and shall have immediate access to all areas of each Gaming Facility and Operation for the purpose of ensuring compliance with the provisions of this Ordinance, and applicable Tribal, federal and state laws. Any violation of this Ordinance or applicable Tribal, federal and state laws by the Tribe, a Gaming Operation employee or any other person shall be reported immediately to the Commission.

## 2.16 Certification of Gaming Devices.

All Gaming Devices purchased, leased or otherwise acquired by any Gaming Operation must meet the technical equipment standards set forth by the Commission. The Commission shall maintain a complete list of all Gaming Devices (whether or not such devices are in use) located at any Gaming Facility.

## 2.17 Removal of Gaming Commissioners.

(a) A Commissioner may be removed from office prior to the end of the Commissioner's term by the Tribal Council for failure to meet the License requirements, violation of this Ordinance, misfeasance, malfeasance or nonfeasance in office. Removal of a Commissioner shall require a determination by no less than eight (8) members of the Tribal Council members at a duly called meeting of the Council that there is clear and convincing evidence that the Commissioner has failed to meet the License requirements, violated this Ordinance, or committed misfeasance, malfeasance or nonfeasance in office.

(b) Any Commissioner whose proposed removal shall be considered by the Tribal Council pursuant to subsection (a) of this section shall be given written notice at least fourteen (14) calendar days before the Tribal Council convenes to consider the proposed removal. The written notice shall set forth with specificity the reasons for the Commissioner's proposed removal. The notice also shall inform the Commissioner of the date, time and location when the Tribal Council will consider the proposed removal.

(c) The Commissioner whose proposed removal shall be considered by the Tribal Council pursuant to subsection (a) of this section shall be afforded the opportunity to present written and oral testimony and other evidence to the Tribal Council before it renders a decision. The Tribal Council shall make a final decision on removal within ten (10) calendar days from the date of the proceeding. The Tribal Council's decision shall be in writing and shall set forth specific findings

14

on each alleged act relating to the Commissioner's proposed removal.   The Tribal Council's written decision, which is final, shall be sent to the Commissioner and to the NIGC.

## SECTION 3.        GAMING LICENSE, OTHER LICENSE AND WORK PERMIT APPLICATIONS AND PROCEDURES

### 3.1 Licenses and Tribal Work Permits.

The Commission is hereby authorized to issue all Licenses for the conduct of all Gaming authorized under this Ordinance, or any other Licenses related to Gaming, and work permits which the Commission may require.

(a) Persons. The following Persons must obtain Licenses or Tribal work permits as a precondition to employment or providing goods and services to the gaming and nongaming portions of the Tribe's gaming/hotel operations, as applicable:

(1) All Primary Management Officials;

(2) All Key Employees;

(3) Suppliers of Gaming Goods and Services; and

(4) Any other employee or class of employees as determined by Commission Regulations.

(b) Gaming Facilities.  Each place, facility, or location where Gaming is conducted on the Tribe's Indian Lands must obtain a separate Facility License from the Tribal Council.

### 3.2 Standards for Licenses and Tribal Work Permits.

Licenses issued hereunder shall be issued according to requirements at least as stringent as those set forth at 25 C.F.R. Parts 556 and 558, and any amendments thereto.

### 3.3 Application for License or Work Permit.

(a) No License or Tribal work permit shall be issued under this Ordinance except upon a sworn application filed with the Commission, in such form as may be prescribed by the Commission, containing a full and complete showing, at a minimum, of the following:

(1) If applicable, a complete description of the premises at which Gaming will be conducted;

(2) Agreement by the Applicant to abide by all conditions of the License, this Ordinance, Regulations, and IGRA and its implementing regulations, as applicable;

15

(3) A statement that the Applicant has never been convicted of, or entered a plea of guilty or no contest to, any of the following criminal offenses:

  (i) Any felony within the preceding ten years;

  (ii) Any gaming-related offense;

  (iii) Fraud, misrepresentation or any other crimes of moral turpitude in any context; or

  (iv) A violation of any provision of this Ordinance, Regulations, or any other ordinance or rules of the Tribe regulating or prohibiting gaming; and

(4) The Applicant's fulfillment of all applicable requirements of IGRA, its implementing regulations, and all provisions of this Ordinance.

(b) No License or Tribal work permit shall be issued to any Applicant who is determined by the Commission to be a person whose prior activities, criminal record, reputation, habits or associations pose a threat to the public interest or to the effective regulation and control of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices, methods, or activities in the operation of gaming or the carrying on of the business and financial arrangements incidental thereto.

(c) The issuance of Licenses and Tribal work permits shall also be subject to the provisions of Section 3 and Section 4 of this Ordinance regarding background investigations.

### 3.4 Required Application Forms.

(a) Each individual, including a Primary Management Official or Key Employee, applying for a License or Tribal work permit, and any person who is subject to a background investigation in connection with an entity application for a License, shall be required to complete the following forms:

  (1) Application for License or Tribal work permit by individual, if applicable;

  (2) Personal history record;

  (3) Fingerprints, electronic submission(s) and/or fingerprint cards as requested/required; and

  (4) Request to release individual information.

(b) To the extent not otherwise covered in paragraph (a) of this section, each applicant for a Primary Management Official or Key Employee position shall be required to provide the following information:

16

(1) Full name, other names used (oral or written), social security number(s), birth date, place of birth, citizenship, gender, all languages (spoken or written);

(2) Currently and for the previous 5 years: business and employment positions held, ownership interests in those businesses, business and residence addresses, and driver's license numbers;

(3) The names and current addresses of at least three personal references, including one personal reference who was acquainted with the applicant during each period of residence listed under paragraph (a)(2) of this section;

(4) Current business and residence telephone numbers;

(5) A description of any existing and previous business relationships with Indian tribes, including ownership interests in those businesses;

(6) A description of any existing and previous business relationships with the gaming industry generally, including ownership interests in those businesses;

(7) The name and address of any licensing or regulatory agency with which the person has filed an application for a license or permit related to gaming, whether or not such license or permit was granted;

(8) For each felony for which there is an ongoing prosecution or a conviction, the charge, the name and address of the court involved, and the date and disposition if any;

(9) For each misdemeanor conviction or ongoing misdemeanor prosecution (excluding minor traffic violations) within 10 years of the date of the application, the name and address of the court involved and the date and disposition;

(10) For each criminal charge (excluding minor traffic charges) whether or not there is a conviction, if such criminal charge is within 10 years of the date of the application and is not otherwise listed pursuant to paragraph (a)(8) or (a)(9) of this section, the criminal charge, the name and address of the court involved and the date and disposition;

(11) The name and address of any licensing or regulatory agency with which the person has filed an application for an occupational license or permit, whether or not such license or permit was granted;

(12) A photograph;

(13) Any other information the Commission deems relevant; and

(14) Fingerprints consistent with procedures adopted by the Commission according to Section 3.5.

17

(c) The following notices shall be placed on the application form for a Key Employee, Primary Management Official or Supplier of Gaming Goods and Services before such form is completed by an applicant:

> (1) "In compliance with the Privacy Act of 1974, the following information is provided: Solicitation of the information on this form is authorized by 25 U.S.C. § 2701 *et seq*. The purpose of the requested information is to determine the eligibility of individuals to be granted a gaming license. The information will be used by the Tribal gaming regulatory authorities and by the National Indian Gaming Commission (NIGC) members and staff who have need for the information in the performance of their official duties. The information may be disclosed by the Tribe or the NIGC to appropriate federal, Tribal, state, local, or foreign law enforcement and regulatory agencies when relevant to civil, criminal or regulatory investigations or prosecutions or when pursuant to a requirement by a Tribe or the NIGC in connection with the issuance, denial, or revocation of a gaming license, or investigations of activities while associated with a Tribe or a gaming operation. Failure to consent to the disclosures indicated in this notice will result in a Tribe's being unable to license you for a Primary Management Official or Key Employee position."

> (2) "The disclosure of your social security number (SSN) is voluntary. However, failure to supply a SSN may result in errors in processing your application."

> (3) "A false statement on any part of your license application may be grounds for denying a license or the suspension or revocation of a license. Also, you may be punished by fine or imprisonment. (18 U.S.C. 1001)"

(d) The Commission may request any additional forms or information from an Applicant as it deems necessary or appropriate.

(e) The Commission shall create and maintain an individual file for each Applicant which includes the Applicant's personal history record and all background information compiled by the Commission for at least three years for Primary Management Official or Key Employee Applicants, and at least one year for all other Applicants from the date of termination of employment.

## 3.5 Fingerprint Cards Required.

All Applicants for a License are required to submit fingerprints. The Commission is hereby identified as the enforcement agency to take fingerprints. Pursuant to 25 C.F.R. § 522.2(h), the Commission shall forward an Applicant's fingerprints to the NIGC to be processed by the Federal Bureau of Investigation National Criminal Information Center for a criminal history check, which shall include a check of criminal history records information maintained by the Federal Bureau of Investigation. The Commission may submit an Applicant's fingerprints to any additional Tribal, local or state criminal history check system or center as the Commission deems necessary. Reports obtained from such fingerprint processing shall be incorporated into the Applicant's License file.

18

## 3.6 Employment Eligibility Determination

The Commission shall conduct an investigation sufficient to make an employment eligibility determination.

(a) To make a finding concerning the eligibility of a Key employee or Primary management official for granting of a License, the Commission shall review a person's:

    (1) Prior activities;

    (2) Criminal record, if any; and

    (3) Reputation, habits and associations.

(b) If the Commission, in applying the standards adopted in this Ordinance, determines that the licensing of a person poses a threat to the public interest or to the effective regulation of Gaming, or creates or enhances the dangers of unsuitable, unfair, or illegal practices and methods and activities in the conduct of Gaming, the Commission shall not license that person in a Key Employee or Primary Management Official position.

## 3.7 Continuing Duty to Provide Information.

Applicants and Licensees shall have a continuing duty to provide any materials, assistance or other information required by the Commission, and to fully cooperate in any investigation conducted by or on behalf of the Commission. If any information provided on the Application changes or becomes inaccurate in any way, the Applicant or Licensee shall promptly notify the Commission of such changes or inaccuracies.

## 3.8 Facility License.

Each Gaming Facility must obtain a Facility License from the Tribal Council as required by IGRA and its implementing regulations ensuring that the construction and maintenance of the Gaming Facility and the operation of Gaming, shall be conducted in a manner which adequately protects the environment and the public health and safety and for that purpose shall comply with the requirements of all applicable health, safety and environmental standards enacted by the Tribe and any applicable federal and state laws.

## 3.9 Temporary Licenses and Tribal Work Permits.

Pending the satisfactory completion of all background investigations and other applicable requirements of this Ordinance, IGRA, and any other applicable laws or regulations, , the Commission may issue:

(a) Temporary Licenses to employees who work in any part of a Gaming Facility where Gaming is conducted; and

19

(b) Tribal work permits to employees who: (1) do not come within the definition of Key Employee or Primary Management Official under this Ordinance; and (2) work only in non-Gaming related activities in facilities connected to a Gaming Facility, including but not limited to a hotel or restaurant.

(c) In no event shall a temporary Gaming License or temporary Tribal work permit be valid for greater than ninety (90) calendar days.

### 3.10 Temporary Employment Pending Issuance of Gaming License or Tribal Work Permit.

As provided for in this Section, all individuals, including Primary Management Officials and Key Employees, may be employed in Gaming Operations or non-Gaming operations prior to the issuance of a License or Tribal work permit. During the period that the Licensee possesses only a temporary License or Tribal work permit, his or her employment shall be provisional only and subject to the requirements of this section.

A temporary License or Tribal work permit may be issued only if the Commission has made a preliminary finding of eligibility for employment in Gaming or related non-Gaming operational areas, including a preliminary determination that the individual in question is not a person whose prior activities, criminal record or reputation, habits or associations pose a threat to the public interest or to the effective regulation and control of Gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices, methods, or activities in the operation of Gaming or the carrying on of the business and financial arrangements incidental thereto.

Temporary or provisional employment shall be terminated upon the occurrence of any of the following:

(a) Denial of a relevant License or Tribal work permit by the Commission;

(b) Unsatisfactory completion of a background investigation or NIGC review, as applicable, resulting in nullification of a temporary License, as described in Section IV; or

(c) To the extent required by federal regulations and/or, at the end of thirty (30) calendar days after the starting date of temporary or provisional employment, if no License or Tribal work permit has been issued, or a License or Tribal work permit issued remains effective only on a temporary basis, as provided in Section 3.9. However, temporary employees terminated for the reason described in this subsection shall be qualified for reemployment upon the satisfactory completion of background investigations and NIGC reviews, as applicable.

### 3.11 Assignment or Transfer.

No License or Tribal work permit issued under this Ordinance may be assigned or transferred.

### 3.12 Identification Badges.

20

All employees working in a Gaming Facility shall wear an employee identification badge that satisfies certain minimum requirements as established by the Commission, including an employee's name and License or Tribal work permit number as approved by the Commission. All employees must carry on their person and/or be prepared to present a valid identification badge upon demand to a Commissioner or duly authorized employee or agent of the Commission. The identification badge shall be a legible tag evidencing the employee's name and photograph and the seal of the Tribe.

## SECTION 4.          BACKGROUND INVESTIGATIONS AND LICENSE DECISIONS

### 4.1 Required Background Investigations.

Background investigations shall be conducted by the Commission, or other agent retained by the Commission, under the supervision and direction of the Commission, on all persons specified in Section 3.1 of this Ordinance.

### 4.2 Standards for Background Investigations.

(a) All Gaming employees shall be required to obtain a License from the Commission established pursuant to this Ordinance. The Commission shall conduct background investigations of all Gaming employees and shall deny or revoke such Licenses for any employee whose prior activities, criminal records, if any, and reputation, habits and associations pose a threat to the public interest or to the effective regulation of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices and methods and activities in the conduct of gaming.

(b) When a Key Employee or a Primary Management Official begins work at a Gaming Operation, the Commission shall forward to the NIGC a complete application file containing the information listed under Section 3.4(b).

(c) Before issuing a license to a Primary Management Official or to a Key Employee, the Commission shall:

    (1) Create and maintain an investigative report on each background investigation. An investigative report shall include all of the following:

        (i) Steps taken in conducting a background investigation;

        (ii) Results obtained;

        (iii) Conclusions reached; and

        (iv) The bases for those conclusions.

21

(2) Submit a copy of the Applicant's background investigative report and copy of the eligibility determination made pursuant to Section 3.6 to the         NIGC no later than sixty (60) days after the applicant begins work.

(d) Upon completion of a background investigation for a Key Employee or Primary Management Official, the Commission shall make a specific determination of eligibility for employment in a Gaming Operation pursuant to Section 3.6.

(e) If, within the 30-day period of receiving the report, NIGC provides the Commission with objections to the issuance of a License to a Key Employee or to a Primary Management Official, the Commission shall reconsider the Application, taking into account the objections itemized by the NIGC. The Commission shall make the final decision whether to issue a license to such applicant.

(f) If the Commission does not license an Applicant:

(1) The Commission shall notify the NIGC; and

(2) Shall forward copies of its eligibility determination and investigative report to the NIGC for inclusion in the Indian Gaming Individuals Record System.

(g) For Primary Management Officials and Key Employees, the Commission shall retain Applications for employment and reports of background investigations for inspection by the NIGC or its designee for no less than three (3) years from the date of termination of employment.

**4.3 Term of License; License Fees; Parameters of License.**

(a) Any License issued by the Commission, except a temporary License (as described in Section 3.9), shall be effective until revoked or suspended by the Commission. The License of any Gaming Operation employee whose employment has been terminated either voluntarily or for cause shall be suspended and/or revoked only if there is cause for such License suspension and/or revocation as provided in this Ordinance.

(b) Annual License fees shall be imposed:

(1) On any persons required to obtain a License, in accordance with a fee schedule to be established by the Commission; and

(2) In addition to the License fees imposed pursuant to Subsection (b)(l) of this Section, the Commission may impose such fees on Licensees as are reasonably related to costs of enforcement, including investigations and proceedings before the Commission, and which will, in the aggregate, be sufficient to enable the Tribe and the Commission to recover its reasonable costs of enforcing this Ordinance. Such costs may be estimated by the Commission and imposed prior to a final Commission action regarding a particular Licensee or Applicant.

22

(c) Violations of any provision of this Ordinance, the Regulations or relevant License provisions by a Licensee shall be deemed contrary to the public health, safety, morals, good order and general welfare of the Tribe and its members, and shall be deemed grounds for denial of a License, or suspension or revocation of a License.

(d) Acceptance of a License by a Licensee constitutes an agreement on the part of the Licensee to be bound by the provisions of this Ordinance and the Regulations as they are now, or as they may hereafter be amended or restated, and to cooperate fully with the Commission. It is the responsibility of the Licensee to remain informed of the contents of this Ordinance, the Regulations and all other applicable laws regulations, amendments, provisions, and conditions, and ignorance thereof will not excuse violations.

(e) A License issued hereunder is a privilege license and no rights, property or otherwise, shall attach thereto.

## SECTION 5.          ENFORCEMENT AND RULES OF PROCEDURE FOR HEARINGS

### 5.1 Notice of Violation.

(a) The Commission may issue a notice of violation to any person or entity for a violation of any provision of the Ordinance, Regulations, Compact, IGRA or other applicable Tribal or federal law or implementing regulations.

(b) A notice of violation shall contain:

(1) A citation to the Tribal or federal requirement that has been or is being violated;

(2) A description of the circumstances surrounding the violation, set forth in common and concise language;

(3) Measures required to correct the violation;

(4) A reasonable time for correction, if the respondent cannot take measures to correct the violation immediately; and

(5) Notice of rights of appeal.

### 5.2 Order of Temporary Closure.

(a) Simultaneously with, or subsequent to, the issuance of a notice of violation, the Commission may issue an order of temporary closure of all or part of a Gaming Operation for substantial violations of Tribal and/or federal law.

(b) The operator shall close the Gaming Operation upon service of an order of temporary closure, unless the order provides otherwise.

23

(c) Informal expedited review. Within one (1) calendar day after service of an order of temporary closure, the respondent may request, orally or in writing, informal expedited review by the Commission.

(1) The Commission shall complete the expedited review provided for by this paragraph as soon as is practical and no later than one (1) calendar day after receipt of a timely request.

(2) The Commission shall, as soon as is practicable and no later than one (1) calendar day after the expedited review provided for by this paragraph, decide whether to continue an order of temporary closure and provide the respondent with an explanation of, and the factual basis for, that decision.

(3) Whether or not a respondent seeks informal expedited review under this paragraph, within thirty (30) days after the Commission serves an order of temporary closure, the respondent may appeal the order to the full Commission under Section 5.4. Otherwise, the order shall remain in effect unless rescinded by the Commission for good cause.

**5.3  Civil Fine Assessments.**

(a) The Commission shall review each notice of violation and order of temporary closure to determine whether a civil fine will be assessed, the amount of the fine, and, in the case of continuing violations, whether each daily illegal act or omission will be deemed a separate violation for purposes of the total civil fine assessed.

(b) Within fifteen (15) calendar days after service of a notice of violation, or such longer period as the Commission may grant for good cause, the respondent may submit written information about the violation to the Commission. The Commission shall consider any information so submitted in determining the facts surrounding the violation and the amount of the civil fine.

(c) The Commission shall serve a copy of the proposed assessment on the respondent within thirty (30) calendar days after the notice of violation was issued, when practicable.

(d) The Commission may review and reassess any civil fine, if necessary, to consider facts that were not reasonably available on the date of issuance of the proposed assessment.

(e) If the respondent fails to request a hearing as provided in Section 5.4, the proposed civil fine assessment shall become a final order of the Commission. Civil fines assessed under this Section shall be paid by the person assessed and shall not be treated as an Operating Expense of the Gaming Operation.

**5.4 Appeals Before the Commission.**

24

(a) A respondent may request a hearing to contest a notice of violation, order of temporary closure, civil fine assessment or order of exclusion by submitting a notice of appeal to the Commission within thirty (30) calendar days after service of:

    (1) A notice of violation;

    (2) A proposed civil fine assessment or reassessment;

    (3) An order of temporary closure; or

    (4) An order of exclusion under Section 7.2 from one or more Gaming Operations.

(b) A notice of appeal shall reference the notice or order from which the appeal is taken.

(c) Within ten (10) calendar days after filing a notice of appeal, a hearing shall be scheduled, with notice of the time, date and place of the hearing provided to the respondent.

(d) At the hearing, the respondent is entitled to call witnesses and present evidence.

(e) Within ten (10) calendar days after the respondent receives notice of the hearing, the respondent shall file with the Commission a supplemental statement that states with particularity (1) the relief desired and (2) the grounds therefor. The supplemental statement should include, when available, supporting evidence in the form of affidavits. If the respondent wishes to present oral testimony or witnesses at the hearing, the respondent shall include notice of this in the supplemental statement. The notice shall specify the names and job titles of proposed witnesses, and state whether a closed hearing is requested and, if so, why. The respondent may waive in writing his or her right to an oral hearing and instead elect to have the matter determined by the Commission solely on the basis of written submissions.

(f) The full Commission shall issue a decision by majority vote within thirty (30) calendar days after the date on which the hearing was held. The decision of the Commission shall be based upon the whole record and shall include findings of fact and conclusions of law upon each material issue of fact or law presented on the record. In deciding such appeals, the Commission shall apply a preponderance of the evidence standard. The Commission shall provide a written decision, notice and order to all parties, which includes the reasons for its decision. The decision of the Commission on the appeal shall be final and not subject to judicial review.

## 5.5 License and Tribal Work Permit Hearings.

(a) If, after the issuance of a License or Tribal work permit, the Commission receives reliable information indicating that an employee is not eligible for a License or Tribal work permit under this Ordinance, the Commission shall suspend such License or Tribal work permit and shall notify the holder of the suspended License or Tribal work permit in writing about the suspension and the proposed revocation.

25

(b)  The holder of the suspended License or Tribal work permit shall receive from the Commission notice of any hearing to consider revocation of the License or Tribal work permit no later than (10) days before any such hearing. The notice shall contain the date, time and location of the hearing, a detailed statement of the allegations that are the basis for the suspension and proposed revocation, and shall identify any evidence that the Commission intends to consider during the revocation hearing, including the identity of all witnesses who will testify before the Commission concerning the proposed revocation.

(c) No later than three (3) days before any revocation hearing, the holder of the suspended License or Tribal work permit shall submit to the Commission a detailed response to the Commission's statement of allegations and identify any evidence that shall be used by the holder of the suspended License or Tribal work permit at the revocation hearing, including the identity of all witnesses who will testify before the Commission concerning the proposed revocation.

(d)  At the revocation hearing, the holder of the suspended License shall have an opportunity to present evidence and arguments concerning the proposed revocation and cross examine witnesses.

(e) Within ten (10) days after a revocation hearing, the Commission shall decide to revoke or to reinstate a License and issue notice to the holder of the suspended License or Tribal work permit. The Commission shall notify the NIGC of its decision.

(f)  The decision of the Commission shall be final and not subject to judicial review.

**SECTION 6.        AUDITS.**

**6.1 Audits.**

The Tribe shall conduct annual independent audits of its Gaming Operations annually to be submitted to the NIGC. All gaming-related contracts that result in purchases of supplies, services or concessions for more than $25,000 in any year (except contracts for professional legal or accounting services) shall be specifically included within the scope of any such audit.

**SECTION 7.        EXCLUSION OR EJECTION OF INDIVIDUALS**

**7.1 Prohibition Against Certain Individuals.**

It shall be a violation of this Ordinance for any Licensee to knowingly fail to exclude or eject from the gaming area of a Gaming Facility any individual who:

(a) Is visibly under the influence of liquor, a drug or other intoxicating substance;

(b) Is under the age of 18 years;

(c) Is displaying disorderly conduct;

26

(d) Is a person known to have committed a gaming-related felony;

(e) Is known to have a reputation for cheating or manipulation of games; or

(f) Has been personally excluded, or is a member of any group or type of persons which has been excluded, for cause from Gaming Facilities by a resolution of the Commission.

## 7.2 Right to Exclude or Remove.

If the Commission deems it in the best interest of the Tribe, the Commission may exclude or remove any Persons from the premises of any Gaming Facility or Operation. Any person so excluded may be entitled to a hearing as provided for by Section 5. The manager of any Gaming Facility or Operation shall also have the authority to exclude or remove any person from the Gaming Facility or Operation, and all such actions shall be recorded contemporaneously with the incident for review by the Commission if requested.

## SECTION 8.          PROHIBITED ACTS

### 8.1 Enumeration.

In addition to other civil and criminal acts that may be regulated or prohibited by this Ordinance, other Tribal law or applicable federal law, the following shall constitute prohibited activities and unauthorized gaming under this Ordinance and may subject any perpetrator to Commission action, including but not limited to, the imposition of civil penalties, referral to appropriate law enforcement authorities for criminal proceedings, and license suspension or revocation:

(a) Altering or misrepresenting the outcome of Gaming or other event on which wagers have been made after the outcome of such Gaming or event has been determined, but before such outcome is revealed to the players;

(b) Placing or increasing a bet or wager after acquiring knowledge of the outcome of the Gaming or event which is the subject of the bet or wager, including past posting and pressing bets;

(c) Aiding anyone in acquiring such knowledge referred to in Subsection (b) of this section for the purposes of increasing or decreasing any bet or wager, or for the purpose of determining the course of play;

(d) Claiming, collecting or taking, or attempting to claim, collect or take, money or anything of value in or from a game with intent to defraud, or claiming, collecting or taking an amount greater than the amount actually won in such game;

(e) Knowingly enticing or inducing another to go to any place where gaming is conducted or operated in violation of the provisions of this Ordinance, with the intent that the other person play or participate in such Gaming activities;

27

(f) Reducing the amount wagered or canceling a wager after acquiring knowledge of the outcome of the game or other event which is the subject of the bet or wager, including pinching bets;

(g) Manipulating, with intent to cheat or defraud, any component or part of a game in a manner contrary to the designed and normal operational purpose for such component or part, with knowledge that such manipulation will affect the outcome of the game, or with knowledge of any event that affects the outcome of the game;

(h) Defrauding the Tribe, any Licensee or any participant in any Gaming activities;

(i) Participating in any Gaming activities not authorized under this Ordinance;

(j) Knowingly providing false information, or making any false statement, with respect to an application for employment or for any License, certification or determination provided for in this Ordinance;

(k) Knowingly providing false or misleading information, or making any false or misleading statement, to the Tribe or the Commission in connection with any contract for services or property related to Gaming;

(l) Knowingly making any false or misleading statement in response to any official inquiry by the Commission or its agents;

(m) Offering or attempting to offer anything of value, to a Licensee in an attempt to induce the Licensee to act or refrain from acting in a manner contrary to the official duties of the Licensee under this Ordinance, the Regulations, Tribal and applicable federal law or IGRA;

(n) Acceptance by a Licensee of anything of value with the expectation that receipt of such thing of value is intended, or may be perceived as intended, to induce the Licensee to act or refrain from acting in a manner contrary to the official duties of the Licensee under this Ordinance, the Regulations, Tribal and applicable federal law or IGRA and its implementing regulations;

(o) Falsifying, destroying, erasing or altering any books, computer data, records, or other information relating to a Gaming Operation in ways other than is provided in approved internal control procedures; and

(p) Taking any action which interferes with or prevents the Commission or the Tribal Council from fulfilling its duties and responsibilities under this Ordinance, the Regulations, IGRA, or other Tribal or applicable federal law.

## 8.2 Prohibition Against Cheating Devices.

Except as specifically permitted by the Commission, no person shall possess, with the intent to use in connection with Gaming, either individually, or in concert with others, any Cheating Device.

28

**SECTION 9.         GENERAL REQUIREMENTS**

**9.1 Fees.**

Notwithstanding any provision in this Ordinance or the Regulations, the Commission is hereby directed to comply with all fees assessed by the NIGC. Such fees shall be payable solely from funds of Gaming Operation revenues as an Operating Expense.

**9.2 Regulation of the Commission.**

Notwithstanding any provision in this Ordinance or the Regulations, the Commission is subject to, and directed to comply with, all applicable federal laws and regulations, including but not limited to IGRA and its implementing regulations.

**9.3 Sovereign Immunity.**

Nothing in this Ordinance shall be deemed to constitute a waiver of immunity on the part of the Tribe, Tribal government, corporation, or any entity created by either as to any assets or property of any nature whatsoever, or the adjudication of any federal rights or immunities. The sovereign immunity of the Tribe is hereby extended to, and shall protect, the Commission, Commissioners, and Commission employees from civil liability of any nature for any act, omission or statement taken or made in the lawful performance of their duties under this Ordinance or any Regulations adopted pursuant thereto; provided that such immunity shall not protect any person from procedures and sanctions expressly authorized and imposed under this Ordinance.

**9.4 Privilege.**

Any written or oral statement made in the course of any official investigation, proceeding or process by any Commissioner and any Commission employee shall be absolutely privileged and shall not constitute a basis for civil liability of any Commissioner or Commission employee for defamation or otherwise. Moreover, the listing of any person on a list of persons excluded from eligibility for a License or Tribal work permit shall also be absolutely privileged and shall not constitute a basis for civil liability of any Commission or Commission employee for defamation or otherwise.

**9.5 Compliance with Federal Law.**

The Gaming Operation will comply with all applicable federal laws, including the Bank Secrecy Act, 31 U.S.C. § 5311 et seq.

**9.6 Amendments.**

All provisions of this Ordinance are subject to amendment by a majority vote of the Tribal Council, which must be reviewed and approved by the NIGC in accordance with IGRA. All Regulations promulgated by the Commission are subject to proper revision, repeal, or amendment by the Commission. All amendments to this Ordinance shall be effective upon

29

review and approval by the NIGC. The Tribal Council shall amend this Ordinance, as needed, upon any amendment to IGRA and its implementing regulations.

## 9.7 Severability.

If any provision of this Ordinance, or any portion of any provision to this Ordinance, is found to be invalid by any court of competent jurisdiction, the full remainder of such provisions shall not be affected.

## 9.8 Words and terms.

In interpreting the provisions of this Ordinance, save when otherwise plainly declared or clearly apparent from the context:

(a) Words in the present tense shall include the future tense;

(b) Words in masculine, feminine and neuter genders shall include all genders; and

(c) Words in the singular shall include the plural, and words in the plural shall include the singular.

## 9.9 Repeal.

Wampanoag Tribe of Gay Head (Aquinnah) Gaming Ordinance No. 95-01 is repealed. To the extent that any other Tribal laws, ordinances or regulations are inconsistent with this Ordinance, such laws, ordinances, and regulations are hereby repealed.

## 9.10 Unclaimed Winnings.

(a) Any winnings, whether property or cash, which are due and payable to a participant in any Gaming activity, and which remain unclaimed at the end of a Gaming session, shall be held in safekeeping for the benefit of such participant. A Gaming Operation shall make a good faith attempt to notify a participant of unclaimed winnings. Such winnings shall be held for 90 days. At the end of the safekeeping period, such winnings shall revert to the ownership of the relevant Gaming Operation.

(b) In the event the identity of a participant entitled to unclaimed winnings is unknown, after 90 days from the time the winnings were payable, such unclaimed winnings shall revert to the ownership of the relevant Gaming Operation.

## 9.11 Patron Disputes.

Any Patron who has any dispute, disagreement or other grievance with a Gaming Operation, may seek resolution of such dispute from the following persons and in the following order:

30

(a) a member of the staff in the area of the relevant Gaming Operation in which the dispute arose;

(b) the supervisor in the area of the relevant Gaming Operation in which the dispute arose;

(c) the manager of the relevant Gaming Operation; and

(d) the Commission, except that the Commission shall not be involved in the resolution of any dispute that does not involve currency, tokens, coins, or any other thing of value.

## 9.12 Patron Rights Regarding Disputes.

(a) Whenever a Patron brings a dispute forward for resolution, that individual shall have the right to explain the nature of the dispute, raise all relevant factual allegations, and present witnesses in connection with any such factual allegations.

(1) At each level, if the dispute remains unresolved, the Patron shall be informed of the right to take the dispute to the next highest level as described in Section 9.11.

(2) Resolution of any dispute by the personnel of a Gaming Operation shall always involve two or more Gaming Operation employees.

(3) All disputes, whether resolved or not, shall be reported in detail by the employees involved to their supervisor.

(b) Any Patron who has any dispute, disagreement or other grievance with a Gaming Operation that does not involve currency, tokens, coins, or any other thing of value, may seek resolution of such dispute with the manager of the Gaming Operation. The decision of the manager of the Gaming Operation is final.

## 9.13 Gaming Commission Action on Patron disputes.

(a) If a Patron's dispute with a Gaming Operation that involves currency, tokens, coins, or any other thing of value remains unresolved after consideration by the manager of the relevant Gaming Operation, then the Patron may submit the dispute to the Commission. The Patron must submit the matter to the Commission in writing within seventy-two (72) hours after the incident that is the basis for the dispute or a decision by facility management (whichever is later). The Patron's written submission must contain:

(1) a factual description of the dispute;

(2) a statement as to the relief sought by the Patron;

(3) an explanation of the Patron's efforts to resolve the matter with facility staff and management; and

31

(4) the Patron's contact information.

The submission also shall contain any other written evidence or information that the Patron believes should be considered by the Commission. The Gaming Operation involved in the dispute shall make available to the Patron a form for submitting disputes to the Commission.

(b) Upon receipt, the Commission shall forward a copy of the Patron's submission to the Gaming Operation for a response. The Gaming Operation shall submit its response to the Commission within five (5) business days of receiving the Patron's submission from the Commission. All disputes which are submitted to the Commission shall be decided by the Commission based on information furnished by the Patron and the Gaming Operation as requested directly by the Commission. Such information may include witness statements and/or testimony at the Commission's sole discretion. In making a decision on the dispute, the Commission shall evaluate the evidence using a preponderance of the evidence standard.

(c) The decision of the Commission shall be in writing, shall be issued within fourteen (14) calendar days of the matter being heard by the Commission, and shall be furnished to the manager of the relevant Gaming Operation and to the Patron in question. The decision shall contain a recitation of the facts on which it is based.

(d) Liability of the Gaming Operation in any dispute under this dispute resolution procedure shall be limited to the amount of the alleged winnings. A Patron shall not be entitled to an award of special or punitive damages for any alleged injury.

(e) The decision of the Commission in resolving a Patron dispute is final and not subject to judicial review.

**9.14 Agent for Service of Process.**

The Tribe's Chairperson shall be the designated agent for service of process for the Wampanoag Tribe of Gay Head (Aquinnah) and the Tribal Gaming Commission.

**9.15 Consent to Jurisdiction.**

Any Person who applies for a License under this Ordinance, applies for employment in any Gaming Facility, enters into any contract or agreement related to Gaming, or participates in any Gaming on the Tribe's Indian Lands, shall be deemed to consent to the civil jurisdiction of the Tribe, and the Commission. Nothing in this section shall limit the jurisdiction of the Tribe or the Commission under any circumstances not explicitly contemplated in the section.

**9.16 Comity and Concurrent Jurisdiction.**

The Commission is empowered to seek comity and enforcement of the orders of the Commission by the courts of any other jurisdiction whose assistance may be required to give effect to the orders of the Commission. The Commission is also empowered to issue orders to enforce the lawful orders of other gaming regulatory agencies and the courts of foreign jurisdictions.

**9.17 Enforcement Provisions.**

(a) All matters and occurrences which indicate that a criminal act under this Ordinance, other applicable Tribal law, applicable federal law or state law may have occurred in or around any Gaming Facility shall be reported to the appropriate law enforcement agency and the Commission.

(b) All matters and occurrences contrary to this Ordinance and/or Regulations promulgated by the Commission, which are not covered under a criminal code, shall be deemed to be a civil violation. The Commission is hereby authorized to establish a civil violations list of penalties and fines which shall be imposed by the Commission for all such civil violations with the violator afforded the rights to a hearing as provided in Section 5 herein.

**9.18 Effective date.**

This Ordinance shall become effective upon the date of its approval by the NIGC pursuant to the IGRA and its implanting regulations, as amended from time to time.