UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE COMMONWEALTH OF MASSACHUSETTS, | ) ) ) | Case No: 1:13-cv-13286-FDS |
| *Plaintiff*, | ) ) ) | (formerly Massachusetts Supreme Judicial Court for Suffolk County |
| v. | ) ) | Civil Action No. SJ-2013-0479) |
| THE WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH), THE WAMPANOAG TRIBAL COUNCIL OF GAY HEAD, INC., and THE AQUINNAH WAMPANOAG GAMING CORPORATION, | ) ) ) ) ) ) ) |  |
| *Defendants*. | ) ) |  |

**COMMONWEALTH OF MASSACHUSETTS' MEMORANDUM
OF REASONS IN SUPPORT OF ITS MOTION FOR REMAND**

In 1983, the Wampanoag Tribe of Gay Head, the Commonwealth of Massachusetts, the Town of Gay Head (since renamed Aquinnah), and its Taxpayers' Association settled nine years of litigation over ownership of certain land located in and around Gay Head on Martha's Vineyard.  In settlement, the Wampanoag Tribe ("Tribe") received over 400 acres of public and private land.  In exchange, the Tribe committed to forever adhere to state and local laws governing its use of those lands.  Specifically, the Tribe agreed that, "[u]nder no circumstances . . . shall the civil or criminal jurisdiction of the Commonwealth of Massachusetts . . . over the settlement lands . . . be impaired or otherwise altered[.]"  The Tribe further understood that "no Indian tribe or band shall ever exercise sovereign jurisdiction . . . over all or part of the Settlement lands," with exceptions not relevant here.  Notwithstanding these clear obligations, in 2013, the Tribe took several steps toward the commencement of commercial gaming operations on land that it had come to possess by virtue of the 1983 settlement agreement.  It did so without

regard to the Commonwealth's complete prohibition against operating a gaming establishment without being licensed by the Massachusetts Gaming Commission.

Prompted by the Tribe's publicly stated intentions to commence unlicensed gaming operations in December of 2013, the Commonwealth filed this action in the Massachusetts Supreme Judicial Court for Suffolk County. The Commonwealth's complaint consists of two counts only, both of which arise exclusively under state law. The first count alleges that the Tribe has acted in breach of the settlement agreement; the second count requests declaratory judgment as to the meaning of the settlement agreement. The Tribe responded by removing the case to this Court, from which it should now be remanded for lack of subject matter jurisdiction.[1]

## FACTUAL BACKGROUND

### A. Settlement Agreement Subjecting Settlement Lands to State Law

The Town of Aquinnah, formerly known as the Town of Gay Head, is located on the western tip of Martha's Vineyard and is home to a community of Wampanoag Native Americans named the Aquinnah. (Compl. ¶¶ 20-22).[2] In 1974, the Tribe sued the Town of Aquinnah, claiming aboriginal title to certain lands on Martha's Vineyard. (Compl. ¶ 24). In 1983, after nine years of litigation and careful negotiation, the parties to that suit—the Commonwealth, the Tribe,[3] the Town of Aquinnah, and the Taxpayers' Association of Gay Head, Inc.

---

[1] By filing this motion, the Commonwealth does not waive its sovereign immunity defense from suit in this Court. The Commonwealth reserves and does not waive any and all defenses available to it, including but not limited to sovereign immunity.

[2] The Commonwealth's complaint ("Compl.") is attached to the defendants' Notice of Removal as Exhibit A.

[3] The Tribe was party to the suit as the Tribal Council of Gay Head, Inc., a non-profit corporation organized under the laws of the Commonwealth for the purpose of acquiring, managing, and holding the Settlement Lands. In 1987, the Department of the Interior recognized the Tribe as an Indian Tribe creating a government-to-government relationship between the United States and the Tribe. 52 Fed. Reg. 4193 (1987) (recognizing the "Wampanoag Tribal Council of Gay Head, Inc." as an Indian Tribe); see 25 U.S.C. § 1771(7) (same).

("Association")[4]—entered into the Joint Memorandum of Understanding Concerning Settlement of the Gay Head, Massachusetts Indian Land Claims ("Settlement Agreement") to resolve the suit. (Compl. ¶¶ 25-26; Settlement Agreement ¶¶ 1, 15).[5] As part of the Settlement Agreement, the Town and the Association agreed to convey title to over 400 acres of public and private lands ("the Settlement Lands") to the Tribe. (Compl. ¶ 28; Settlement Agreement ¶¶ 4-7, 10).[6] In exchange for the Settlement Lands, the Tribe relinquished all claims to other lands and waters in the Commonwealth. (Compl. ¶ 29; Settlement Agreement ¶ 8(d)). In addition, the Tribe agreed that the Settlement Lands would remain under the Commonwealth's jurisdiction and be subject to all state and local laws and that the Tribe had no authority whatsoever to act in contravention of those laws. (Compl. ¶ 30; Settlement Agreement ¶¶ 3, 11, 13).

The Settlement Agreement states, in relevant part:

> The Tribal Land Corporation shall hold the Settlement Lands, and any other Land it may acquire, in the same manner, and subject to the same laws, as any other Massachusetts corporation . . . . Under no circumstances, including any future recognition of the existence of an Indian tribe in the Town of Gay Head, shall the civil or criminal jurisdiction of the Commonwealth of Massachusetts, or any of its political subdivisions, over the settlement lands, or any land owned by the Tribal Land Corporation in the Town of Gay Head, or the Commonwealth of Massachusetts, or any other Indian land in Gay Head, or the Commonwealth of Massachusetts, be impaired or otherwise altered . . . .

(Settlement Agreement ¶ 3). Further, the Tribe agreed not to exercise sovereign jurisdiction over any part of the Settlement Lands. (Id. ¶ 11).

---

[4] The Association is an entity organized to represent the interests of non-Tribe affiliated landowners with property located in or around the Town.

[5] The Settlement Agreement is Exhibit A to the Commonwealth's complaint, attached to the defendants' Notice of Removal (Paper No. 1).

[6] Once conveyed, the United States Department of the Interior eventually took title to the Settlement Lands into trust for the Tribe's benefit. (Compl. ¶ 28).

The Settlement Agreement expressly required governmental ratification at the local, state, and federal levels.[7] (Settlement Agreement ¶¶ 2, 8(d)). To that end, in 1985, the Massachusetts Legislature enacted An Act to Implement the Settlement of the Gay Head Indian Land Claims (the "Commonwealth Settlement Act"). Mass. Stat. 1985, c. 277 (copy attached). That legislation specified that:

> Except as provided in this act,[8] all laws, statutes, and bylaws of the commonwealth, the town of Gay Head, and any other properly constituted legal body, shall apply to all settlement lands and any other lands owned now or at any time in the future by the Tribal Council or any successor organization.

Id. § 5.

Subsequently, in 1987, the United States Congress enacted the Massachusetts Indian Land Claims Settlement Act ("Federal Settlement Act"), 25 U.S.C. § 1771, et seq. Congress expressly acknowledged that the Settlement Lands would remain subject to the civil and criminal laws, ordinances, and the jurisdiction of the Commonwealth, "including those laws and regulations which prohibit or regulate the conduct of bingo or any other game of chance." 25 U.S.C. § 1771g.[9] No amendments to the Settlement Agreement, the Commonwealth Settlement Act, or the Federal Settlement Act have relaxed the applicability of state and local law to the Settlement Lands.

---

[7] Federal legislative ratification was required for the further reason that only Congress may extinguish Indian aboriginal title claims. United States v. Santa Fe Pac. R.R., 314 U.S. 339, 347 (1941) ("Extinguishment of Indian title based on aboriginal possession is of course a different matter. The power of Congress in that regard is supreme.").

[8] Carve-outs from the operation of state and local laws are in the areas of taxation, hunting regulation, zoning, and subdivision control. Mass. Stat. 1985, c. 277, § 4.

[9] Through the Federal Settlement Act, the United States also appropriated $2.25M to acquire private land for the Tribe's benefit, as contemplated in the Settlement Agreement. 25 U.S.C. §§ 1771a(b), 1771d. This was in addition to $2.25M provided by the Commonwealth for the same purpose. 25 U.S.C. § 1771(6).

### B. The Tribe's Gaming-Related Activity on Settlement Lands

Massachusetts law prohibits any person or entity—including the Tribe—from opening or operating a gaming establishment without a gaming license. (Compl. ¶ 38; Mass. Gen. Laws ch. 23K, § 37, ch. 271, § 3). But even though it does not hold a gaming license and is not presently qualified to receive one, the Tribe has taken substantial steps toward opening and operating a gaming establishment on the Settlement Lands. (Compl. ¶¶ 41-46, 48). The Tribe has passed a number of Tribal resolutions adopting a Tribal gaming ordinance (Gaming Ordinance No. 2011-01) that purportedly authorizes the Tribe to conduct gaming activities on the Settlement Lands without being licensed to do so under Chapter 23K. (Compl. ¶¶ 49-51; Gaming Ordinance §§ 1.5, 1.6).[10] The Tribe has also publicly pronounced its intention to open a high-stakes bingo parlor in a Tribal community center "as soon as possible." (Compl. ¶ 60 (citing Mark Arsenault, "Tribe Says it Will Open Small Casino on Vineyard," *The Boston Globe* A1 (Nov. 12, 2013)).)

Notwithstanding its lack of a state license to conduct gaming operations, the Tribe sought approval of its Gaming Ordinance from the National Indian Gaming Commission ("NIGC"), which implements the federal Indian Gaming Rights Act ("IGRA"), 25 U.S.C. § 2704. (Compl. ¶¶ 54-56.) The NIGC informed the Tribe that the Gaming Ordinance was approved by operation of law on August 29, 2013. (Compl. ¶¶ 54-56). Additionally, the Tribe also sought a legal opinion from NIGC concluding that the Tribe may conduct gaming on Settlement Lands. (Compl. ¶¶ 49-55). By enacting its Gaming Ordinance and related Tribal resolutions, the Tribe has breached—or at least anticipatorily breached—the Settlement Agreement. The Commonwealth's disagreement with the Tribe over the meaning of the Settlement Agreement gave rise to this action, which can be resolved by a simple declaration by the state court.

---

[10] The Gaming Ordinance is Exhibit B to the Commonwealth's complaint, and is attached to the defendants' Notice of Removal (Paper No. 1).

## ARGUMENT:

## BECAUSE THIS CASE DID NOT ARISE UNDER FEDERAL LAW, THIS COURT LACKS JURISDICTION TO SUPPORT REMOVAL

This Court lacks jurisdiction over the Commonwealth's complaint because no aspect of it arises under federal law.[11] As "the master of its complaint," the Commonwealth has pled purely state-law claims and has pled them in the state court. Under the well-pleaded complaint rule, this Court may not consider potential defenses that the Tribe may raise to this action in evaluating its jurisdiction. See Weiner v. Wampanoag Aquinnah Shellfish Hatchery Corp., 223 F. Supp. 2d 346, 351 (D. Mass. 2002) (even anticipation of defendants' federal claims in complaint will not create federal-question jurisdiction). Because no substantial question of federal law need be resolved in granting the relief requested by the Commonwealth and because federal law does not completely preempt the Commonwealth's contract-based claims, neither exception to the well-pleaded complaint rule referenced by the Tribe in its Notice of Removal applies here. Therefore, this Court should remand the case to the Massachusetts Supreme Judicial Court for Suffolk County.

### I. THE COMPLAINT DOES NOT PRESENT ANY FEDERAL CLAIMS.

Removal jurisdiction is present only where the federal court would have had original jurisdiction. Such is not the case here. A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. §1441(a). Original federal-question jurisdiction exists for "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331.

---

[11] The defendants assert that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (Notice of Removal ¶ 9).

Because the Commonwealth's complaint presents only state law claims that do not "arise under" federal law, this Court would lack original jurisdiction and, therefore, removal may not be had.

Because federal courts are courts of limited jurisdiction, Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978), whether the court has subject matter jurisdiction is a threshold inquiry, Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007).  A suit filed in state court may be removed to federal court only if the federal court would have had original subject matter jurisdiction over the suit.  Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987); Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 10 (1st Cir. 2004) (A case brought in state court "may be removed to federal court if it presents a claim arising under the Constitution or laws of the United States.").  The removal statute itself does not create jurisdiction and the burden to show that a federal question has been pled lies with the party seeking removal.  BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824, 831 (1st Cir. 1997).

To meet this burden, the only tool at the Tribe's disposal is the Commonwealth's complaint: "In deciding (for removal purposes) whether a claim presents a federal 'claim or right,' a court is to ask whether the plaintiff's *claim to relief* rests upon a federal right, and the court is to look only to *plaintiff's complaint* to find the answer."  Id., quoting Hernandez-Agosto v. Romero-Barcelo, 748 F.2d 1, 2 (1st Cir. 1984) (parenthetical and emphasis in original). Black-letter construction of the removal statute reflects due regard for the power reserved to the states to determine controversies brought in the state courts.  Shamrock Oil & Gas Corp., 313 U.S. at 108-109.  Therefore, federal courts must "confine their own jurisdiction to the precise limits" that the removal statute has defined.  Id. at 109.

7

"It is well-settled that 'the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.'" Rossello-Gonzalez, 398 F.3d at 11, quoting Caterpillar, 482 U.S. at 392. When determining if a claim arises under federal law, a court will "examine the 'well pleaded' allegations of the complaint and ignore potential defenses: '[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.'" Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003), quoting Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908). "The party who brings a suit is master to decide what law he will rely upon." The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913); see also Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 809, n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."). Significantly, the existence of a federal defense is not sufficient to establish removal jurisdiction. Rosello-Gonzalez, 398 F.3d at 10, citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. California, 463 U.S. 1, 10 (1983). "A defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." Franchise Tax Bd., 463 U.S. at 10-11 (emphasis in original). Because the Commonwealth's complaint does not so establish, remand to the state court is the only proper course of action.

## II.   THE WELL-PLEADED COMPLAINT DOES NOT ESTABLISH FEDERAL JURISDICTION.

Because the Commonwealth advances no federal cause of action, the "well-pleaded complaint rule" dictates remand. Caterpillar Inc., 482 U.S. at 392. The Commonwealth's only claims in this case are for breach of contract based on the Tribe's actions in contravention of the express terms of the Settlement Agreement and for declaratory judgment as to the meaning of the

terms of the Settlement Agreement. (Compl. ¶¶ 62-78). These state law causes of action do not vest this Court with subject matter jurisdiction.

That the Settlement Agreement was ultimately ratified by Congress does not alter this analysis. Congressional ratification of the Settlement Agreement occurred because, among other reasons, the Tribe had agreed to relinquish its claim of aboriginal title to certain lands and only Congress has the power to extinguish claims of aboriginal title. (Compl. ¶ 29; Settlement Agreement ¶ 8(d)).[12] In its Notice of Removal, the Tribe asserts that the Congressional implementing legislation renders the Commonwealth's claim as one arising under federal law, but such an argument ignores the fact that the Settlement Agreement constituted a binding and effective contract between the Commonwealth and the Tribe prior to Congress's implementation of the Federal Settlement Act. (Notice of Removal, ¶ 10). The Congressional act implemented only certain provisions of the Settlement Agreement. The First Circuit has previously noted that federal implementing legislation for Indian land claims settlements does not automatically create a federal claim. Penobscot Nation v. Georgia-Pacific Corp., 254 F.3d 317, 322 (1st Cir. 2001) (noting that "nothing in the [Maine] Settlement Act creates a federal right for [an Indian Tribe] to sue" and further noting that the creation of private causes of action by implication from federal statutes is disfavored). The Commonwealth's mention in its complaint of the Federal Settlement Act is therefore immaterial to this Court's jurisdiction. See Wampanoag Aquinnah Shellfish Hatchery Corp., 223 F. Supp. 2d at 352 (because the Federal Settlement Act directs the parties to consideration of state law, it does not insert a substantial federal question into the calculus).

---

[12] The Settlement Agreement also contemplated the allocation of Federal funds (to be matched by funds from the Commonwealth) for the Tribe's acquisition of certain lands on Martha's Vineyard. (Settlement Agreement ¶ 8). The Settlement Agreement, however, was not conditioned on Federal appropriation of funds; the Settlement Agreement explicitly stated that it would remain in effect "if the Federal government refuses to provide funds for these lands." (Id. at ¶ 7).

Moreover, under the well-pleaded complaint rule, allegations in the complaint that are unnecessary to the statement of the relevant cause of action cannot themselves support a claim of federal question jurisdiction. Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Dep't of Envtl. Mgmt., 585 F.3d 42, 50 (1st Cir. 2009). Although the Congressional implementing legislation may have been necessary to extinguish the Tribe's claim of aboriginal title to certain lands, the Commonwealth's claims as asserted in this action are based only on the Settlement Agreement between the Tribe and the Commonwealth and thus do not create subject matter jurisdiction in this Court.

### III. NEITHER EXCEPTION TO THE WELL-PLEADED COMPLAINT RULE IS IMPLICATED HERE.

Where a complaint articulates exclusively state law claims, as the Commonwealth's complaint does here, "there are only two narrow exceptions to the well-pleaded complaint rule" that would enable a federal court to exercise subject matter jurisdiction over the action. Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.B.H. & Co. KG, 510 F.3d 77, 93 (1st Cir. 2007). "A claim might be considered to 'arise under' federal law for jurisdictional purposes if: (i) an adjudication of the state-law claim necessarily will involve the determination of a 'substantial federal question;' or (ii) a federal statute (*e.g.,* the Copyright Act) can be said to exert such a pervasive and overpowering preemptive force that all state-law claims of the type pleaded are 'completely preempted.'" Id. (internal citations omitted). As explained below, neither exception applies here so this Court should dismiss this action for lack of subject matter jurisdiction and remand to state court.

## A. RESOLUTION OF THE COMMONWEALTH'S CLAIMS DOES NOT INVOKE A SUBSTANTIAL QUESTION OF FEDERAL LAW.

Even when state law creates a party's causes of action, "its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." Franchise Tax Bd., 463 U.S. at 13. Here, however, there is no substantial question of federal law that must be construed or resolved in order for the Commonwealth's breach of contract and declaratory judgment claims to be adjudicated.

The Supreme Court has "often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law." Id. "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). Though the law on this inquiry can be opaque, Almond Capital Properties, Inc., 212 F.3d 20, 23 (1st Cir. 2000), the following principles are clear: "arising under" jurisdiction may be found only where the plaintiff's claim—not the defendant's defense—arises under federal law. Franchise Tax Bd., 463 U.S. at 16. Moreover, as described in greater detail below, a 2012 decision of the Second Circuit concluded that remand was appropriate under similar circumstances.

Mischaracterizing the Commonwealth's complaint, the Tribe asserts that "the crux of the Commonwealth's claim is the federal government incorrectly determined that the Tribe's existing trust lands are eligible for the conduct of gaming activities pursuant to IGRA." (Notice of Removal ¶ 15). The Tribe refers to opinion letters it secured from the United States Department of the Interior and the NIGC, which concluded, under federal law, that the Tribe

11

possesses the right to pursue gaming on the Settlement Lands. However, the Commonwealth's consistently held position is that the Settlement Lands are not subject to IGRA because the Tribe agreed that those lands are subject to the jurisdiction and laws of the Commonwealth. It is not necessary for a court to construe IGRA or to determine the correctness of the NIGC and Department of the Interior opinion letters to determine the meaning of the Settlement Agreement. The Commonwealth simply seeks a determination whether the Tribe has acted in contravention of the Settlement Agreement. A court need not refer to federal law to determine whether a party breached the literal terms of its agreement with another.

     The Tribe conflates the Commonwealth's claims as stated in the Complaint with the defenses that the Tribe anticipates raising in response. The Tribe has intimated that it will invoke IGRA as a defense to the Commonwealth's claims and may argue that the gaming rights IGRA granted to Indian tribes supersede or impliedly repeal the Tribe's earlier agreement to abide by state laws on the Settlement Lands. (See Notice of Removal ¶ 16). However, it is well established that the existence of a federal defense is not sufficient to establish removal jurisdiction. Franchise Tax Bd., 463 U.S. at 10-11; Rossello-Gonzalez, 398 F.3d at 10 . In fact, it is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Franchise Tax Bd., 463 U.S. at 14; accord Wampanoag Aquinnah Shellfish Hatchery Corp., 223 F. Supp. 2d at 350 (federal court lacks jurisdiction even if the complaint asserts "that a federal defense the defendant may raise is not sufficient to defeat the claim.").

     In New York v. Shinnecock Indian Nation, the Second Circuit remanded to state court a suit to prevent a tribe from building a casino in contravention of state law. 686 F.3d 133 (2d Cir.

2012). The state claimed that the proposed casino violated various state gaming and environmental laws. Id. at 136, 138. Anticipating the tribe's defense that it was authorized under IGRA to engage in gaming, the state asserted in its complaint that the proposed casino was not authorized under IGRA, and that federal law did not exempt the tribe from complying with state law. Id. On appeal, the Second Circuit held that the federal courts lacked subject matter jurisdiction and remanded the case. Id. at 142. Notwithstanding references to IGRA in the complaint, the court concluded that the state's complaint alleged only that construction of the casino would violate state laws, an issue which could be resolved without reaching federal issues. Id. at 140-141. The court explained that "the question whether the Shinnecock's construction of the casino would violate state and local law is distinct from the question . . . whether federal law precludes the State and Town from regulating the Shinnecock's activities at Westwoods." Id. at 140. The court also noted that "the issues regarding the Tribe's compliance with state and local law are distinct from the issues regarding the Tribe's federal immunities." Id. at 140, n.5. If the tribe could have somehow established that its actions did not violate state law, then there would have been no need to reach the federal questions. Id. at 140. Therefore, there was no substantial question of federal law that needed to be resolved and the Second Circuit remanded the case to state court for lack of subject matter jurisdiction in the federal courts. Id. at 142.

      Similarly, here, the only issue presented is whether the Tribe has violated the terms of the Settlement Agreement. As in Shinnecock Indian Nation, the question whether the Tribe violated the terms of the settlement agreement is distinct from the question whether federal law authorizes the Tribe's activities. And as in Shinnecock Indian Nation, if the Tribe can show that its activities are not contrary to the terms of the Settlement Agreement, then the matter can be

resolved without reaching the federal questions.  It may be the case that the Tribe will not be able to show that it complied with the Settlement Agreement, and therefore the Tribe may need to resort to a defense that IGRA superseded or impliedly repealed the terms of Settlement Agreement.  Such a defense, however, does not dictate a conclusion that the Commonwealth's Complaint raises a substantial question of federal law, such that jurisdiction in this Court would be proper.

### B. THE COMPLETE PREEMPTION DOCTRINE DOES NOT ESTABLISH REMOVAL JURISDICTION IN THIS CASE.

The mere fact that the Tribe may raise federal preemption as a defense, without more, is not grounds for removal under the complete preemption exception to the well-pleaded complaint rule.  "[A] defendant may not remove a state lawsuit to federal court by asserting a preemption defense, 'even if both parties admit that the defense is the only question truly at issue in the case.'"  Local Union No. 12004, United Steel Workers of America v. Massachusetts, 377 F.3d 64, 73 (1st Cir. 2004), quoting Franchise Tax Bd., 463 U.S. at 14.  Complete preemption exists only when federal law so completely preempts a state law cause of action that any complaint that comes within the scope of these laws must be considered a federal claim.  Id. at 23-24.  The First Circuit has held that complete preemption is "short-hand" for the doctrine that "Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be *recharacterized* as a federal claim."  Fayard v. Northeast Vehicle Services, LLC, 533 F.3d 42, 45 (1st Cir. 2008) (emphasis in original).  "By contrast, ordinary preemption – *i.e.,* that a state claim conflicts with a federal statute -- is merely a *defense* and is not a basis for removal."  Id. (emphasis in original).  "The defense of preemption can prevent a claim from proceeding, but in contrast to complete preemption it does not convert a state claim into a federal claim."  Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996).

The Tribe asserts that IGRA "preempts the field on legal disputes related to gaming activities on Indian lands." (Notice of Removal, Paper No. 1, ¶ 16). The complete preemption analysis, however, is more subtle than that. The Supreme Court has described the question of complete preemption as being one of whether the state law cause of action comes fully within the scope of a federal cause of action. Franchise Tax Bd., 463 U.S. at 24-25; see also Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 67 (1987) (Brennan, J., concurring) ("The Court holds only that removal jurisdiction exists when, as here, 'Congress has *clearly* manifested an intent to make causes of action . . . *removable to federal court*.") (emphasis in original). In Franchise Tax Board, the state attempted to tax funds held in a welfare benefit plan. Id. at 5-6. The trust argued that the state's claims were completely preempted by the Employment Retirement Income Security Act (ERISA). Id. at 23-24. The Court was persuaded that, even though ERISA may prohibit the state from enforcing the tax levy, ERISA did not create "an express cause of action for a declaratory judgment on the issues in this case," and therefore complete preemption did not apply. Id. at 25-27. The same result should obtain here, even if the Tribe may assert that its activities are protected under IGRA.

Similarly, the First Circuit considered whether the United States Copyright Act completely preempted a state law claim by a copyright owner against a copyright co-owner for an accounting of profits and ruled that it did not, notwithstanding that the Copyright Act gives federal courts exclusive jurisdiction over claims arising under the Act. Cambridge Literary Properties, 510 F.3d at 99-101. The court explained that the Copyright Act "does not encompass all claims simply because the parties' dispute happens to involve a copyrighted work." Id. at 100. Significantly, the Copyright Act "creates no alternative federal cause of action, remedy, or procedural mechanisms to govern" a copyright owner's claim against a copyright co-owner for

an accounting.  Id.  Instead, such disputes were left "*outside* the federal court's exclusive copyright jurisdiction."  Id. at 101 (emphasis in original).

The rule gleaned from Cambridge Literary Properties, Fayard, and others is that a federal law does not completely preempt a state law claim unless there is a federal cause of action through which the plaintiff may pursue relief.  Notwithstanding that IGRA generally governs the field of Indian gaming, IGRA "creates no alternative federal cause of action, remedy, or procedural mechanisms" by which the Commonwealth can enforce the terms of the Settlement Agreement, including the Tribe's agreement that the Settlement Lands would be subject to all state civil and criminal laws.  See Cambridge Literary Properties at 100.  Although ultimately the Tribe may raise IGRA as a defense to the Commonwealth's efforts to enforce the Settlement Agreement, the Commonwealth's claims are not completely preempted by IGRA.  See Franchise Tax Bd., 463 U.S. at 14.

The Tribe may cite the Eighth Circuit Court of Appeals' decision in Gaming Corporation of America v. Dorsey & Whitney, 88 F.3d 536, 539-40 (8th Cir. 1996), to support an argument for complete preemption.  That case does not help the Tribe.  In that case, the Eighth Circuit noted that, "[t]he term 'complete preemption' is somewhat misleading because even when it applies, all claims are not necessarily covered."  88 F.3d at 543.  Thus, while the Eighth Circuit concluded that Congress evinced a clear intent for IGRA "to expressly preempt the field in the governance of gaming activities on Indian lands," id. at 544, the court also recognized that a plaintiff's claims require individual analysis to determine whether they fall within the scope of Congress's intended preemption, id. at 548.  In this case, one sovereign—the Commonwealth—sues another—the Tribe—based on a thirty-year old Settlement Agreement resolving Indian land

claims. Nowhere in IGRA did Congress express clear intent that IGRA would preempt such claims.

Indeed, complete preemption is relatively rare. The First Circuit has commented that the doctrine has been applied "in only a few contexts," citing labor contracts, ERISA benefit plans, and usury claims against federally chartered banks as examples. Fayard, 533 F.3d at 45. The Fayard court went on to explain that "[t]he Supreme Court decisions finding complete preemption share a common denominator: exclusive federal regulation of the subject matter of the asserted state claim, coupled with a federal cause of action for wrongs of the same type." Id. at 46 (internal citations omitted). It is specifically the "presence of a counterpart federal cause of action that allows the state claim to be transformed into a federal one." Id.

This case does not support application of the complete preemption doctrine. IGRA did not create a federal cause of action that subsumes the Commonwealth's breach of contract claim. There is no indication that Congress intended an exclusive federal cause of action under IGRA; in fact, there is no alternative federal cause of action under IGRA that would vindicate the Commonwealth's right to enforce the terms of the Settlement Agreement. See 25 U.S.C. § 2701 et seq. Although IGRA generally regulates gaming on Indian lands, it is silent on the effect of an Indian Tribe's voluntary waiver of its gaming rights as part of a settlement agreement with a state. See id.; Passamaquoddy Tribe v. State of Maine, 75 F.3d 784, 789 (1st Cir. 1996). Moreover, IGRA does not create a cause of action by which a state could enforce the terms of a settlement agreement with a tribe. The Commonwealth has not claimed, for example, that the Tribe's actions undertaken to operate a gaming establishment were contrary to the terms of IGRA, a claim that might sound in federal law. Rather, the Commonwealth asked the Massachusetts Supreme Judicial Court to decide whether the Tribe agreed to comply with all

state laws on the Settlement Lands, and if so, whether the Tribe's actions undertaken to open a gaming establishment are in violation of that agreement.  <u>See</u> <u>generally</u> Complaint.  These are straightforward state law claims that should be decided in the state courts.

## **CONCLUSION**

For the reasons stated herein, the Commonwealth of Massachusetts respectfully requests that the Court allow its motion and remand this case to the Massachusetts Supreme Judicial Court for Suffolk County.

Respectfully submitted,

THE COMMONWEALTH OF MASSACHUSETTS

By and through its attorney,

MARTHA COAKLEY
*ATTORNEY GENERAL OF MASSACHUSETTS*

<u>/s/ Juliana deHaan Rice</u>
Juliana deHaan Rice (BBO # 564918)
Carrie Benedon (BBO # 625058)
Bryan Bertram (BBO # 667102)
Assistant Attorneys General
Government Bureau
Office of Attorney General Martha Coakley
One Ashburton Place
Boston, MA 02108-1698
(617) 963-2583
Juliana.Rice@state.ma.us
Carrie.Benedon@state.ma.us
Bryan.Bertram@state.ma.us

Dated:    January 29, 2014