UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE COMMONWEALTH OF
MASSACHUSSETTS,

        *Plaintiff,*

   vs.

THE WAMPANOAG TRIBE OF GAY
HEAD (AQUINNAH), THE
WAMPANOAG TRIBAL COUNCIL OF
GAY HEAD, INC., and THE AQUINNAH
WAMPANOAG GAMING
CORPORATION,

        *Defendants.*

**CASE NO: 1:13-cv-13286-FDS**

[Formerly Supreme Judicial Court for
Suffolk County, Massachusetts,
CIVIL ACTION NO. 2013-0479]

## DEFENDANTS' OPPOSITION TO MOTION FOR REMAND[1]

As this Court has jurisdiction to adjudicate the matter before it, the Wampanoag Tribe of

Gay Head (Aquinnah) (hereinafter "Aquinnah" or "Tribe" or "Aquinnah Tribe"), and the

Aquinnah Wampanoag Gaming Corporation (collectively "Defendants"), hereby submit this

opposition to the Plaintiff Commonwealth's Motion to Remand. On September 28, 1983,

Wampanoag Tribal Council of Gay Head, Inc. entered into a Memorandum of Understanding

Concerning Settlement of Gay Head, Massachusetts Indian Land Claims with the Town of

Aquinnah (formally Town of Gay Head) and the Taxpayer's Association of Gay Head, Inc.,

resolving a multi-year litigation over aboriginal title of lands located on the western tip of

Martha's Vineyard. The Memorandum of Understanding notably was intended to set the

groundwork for federal recognition of the Tribe, and upon such recognition to establish the

---

[1] Defendants concur with the Commonwealth that oral argument will assist the Court in its consideration of the
Commonwealth's Motion to Remand.

Tribe's right to permanently possess certain "Settlement Lands" on Martha's Vineyard. The Memorandum of Understanding was later codified into state law, Chapter 277 of the Acts of 1985 (the "Commonwealth Act") passed by the Massachusetts Legislature in 1985. In 1987, before Congress enacted the Settlement Act, the Tribe received federal recognition through the Department of the Interior. Many aspects of the Memorandum of Understanding were imposed upon the newly federally recognized Tribe in the Massachusetts Indian Land Claims Settlement Act, 25 U.S.C. 1771g (the "Federal Settlement Act") passed by the United States Congress in 1987.

In 1988, one year after enactment of the Federal Settlement Act, Congress enacted the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq. ("IGRA"), establishing a regulatory structure of Indian gaming in the United States, and creating the National Indian Gaming Commission ("NIGC"), an independent federal regulatory agency within the Department of Interior, to oversee its administration. In compliance with IGRA, the Tribe passed Gaming Ordinance 2011-01, adopted in 2012, which authorized gaming activities on Settlement Lands, as conducted in accordance with IGRA and its implementing regulations. The Tribe thereafter received two legal opinions, which confirm its authority to conduct gaming on Settlement Lands. Firstly, on August 23, 2013, the Tribe received an opinion letter from the Department of Interior's Office of the Solicitor concluding that the Memorandum of Understanding, as codified as the Federal Settlement Act in 1987, does not prohibit the Tribe from gaming on Settlement Lands. Then, on October 25, 2013, the Tribe received an additional opinion letter from the NIGC's Office of General Counsel concluding that the Settlement Lands are eligible for gaming under IGRA.

On December 2, 2013, the Commonwealth reacted by filing a Complaint with the Single

Justice of the Supreme Judicial Court for Suffolk County, asserting two purportedly state-law

claims, breach of contract and a request for a declaratory judgment of its right to enforce the

Memorandum of Understanding to prohibit the Tribe from conducting gaming on Settlement

Lands altogether.  Although the complaint carefully avoids any explicit reference to IGRA, the

claims stated on the face of the complaint nevertheless present a substantial federal question

which permeates the asserted state law claims, prompting the Tribe to timely file a Notice of

Removal to District Court.  Federal jurisdiction is proper and, therefore, the Commonwealth's

Motion for Remand must be denied.

## I.    INTRODUCTION

Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331, which permits removal

of an action to federal court where the suit could have properly been brought originally in federal

court as a civil action "arising under the Constitution, laws, or treaties of the United States," or

where state-law claims implicate significant federal issues. *Grable & Sons Metal Products v.*

*Darue Engineering*, 125 S.Ct. 2363, 2366 (2005); *Rhode Island Fishermen's Alliance, Inc. v.*

*Rhode Island Dept. of Environmental Management*, 585 F.3d 42, 48 (1st Cir. 2009).  The instant

law suit was filed on the heels of the NIGC's approval of the Tribe's application to conduct

Class II gaming on its trust land on Martha's Vineyard.  Accordingly, the Commonwealth's

requested relief involves a comprehensive adjudication of the parties' right to conduct gaming

activities, necessarily implicating the Tribe's rights controlled by IGRA, and thus seeks far more

than enforcement of a contract formed under state law.

Specifically, the NIGC's approval was supported by the Department of the Interior's and

the NIGC's issuance of two formal legal opinions that the Tribe may conduct gaming activities

on its existing trust lands. In rejecting the position maintained by the Deval Patrick

Administration, the DOI opinion reasoned:

> IGRA applies if a tribe has not been divested of jurisdiction through an exclusive grant of jurisdiction to the state or through an explicit divesture of tribal jurisdiction. Section 1771g of the Settlement Act does not grant exclusive jurisdiction to the State, and Section 177le(a) of the Settlement Act does not divest the Tribe of jurisdiction. For this reason, IGRA applies on the Settlement Lands. The Settlement Act and IGRA are repugnant regarding provisions related to State jurisdiction over gaming and for this reason cannot be read in harmony. Because IGRA post-dates the Settlement Act, the Settlement Act does not contain a savings clause, and IGRA's applicability furthers congressional intent, IGRA impliedly repeals those portions of the Settlement Act pertaining to State jurisdiction over gaming. ***Therefore, the Settlement Act does not prohibit the Tribe from gaming on the Settlement Lands.***

August 23, 2013 DOI Opinion Letter at p. 18 (emphasis added)(attached as Exhibit A to the

Declaration of Scott Crowell, which is attached hereto as Exhibit 1). Additionally, on October

25, 2013, the NIGC opined[2] that the NIGC's approval of a site-specific Gaming Ordinance

authorizes the Tribe to offer Class II gaming activities on its existing trust lands.[3] Because the

right of a federally recognized Indian tribe to conduct gaming on its trust land is a matter of

federal law, the Tribe appropriately removed the lawsuit to this Court. The Commonwealth now

seeks a remand, claiming that the lawsuit has nothing to do with the recent actions of the United

States, but merely seeks the resolution of a dispute over a purported contract allegedly entered

into by an entity that is not the Tribe, had no authority to bind the Tribe and no longer exists.

Yet, the lawsuit seeks as its essential prayer for relief, an order:

> Declaring that the Aquinnah Tribe has no right to license, open, or operate a gaming establishment on the Settlement Lands without complying

---

[2] The October 25, 2013 NIGC Opinion Letter is attached to the Declaration of Scott Crowell as Exhibit B.

[3] The August 29, 2013 NIGC Ordinance Approval Letter is attached to the Declaration of Scott Crowell as Exhibit C.

> with all laws of the Commonwealth pursuant to the terms of the
> Settlement Agreement.

Complaint at p.16[4]. The Commonwealth's lawsuit seeks, in reality, judicial review of official

agency actions of the United States. Neither this Court nor the Supreme Court of Massachusetts

can grant the relief requested by the Commonwealth without addressing the federal question of

whether IGRA impliedly repeals those portions of the Settlement Act pertaining to State

jurisdiction over tribal gaming, and concluding that the United States' agency actions were

unlawful. The Commonwealth's decision to plead this case solely as a contract claim can rest

only on a desire to avoid federal court jurisdiction over this case, which effort is infirm, both

procedurally and substantively.

The instant lawsuit raises sufficient federal claims to create federal jurisdiction, and thus,

is properly removable to the District Court. The Commonwealth correctly identifies the three

paradigms on which this Court may find the lawsuit to be correctly removed. The initial inquiry

is whether the claims alleged on the face of the well-pleaded complaint, as opposed to an artfully

drafted complaint, raises questions of federal law. Even if the Commonwealth's Complaint did

not raise questions of federal law on its face, there are two exceptions that would nevertheless

support removal: (1) the substantial federal question exception; and (2) the federal preemption

exception. The Commonwealth must prevail on all three paradigms, the well-pleaded complaint

and each of the two exceptions, to establish ground for remand. It prevails on none.

## II.   CLARIFICATION AND CORRECTION OF FACTUAL STATEMENTS PROFFERED BY THE COMMONWEALTH REVEAL THAT THE LAWSUIT IS NOT A MERE STATE LAW CONTRACT CLAIM.

The Commonwealth's Complaint and its "Factual Background" provided in support of its

Motion to Remand references several actions in the 1980s taken prior to the Aquinnah Tribe

---

[4] The Commonwealth's Complaint is attached to Aquinnah's Notice of Removal as Exhibit A.

being recognized by the federal government in April 1987. The Commonwealth asserts that the "Tribe" filed a lawsuit in 1974, that the "Tribe" entered into a Memorandum of Understanding characterized as a Settlement Agreement in 1983, that the "Tribe" shall hold title to the Settlement lands through the Tribal Land Corp. *See* Complaint at ¶¶ 1 – 15, Dk. # 18 at pp. 2-3. In the Commonwealth's Complaint, it files suit against Wampanoag Tribal Council of Gay Head, Inc., a Massachusetts non-profit corporation, which was signatory to the Memorandum of Understanding, and which no longer exists. *See* Complaint at ¶ 11. The Complaint also names the federally recognized Aquinnah Tribe and the Aquinnah Wampanoag Gaming Corporation, a political subdivision of the federally recognized Aquinnah Tribe. *See* Complaint at ¶¶ 10 and 13. Although the Commonwealth identifies the three, separately named defendants and avers that the Wampanoag Tribal Council of Gay Head Inc. no longer exists, and acknowledges that there was no federally recognized Aquinnah Tribe until April 1987, *see* Complaint at ¶ 23, the Commonwealth muddles these distinctively different entities by alleging that the "Tribe" engaged in all of the actions taken prior to April 1987. It did not. It could not because it did not exist.

Whatever the Commonwealth's motive for muddling these distinct entities, the separation of the distinct entities sheds light on a fundamental error in the Commonwealth's tactics. It is only through federal law that the restrictions contained in the Memorandum of Understanding could be imposed upon Aquinnah. The United States Congress has maintained plenary power over the rights and authority of federally recognized Indian Tribes, to the exclusion of the states. The United States Supreme Court bluntly summarized 200 years of jurisprudence:

> This course of legislation and adjudication may be fairly summarized as recognizing the special relation of Indians toward the United States and the exclusion of state power with relation to them, except in so far as the

federal government has actually released to the state governments its constitutional supremacy over this special field.

*Oklahoma Tax Commission v. United States,* 63 S.Ct. 1284, 1291 (1943). *See also*, *United States v. Lara,* 124 S.Ct. 1628, 1633 (2004) *Lone Wolf v. Hitchcock,* 187 U.S. 553 (1903), *K.G. Urban Enterprises v. Patrick,* 693 F.3d 1, 18 (1st Cir. 2012).

The Commonwealth's Factual Statement correctly describes the need for Federal legislation for the Memorandum of Understanding to become effective, but fails to either understand or articulate that it is not the Memorandum of Understanding that governs the Tribe's powers and authorities. It is Congress. Wampanoag Tribal Council of Gay Head Inc., a Massachusetts non-profit corporation, had no authority or capacity whatsoever to exercise or limit the sovereign authority of, and/or contractually bind, a federally recognized tribe that did not exist. *See, e.g., Bingham v. Massachusetts*, 616 F.3d 1, 6 (1st Cir. 2010) (Plaintiffs do not represent the tribe, nor do they claim the capacity to do so. Plaintiffs cannot assert the rights of the tribe, as an entity, simply by styling their claim as a class action on behalf of all tribal descendants); *Somerlott v. Cherokee Nation Distribs., Inc.,* 686 F.3d 1144, 1150 (10th Cir. 2012); *Inecon Agricorporation v. Tribal Farms, Inc.*, 656 F.2d 498, 501 (9th Cir. 1981); *Uniband, Inc. v. C.I.R.*, 140 T.C. No. 13, 2013 WL 2247986 at p. 14 (U.S. Tax Ct., 2013). Further, none of the parties to the Memorandum of Agreement had any authority to bind Congress. It is only the Act of Congress that properly dictated to the Aquinnah Tribe, which laws of the Commonwealth, if any, will govern its affairs.

The import of this factual clarification as it relates to the instant Motion to Remand is that it reveals that the Commonwealth has not well pleaded a mere breach of contract lawsuit. Rather, the Commonwealth has artfully drafted a case seeking interpretation of the Congressionally enacted Settlement Act as a mere state law contract matter.

## III.   REMOVAL IS APPROPRIATE BECAUSE ADJUDICATION OF THE STATE-LAW CLAIM NECESSARILY INVOLVES SUBSTANTIAL FEDERAL QUESTIONS.

Removal is appropriate under an exception to the well-pleaded complaint rule where

adjudication of the state-law claim necessarily involves a substantial federal question.  Writing

for a unanimous court, Justice Souter opined:

> There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues (citation omitted). The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

*Grable,* 125 S.Ct. at 2366-67. See also, *Oneida Indian Nation v. County of Oneida*, 414 U.S.

661, 666-667 (1974)(state-law action for possession of disputed lands and seeking ejectment as

relief necessarily involved an adjudication of tribe's counter-claim for possession based on

allegation of rights conferred wholly by federal law); *Allis-Chalmers Corp. v. Lueck*, 471 U.S.

202, 209 (1985)(text of Labor Management Relations Act supports the conclusion that

substantive principles of federal labor law must be paramount in the area covered by the statute

and issues raised in suits of a kind covered by § 301 must be decided according to the precepts of

federal labor policy).  This does not entitle a party to remove to federal court every case that may

involve a federal question, rather the federal question must be substantive and in dispute, and an

analysis must be undertaken as to the disruptive portent on the sound division of labor between

federal and state courts. *Grable*, 125 S.Ct. at 2367-69.  The Supreme Court has repeatedly

suggested that a federal issue is more likely to be substantial where a claim between two private

parties, though based in state law, directly challenges the propriety of an action taken by "a

federal department, agency, or service. *Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste*, Inc. 726 F.3d 8, 14 (1st Cir. 2013)(citing with approval, *Empire Healthchoice Assurance*, 126 S.Ct. 2121 (2006)). Hence, *Grable* establishes a three part test: (1) whether the claim implicates a question of federal law; (2) whether the federal claim is disputed and substantial; and (3) whether the federal court, by taking up the matter, disrupts the balanced division of authority between federal and state courts.

The First Circuit routinely acknowledges and applies the substantial federal question exception enunciated in *Grable*.  Particularly instructive is *Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Dept. of Environmental Management*, 585 F.3d 42, 48 (1st Cir. 2009).  A fishermen's trade organization brought a state court action against the Rhode Island Department of Environmental Management (DEM) challenging its regulation restricting lobster-trap allocations.  DEM removed to federal court alleging that its officials cannot have been acting *ultra vires* because federal law mandated that they apply lobster harvesting restrictions retroactively.  In upholding the DEM's removal to federal court, the First Circuit opined:

> In the case at hand, the plaintiffs have pleaded nothing but state-law causes of action. Consequently, the jurisdictional inquiry reduces to whether an embedded federal question afforded the district court original jurisdiction over the action. . . [i]t is not logically possible for the plaintiffs to prevail on this cause of action without affirmatively answering the embedded question of whether federal law, in the form of a fishery management plan promulgated under the Compact, "expressly required" the use of retroactive control dates. That is enough to make out a federal question.

585 F.3d at 48-49.  In rejecting several arguments that attempt to characterize the federal question as a mere defense to the well-pleaded state-law complaint, the First Circuit opined:

> Of course, a federal preemption defense to a state-law cause of action is insufficient to confer federal question jurisdiction on a federal court. (case citation omitted) The plaintiffs beseech us, by analogy, to apply that analysis here. We reject their importunings: although there may well be a preemption

defense lurking in the wings, that potential defense is not the hook on which we propose to hang federal question jurisdiction. Rather, the federal question here is inherent in the state-law question itself because the state statute expressly references federal law.

585 F.3d at 49-50. See, *Almond v. Capital Properties, Inc.,* 212 F.3d 20, 23 (1st Cir. 2000)(reasoning that although federal law does not create contract claim, "it surely controls on what is the most important issue" in an action to enjoin owner from violating contract that required owner seek approval of Federal Railroad Administration before raising parking rates); *One and Ken Valley Housing Group v. Maine State Housing Authority,* 716 F.3d 218 (1st Cir. 2013)(federal jurisdiction appropriate in state law contract dispute over Section 8 housing contracts, although federal ingredients viewed separately did not meet *Grable* exception, the totality of the circumstances were sufficient).

The First Circuit has a clear track record of closely examining each of the three component parts of the test for the "substantial federal question" exception to the well-pleaded complaint rule. A close examination in the context of the instant litigation compels denial of the Commonwealth's Motion to Remand.

First, the Commonwealth's request for a declaration that the Tribe "has no right to license, open, or operate a gaming establishment on the Settlement Lands without complying with all laws of the Commonwealth pursuant to the terms of the Settlement Agreement," necessarily implicates federal law. Inherent in the Commonwealth's prayer for relief is the premise that IGRA does not operate to impliedly repeal the Settlement Act as the Settlement Act otherwise applies to the Tribe's gaming activities. The Commonwealth engages in semantic sophistry to suggest otherwise:

> It is not necessary for a court to construe IGRA or to determine the correctness of the NIGC and Department of the Interior opinion letters to determine the meaning of the Settlement Agreement. The Commonwealth

> simply seeks a determination whether the Tribe has acted in contravention
> of the Settlement Agreement. A court need not refer to federal law to
> determine whether a party breached the literal terms of its agreement with
> another.

Dk # 18 at p.12. The Commonwealth's reasoning cannot survive scrutiny. Its prayer for relief

does not "simply seek a determination whether the Tribe has acted in contravention of the

[Memorandum of Understanding]." Rather, it seeks a determination that the Tribe has no right to

game without complying with the Memorandum of Understanding. Even if the Tribe's action

were inconsistent with the Memorandum of Understanding, to prevail the Commonwealth would

have to establish that the Memorandum of Understanding governs the Tribes' gaming activities.

To do so the Commonwealth would have to demonstrate that the Memorandum of

Understanding, entered into prior to the Tribe's recognition, could bind the subsequently

recognized sovereign government of the Tribe, and that the Memorandum of Understanding, a

creation of state law, had the power to restrict the activities of a federally recognized tribe on

land held in trust for the tribe by the federal government. The Commonwealth is in a catch-22 on

this issue. If the Complaint is truly limited to a declaration of whether the Tribe has acted in

contravention of the Memorandum of Understanding, and nothing more, then the disposition of

the litigation would be a dead letter having no binding effect on the Tribe, would be a mere

advisory opinion without redressability. *See, Steel Co. v. Citizens for a Better Environment*, 523

U.S. 83, 118 S.Ct. 1003 (1998) (If successful prosecution case cannot result in redressing alleged

injury, plaintiff lacks standing and the matter is not justiciable).

Second, the question is disputed and substantial. The Commonwealth's lawsuit is brought

on the heels of the Department's express rejection of the Patrick Administration's long-held

position that Aquinnah has no rights under IGRA. The question is substantial in that it is the

crux of the dispute between the Tribe and Commonwealth. A ruling adverse to the Tribe would

place on its head 150 years of federal jurisprudence that Congress has plenary authority over Indian affairs, and 250 years of federal jurisprudence that federal law trumps inconsistent state law (not otherwise implicated by the Tenth Amendment). In its "Factual Background" Section of the MPA, the Commonwealth alleges: "No amendments to the Settlement Agreement, the Commonwealth Settlement Act, or the Federal Settlement Act have relaxed the applicability of state and local law to the Settlement Lands." Dk # 18 at p.4. Even if the Commonwealth engages in semantics as to whether IGRA's implied repeal of the Settlement Act as it relates to gaming to argue it is not an amendment to the Settlement Act, it certainly "relaxed the applicability of state and local law to the Settlement lands." The Commonwealth embracing such an untrue and unsupported statement underscores that the issue is both disputed and substantial. The Commonwealth argues that IGRA's implied repeal is merely an anticipated defense. The court's need to resolve the question of federal law is inherent in the Commonwealth's Complaint. It is only through the Congressionally passed Settlement Act that any provisions of the Memorandum of Understanding are applicable to Aquinnah – the Commonwealth cannot prevail without establishing the Memorandum of Understanding is applicable to the Tribe's gaming activities – it is necessary to the Commonwealth's case. *See, Rhode Island Fishermen's Alliance,* 585 F.3d at 48-49. *See also, Narragansett Indian Tribe v. State of Rhode Island,* 19 F. 3d 685, 705 (1st Cir. 1994).

Third, removal does not disrupt the intended, balanced division between federal and state courts. Indeed, the matter is most properly heard in federal court as the preferred venue. This plenary authority of Congress over Indian affairs, discussed in Section II above is particularly correct in the context of IGRA, where in addition to the federal preemption aspects of IGRA discussed in Subsection IV below, Congress expressly provided that the only mechanism by

which state law may govern tribal gaming activities is by means of a negotiated Tribal-State

Compact approved by the Department of the Interior[5]. *See, Sycuan Band v. Roache* 54 F.3d 535,

538 (9th Cir.1995); S.Rep. No. 446, 100th Cong.2d Sess., *reprinted in* 1988 U.S.C.C.A.N. 3071,

3075-76 ("[U]nless a tribe affirmatively elects to have State laws and State jurisdiction extend to

tribal lands, the Congress will not unilaterally impose or allow State jurisdiction on Indian lands

for the regulation of Indian gaming activities."). *See also*, *Allis-Chalmers Corp. v. Lueck,* 471

U.S. 202, 209 (1985)(text of [Labor Management Relations Act] supports the conclusion that

substantive principles of federal labor law must be paramount in the area covered by the statute

and issues raised in suits of a kind covered by § 301 must be decided according to the precepts of

federal labor policy)

Federal adjudication of the Tribe's rights in this instance does not raise any of the

concerns articulated by the Supreme Court in *Merrell Dow Pharmaceuticals v. Thompson*, 478

U.S. 804, 106 S.Ct. 3229 (1986).  It will not result in a major shift in, or increased volume of,

federal litigation because the bulk of such litigation is already there.

The Commonwealth notes that a dispute involving the Memorandum of Understanding

was once before, removed to federal court, and it was remanded to state court. *Weiner v.*

*Wampanoag Aquinnah Shellfish Hatchery Corp.*, 223 F. Supp. 2d 346, 351 (D. Mass. 2002).

*Weiner* remanded because the federal Aquinnah Settlement Act imposed state law on the Tribe.

That case did not involve gaming, however, and is critically distinguishable on that ground.  The

Tribe could concede, for purpose of argument, that its actions violate the terms of the 1983

contract, and that concession would be of no consequence because IGRA impliedly repealed the

---

[5] The Commonwealth fails to inform the Court that it steadfastly refuses to negotiate such a compact with Aquinnah, even though the Tribe has formally requested and requested again the Commonwealth engage in such compact negotiations. By doing so, the Commonwealth closes the door on the opportunity to have any state gaming laws apply.

federal Settlement Act's imposition of those contract terms on Aquinnah as they relate to gaming.  Indeed, the Department of the Interior's August 23, 2013 opinion expressly noted the State Supreme Court's judgment on remand, *Building Inspector & Zoning Officer of Aquinnah v. Wampanoag Aquinnah Shellfish Hatchery Corp.,* 443 Mass. 1 (2004), and noted its limitation to only the "Cook lands" at issue and not to all Settlement lands of the Tribe, and noted its non-gaming context, and found that the State Court adjudication did not in any way negate its conclusion that IGRA impliedly repeals the Settlement Act as it applies to gaming activity.[6]

The Commonwealth cites *Penobscot Nation v. Georgia-Pacific Corp.,* 254 F.3d 317, 322 (1st Cir. 2001) for the proposition that "federal implementing legislation for Indian land claims settlements does not automatically create a federal claim. Dk. 18 at 9.  *Penobscot* is distinguishable on the same grounds as *Weiner* in that it did not involve gaming.  Importantly, *Penobscot* did not rule that federal subject matter jurisdiction was lacking.  *Penobscot* involved a dispute between two Maine Tribes and a lumber company over the disclosure of key documents. The lumber company filed in State Court while the Tribes filed in federal court.  The District Court dismissed the Tribes' lawsuit applying the well-pleaded complaint rule, and the Tribes appealed.  The First Circuit, after identifying issues in favor and against a finding of federal subject matter jurisdiction deliberately did not decide the question, reasoning there was no need to decide because the lumber company's state court lawsuit had run its course and the appeal was therefore mooted on *res judicata* grounds.  254 F.3d 321-326.  Additionally, the *Penobscot* Court noted that the pervasiveness of state law was greater with Maine Tribes than other states.  254 F.3d at 322.  Significantly, the Maine Settlement Act at issue in *Penobscot* includes a savings clause that a subsequent act of Congress does not repeal provisions of the Maine Settlement Act

---

[6] *See* Exhibit A, August 23, 2013 opinion of the Department of the Interior Solicitor, attached to the Declaration of Scott Crowell at p. 11.

unless Congress expressly states that such Act applies to the Maine Tribes. 25 U.S.C. § 1735(b); *Passamaquoddy Tribe v. Maine,* 75 F.3d 784, 791 (1st Cir. 1996). Significantly, no such savings clause exists in the Aquinnah Settlement Act.[7]

The Commonwealth directs this Court to a decision from the Second Circuit, *New York v. Shinnecock*, 686 F.3d 133 (2nd Cir. 2012) to find support for its claims, but that support is illusory. The case is critically distinguishable and the subsequent applications by the District Courts within the Second Circuit are instructive. *Shinnecock* involved an alleged tribe that is not recognized by the United States[8], *id.* at 138, and which does not have any Indian lands held in trust by the United States. *Id.* at 143-44. The State of New York filed litigation in state court seeking a ruling that Shinnecock must comply with either New York laws and regulations or with IGRA to proceed with construction and operation of a casino on fee lands. *Id.* at 136. Shinnecock removed the action to federal court where the District Court entered an injunction against Shinnecock, and Shinnecock appealed. In a 2-1 decision that actually had the impact of voiding the injunction issued by the District Court, the Second Circuit reasoned that the District Court lacked federal subject matter jurisdiction. The strong dissent noted that the Court would have to determine that Shinnecock could game under IGRA and that the lands qualified for gaming under IGRA in order to determine if Shinnecock's activities were lawful. *Id.* at 142-156. The majority opinion was not impressed with Shinnecock's claims, nor should it have been. The argument that an Indian tribe not recognized by the federal government may lawfully game under IGRA on fee lands not held in trust by the United States is patently without merit. In contrast, Aquinnah is a federally recognized Tribe with lands held in trust by the United States,

---

[7] *See also,* Exhibit A, August 23, 2013 opinion of the Department of the Interior Solicitor, attached to the Declaration of Scott Crowell at p. 17.

[8] Subsequent to the District Court's decision, the Shinnecock Nation received federally recognized status, but the Tribe was not recognized at the time the lawsuit was pending.

with a site-specific gaming ordinance approved by the National Indian Gaming Commission, the regulatory entity established under IGRA, with a formal opinion of the Department of the Interior Solicitor opining that IGRA impliedly repealed any restriction in the Aquinnah Settlement Act relating to IGRA.

District Courts within the Second Circuit that have subsequently applied the *Shinnecock* decision note that the *Grable* substantial federal question exception requires a court to proceed prudently and make pragmatic distinctions between those allegations, if any, that raise substantial federal questions and those that are so patently without merit as to justify the court's dismissal for want of jurisdiction, *St. Regis Mohawk Tribe v. Cuomo*, _____F.2d.____, 2013 WL 4054702 (N.D. N.Y. 2013), and applies only in cases where a substantial federal question is truly inevitable. *Town of Southhold v. Go Green Sanitation*, Inc. 949 F.Supp.2d 365, 374 (E.D. N.Y. 2013). The Second Circuit correctly applied *Grable* and looking closely to the merits of the federal questions at issue, which were suspect, still came to a split decision. Here, where the inevitability of the substantial federal question disposing of the dispute between Aquinnah and the Commonwealth is meritorious, substantial and in dispute, the *Shinnecock* court would have proceeded prudently to make pragmatic distinctions and would have reached a different result, retaining jurisdiction.

To summarize, Aquinnah's removal to federal court falls squarely within the *Grable* substantial federal question paradigm for denying the Commonwealth's Motion to Remand. The claim implicates a meritorious question of federal law that is disputed and substantial, of which the federal court, by taking up the matter, does not disrupt the balanced division of authority between federal and state courts. This paradigm, standing alone, provides proper and sufficient grounds to deny the Motion to Remand. The Commonwealth fails on the other two paradigms as

16

well, discussed below.

## IV.   REMOVAL IS APPROPRIATE BECAUSE IGRA IS SO PERVASIVE THAT ALL STATE-LAW CLAIMS ARE "COMPLETELY PREEMPTED."

Removal is appropriate under an exception to the well-pleaded complaint rule where a federal statute regulating certain activity is so pervasive that all state-law claims with respect to the regulated activity are completely preempted. *See BIW Deceived v. Industrial Union of Marine and Shipbuilding Workers of America*, 132 F.3d 824, 831 (1st Cir. 1997)(preemption principle propels a significant exception to the well-pleaded complaint rule).  Complete preemption can arise when Congress intends that a federal statute preempt a field of law so completely that state law claims are considered to be converted into federal causes of action. *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir. 1996); *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). Preemption requires an analysis of the individual claims – breach of contract and declaratory judgment – and presence of one federal claim is sufficient for removal of the entire case to federal court.  *See Dorsey*, 88 F.3d at 543; *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 5 (1st Cir. 1999)(defendants must show that the state cause of action falls within the scope of ERISA).  For the reasons regarding Congress' plenary authority over tribes, discussed in Section II above, the preemption "test" is less stringent when preemption is asserted as defense in cases involving Indian affairs. *Dorsey*, 88 F.3d at 548.

IGRA is just such a statute, reinforced by even broader policy of federal preemption of state law as it applies to Indian Tribes:

> The legislative history indicates that Congress did not intend to transfer any jurisdictional or regulatory power to the states by means of IGRA unless a tribe consented to such a transfer in a tribal-state compact. . . Congress thus left states with no regulatory role over gaming except as expressly authorized by IGRA, and under it, the only method by which a

state can apply its general civil laws to gaming is through a tribal-state compact. Tribal-state compacts are at the core of the scheme Congress developed to balance the interests of the federal government, the states, and the tribes. . . . The statute itself and its legislative history show the intent of Congress that IGRA control Indian gaming and that state regulation of gaming take place within the statute's carefully defined structure. We therefore conclude that IGRA has the requisite extraordinary preemptive force necessary to satisfy the complete preemption exception to the well-pleaded complaint rule.

*Dorsey*, 88 F.3d at 545-47. *See also*, *Tamiami Partners v. Miccosukee Tribe*, 63 F.3d 1030 (11th Cir. 1995); *Cabazon Band v. Wilson*, 37 F.3d 430 (9th Cir. 1994). It is curious the Commonwealth favorably cites *Dorsey*, Dk. 18 at p. 13 and 16, and then tries to distinguish it by asserting without support "nowhere in IGRA did Congress express a clear intent that IGRA would preempt claims over a 30 year old settlement agreement." Dk. 18 at p. 16. Indeed, the Commonwealth's claims are consumed well within IGRA's intended preemptive scope as to form and manner in which state gaming laws can apply to Indian lands.

The Commonwealth also tries to distinguish *Dorsey* by noting that there are parameters to its preemptive effect. Yet a comparison of the allegations at issue in *Dorsey*, where a management contractor sued a law firm over alleged conflicts of interest in representing management firms and Indian Tribes at the same time, 88 F.3d at 539, with the issue here regarding the extent to which Massachusetts law may govern Aquinnah gaming activities in the absence of a tribal state compact, is demonstrative. The instant case is far more meritoriously within IGRA's preemptive scope than the dispute between two private parties, neither of which is a Tribal government or a State government seeking to establish its jurisdiction over gaming activities.

The Commonwealth also argues that the preemption exception does not apply because IGRA does not provide a federal cause of action for the Commonwealth to pursue. The Supreme

Court has expressly rejected that a federal cause of action is necessary for removal. *Grable,* 125 S.Ct. at 2364. Even if the argument were correct, IGRA, does provide an avenue for the Commonwealth to avail itself of the opportunity to have state law govern Aquinnah gaming activities, by means of a tribal state compact, and if it does so, IGRA provides a federal cause of action for the Commonwealth to enforce that agreement. 25 U.S.C. § 2710(d)(7)(A)(ii).

The Commonwealth cites *Dorsey* favorably. Aquinnah cites *Dorsey* favorably. The distinction the Commonwealth proffers as to why the allegations at issue in *Dorsey* would be within IGRA's preemptive scope and the allegations at issue here fall without IGRA's preemptive scope is unavailing.

## V.   FEDERAL JURISDICTION IS FOUND UNDER THE WELL-PLEADED COMPLAINT RULE.

The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," under which courts look to the allegations presented on the face of the plaintiff's well-pleaded complaint to determine whether federal question jurisdiction is proper. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Rhode Island Fishermen's Alliance, Inc.*, 585 F.3d at 48. This is the paradigm over which the Commonwealth has control, and its Motion to Remand evidences its desire to avoid federal question jurisdiction. But the Commonwealth's effort falls short.

In Section II above, the Tribe demonstrates that a claim seeking a declaration as the extent to which a federal statute allows the laws of Massachusetts has been artfully drafted as a state law contract dispute. Contracts that restrict tribal governance over land require explicit federal approvals that are absent here. *See, e.g.*, 25 U.S.C. § 81. The analysis in Section II also establishes that even looking only to the well-pleaded complaint, the four corners of the Complaint raise federal subject matter jurisdiction.

There are additional allegations in the Commonwealth's Complaint itself that are clearly questions of federal law material to the outcome of this litigation and not mere contextual references. The Complaint alleges at ¶ 35 that Congress passed the Settlement Act to ratify the Memorandum of Understanding. The Commonwealth has to prove that allegation, a question of federal law, to establish its case. The Complaint at ¶ 56 alleges that the NIGC approved the Tribes Gaming Ordinance. By injecting the NIGC approval into the Complaint, the Commonwealth has that the laws of the Commonwealth invalidate the federal action. Again, a question of federal law. In addition to these obvious matters of federal subject matter jurisdiction, the Complaint's allegation at ¶ 63 that the Memorandum of Understanding is valid and enforceable can only be established by proving that a federal statute imposes its terms upon the Tribe. The Complaint's allegation at ¶ 64 that the tribe "may not license, open, or operate gaming establishments on Settlement Lands without a gaming license issued by the Commonwealth," implies that only state law applies to the tribe's purported gaming activities. State law can only apply to Aquinnah as Congress, through federal statutes apply that law.

Whether the analysis in Section II and these examples of express language in the Commonwealth's Complaint are taken separately, or taken together, the well-pleaded Complaint fails to conceal the federal subject matter jurisdiction in issue. Accordingly, even in the one of the three removal paradigms over which the Commonwealth has control, it fails.

## VI.   CONCLUSION

For the reasons set forth herein, the Commonwealth's Motion for Remand should be denied.

20

DATED: February 24, 2014                    Respectfully Submitted,


                                            SCOTT D. CROWELL (*pro hac vice*)
                                            TRIBAL ADVOCACY GROUP LLP
                                            1487 W. State Route 89A, Suite 8
                                            Sedona, Arizona
                                            Telephone: 425-802-5369
                                            Facsimile: 509-290-6953


                                            */s/ Bruce A. Singal*
                                            BRUCE A. SINGAL (BBO # 464420)
                                            ELIZABETH J. MCEVOY (BBO# 683191)
                                            DONOGHUE, BARRETT & SINGAL
                                            One Beacon Street, Suite 1320
                                            Boston, MA 02108
                                            Telephone: 617-720-5090
                                            Facsimile: 617-720-5092
                                            Email: bsingal@dbslawfirm.com
                                            Email: emcevoy@dbslawfirm.com


                                            LAEL R. ECHO-HAWK (*pro hac vice*)
                                            GARVEY SHUBERT BARER
                                            1191 Second Ave. 18th Floor
                                            Seattle, Washington 98101
                                            Telephone: 206-816-1355
                                            Facsimile: 206-414-0125


                                            JOHN DUFFY (*pro hac vice*)
                                            JOHN R. CASCIANO, BBO #634725
                                            STEPTOE & JOHNSON LLP
                                            1330 Connecticut Ave., N.W.
                                            Washington, DC 20036
                                            Telephone:  202-429-6268
                                            Facsimile:  202-429-3902


                                            *Attorneys for Proposed Defendants*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

I hereby certify that on February 24, 2014, I, Elizabeth J. McEvoy, spoke by telephone with Juliana deHann Rice, counsel to the Plaintiff in the above-captioned action, in good-faith effort to resolve or narrow the issues presented in this motion and we were unable to do so.

*/s/ Elizabeth J. McEvoy*
ELIZABETH J. MCEVOY

## CERTIFICATE OF SERVICE

I, Bruce A. Singal, hereby certify that the OPPOSITION TO MOTION TO REMAND was filed through the ECF System and therefore copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent, via first-class mail, to those indicated as non-registered participants.

Dated: February 24, 2014

*/s/ Bruce A. Singal*
BRUCE A. SINGAL