UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COMMONWEALTH OF MASSACHUSETTS, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil No. 13-13286-FDS |
| v. | ) ) | |
| THE WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH), THE WAMPANOAG TRIBAL COUNCIL OF GAY HEAD, INC., and THE AQUINNAH WAMPANOAG GAMING CORPORATION, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND

**SAYLOR, J.**

This lawsuit involves a dispute between the Commonwealth of Massachusetts and a federally recognized Indian tribe as to who has regulatory jurisdiction over civil gaming on Indian lands on Martha's Vineyard. The Aquinnah Wampanoag Tribe and related entities have taken steps to commence commercial gaming operations on tribal lands without a license from the Commonwealth. The Commonwealth of Massachusetts contends that by doing so, the Tribe violated a 1983 settlement agreement that subject the lands in question to state civil and criminal jurisdiction. Count 1 of the complaint alleges breach of contract, and Count 2 seeks a declaratory judgment.

The Commonwealth filed suit in state court on December 2, 2013. On December 30, 2013, defendants removed the action to this Court on the basis of federal-question and

supplemental jurisdiction, 28 U.S.C. §§ 1331, 1367.  The Commonwealth has moved to remand the matter to state court.  For the reasons set forth below, the motion will be denied.

I. **Background**

Unless otherwise noted, the facts are presented as stated in the complaint.

Historically, the western tip of Martha's Vineyard has been home to the Aquinnah Wampanoag Tribe.  In 1974, the Wampanoag Tribal Council of Gay Head, Inc., sued the Town of Gay Head, asserting aboriginal property rights to certain land within the town.[1]  In November 1983, the Commonwealth, the Town of Gay Head, the Taxpayers' Association of Gay Head, Inc., and the Wampanoag Tribal Council of Gay Head, Inc., entered into a settlement agreement.  The Town and the Taxpayers' Association conveyed to the Wampanoag Tribal Council approximately 400 acres of land (the "Settlement Lands") to be held "in the same manner, and subject to the same laws, as any other Massachusetts corporation."  (Compl., Ex. A).  The Tribal Council relinquished all claims to other lands and waters in the Commonwealth.  The agreement provided that "[u]nder no circumstances, including any future recognition of the existence of an Indian tribe in the Town of Gay Head, shall the civil or criminal jurisdiction of the Commonwealth of Massachusetts . . . over the settlement lands . . . be impaired or otherwise altered" and "no Indian tribe or band shall ever exercise sovereign jurisdiction" over those lands.  (*Id.*).  The Bureau of Indian Affairs of the Department of the Interior later took the Settlement Lands into trust.

Pursuant to the terms of the agreement, in 1985, the Massachusetts Legislature enacted a

---

[1] In 1997, the Town of Gay Head changed its name to Aquinnah.

statute implementing the settlement agreement.[2]  The settlement agreement, however, still required the approval of Congress to take effect.

In 1987, before Congress passed the implementing statute, the Department of the Interior officially recognized the Wampanoag Tribe of Gay Head (the "Tribe") as an Indian tribe.

On August 18, 1987, Congress passed the Act implementing the settlement.[3]  The federal statute stated that the Settlement Lands are subject to the laws of the Commonwealth of Massachusetts "including those laws and regulations which prohibit or regulate the conduct of bingo or any other game of chance."  25 U.S.C. § 1771g.

In 1988, Congress enacted the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*  In part, the IGRA established a regulatory structure for gaming on Indian lands and created the National Indian Gaming Commission ("NIGC").

Between 2011 and 2013, the Tribe passed and adopted tribal resolutions instituting a gaming ordinance pursuant to the IGRA.  It also sought the opinions of the NIGC Office of General Counsel and Department of Interior's Office of the Solicitor as to whether it may conduct gaming on Settlement Lands, and announced its intention to open a gaming facility in a community center on those lands.

Massachusetts law prohibits any entity from operating a gaming establishment without a license issued by the Massachusetts Gaming Commission.  *See* Mass. Gen. Laws ch. 23K, §§ 2, 9, 25.  The Tribe has not obtained such a license nor complied with the prerequisites for doing so.

---

[2] *See* An Act to Implement the Settlement of the Gay Head Indian Land Claims, Mass. Stat. 1985, c. 277.

[3] *See* Wampanoag Tribal Council of Gay Head, Inc., Indian Land Claims Settlement Act, Pub. L. No. 100-95, *codified at* 25 U.S.C § 1771 *et seq.* ("Wampanoag Settlement Act").

On December 2, 2013, the Commonwealth filed a complaint with the Single Justice of the Supreme Judicial Court for Suffolk County against the Tribe, the Wampanoag Tribal Council of Gay Head, Inc., and the Aquinnah Wampanoag Gaming Corporation. The complaint asserted a claim for breach of contract and requested a declaratory judgment that the settlement agreement allowed the Commonwealth to prohibit the Tribe from conducting gaming on Settlement Lands.[4] On December 30, defendants removed the action to this Court on the grounds of federal-question and supplemental jurisdiction. The Commonwealth has moved to remand the action to state court.

**II.    Analysis**

A defendant may remove any civil action over which the federal district court has original jurisdiction. 28 U.S.C. § 1441(a). A district court's original jurisdiction extends, among other things, to claims that arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If an action includes both federal-law claims and state-law claims, then the district court may exercise supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1441(c).

Whether a claim "arises under" federal law generally depends on an evaluation of the "well-pleaded complaint." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). In the great majority of cases, a suit "arises under the law that creates the cause of action." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 8 (1983) (quotation omitted). However, there are two exceptions. First, under the *Smith*

---

[4] According to the Commonwealth, the Aquinnah Wampanoag Gaming Corporation is a wholly-owned subsidiary of the Tribe or the Wampanoag Tribal Council of Gay Head, Inc. According to defendants, the Wampanoag Tribal Council of Gay Head, Inc., no longer exists. (Notice of Removal at 1 n.1). Presumably, this is because the Department of Interior has officially recognized the Tribe. *See* 52 Fed. Reg. 4193 (Feb. 10, 1987).

4

doctrine, a case may "arise under" federal law if the state-law right necessarily requires resolution of a substantial question of federal law. *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201 (1921). Second, an action may also "arise under" federal law if a federal statute completely preempts the state-law cause of action. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). A defendant may not remove a case on the basis of a federal defense, but neither may a plaintiff defeat removal by failing to plead necessary federal questions. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

The Commonwealth's complaint does not, ostensibly, plead a federal cause of action. It alleges breach of contract, which is a state-law claim, and seeks a declaratory judgment under Mass. Gen. Laws ch. 231A, the Massachusetts declaratory judgment statute. The Tribe's potential responses to those claims—that the IGRA or the Massachusetts Settlement Act preempt state law or that the tribe has sovereign immunity—are federal defenses. *See Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838, 840-42 (1989) (defense of tribal immunity is not a ground for removal); *Gully v. First Nat'l Bank*, 299 U.S. 109, 115-16 (1936) (ordinary preemption is not a basis for removal); *Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 45-46 (1st Cir. 2008) (same); *Wiener v. Wampanoag Aquinnah Shellfish Hatchery Corp.*, 223 F. Supp. 2d 346, 351-52 (D. Mass. 2002) (Wampanoag Settlement Act not sufficient ground for removal). Because the complaint does not plead a federal cause of action, this Court has subject-matter jurisdiction only if one of the two exceptions applies: the *Smith* doctrine or complete preemption.

Under the *Smith* doctrine, a case "might still 'arise under' the laws of the United States," in spite of a complaint that lists only state-law causes of action, "if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of

5

federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13.[5] Whether the *Smith* doctrine may be invoked in a particular case depends on whether the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in a federal court without disrupting the federal-state balance of power." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013). Those factors must be considered in light of the "totality of the circumstances," *One & Ken Valley Hous. Grp.*, 716 F.3d at 224, and with "common-sense accommodation of judgment to kaleidoscopic situations." *Gully*, 299 U.S. at 117.

To begin, it appears that the Commonwealth's right to relief depends on whether it or the Tribe has jurisdiction over gaming on the Settlement Lands. The Commonwealth has framed the dispute as one of breach of contract, and has asserted that a court could find the Tribe in compliance with the Settlement Agreement, obviating any need to touch upon matters of federal law. At first glance, that seems plausible, in part because the Commonwealth is somewhat opaque as to the substance of the declaratory judgment sought. For example, the complaint asserts different statements in Count Two and the prayer for relief. The former states that the Commonwealth is "responsible for the enforcement of laws prohibiting gaming without a gaming license" and that an actual controversy has arisen concerning "actual violations or contemplated and impending violations of Massachusetts law." (Compl. ¶¶ 75-76). The latter, however, requests judgment "[d]eclaring that the Aquinnah Tribe has no right to license, open, or operate a gaming establishment on the Settlement Lands without complying with all laws of the Commonwealth pursuant to the terms of the Settlement Agreement." (Compl., Prayer for Relief). Federal-question jurisdiction turns on the *right* to relief, not the *form* of the relief. *See*

---

[5] This principle has alternately been called the "federal ingredient exception." *One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013).

6

*Franchise Tax Bd.*, 463 U.S. at 13. The statement in the prayer therefore does not control the jurisdictional question. But it is telling that the Commonwealth believes that a finding in its favor would require or support such a declaration. In any event, adjudication of the assertion in Count Two would require a determination as to whether a state or a federally recognized Indian tribe has jurisdiction over gaming on Indian lands—which is clearly a matter of federal law. *Cf. Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685 (1st Cir. 1994).[6]

Resolution of the gaming jurisdiction issue is unquestionably "necessary" to the Commonwealth's case. The Commonwealth would not be responsible for the enforcement of gaming laws—and the Tribe would not violate Massachusetts law—if the Tribe, rather than the Commonwealth, had jurisdiction over the Settlement Lands. Thus, adjudication of the declaratory-judgment request will necessarily require application of federal Indian gaming law and jurisdiction to the facts of the case.

The issue is also "actually disputed." The parties strongly disagree as to whether the Commonwealth or the Tribe has jurisdiction over gaming on the lands at issue. Indeed, it is the "central point of dispute." *Gunn*, 133 S. Ct. at 1065.

Furthermore, the issue is "substantial." In this context, whether a question is substantial depends not on its importance to the parties, but rather its importance to the federal system as a whole. *Gunn*, 133 S. Ct. at 1066-68. Here, control of Indian tribes over gaming on tribal lands

---

[6] Contrary to the Tribe's position, the Commonwealth's action does not seek review of federal agency action. The two federal agency letters essentially conclude that the Tribe may conduct gaming on its lands, notwithstanding the Wampanoag Settlement Act and the Settlement Agreement. While the Court may have to conduct a similar inquiry, that agency action likely will not be entitled to deference. *See Passamaquoddy Tribe v. Maine*, 75 F.3d 784, 793 (1st Cir. 1996) (granting no deference to NIGC letter opining that IGRA applies to tribal lands in Maine because Congress spoke directly to the question, the agency did not have special expertise in administering Maine's Indian land claims settlement act, and courts, not agencies, have expertise in interpreting judicial precedents). The issuance of the letters does not provide a basis for federal jurisdiction.

7

is the subject of substantial federal law and regulation. *See* Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*; 25 C.F.R. § 501 *et seq.* (regulations implementing the IGRA). The Supreme Court has stated, in the context of gaming on Indian territory, that "Indian sovereignty and the congressional goal of Indian self-government" are "important federal interests." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216-17 (1987). Furthermore, the balance of jurisdiction among the federal government, state governments, and Indian tribes is generally a matter for Congress, not the states. *Id.* at 214; *see United States v. Wheeler*, 435 U.S. 313, 323 (1978). Indeed, Congress had to pass a statute for the Settlement Agreement to have any effect. If Congress subsequently has impliedly repealed the Wampanoag Settlement Act, and removed the Commonwealth's civil jurisdiction over the Settlement Lands to any extent, that surely is a question that implicates substantial federal interests.

Finally, this Court's exercise of jurisdiction would not unduly disrupt the federal-state balance of power. The "congressionally approved balance of federal and state judicial responsibilities" as to Indian tribes is heavily weighted on the federal side. *Grable*, 545 U.S. at 314. Notably, the First Circuit has considered two similar cases between a state and a federally recognized Indian Tribe that concern the interplay between a federal Indian land claims settlement act and the IGRA. *See Passamaquoddy Tribe v. Maine*, 75 F.3d 784 (1st Cir. 1996); *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685 (1st Cir. 1994).

To be sure, not every question involving tribal lands or tribal jurisdiction triggers a substantial federal question giving rise to subject-matter jurisdiction in the federal courts. At bottom, the issue is largely one of degree. Thus, for example, in two relatively recent instances, district courts within this Circuit dismissed cases between a recognized tribe and a state entity

8

for lack of jurisdiction.

In *Wiener v. Wampanoag Aquinnah Shellfish Hatchery Corp.*, a local zoning agency commenced an enforcement action against the Wampanoag Tribe and a related corporation to prevent their construction of a shed and pier platform on certain lands to facilitate operations of a shellfish hatchery. 223 F. Supp. 2d 346. The Tribe removed the case to federal court on the basis of the Settlement Act. The agency initially did not contest removal; however, the court, inquiring into its own jurisdiction *sua sponte*, remanded the matter to state court. It found that neither the tribal sovereign immunity defense nor the Wampanoag Settlement Act created a federal question, and that the proper court to hear a zoning enforcement dispute under Massachusetts zoning law was the state court. *Id.* at 349-53.

In *Penobscot Nation v. Georgia-Pacific Corp.*, two Indian tribes sued to enjoin three paper companies from filing an action in state court seeking documents under the Maine Freedom of Access Act and for a declaratory judgment that the Access Act violated their right to be free from such state regulation. 106 F. Supp. 2d 81 (D. Me. 2000). The court dismissed the case, ruling that the tribes' potential defenses to the companies' state-court suit and the Maine Indian Claims Settlement Act were insufficient bases for federal jurisdiction. *Id.* at 83, 86.

On appeal, the First Circuit noted that the issue of federal-question jurisdiction in *Penobscot Nation* was "difficult." *Penobscot Nation v. Georgia-Pacific Corp.*, 254 F.3d 317, 320 (1st Cir. 2001). It struggled with the issues of whether the case presented a federal claim, the import of the Maine Indian Claims Settlement Act, and the extent of jurisdiction under 28 U.S.C. § 1362. *Id.* at 322-23. Ultimately, the Court resolved the case without deciding whether federal jurisdiction existed. *Id.* at 323. While the case had been pending in federal court, a

9

parallel action had proceeded in state court, and the Maine Supreme Judicial Court had resolved the underlying dispute. The Court found the *res judicata* effect of that ruling conclusive, rendering the federal suit superfluous. *Id.* at 325.

The present dispute, however, does not concern local zoning regulations or state public records laws, which principally involve matters of local and state law. Instead, the issue is gaming on Indian lands, a matter that is subject to extensive federal legislation and regulation. Congress has made the federal interest in Indian gaming very clear. Indeed, if the *Penobscot Nation* case presented a borderline question, the fact that the central issue in this case necessarily requires an interpretation of federal Indian gaming law suggests that the jurisdictional question here is not particularly close.

To be clear, not every dispute with some relation to tribal gaming creates a federal question implicating federal jurisdiction, whether under the *Smith* doctrine or otherwise. *See Casino Res. Corp. v. Harrah's Entm't, Inc.*, 243 F.3d 435, 439 (8th Cir. 2001) ("Not every contract that is merely peripherally associated with tribal gaming is subject to IGRA's constraints."). However, in the area of jurisdiction over and regulation of gaming on Indian tribal lands, Congress has made the federal interest clear and has provided states a very limited role—essentially, to negotiate a tribal-state compact governing the conduct of Class III gaming activities in good faith. *See* 25 U.S.C. § 2710(d)(3); *see also Cohen's Handbook of Federal Indian Law* § 12.02 (2012) (noting also that states have input into "whether to permit gaming on some Indian lands acquired after 1988 "). Courts accordingly have held that the IGRA trumps state-specific agreements and state regulations. *See State of Rhode Island v. Narragansett Indian Tribe*, 19 F.3d at 704-05; *see also Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 546

(8th Cir. 1996) (IGRA preempts state laws concerning gaming when applied to tribal lands); *Cabazon Band of Mission Indians v. Wilson*, 37 F.3d 430, 433-35 (9th Cir.1994) (IGRA preempts state license fee on off-track betting on tribal lands). While that issue is of course not ripe for resolution, it is clearly a question that this Court is empowered to decide.[7]

Applying "common sense" and considering the "totality of the circumstances," *One & Ken Valley Hous. Grp.*, 716 F.3d at 225, it is clear that the resolution of this case requires a resolution of a substantial question of federal law. Accordingly, this Court will exercise jurisdiction over the action, and the motion to remand will be denied.

Because the Court finds that the *Smith* doctrine applies, there is no need to determine whether the case also meets the standard for federal jurisdiction under the complete-preemption exception. Nonetheless, that analysis is instructive. "Complete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be recharacterized as a federal claim." *Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008). For complete preemption, there must be both "exclusive federal regulation of the subject matter of the asserted state claim" and "a federal cause of action for wrongs of the same type." *Id.* The Supreme Court has identified a narrow group of such areas, including matters arising under the National Labor Relations Act, *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968); the possessory interest of Indian tribes to lands obtained by treaty, *Oneida Indian Nation of New York State v. County of*

---

[7] The Second Circuit's opinion in *New York v. Shinnecock Indian Nation*, 686 F.3d 133 (2d Cir. 2012), finding that it lacked jurisdiction over a similar dispute is distinguishable. There, New York alleged that the Shinnecock Indian Nation's construction of a casino on its property would violate state gaming and environmental laws. But the Shinnecock were not, at the time of the suit, a federally recognized tribe that would enjoy the benefits of IGRA, and the land on which they proposed to build was not Indian land within the scope of IGRA. Thus, no meaningful question of competing state and Indian gaming jurisdiction arose, and the case could be resolved without reaching any federal issues. *Id.* at 140-41.

*Oneida, N.Y.*, 414 U.S. 661 (1974); matters arising under ERISA, *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987); and usury claims against federally chartered banks, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003).

The Eighth Circuit has held that the IGRA completely preempts state laws regulating gaming on Indian lands. *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996); *see also Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102 (8th Cir. 1999). That determination was based on the text and structure of IGRA, the jurisdictional framework, and the legislative history, which included a Senate committee report stating that IGRA "is intended to expressly preempt the field in the governance of gaming activities on Indian lands." *Gaming Corp. of Am.*, 88 F.3d at 544-45. *See also Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, 63 F.3d 1030, 1033 (11th Cir.1995) (quoting Senate Report for proposition that the IGRA occupies the field of Indian gaming, as "evidenced by the broad reach of the statute's regulatory and enforcement provisions and [] underscored by the comprehensive regulations promulgated under the statute" (quoting S. Rep. No. 100–446 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071, 3076)).

This Court does not need to resolve the issue, and therefore will not reach it. Nonetheless, the fact that at least one circuit has concluded that the IGRA entirely preempts the field of Indian gaming regulation is further evidence of the strong federal interest at issue here. Even if complete preemption does not apply, at a minimum the Court cannot decide this case without resolving a substantial question of federal law, and it therefore has subject-matter jurisdiction over this dispute.

## III. Conclusion

For the foregoing reasons, the Commonwealth's motion to remand is DENIED.

**So Ordered.**

Dated:  July 1, 2014

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge