UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:13-CV-13286-FDS

THE COMMONWEALTH OF )
MASSACHUSETTS, )
)
    Plaintiff, )
)
    vs. )
)
TOWN OF AQUINNAH, and )
THE AQUINNAH/GAY HEAD )
COMMUNITY ASSOCIATION, INC., )
)
    Intervenor Plaintiffs, )
)
    vs. )
)
THE WAMPANOAG TRIBE OF GAY )
HEAD (AQUINNAH), THE )
WAMPANOAG TRIBAL COUNCIL OF )
GAY HEAD, INC., and THE )
AQUINNAH WAMPANOAG GAMING )
CORPORATION, )
)
    Defendants. )

## DECLARATORY JUDGMENT ACTION BY THE TOWN OF AQUINNAH

The Town of Aquinnah (the "Town") seeks declaratory relief against the Wampanoag Tribe of Gay Head (Aquinnah) (hereinafter, the "Tribe"), and its affiliates – the Wampanoag Tribal Council of Gay Head, Inc. (predecessor-in-interest to the Tribe) and the Aquinnah Wampanoag Gaming Corporation.

## Nature of the Action

1. This action was initiated by the Commonwealth of Massachusetts when it filed a complaint in the Supreme Judicial Court for Suffolk County on December 2, 2013, alleging a breach of contract, and seeking a declaratory judgment.

2. The Town hereby incorporates the factual recitations in the Commonwealth's December 2, 2013, complaint (¶¶ 1-14 and 20-61).

3. The Town seeks a declaration as to whether the Tribe and its affiliates may only engage in gaming activity (i.e., gambling activity) after properly complying with all pertinent regulatory, permitting, and licensing requirements - including all Town zoning by-laws.

## Parties

4. The Commonwealth of Massachusetts, the party that initiated this action, is a sovereign state, one of the several United States of America.

5. The Town is a municipal government organized under the laws of the Commonwealth of Massachusetts.

6. The Town has previously either initiated or been involved in litigation concerning the proper interpretation and application of the contract in issue - the below-detailed agreement between the Tribe, the Commonwealth, and the Aquinnah/Gay Head Community Association, Inc. (the "AGHCA") -

2

including in this Court. See, Building Inspector & Zoning Officer of Aquinnah v. Wampanoag Aquinnah Shellfish Hatchery Corp., 443 Mass. 1 (2004); Wiener v. Wampanoag Aquinnah Shellfish Hatchery Corp., 223 F. Supp. 2d 346 (D. Mass. 2002).

7. The Wampanoag Tribe of Gay Head (Aquinnah) (the "Tribe") "exists as an Indian tribe within the meaning of Federal law." 52 Fed. Reg. 4193 (February 10, 1987).

8. The Wampanoag Tribal Council of Gay Head, Inc. is the predecessor-in-interest to the Tribe, and was formerly a non-profit corporation organized under the laws of the Commonwealth of Massachusetts.

9. The Aquinnah Wampanoag Gaming Corporation is a wholly-owned entity established by the Tribe, with certain authority explicitly delegated to it by the Tribe, and is thus a related entity to the Tribe.

### Jurisdiction and Venue

10. This action was removed from the Supreme Judicial Court for Suffolk County to this Court by the Tribe.

11. This Court has subject matter jurisdiction over this action in accordance with 28 U.S.C. § 1331.

12. This court has personal jurisdiction over all parties to this action.

13. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

Background

14. In 1974, the Wampanoag Tribal Council of Gay Head, Inc. – then a Massachusetts non-profit corporation without federally-recognized tribal status – commenced an action in this Court against the Town of Gay Head (now the Town of Aquinnah, hereinafter the "Town"), on the Island of Martha's Vineyard, claiming that certain historical transfers of land in Gay Head violated the Indian Non-Intercourse Act, 25 U.S.C. § 177. See Comm. Compl. ¶ 24; Wampanoag Tribal Council of Gay Head, Inc. v. Town of Gay Head, No. 74-5826 (D. Mass.); see also Wampanoag Aquinnah Shellfish Hatchery Corp., 443 Mass. at 1 (describing the history of the litigation).

15. The Aquinnah/Gay Head Community Association, Inc. ("the AGHCA") – as the Taxpayer's Association of Gay Head – intervened in this land-transfer litigation.

16. In 1983 the Tribe, the Town, the Commonwealth, and the AGHCA entered into a "Joint Memorandum of Understanding Concerning Settlement of the Gay Head, Massachusetts Indian Land Claims" (hereinafter, "the Settlement Agreement"); which resolved the ongoing land-transfer litigation and its various inter-related claims. Comm. Compl. ¶ 25.

17. The Settlement Agreement represented a carefully struck bargain, through which several sophisticated parties – each represented by legal counsel – resolved their respective

4

differences in a manner that both conferred benefits and placed obligations on all involved.  Comm. Compl. ¶¶ 26-27.

18.  In the Settlement Agreement the Tribe received exclusive use of hundreds of acres of public and private land in exchange for relinquishing its aboriginal title and claims. Comm. Compl. ¶¶ 28-29.

19.  In the context of this litigation, the Settlement Agreement provides, in part, that:

> "The Tribal Land Corporation shall hold the Settlement Lands, and any other land it may acquire, ***in the same manner, and subject to the same laws, as any other Massachusetts corporation . . . . Under no circumstances, including any future recognition of the existence of an Indian tribe in the Town of Gay Head, shall the civil or criminal jurisdiction of the Commonwealth of Massachusetts, or any of its political subdivisions,*** over the settlement lands, or any land owned by the Tribal Land Corporation in the Town of Gay Head, or the Commonwealth of Massachusetts, or any other Indian land in Gay Head, or the Commonwealth of Massachusetts, ***be impaired or otherwise altered***, except to the extent modified in this agreement and in the accompanying proposed legislation."

Wampanoag Aquinnah Shellfish Hatchery Corp., 443 Mass. at 4 (emphasis added).

20.  In 1985, the Commonwealth enacted legislation to implement the settlement, Comm. Compl. ¶ 33; St. 1985, c. 277, and on February 10, 1987, the Tribe was granted federal recognition, see 52 Fed. Reg. 4193-4194 (February 10, 1987).

21.  After the Tribe gained federal recognition, Congress enacted federal legislation implementing the Settlement

5

Agreement in the Massachusetts Indian Land Claims Settlement Act. 25 U.S.C. §§ 1771-1771i. Comm. Compl. ¶ 35.

21. In this legislation, Congress ratified and confirmed the Tribe's existence as an Indian tribe, and also confirmed that, consistent with the terms of the Settlement Agreement, the Tribe is subject to the jurisdiction of the Commonwealth and the Town. See Comm. Compl. ¶ 36. In particular, the federal implementing Act states:

> "Except as otherwise expressly provided in this subchapter or in the State Implementing Act, the settlement lands and any other land that may now or hereinafter be owned by or held in trust for any Indian tribe or entity in the town of Gay Head, Massachusetts, shall be subject to the civil and criminal laws, ordinances, and jurisdiction of the Commonwealth of Massachusetts and the town of Gay Head, Massachusetts *(including those laws and regulations which prohibit or regulate the conduct of bingo or any other game of chance.)*"

25 U.S.C. § 1771g (emphasis added).

22. As detailed more fully in the Commonwealth's December 2, 2013 complaint (¶¶ 48-61), notwithstanding the express terms of the Settlement Agreement, the Tribe and its affiliates have recently engaged in gaming-related activity, including the adoption of a "Gaming Ordinance," with the expressed intention of conducting gaming on the lands conferred in the Settlement Agreement "as soon as possible."

23. Since the filing of the Commonwealth's December 2, 2013, complaint, the Tribe has maintained the validity of the

6

existing "Gaming Ordinance," and reiterated its intention of conducting gaming.

24. The clear import of the Settlement Agreement and the Massachusetts and federal implementing legislation is that the Tribe cannot continue to pursue gaming activities on its Settlement lands. In the Settlement Agreement, the Tribe waived any sovereign right it may have had to engage in gaming under the subsequently-enacted Indian Gaming Regulatory Act ("IGRA"), and the 1983, 1985, and 1987 agreements and enactments "specifically provide for exclusive state control over gambling." Narragansett Indian Tribe v. National Indian Gaming Comm'n, 158 F.3d 1335, 1341 (D.C. Cir. 1998) (construing § 1771 in litigation involving a Rhode Island tribe's similar claim); see also Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 702 (1st Cir. 1994) (distinguishing the Tribe's federal implementing legislation from similar legislation relating to Indian settlement lands in Rhode Island, and noting that §§ 1771e and 1771g "contain corresponding limits on Indian jurisdiction" that save the implementing legislation from implied repeal by IGRA).

25. The Tribe has been issued land use permits from the Town and the Martha's Vineyard Commission to construct a community center, pursuant to a 2007 Land Use Agreement between the Town and the Tribe (the Aquinnah Tribe subsequently

terminated the Agreement). The Tribe is proposing to utilize the Community Center for gaming operations, which is not allowed under either Town zoning or the terms of the land use permits issued by the Town and the Martha's Vineyard Commission.

Allegations

Count I:   Breach of Contract

26. The facts and allegations set forth in paragraphs 1 through 25 above are incorporated by reference, as if set forth herein in full.

27. The Settlement Agreement is a valid and enforceable contract that created enduring legal obligations on the part of all parties to the agreement, including the Tribe.

28. Under the Settlement Agreement, the Tribe is prohibited from engaging in any gaming on the lands conferred in the Settlement Agreement, and subjected itself to the laws, regulations and ordinances of the Town. Commercial gaming is not allowed in Aquinnah under zoning and other applicable laws.

29. The Tribe's actions, as detailed above and in the Commonwealth's December 2, 2013, complaint go to the very essence of the several parties' contractual bargain in the Settlement Agreement.

## Count II:   Declaratory Judgment

30.  The facts and allegations set forth in paragraphs 1 through 29 above are incorporated by reference, just as if set forth herein in full.

31.  Pursuant to 28 U.S.C. § 2201, this Court is authorized to declare the rights and other legal relations of any interested party seeking such declaration, where an actual controversy exists, as it does here.

32.  As a party to the Settlement Agreement, the Town may seek to enforce the terms of the Settlement Agreement.

33.  In the light of the Tribe's actions, as well as the Commonwealth's December 2, 2013, complaint, an actual controversy has arisen between the Tribe, the Commonwealth, and the Town concerning the Tribe's anticipatory breaches of the Settlement Agreement.

34.  Not only is there no other adequate remedy for the above-detailed injuries, but a declaratory judgment from this Court is otherwise appropriate in this case because such a judgment would remove any uncertainty as to the Tribe's obligations under the Settlement Agreement, allowing all parties to the Settlement Agreement to arrange their affairs with certainty, and thus terminate the present controversy.

Prayer for Relief

WHEREFORE, the Town respectfully requests this Court to enter judgment:

I.   Declaring that the Settlement Agreement is valid and enforceable; that in the Settlement Agreement the Tribe waived any right it may have had to engage in gaming, including under the subsequently-enacted Indian Gaming Regulatory Act ("IGRA").

II.  Declaring that the Settlement Agreement is valid and enforceable, that the Settlement Agreement was not repealed by IGRA; and that, pursuant to the Settlement Agreement, the Tribe may only engage in gaming activity after properly complying with all pertinent regulatory, permitting, and licensing requirements – including all local zoning ordinances and the term of its locally issued land use permits.

TOWN OF AQUINNAH
By its attorneys,

/s/ Ronald H. Rappaport
Ronald H. Rappaport
    BBO No. 412260
rrappaport@rrklaw.net
Reynolds, Rappaport, Kaplan
    & Hackney, LLC
106 Cooke Street, PO Box 2540
Edgartown, MA  02539
(508) 627-3711

                                              */s/   Michael A. Goldsmith*
                                      Michal A. Goldsmith
                                            BBO No. 558971
                                      mgoldsmith@rrklaw.net
                                      Reynolds, Rappaport, Kaplan
                                             & Hackney, LLC
                                      106 Cooke Street, PO Box 2540
                                      Edgartown, MA   02539
                                      (508) 627-3711

Dated:     August 6, 2014

4607-009\US Dist Ct Declaratory Judgment by Town - FINAL 8 6 14.doc

**CERTIFICATE OF SERVICE**

In accordance with Local Rule 5.2(b), I hereby certify that this document filed through the ECF system on August 6, 2014 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                 _/s/ Michael A. Goldsmith_
                                 Michael A. Goldsmith