# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>*Plaintiff*,<br><br>AQUINNAH/GAY HEAD COMMUNITY ASSOCIATION, INC., and TOWN OF AQUINNAH,<br><br>*Intervenor-Plaintiffs*,<br><br>v.<br><br>THE WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH), THE WAMPANOAG TRIBAL COUNCIL OF GAY HEAD, INC., and THE AQUINNAH WAMPANOAG GAMING CORPORATION,<br><br>*Defendants*. | Civil Action<br>No. 13-13286-FDS |

## COMPLAINT OF INTERVENOR-PLAINTIFF AQUINNAH/GAY HEAD COMMUNITY ASSOCIATION, INC.

Intervenor-Plaintiff the Aquinnah/Gay Head Community Association, Inc. ("the AGHCA"), a non-profit corporation organized under the laws of the Commonwealth of Massachusetts, by and through its attorneys, upon information and belief hereby asserts the following complaint against the Wampanoag Tribe of Gay Head (Aquinnah) (hereinafter, "the Tribe"), and its affiliates—the Wampanoag Tribal Council of Gay Head, Inc. (predecessor-in-interest to the Tribe), and the Aquinnah Wampanoag Gaming Corporation.

## Nature of the Action

1. This action was initiated by the Commonwealth of Massachusetts when it filed a

complaint in the Supreme Judicial Court for Suffolk County on December 2, 2013, alleging a breach of contract, and seeking a declaratory judgment.

2. The AGHCA hereby incorporates the factual recitations in the Commonwealth's December 2, 2013, complaint (¶¶1-14 and 20-61).

3. The AGHCA asserts a claim for breach of contract based on recent gaming-related actions taken by the Tribe and its affiliates, and seeks a declaratory judgment—with corresponding injunctive relief—that the Tribe may only engage in gaming activity (i.e., gambling activity) after properly complying with all pertinent regulatory, permitting, and licensing requirements—including the relevant local zoning ordinances as specified in the below-identified Settlement Agreement.

**Parties**

4. The Commonwealth of Massachusetts, the party that initiated this action, is a sovereign state, one of the several United States of America.

5. The AGHCA is a non-profit corporation organized under the laws of the Commonwealth of Massachusetts.

6. The AGHCA's activities are supported by residents—both seasonal and year-round—of the Town of Gay Head (now the Town of Aquinnah, hereinafter "the Town"), and to a lesser extent by residents of other areas of Martha's Vineyard; the AGHCA has no affiliation with the Tribe.

7. The AGHCA received 501(c)(3) status from the Internal Revenue Service in 2004, with the following mission: (a) to gather, maintain, disseminate, and educate the public regarding current and historical information on all aspects of Town functions and to facilitate the implementation of such functions and operations, and to promote discussion and activity to serve

to improve the quality of life for all persons owning property in, residing in, or visiting the Town; (b) to ensure the effective enforcement of all municipal laws and regulations, the proper collection and disbursement of public funds, and the prompt discharge of the Town's administrative responsibilities; (c) to assist the Town's public works (such as the Town library, playgrounds, beaches, and volunteer fire department); (d) to encourage historic and environmental preservation in the Town; and (e) to carry on any other charitable or educational activity consistent with Massachusetts law and the organization's Articles of Incorporation.

8. The AGHCA has previously participated in litigation involving the proper interpretation and application of the contract in question—the below-detailed agreement between the Tribe, the Commonwealth, and the AGHCA—including in this Court. *See, e.g.*, *Building Inspector & Zoning Officer of Aquinnah v. Wampanoag Aquinnah Shellfish Hatchery Corp.*, 443 Mass. 1 (2004) (noting the AGHCA's intervention and full participation in the litigation); Motion to Intervene of the Aquinnah/Gay Head Community Association, *KG Urban Enterprises, LLC v. Patrick*, No. 13-1861 (1st Cir. July 16, 2013) (Dkt. No. 6) (intervention motion filed by the AGHCA); Conditional Motion to Intervene, *KG Urban Enterprises*, No. 11-cv-12070 (D. Mass. Sept. 17, 2013) (Dkt. 52) (same).

9. The Tribe "exists as an Indian tribe within the meaning of Federal law." 52 Fed. Reg. 4193 (Feb. 10, 1987).

10. The Wampanoag Tribal Council of Gay Head, Inc. is the predecessor-in-interest to the Tribe, and was formerly a non-profit corporation organized under the laws of the Commonwealth of Massachusetts.

11. The Aquinnah Wampanoag Gaming Corporation is a wholly-owned entity established by the Tribe, with certain authority explicitly delegated to it by the Tribe, and is thus a related entity to the Tribe.

## Jurisdiction and Venue

12. This action was removed from the Supreme Judicial Court for Suffolk County to this Court by the Tribe.

13. This court has subject matter jurisdiction over this action in accordance with 28 U.S.C. § 1331.

14. This court has personal jurisdiction over all parties to this action.

15. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1), and 1391(b)(2).

## Background

16. In 1974, the Wampanoag Tribal Council of Gay Head, Inc.—then a Massachusetts non-profit corporation without federally-recognized tribal status—commenced an action in this Court against the Town, on the island of Martha's Vineyard, claiming that certain historical transfers of land in Gay Head violated the Indian Non-Intercourse Act, 25 U.S.C. § 177. *See* Comm. Compl. ¶24; *Wampanoag Tribal Council of Gay Head, Inc. v. Town of Gay Head,* No. 74-5826 (D. Mass.); *see also Wampanoag Aquinnah Shellfish Hatchery Corp.*, 443 Mass. 1 (describing history of tribe and litigation).

17. The AGHCA—as the Taxpayers' Association of Gay Head—intervened in this land-transfer litigation.[1]

---

[1] The Taxpayers' Association of Gay Head was formed in 1973; in 2003, it incorporated as a Massachusetts not-for-profit corporation and changed its name to the AGHCA.

18.     In 1983 the Tribe, the Town, the Commonwealth, and the AGHCA entered into a "Joint Memorandum of Understanding Concerning Settlement of the Gay Head, Massachusetts Indian Land Claims" (hereinafter, "the Settlement Agreement"); the Settlement Agreement resolved the land-transfer litigation and its various inter-related claims.  Comm. Compl. ¶25.

19.     The Settlement Agreement represented a carefully struck bargain, through which several sophisticated parties—each represented by legal counsel—resolved their respective differences in a manner that both conferred benefits and placed obligations on all involved.  Comm. Compl. ¶¶26-27.

20.     In the Settlement Agreement the Tribe received exclusive use of hundreds of acres of publicly- and privately-owned land in exchange for relinquishing its aboriginal title and claims.  Comm. Compl. ¶¶28-29.

21.     In the context of this litigation, the Settlement Agreement most pertinently provides in part that:

> The Tribal Land Corporation shall hold the Settlement Lands, and any other land it may acquire, *in the same manner, and subject to the same laws, as any other Massachusetts corporation*…. *Under no circumstances, including any future recognition of the existence of an Indian tribe in the Town of Gay Head, shall the civil or criminal jurisdiction of the Commonwealth of Massachusetts, or any of its political subdivisions*, over the settlement lands, or any land owned by the Tribal Land Corporation in the Town of Gay Head, or the Commonwealth of Massachusetts, or any other Indian land in Gay Head, or the Commonwealth of Massachusetts, *be impaired or otherwise altered*, except to the extent modified in this agreement and in the accompanying proposed legislation.

*Wampanoag Aquinnah Shellfish Hatchery Corp.*, 443 Mass. at 4 (emphasis added).

22.     In 1985, the Commonwealth enacted legislation to implement the settlement, Comm. Compl. ¶33; An Act to Implement the Settlement of the Gay Head Indian Land Claims,

Mass. Stat. 1985, c. 277, and on February 10, 1987, the Tribe was granted federal recognition, *see* 52 Fed. Reg. 4193-4194 (Feb. 10, 1987).

23. After the Tribe gained federal recognition, Congress enacted federal legislation implementing the Settlement Agreement in the Massachusetts Indian Land Claims Settlement Act.  Comm. Compl. ¶35; Wampanoag Tribal Council of Gay Head, Inc., Indian Land Claims Settlement Act of 1987, Pub. L. No. 100-95, *codified at* 25 U.S.C. §§ 1771-1771i.

24. In this legislation, Congress ratified and confirmed the Tribe's existence as an Indian tribe, and also confirmed that, consistent with the terms of the Settlement Agreement, the Tribe is subject to the jurisdiction of the Commonwealth and the Town.  *See* Comm. Compl. ¶36. In particular, the federal implementing act states:

> Except as otherwise expressly provided in this subchapter or in the State Implementing Act, the settlement lands and any other land that may now or hereinafter be owned by or held in trust for any Indian tribe or entity in the town of Gay Head, Massachusetts, shall be subject to the civil and criminal laws, ordinances, and jurisdiction of the Commonwealth of Massachusetts and the town of Gay Head, Massachusetts (***including those laws and regulations which prohibit or regulate the conduct of bingo or any other game of chance***).

25 U.S.C. § 1771g (emphasis added).

25. As detailed more fully in the Commonwealth's December 2, 2013, complaint (¶¶48-61), notwithstanding the express terms of the Settlement Agreement, the Tribe and its affiliates have recently engaged in gaming-related activity, including the adoption of a "Gaming Ordinance," with the expressed intention of conducting gaming on the lands conferred in the Settlement Agreement ("the Settlement Lands") "as soon as possible."

26. Since the filing of the Commonwealth's December 2, 2013, complaint, the Tribe has maintained the validity of the existing "Gaming Ordinance," including by failing to repeal

the ordinance at a vote earlier this year, and reiterated its intention of conducting gaming, with a plan to have a gaming facility "open within a year."

28. The clear import of the Settlement Agreement and the Massachusetts and federal implementing legislation is that the Tribe cannot continue to pursue gaming activities on the Settlement Lands. In the Settlement Agreement, the Tribe waived any sovereign right it may have had to engage in gaming under the subsequently-enacted Indian Gaming Regulatory Act ("IGRA"), and the 1983, 1985, and 1987 agreements and enactments "specifically provide for exclusive state control over gambling." *Narragansett Indian Tribe v. National Indian Gaming Comm'n*, 158 F.3d 1335, 1341 (D.C. Cir. 1998) (construing section 1771 in litigation involving a Rhode Island tribe's similar claim); *see also Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 702 (1st Cir. 1994) (distinguishing the Tribe's federal implementing legislation from similar legislation relating to Indian settlement lands in Rhode Island, and noting that sections 1771e and 1771g "contain corresponding limits on Indian jurisdiction" that save the implementing legislation from implied repeal by IGRA).

## Allegations

### Count I: Breach of Contract

28. The facts and allegations set forth in paragraphs 1 through 27 above are incorporated by reference, as if set forth herein in full.

29. The Settlement Agreement is a valid and enforceable contract that created enduring legal obligations on the part of all parties to the agreement, including the Tribe.

30. Under the Settlement Agreement, the Tribe is prohibited from engaging in any gaming on the lands conferred in the Settlement Agreement.

31. The Tribe's recent gaming-related actions, as detailed above and in the Commonwealth's December 2, 2013, complaint, constitute actual and/or anticipatory breaches of the terms of the Settlement Agreement and the Tribe's obligations thereunder.

32. As a party to the Settlement Agreement, the AGHCA and its members have been harmed by the Tribe's actual and/or anticipatory breaches of the Settlement Agreement.

33. The Tribe's gaming-related actions, as detailed above and in the Commonwealth's December 2, 2013, complaint, are significant: they go to the very essence of the several parties' contractual bargain in the Settlement Agreement.

34. Relief in the form of damages or other restitution is inadequate to remedy the present and potential future injury inflicted by the Tribe's actual and/or anticipatory breaches of the Settlement Agreement.

### Count II: Declaratory Judgment

35. The facts and allegations set forth in paragraphs 1 through 34 above are incorporated by reference, as if set forth herein in full.

36. Pursuant to 28 U.S.C. § 2201, this Court is authorized to declare the rights and other legal relations of any interested party seeking such declaration, where an actual controversy exists, as it does here.

37. As detailed above, the Tribe's actions constitute actual and/or anticipatory breaches of the Settlement Agreement.

38. As a party to the Settlement Agreement, the AGHCA may seek to enforce the terms of the Settlement Agreement.

39. In the light of the Tribe's actions, as well as the Commonwealth's December 2, 2013, complaint, an actual controversy has arisen between the Tribe, the Commonwealth, and

the AGHCA concerning the Tribe's actual and/or anticipatory breaches of the Settlement Agreement.

40. Not only is there no other adequate remedy for the above-detailed injuries, but a declaratory judgment from this Court is otherwise appropriate in this case because such a judgment would remove any uncertainty as to the Tribe's obligations under the Settlement Agreement, allowing all parties to the Settlement Agreement to arrange their affairs with certainty, and thus terminate the present controversy.

### Count III: Injunctive Relief

41. The facts and allegations set forth in paragraphs 1 through 40 above are incorporated by reference, as if set forth herein in full.

42. Pursuant to 28 U.S.C. § 2202, this Court is authorized to grant further necessary or proper relief in support of a declaratory judgment or decree.

43. As detailed above, the Tribe's actions constitute actual and/or anticipatory breaches of the Settlement Agreement.

44. As detailed above, the Tribe has a history of challenging the scope and proper interpretation of the Settlement Agreement, both in and out of court.

45. In light of the Tribe's actions, issuing an injunction would properly support the above-requested declaratory judgment and remove any uncertainty as to the Tribe's obligations under the Settlement Agreement.

**Prayer for Relief**

WHEREFORE, Intervenor-Plaintiff the AGHCA respectfully beseeches this Court to enter judgment:

I.      In favor of the AGHCA, and against the Tribe on all counts;

II.     Declaring that the Settlement Agreement is valid and enforceable; that in the Settlement Agreement the Tribe waived any right it may have had to engage in gaming, including under the subsequently-enacted IGRA; and that the Tribe is in breach of the Settlement Agreement;

III.    Declaring that the Tribe's recently promulgated Gaming Ordinance, and any actions taken pursuant to the same, are in irreconcilable conflict with, and breach, the Settlement Agreement and therefore void;

IV.     Issuing an injunction stating that the Settlement Agreement is valid and enforceable, that the Settlement Agreement was not repealed by IGRA, and that, pursuant to the Settlement Agreement, the Tribe may only engage in gaming activity (i.e., gambling activity) after properly complying with all pertinent regulatory, permitting, and licensing requirements—including the relevant local zoning ordinances as specified in the Settlement Agreement; and

V.      Awarding the AGHCA any other, further relief the Court deems just and proper.

                                        AQUINNAH/GAY HEAD COMMUNITY
                                        ASSOCIATION, INC.

                                        By its attorneys,

                                         /s/ Felicia H. Ellsworth
                                        Felicia H. Ellsworth (BBO# 665232)
                                        Oramel H. Skinner (BBO# 680198)
                                        WILMER CUTLER PICKERING

            HALE AND DORR LLP
            60 State Street
            Boston, Massachusetts 02109
            (617) 526-6000
            Felicia.Ellsworth@wilmerhale.com
            Oramel.Skinner@wilmerhale.com

            James L. Quarles III (BBO# 408520)
            WILMER CUTLER PICKERING
              HALE AND DORR LLP
            1875 Pennsylvania Avenue, N.W.
            Washington, DC 20006
            (202) 663-6000
            James.Quarles@wilmerhale.com

August 6, 2014

## **CERTIFICATE OF SERVICE**

In accordance with Local Rule 5.2(b), I hereby certify that this document filed through the ECF system on August 6, 2014, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth