UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE COMMONWEALTH OF MASSACHUSSETTS,<br><br>*Plaintiff,*<br>and<br><br>AQUINNAH/GAY HEAD COMMUNITY ASSOCIATION, INC. (AGHCA) and TOWN OF AQUINNAH,<br><br>*Intervenor-Plaintiffs,*<br><br>vs.<br><br>THE WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH), THE WAMPANOAG TRIBAL COUNCIL OF GAY HEAD, INC., and THE AQUINNAH WAMPANOAG GAMING CORPORATION,<br><br>*Defendants,* | **CASE NO: 1:13-cv-13286-FDS**<br><br>[Formerly Supreme Judicial Court for Suffolk County, Massachusetts, CIVIL ACTION NO. 2013-0479] |

**ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO COMPLAINT OF THE COMMONWEALTH OF MASSACHUSETTS**

Defendant Wampanoag Tribe of Gay Head (Aquinnah) and Defendant Aquinnah Wampanoag Gaming Corporation (collectively "Defendants") hereby submit their: 1) Answer to Plaintiff Commonwealth of Massachusetts' Complaint (DK# 1, EXH. A), 2) Affirmative Defenses, and 3) Counterclaim for declaratory and injunctive relief. Organizationally, Defendants respond to the correspondingly numbered paragraphs for Plaintiff's Complaint and proceed with sequentially numbered paragraphs, thereafter. Plaintiff also named the Wampanoag Tribal Council of Gay Head, Inc. as a party defendant, alleging that Defendant Wampanoag

1

Tribe of Gay Head (Aquinnah) "includes" Wampanoag Tribal Council of Gay Head, Inc., which no longer exists (DK# 1, EXH. A at Paragraph 11). Defendants deny that allegation (see Paragraph 11 below), but if such allegation is true, and the Tribe has the capacity to answer on behalf of Wampanoag Tribal Council of Gay Head, Inc., then this Answer shall also serve as the Answer for Wampanoag Tribal Council of Gay Head, Inc.

## ANSWER

1. Defendant Tribe admits that it is a federally recognized Indian Tribe, and admits that it has Indian lands located on the western tip of Martha's Vineyard. The remaining allegations in Paragraph One of Plaintiff's Complaint are overly broad statements such that Defendants lack information sufficient to admit or deny them and therefore deny them.

2 through 6.   Defendants deny the allegations in Paragraphs 2 through 6 of Plaintiff's Complaint.

7. Defendants admit that the Tribe adopted a Tribal Ordinance governing the licensing and operation of a gaming establishment, and that the Tribe intends to open a gaming establishment in compliance with that Ordinance, but Defendants otherwise deny the allegations in Paragraph 7 of Plaintiff's Complaint.

8. Paragraph 8 of Plaintiff's Complaint alleges the intent of the Plaintiff Commonwealth of Massachusetts, about which allegation, Defendants have insufficient information to admit or deny it and, therefore, deny it.

## PARTIES

9 Through 10. Defendants admit the allegations in Paragraphs 9 and 10 of Plaintiff's Complaint.

11. Defendants deny the allegations in Paragraph 11 of Plaintiff's Complaint.

12. Defendants admit the allegation in Paragraph 12 of Plaintiff's Complaint.

13. Defendants admit that the Corporation is a political subdivision of the Tribe, but otherwise deny the allegations in Paragraph 13 of Plaintiff's Complaint.

14. Defendants admit the allegations in Paragraph 14 of Plaintiff's Complaint.

## JURISDICTION AND VENUE

15. Defendants deny the allegation in Paragraph 15 of Plaintiff's Complaint.

16 Through 19. Defendants deny the allegations in Paragraphs 16 through 19 of Plaintiff's Complaint.

## FACTS

20 Through 21. Defendants admit the allegations in Paragraphs 20 through 21 of Plaintiff's Complaint.

22. Defendants deny the allegations in Paragraph 22 of Plaintiff's Complaint.

23. Defendants admit the allegations in Paragraph 23 of Plaintiff's Complaint.

24. Defendants admit that the Wampanoag Tribal Council of Gay Head, Inc. sued the town in 1974 claiming that the aboriginal title of the Tribe had never been extinguished, but Defendants otherwise deny the allegations in Paragraph 24 of Plaintiff's Complaint.

25. Defendants admit that on September 23, 1983 the Commonwealth, Wampanoag Tribal Council of Gay Head, Inc., the Town of Aquinnah and the Aquinnah Taxpayers Inc. entered into a Memorandum of Understanding (the "MOU") addressing how to jointly approach Congress to resolve certain litigation, but Defendants otherwise deny the allegations in Paragraph 25 of Plaintiff's Complaint.

26. Defendants lack information sufficient to admit or deny the allegations in Paragraph 26 of Plaintiff's Complaint and therefore deny them.

27. Defendants deny the allegations in Paragraph 27 of Plaintiff's Complaint.

28. Defendants admit that the MOU contemplated that the parties would ask Congress to provide that title to more than 400 acres would be conveyed to a corporation incorporated under the laws of the Commonwealth of Massachusetts, and that contrary to the expectations set forth in the MOU, the federal government took formal action to federally recognize the Tribe, which formal recognition occurred before the passage of the Massachusetts Indian Land Claim Settlement Act of 1987, 25 U.S.C. §§ 1771-1771 ("Settlement Act"). Accordingly, the United States took title to such land in trust for the benefit of the Tribe. Defendants otherwise deny the allegations in paragraph 28 of Plaintiff's Complaint.

29. Defendants deny the allegation in Paragraph 29 of Plaintiff's Complaint.

30. Defendants admit the recitation of provisions of the MOU set forth in Paragraph 30 of Plaintiff's Complaint, but deny that the Tribe made any such agreement and accordingly otherwise deny the allegations contained in Paragraph 30 of Plaintiff's Complaint.

31 Through 32. Defendants deny the allegations in Paragraphs 31 and 32 of Plaintiff's Complaint.

33 Through 34. Defendants lack information sufficient to form a position on the allegations in Paragraphs 33 and 34 of Plaintiff' Complaint, and therefore deny them.

35. Defendants admit that on August 18, 1987, the United States Congress enacted the Settlement Act, but otherwise deny the allegations set forth in Paragraph 35 of Plaintiff's Complaint.

36. Defendants admit that Paragraph 36 of Plaintiff's Complaint correctly sets forth the language in 25 U.S.C. § 1771g, but otherwise deny the allegations set forth in Paragraph 36 of Plaintiff's Complaint.

37. Defendants admit that Paragraph 37 of Plaintiff's Complaint correctly sets forth the language in 25 U.S.C. § 1771e(a), but otherwise deny the allegations set forth in Paragraph 37 of Plaintiff's Complaint.

38. Defendants lack information sufficient to admit or deny the allegations in Paragraph 38 of Plaintiff's Complaint and therefore deny them.

39 through 40. Defendants deny the allegations in Paragraphs 39 and 40 of Plaintiff's Complaint.

41. Defendants admit the allegations in Paragraph 41 of Plaintiff's Complaint.

42. Defendants deny the allegations in Paragraph 42 of Plaintiff's Complaint.

43 Through 44. Upon information and belief, Defendants admit the allegations in Paragraph 43 and 44 of Plaintiff's Complaint.

45. Defendants admit the allegations in Paragraph 45 of Plaintiff's Complaint.

46 Through 47. Defendants deny the allegations in Paragraphs 46 and 47 of Plaintiff's Complaint.

48. Defendants deny the allegations in Paragraph 48 of Plaintiff's Complaint.

49 Through 50. Defendants admit the allegations in Paragraphs 49 and 50 of Plaintiff's Complaint.

51. Defendants admit that Gaming Ordinance No. 2011-01 authorizes the Tribe to authorize, open and operate gaming establishments without first obtaining a Chapter 23K license from the Massachusetts Gaming Commission, but otherwise deny the allegations in Paragraph 51 of Plaintiff's Complaint.

52 through 53. Defendants deny the allegations in Paragraphs 52 and 53 of Plaintiff's Complaint.

54 through 57. Defendants admit the allegations in Paragraphs 54 through 57 of Plaintiff's Complaint.

58. Defendants lack information sufficient to form an answer as to whether the National Indian Gaming Commission (the "NIGC") informed the Plaintiff of the Tribe's submissions, and therefore deny it, but Defendants otherwise admit the allegations in Paragraph 58 of Plaintiff's Complaint.

59. Defendants lack information sufficient to admit or deny the allegations in Paragraph 59 of Plaintiff's Complaint and therefore deny them.

60 Through 61. Defendants admit the allegations in Paragraphs 60 and 61 of Plaintiff's Complaint.

**COUNT ONE**

62. Defendants answers to the allegations set forth in Paragraphs 1 through 61 of Plaintiff's Complaint are incorporated by reference as if set forth herein in response to the allegations in Paragraph 62 of Plaintiff's Complaint.

63 Through 70. Defendants deny the allegations in Paragraphs 63 through 70 of Plaintiff's Complaint.

## COUNT TWO

71. Defendants answers to the allegations set forth in Paragraphs 1 through 70 of Plaintiff's Complaint are incorporated by reference as if set forth herein in response to the allegations in Paragraph 71 of Plaintiff's Complaint.

72 Through 76. Defendants deny the allegations in Paragraphs 72 through 76 of Plaintiff's Complaint.

77. Defendants admit the allegations in Paragraph 77 of Plaintiff's Complaint.

78. Defendants deny the allegations in Paragraph 78 of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

79. Plaintiff's Complaint fails to allege a cause of action over which this Court has subject matter jurisdiction.

### Second Affirmative Defense

80. Plaintiff's Complaint fails to state a claim upon which relief can be granted. The Tribe was not federally recognized at the time that the MOU, upon which Plaintiff's breach of contract claim rests, was executed, and as a sovereign nation, the Tribe is therefore not bound by the terms of the MOU. In addition, the MOU was never intended to be, and was not, a contractually enforceable agreement, as only the United States, which was not a party, could provide the consideration sought by the Plaintiff: the extinguishment of the Tribe's claim of aboriginal title and the imposition of limitations on the Tribe's jurisdiction over the 400 acres the Tribe would purchase in return. These results could not be obtained from the Wampanoag Tribal Council of Gay Head, Inc, but only from the federal government in the Settlement Act. The

MOU was not and was never intended to be, standing alone, a contract or any other form of enforceable "agreement", but rather, as its title clearly indicates, the MOU was intended to be only a memorandum of the general, unenforceable understanding of the parties concerning the legislation they would try to obtain from Congress. Arguing in the alternative, the conditions precedent set forth in the MOU as necessary for the MOU to be binding on the Tribe were never timely satisfied.

### Third Affirmative Defense

81. Plaintiff's Complaint fails to join necessary and indispensible parties as required by Fed. R. Civ. P. 19, specifically the United States of America, which through the NIGC has approved the Tribe's site-specific gaming ordinance and given the Tribe federal authorization under the Indian Gaming Regulatory Act ("IGRA") to conduct Class II gaming on its trust lands. The Plaintiff's Complaint, which seeks to have this Court enjoin the Tribe from gaming on its trust lands, is a direct challenge to this federal authorization, and such challenge cannot be permitted to go forward without the presence as a defendant of the United States.

### Fourth Affirmative Defense

82. Defendants allege as an affirmative defense, tribal sovereign immunity from suit, although Defendants reserve the right to waive their immunity in this litigation if they deem circumstances to be appropriate for such a waiver.

### Fifth Affirmative Defense

83. Defendants allege as an affirmative defense, duress.

**Sixth Affirmative Defense**

84. Defendants allege as an affirmative defense, failure of consideration.

**Seventh Affirmative Defense**

85. Defendants allege as an affirmative defense, illegality.

**COUNTERCLAIM**

Defendants-Counterclaim Plaintiffs the Tribe and the Corporation assert the following counterclaim for declaratory and injunctive relief against the Plaintiff-Counterclaim Defendant the Commonwealth of Massachusetts**.**

86. Defendants-Counterclaim Plaintiffs desire the resolution of the dispute between the Tribe and the Commonwealth over the question of jurisdiction regarding gaming on the Tribe's trust lands. Defendant-Counterclaim Plaintiffs contend that the matter to be resolved is a question of federal law, namely whether Congress' enactment of IGRA and/or the NIGC approval of the Tribe's site-specific Gaming Ordinance repeals or has the effect of restricting the Commonwealth's alleged jurisdiction over gaming that occurs on the Tribe's trust lands. The Commonwealth's Complaint, which frames the dispute as a matter of contract law, is deficient in resolving the actual dispute the Commonwealth has with both the Tribal government and the federal government. Accordingly, Defendants-Counterclaim Plaintiffs bring this Counterclaim properly framing the issue as a question of federal law seeking declaratory and injunctive relief.

## PARTIES

87. Counterclaim Plaintiff the Tribe is a federally recognized Indian Tribe with sovereign regulatory and adjudicatory jurisdiction over approximately 400 acres of land located in Martha's Vineyard, Massachusetts. The legal title to this land is held by the United States of America in trust for the Tribe. The Tribe intends to establish a Class II gaming facility on a portion of this trust land as authorized by the IGRA, 25 U.S.C. §§ 2701 et seq., and the Tribe has applied for and received approval from the NIGC under Sections 2705 and 2710 of the IGRA to do so.

88. Counterclaim Plaintiff the Corporation is a corporation incorporated under tribal law and is a political subdivision of the Tribe that has been directed by the Tribal Council to conduct, pursuant to the IGRA, Class II gaming on the Tribe's lands.

89. Counterclaim Defendant, the Commonwealth of Massachusetts, is a sovereign state of the United States and is a party to a MOU with the Wampanoag Tribal Council of Gay Head, Inc., and a not-for-profit corporation organized under the laws of the Commonwealth. The Commonwealth contends in this lawsuit that pursuant to the MOU, the Wampanoag Tribal Council of Gay Head, Inc. cannot to conduct gaming on the 400 acres of land except as allowed pursuant to state and local law and that the MOU binds the Tribe, despite the fact that the Tribe was not yet recognized or organized under federal law at the time of execution of the MOU.

## JURISDICTION AND VENUE

90. This Court has jurisdiction over the federal questions raised in this Counterclaim pursuant to 28 U.S.C. § 1331 (2006). An actual case or controversy exists between the parties warranting this Court's declaration pursuant to 28 U.S.C. § 2201 (2006).

91. Venue is appropriate in this Court because both governments have their lands and exercise their jurisdiction within the external boundaries of the Commonwealth of Massachusetts.

**FACTS**

92. Congress, in its passage of the IGRA, 25 U.S.C. §§ 2701 et seq., subsequent to the passage of the Massachusetts Indian Land Claim Settlement Act of 1987, 25 U.S.C. §§ 1771-1771 I, repealed those portions of the Settlement Act that purport to grant jurisdiction to the Commonwealth, including its political subdivision, the Town of Aquinnah, regarding gaming on the Tribe's trust lands, or to otherwise restrict the Tribe's authority to govern gaming on its lands subject to tribal and federal law to the exclusion of state and local law. The Tribe and the Corporation seek a declaration to this effect and an injunction barring the Commonwealth from further interference in the Tribe's conduct of Class II gaming on its trust lands on Martha's Vineyard.

93. The NIGC's approval of the Tribe's site-specific Gaming Ordinance constitutes a federal authorization under IGRA, and preempts the application of State regulatory or adjudicatory law. The Tribe and the Corporation seek a declaration to this effect and an injunction barring the State from further interference in the Tribe's conduct of Class II gaming on its trust lands on Martha's Vineyard.

94. Defendants-Counterclaim Plaintiffs restate those factual allegations admitted in their Answer above as if fully set forth herein.

95. The Commonwealth of Massachusetts alleges that it has jurisdiction regarding gaming activities on the Tribe's trust lands to the exclusion of the Tribe and the United States, and that it intends to stop Defendants-Counterclaim Plaintiffs from

proceeding with their plans to open and operate a Class II gaming facility under IGRA and tribal law.

## FIRST CLAIM FOR RELIEF
## (DECLARATORY JUDGMENT)

96. The Tribe and the Corporation re-allege the allegations contained in Paragraphs 86 through 95 of their Counterclaim as if fully set forth herein.

97. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, this Court may declare the rights and other legal relations of any interested party seeking such a declaration.

98. The Commonwealth has threatened to interfere with the Tribe's opening and operation of its Class II gaming facility. Accordingly, an actual and justiciable controversy exists.

99. Accordingly, this Court should declare that Congress, in its passage of the IGRA, 25 U.S.C. §§ 2701 et seq., subsequent to the passage of the Massachusetts Indian Land Claim Settlement Act of 1987, 25 U.S.C. §§ 1771-1771, repealed those portions of the Settlement Act that purport to grant jurisdiction to the Commonwealth, including its political subdivision, Town of Aquinnah, regarding gaming on the Tribe's trust lands, or that otherwise purport to restrict the Tribe's authority to govern gaming on its lands subject to tribal and federal law to the exclusion of state and local law.

## SECOND CLAIM FOR RELIEF
## (DECLARATORY JUDGMENT)

100. The Tribe and the Corporation re-allege the allegations contained in Paragraphs 86 through 99 of their Counterclaim as if fully set forth herein.

101. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, this Court may declare the rights and other legal relations of any interested party seeking such declaration.

102. The Commonwealth has threatened to interfere with the Tribe's opening and operation of its Class II gaming facility. Accordingly, an actual and justiciable controversy exists.

103. Accordingly, this Court should declare that the NIGC's approval of the Tribe's site-specific Gaming Ordinance constitutes a federal authorization under IGRA and preempts the application of state regulatory or adjudicatory law.

### THIRD CLAIM FOR RELIEF
### (INJUNCTIVE RELIEF)

104. The Tribe and the Corporation re-allege the allegations contained in Paragraphs 86 through 103 of their Counterclaim as if fully set forth herein.

105. The Declaratory Judgment Act provides that this Court may order necessary or proper relief based on a declaratory judgment or decree, and that such relief may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

106. Counterclaim-Defendant the Commonwealth of Massachusetts should be enjoined from further interference with the Tribe and the Corporation's conduct of Class II gaming on the Tribe's existing trust lands on Martha's Vineyard or lands to be taken into trust anywhere within the external boundaries of the Commonwealth of Massachusetts.

### PRAYER FOR RELIEF

WHEREFORE Defendants-Counterclaim Plaintiffs respectfully ask this Court enter judgment:

A. In favor of Defendants-Counterclaim Plaintiffs Tribe and Corporation against Plaintiff- Counterclaim Defendant Commonwealth of Massachusetts on all counts.

B. Declaring that Congress, in its passage of the IGRA, 25 U.S.C. §§ 2701 et seq., subsequent to the passage of the Massachusetts Indian Land Claim Settlement Act of 1987, 25 U.S.C. §§ 1771-1771, repealed those portions of the Settlement Act that purport to grant jurisdiction to the Commonwealth, including its political subdivision, Town of Aquinnah, regarding gaming on the Tribe's existing trust lands or on lands to be taken into trust, or that otherwise purport to restrict the Tribe's authority to govern gaming on its lands subject to tribal and federal law to the exclusion of state and local law.

C. Declaring that the NIGC's approval of the Tribe's site-specific Gaming Ordinance constitutes a federal authorization under the IGRA and preempts the application of state regulatory or adjudicatory law.

D. Enjoining Plaintiff-Counterclaim Defendant Commonwealth of Massachusetts from interfering with gaming activities that occur on the Tribe's trust lands.

E. Awarding the Defendants Counterclaim Plaintiffs Tribe and Corporation such other and further relief as this Court deems just and proper.

DATED: August 27, 2014                      Respectfully Submitted,

/s/ Scott Crowell
SCOTT CROWELL (*pro hac vice*)
TRIBAL ADVOCACY GROUP LLP
1487 W. State Route 89A, Suite 8
Sedona, Arizona
Telephone: 425-802-5369
Facsimile: 509-290-6953

BRUCE SINGAL   (BBO #464420)
ELIZABETH MCEVOY   (BB) # 683191)
DONOGHUE, BARRETT & SINGAL
One Beacon Street, Suite 1320
Boston, MA 02108-3106
Telephone: 617-720-5090
Facsimile 617-720-5092


LAEL R. ECHO-HAWK (*pro hac vice*)
GARVEY SHUBERT BARER
1191 Second Ave. 18th Floor
Seattle, Washington 98101
Telephone: 206-816-1355
Facsimile: 206-414-0125

JOHN DUFFY (*pro hac vice*)
JOHN R. CASCIANO, BBO #634725
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., N.W.
Washington, DC 20036
Telephone:  202-429-6268
Facsimile:   202-429-3902

*Attorneys for Proposed Defendants*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)

Undersigned counsel certifies that, pursuant to Local Rule 7.1(a)(2), he has conferred with counsel for the other parties to this action in a good faith effort to resolve or narrow the issue presented by this motion.

Dated: August 27, 2014

/s/ Scott Crowell
SCOTT CROWELL

## CERTIFICATE OF SERVICE

I, Scott Crowell, hereby certify that the ANSWER AND COUNTERCLAIM TO COMMONWEALTH'S COMPLAINT was filed through the ECF System and therefore copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent, via first-class mail, to those indicated as non-registered participants.

Dated: August 27, 2014

/s/ Scott Crowell
SCOTT CROWELL