UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE COMMONWEALTH OF MASSACHUSSETTS,<br><br>*Plaintiff,*<br><br>and<br><br>AQUINNAH/GAY HEAD COMMUNITY ASSOCIATION, INC. (AGHCA) and TOWN OF AQUINNAH,<br><br>*Intervenor-Plaintiffs,*<br><br>vs.<br><br>THE WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH), THE WAMPANOAG TRIBAL COUNCIL OF GAY HEAD, INC., and THE AQUINNAH WAMPANOAG GAMING CORPORATION,<br><br>*Defendants.* | CASE NO: 1:13-cv-13286-FDS<br><br>[Formerly Supreme Judicial Court for Suffolk County, Massachusetts, CIVIL ACTION NO. 2013-0479 ]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(1) AND 12(B)(7) MOTION TO DISMISS INTERVENOR AGHCA'S COMPLAINT FOR LACK OF EFFECTIVE WAIVER OF TRIBAL SOVEREIGN IMMUNITY AND FAILURE TO STATE A CLAIM.** |

**MEMORANDUM OF POINTS AND AUTHORTIES IN SUPPORT OF DEFENDANTS' RULE 12(B) MOTION TO DISMISS INTERVENOR AGHCA'S COMPLAINT FOR LACK OF EFFECTIVE WAIVER OF TRIBAL SOVEREIGN IMMUNITY AND FAILURE TO STATE A CLAIM.**

### I. INTRODUCTION

Defendants[1] Wampanoag Tribe of Gay Head (Aquinnah) and the Aquinnah Wampanoag

---

[1] Although Plaintiff and Intervenors also named the Wampanoag Tribal Council of Gay Head, Inc. as a party defendant, alleging that Defendant Wampanoag Tribe of Gay Head (Aquinnah) "includes" Wampanoag Tribal Council of Gay Head, Inc., which no longer exists, Defendants deny that allegation, but if such allegation is true, and Defendant Wampanoag Tribe of Gay Head

1

Gaming Corporation ("Defendants" or "Tribe") hereby submit to this Court pursuant to Local Rule 7.1(b) this Memorandum of Points and Authorities in Support of Defendants' Motion pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P 12(b)(7) for an Order Dismissing the Complaint filed by Plaintiff-Intervenor Aquinnah/Gay Head Community Association, Inc. (the "AGHCA") (DK# 53)[2] for lack of an effective waiver of tribal sovereign immunity and failure to state a claim.

AGHCA's Complaint should be dismissed for lack of an effective waiver of tribal sovereign immunity. A longstanding and deep body of federal case law makes clear that AGHCA's Complaint must be dismissed if AGHCA cannot establish an effective waiver of the Tribe's sovereign immunity. A previous decision of this Court held that neither (i) the Memorandum of Understanding executed on September 23, 1983 ("MOU") by and among the Commonwealth of Massachusetts ("Commonwealth"), Wampanoag Tribal Council of Gay Head, Inc., the Town of Aquinnah ("Town") and the Aquinnah Taxpayers Inc., nor (ii) the Massachusetts Land Claim Settlement Act of 1987, 25 U.S.C. §§ 1771 et. seq., ("Settlement Act") at issue here, waived or abrogated the Tribe's sovereign immunity from suit. AGHCA relies on state case law that, even if correctly decided, does not stand for the proposition that a private interest such as AGHCA can avail itself of a limited waiver of immunity otherwise available to specied governmental entities. The state case law on which AGHCA relies, however, was wrongly decided, and stands in direct conflict with the prior decision of this Court.

---

(Aquinnah) has the capacity for pleading on behalf of Wampanoag Tribal Council of Gay Head, Inc., then this Motion shall also be considered to be filed on behalf of Wampanoag Tribal Council of Gay Head, Inc.

[2] By separate motion, filed simultaneously herewith, Defendants are filing a Motion to Dismiss all of the Complaints filed by the Commonwealth, Intervenor Plaintiff Town of Aquinnah and Intervenor Plaintiff AGHCA, with leave to amend for failure to join a required party.

Finally, the 1983 MOU upon which AGHCA relies is not an enforceable contract and accordingly AGHCA cannot rely upon that contract to establish a valid waiver of tribal sovereign immunity. The MOU terminated on its express terms in May 1985. Wampanoag Tribal Council of Gay Head, Inc. lacked the capacity to make the contractual obligations in which AGHCA relies. These fundamental flaws also defeat AGHCA's breach of contract theory of liability such that AGHCA's Complaint should also be dismissed for failure to state a claim.

## II. A CLARIFYING STATEMENT OF CONTEXT

At this juncture in the litigation, for three separate reasons, the Tribe is not seeking dismissal of the Complaints filed by the Commonwealth and the Town for lack of an effective waiver of sovereign immunity. The Tribe has preserved the issue, however, by pleading tribal sovereign immunity as an affirmative defense.

First, the Tribe is considering waiving its sovereign immunity from the Complaints filed by the Commonwealth and the Town, which decision will be based in part on the Commonwealth's and Town's responses to the Counterclaims and Rule 19 motion filed simultaneously with this pleading. The Tribe is desirous of a proper judicial determination of its right to govern gaming activities on its lands, and the Counterclaims and Rule 19 Motion are efforts to properly posture the litigation to resolve the correct issues regarding declaratory relief involving all four affected governments (the Tribe, the United States, the Commonwealth and the Town).

Second, the Tribe understands that the issue of abrogation in the context of the Settlement Act is intertwined with the merits of the Declaratory Judgment Action, i.e. if Congress, when enacting IGRA, diminished any jurisdiction that the Commonwealth or the Town had over gaming on the Tribe's trust lands, it follows that any abrogation of tribal sovereign immunity as

to actions by the Commonwealth and/or Town to enforce their laws is similarly diminished. The Tribe's position is that Congress did not expressly state an intent to abrogate tribal sovereign immunity in the passage of the Settlement Act, but the Court need not reach that issue if it rules that Congress impliedly repealed the Commonwealth's and Town's jurisdiction over gaming on the Tribe's trust lands when enacting IGRA. Accordingly, the Tribe has made the tactical decision to address the abrogation issue at the same time as it addresses the merits (which the parties have all represented to this court to likely be disposed of upon cross-motions for summary judgment).

Third, AGHCA is not a government and is not able to rely upon the abrogation issue that is tied to the exercise of governmental jurisdiction. AGHCA relies solely on the flawed theory that the Tribe waived its sovereign immunity under the 1983 MOU. The flaws in that analysis are set forth below and are applied differently to AGHCA, a private party seeking to advance private interests. Accordingly, AGHCA's Complaint is properly dismissed at this early stage of the litigation.

### III. AGHCA's COMPLAINT SHOULD BE DISMISSED FOR LACK OF AN EFFECTIVE WAIVER OF TRIBAL SOVEREIGN IMMUNITY.

#### A. THE DOCTRINE OF TRIBAL SOVEREIGN IMMUNITY

The Wampanoag Tribe of Gay Head (Aquinnah) has not waived its sovereign immunity from the causes of action and requested relief set out in AGHCA's Complaint, either for the Tribe itself, or its political subdivision, Aquinnah Wampanoag Gaming Corporation. Absent such a waiver, the Court lacks jurisdiction to hear AGHCA's claims. In this case, the Defendants are a federally-recognized Indian tribe, the Wampanoag Tribe of Gay Head (Aquinnah), and an economic instrumentality of the Tribe, the Aquinnah Wampanoag Gaming Corporation. As such, each enjoys the full protection of tribal sovereign immunity, which acts as an absolute subject

4

matter jurisdictional bar to suit by AGHCA against both Defendants. *Michigan v. Bay Mills Indian Community*, ___U.S.____, 134 S.Ct, 2024, 2027 (2014)(upholding dismissal on tribal sovereign immunity grounds of State's challenge to Tribe's proposed gaming activities); "*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509 (1991) (tribal sovereign immunity is a jurisdictional bar to suit); *Maynard v. Narragansett Tribe*, 984 F.2d 14 (1st Cir. 1993)("Although sovereign immunity may be waived by the tribe, or abrogated by Congress its relinquishment *cannot be implied* but must be unequivocally expressed"); *United States v. Oregon*, 657 F.2d 1009, 1012 n. 8 (9th Cir. 1981) (tribal sovereign immunity extends to tribal officials acting in their official capacity and within the scope of their authority). Indian Tribes long have been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. *Kiowa Tribe v. Manufacturing Techs*, 523 U.S. 751, 756 (1998); *Turner v. United States,* 248 U.S. 354, 358 (1919); *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58 (1978). Tribal sovereign immunity therefore bars suits against a Tribe absent a clear waiver by the Tribe. *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509 (1991).

Tribal waivers of sovereign immunity are strictly construed. *McClanahan v. Arizona State Tax Commission,* 411 U.S. 164, 174 (1973); *Ramey Construction v. Apache Tribe of the Mescalero Reservation,* 673 F.2d 315, 320 (10th Cir. 1982). ("Because a waiver of immunity is altogether a voluntary act on the part of [a Tribe] it follows that [a Tribe] may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted."); *Missouri River Services v. Omaha Tribe of Nebraska,* 267 F.3d 848, 852 (8th Cir. 2001).

If the entity purporting to waive a tribe's immunity does not have express authority delegated

from the tribe to waive that immunity, the purported waiver is invalid. *Chance v. Coquille Indian Tribe,* 327 OR. 318, 963 P.2d 638 (1998)(The Tribe's CEO lacked authority to waive, therefore the waiver was invalid); *Danka Funding Co. v. Sky City Casino (Pueblo of Acoma),* 329 N.J. Super. 357, 747 A.2d 837 (1999) (waiver ineffective when the Comptroller, not the Council, purportedly waived the Tribe's immunity by executing the lease form containing the forum selection clause.); *World Touch Gaming v. Massena Management (Akwesasne Mohawk),* 117 F.Supp.2d 271 (N.D.N.Y. 2000) (tribe held immune from suit where tribal council did not authorize the senior vice president to waive sovereign immunity, nor did the tribal council expressly waive the tribe's sovereign immunity. Thus, the tribe's sovereign immunity was not waived, and it is immune from suit); *Filer v. Tohono O'Odham Nation Gaming Enterprise,* 212 Ariz 167, 170 (2006) (tribal immunity is a matter of federal law and is not subject to diminution by the states).

**B. The Federal Court case: *Tribe v. MCAD***

This Court previously applied the case law set forth above to the Settlement Act, concluding that there was no waiver of the Tribe's sovereign immunity. *Wampanoag Tribe of Gay Head (Aquinnah) v. Massachusetts Commission Against Discrimination,* 63 F.Supp.2d 119 (D. Mass. 1999)("the *MCAD* case"). The Court granted the Tribe's prayer for relief declaring that the MOU did not waive, and the Settlement Act did not abrogate, the Tribe's sovereign immunity from unconsented suit, and granted declaratory judgment that the Tribe was immune from unconsented suit. *Id.* at 124. The Court reviewed both the question of whether the Tribe waived its immunity and whether Congress abrogated its immunity. *Id.* at 123.  The MOU was thoroughly discussed in the opinion and the Court concluded: "Nothing in the record suggests the kind of unequivocal waiver by the Tribe of its sovereign immunity contemplated by *Santa Clara*

6

*Pueblo". Id.* The *MCAD* Court compared language in the Settlement Act to language in the Rhode Island Indian Claims Settlement Act, 25 U.S.C. § 1708, which the First Circuit Appeals Court interpreted as keeping the Narragansett Tribe's immunity intact regarding suits filed by private parties. *Maynard* 984 F.2d at 16. The *MCAD* Court contrasted that language with language in the Maine Indian Claims Settlement Act, 25 U.S.C. § 1725. The Court noted that Congress could have imposed the same language upon the Tribe that Congress imposed upon the Maine Tribes, expressly abrogating tribal immunity, but deliberately chose not do so. Accordingly, like the Narragansett, Congress did not abrogate the Tribe's sovereign immunity in its passage of the Settlement Act. *Id.* at 124.

**C. The State Court cases: The Shed Case and *Kitras v. Town of Aquinnah***

The Supreme Judicial Court of Massachusetts applied the case law set forth above to the narrow question of whether tribal immunity barred a claim by the building inspector for the Town of Aquinnah to apply and enforce local zoning laws to specific lands known as the Cook lands. *Building Inspector & Zoning Officer of Aquinnah v. Wampanoag Aquinnah Shellfish Hatchery Corp.*, 443 Mass. 1 (2004)('the Shed case"). Looking to the Wampanoag Tribal Council of Gay Head, Inc.'s commitment in the 1983 MOU to specifically subject the Cook lands to the Town's zoning laws, and subject the Cook lands to taxation and alienation under certain circumstances "in the same manner" as non-Indian land, the Massachusetts Court found the language equated to an express waiver of the Tribe's immunity. *Id.* at 13 – 14.

Subsequently, a Massachusetts Appeals Court extended the Shed case to find that the Tribe could be hauled into litigation filed by landowners against the Town of Aquinnah to resolve a number of disputed easements. *Kitras v. Town of Aquinnah,* 64 Mass.App.Ct. 285, 833 N.E.2d 153 (Mass.App. 2005).

To be clear, the Tribe believes that the Shed case and *Kitras* were wrongly decided, and that the *MCAD* case was correctly decided. The Tribe delves into the reasons below. However, this Court need not reach that issue in order to dismiss AGHCA from this lawsuit. Even if the Shed case and *Kitras* were correctly decided, the waiver of immunity is a limited one that allows the Town to exercise the jurisdiction that Congress allowed in the passage of the Settlement Act. The Shed case does not in any way support AGHCA's claim that the Tribe has waived in the MOU, or that Congress has abrogated in the Settlement Act, the Tribe's sovereign immunity from suit to such an extent that a private entity may bring suit against the Tribe without its consent. Immunity waivers are to be narrowly construed. *McClanahan,* 411 U.S. at 174; *MCAD*, 63 F.Supp.2d at 124; *Ramey Construction,* 673 F.2d at 320 (10th Cir. 1982); *Services,* 267 F.3d at 852. Applying this applicable case law to the Shed case, its reach should be limited only to actions brought by the Commonwealth and the Town to enforce applicable state and local law, and its reach should be limited only to the Cook lands. The Shed case makes very clear that it only applies to the Cook lands and no other lands, which under the MOU at ¶ 5 is singled out as being subject to Town laws that do not reach to other Settlement lands. 443 Mass. at 2. Further, the MOU did not contemplate that any of the land at issue, including the Cook lands, would be placed into trust by the United States. Rather it contemplated that the land would be held by yet another non-profit corporation under State law to be known as "The Tribal Land Corporation." MOU at ¶ 2.

Even if the Shed case and *Kitras* were correctly decided, they only support the proposition that the Tribe is not immune from an action filed by the Commonwealth or the Town[3] to enforce

---

[3] In *Kitras*, if the Shed case was correctly decided, the proper procedural move would have been for the Town to join the Tribe into the lawsuit. The question of whether the landowners, as

the Commonwealth's or the Town's jurisdiction over the Tribe's Cook lands. See *Narragansett Tribe v. Rhode Island,* 499 F.3d 16 (1st Cir. 2006), wherein the First Circuit in holding that the Rhode Island Settlement Act should be interpreted as abrogating tribal sovereign immunity in a governmental action to enforce the State's tobacco laws clarified that the opinion did not disturb the First Circuit's prior holding in *Maynard,* which found that the Rhode Island Settlement Act could not be construed to waive or to abrogate the Narragansett Tribe's sovereign immunity in actions filed by private parties. *Id.* at 29.

If the Court believes that it needs to look further into the issue, it should conclude that the Shed case and *Kitras* were wrongly decided for two glaring reasons that do not appear to have been addressed or discussed in either case.

First, the 1983 MOU became void on its face in May, 1985. In unambiguous terms, the MOU, executed in November 1983, provides:

> 2. The Parties agree to the following settlement, all provisions of which are to be considered as inseparable and interdependent except as otherwise specifically provided herein and **which are all conditioned upon requisite favorable action within 18 months of the execution of this settlement by other entities**, **including** appropriate executive and legislative branches of the governments of the Town of Gay Head, the Commonwealth of Massachusetts, and **the United States of America.**

DK# 1 EXH. A to Commonwealth's Complaint at ¶ 2. (emphasis added). The earliest that AGHCA can plausibly argue that Congress took the requisite favorable action regarding the execution of the settlement is August of 1987, when Congress enacted the Settlement Act (DK#1, Commonwealth's Complaint at ¶ 35). By the face of the MOU attached to the Complaint and by the face of AGHCA's Complaint, it is clear that the action of the United States was more

---

opposed to the Town, were the proper party to pursue joinder does not appear to have been raised or addressed.

than two years deficient and untimely. To be clear, the Tribe does not minimize the import of the substance of the 1983 MOU in ascertaining the intent of Congress when enacting the Settlement Act. But this glaring defect in AGHCA's case places the MOU in its proper context. It is not a binding contract. It is a document that informed Congress of the position of affected interests as Congress prepared to deliberate as to how it would exercise its plenary authority over Indian Tribes regarding the aboriginal title of lands within the external boundaries of Massachusetts. *Bay Mills Indian Community*, 134 S.Ct. at 2027 ("Indian Tribes exercise inherent sovereign authority that is subject to plenary control by Congress"). To the degree that the document assists in ascertaining Congressional intent, the Tribe embraces the 1983 MOU. To the degree that the document supposedly serves as a binding contract upon the Tribe, the Tribe rejects the 1983 MOU. The unambiguous condition precedent of the MOU having never been satisfied, the MOU cannot be considered a contract in effect and binding upon the parties, and accordingly, the 1983 MOU cannot serve as or be construed to be an effective waiver of the Tribe's sovereign immunity.

Second, AGHCA's sole basis for claiming that the Tribe's sovereign immunity was waived is its assertion that the Wampanoag Tribal Council of Gay Head Inc., a state non-profit organization, which no longer exists, executed a Memorandum of Understanding with the Town at a time when the Wampanoag Tribe of Gay Head (Aquinnah) was not yet recognized by the federal government. Importantly, AGHCA fails to point to any act on the part of the Tribe, through its governing body, to clearly and unequivocally authorize the state non-profit organization to waive the Tribe's immunity from suit in the first instance. Indeed, because the Tribe was not federally- recognized as of the date of the signing of the Memorandum of Agreement, it would have been literally and factually impossible for the Tribe, as a federally-

recognized Indian tribe, to waive its sovereign immunity, or authorize the waiver of its sovereign immunity, at that time.

The Shed case and *Kitras* are based on the false premise that because the Wampanoag Tribe of Gay Head (Aquinnah) was allegedly the successor in interest to Wampanoag Tribal Council of Gay Head, Inc., the law somehow miraculously and retroactively vested a state non-profit corporation in 1983 with the full reservoir of sovereign tribal rights that are reserved exclusively for federally- recognized Indian Tribes. The Wampanoag Tribe of Gay Head (Aquinnah) was not federally recognized until April 11, 1987. 52 Fed.Reg.4193 (1987). At the time Wampanoag Tribal Council of Gay Head, Inc. executed the MOU in November of 1983, that entity did not have the capacity or the authority to waive tribal sovereign immunity. It was impossible for it to do so, because the Wampanoag Tribal Council of Gay Head, Inc. was not in November of 1983, or at any other time, a federally-recognized Indian Tribe. The case law set forth above includes many instances where waivers were found invalid because the individual or entity purporting to waive lacked the authority to do so. The Shed case and *Kitras* do not address this fundamental flaw in their analysis.

If AGHCA's theory of retroactively vesting Wampanoag Tribal Council of Gay Head, Inc., as it existed in 1983, with the authority to bind the yet-to-be-recognized Wampanoag Tribe of Gay Head (Aquinnah), it would place on its head the long-standing Reserved Powers Doctrine, which mandates that a government may not contractually bind future legislatures and executives in a manner that restricts the government from performing core legislative powers. See *United States v. Winstar Corp.,* 518 U.S. 839, 889 (1996); *Stone v. Mississippi*, 101 U.S. 814 (1880); *Amino Bros. v. United States,* 372 F.2d 485, 491 (Ct.Cl. 1967). It is one matter to argue that Congress in its exercise of its plenary power over Indian Tribes may restrict what a tribal

government may do. What Congress has done regarding the governance of gaming on Indian lands ought to be the crux of this litigation. It is another matter entirely to suggest a state non-profit corporation in 1983, lacking any of the rights and privileges of a federally-recognized Indian Tribe, can contractually bind the core legislative authority of a yet-to-be recognized Indian Tribe.

## IV. AGHCA's COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

AHHCA's Complaint alleges breach on contract relying on the 1983 MOU as both the source of the Tribe's alleged waiver of sovereign immunity, as discussed above, and the basis for a declaration that the Tribe must comply with state law, rather than federal law, regarding the conduct of gaming activities on its trust lands. Assuming for the purpose of argument that the issue could be framed as a breach of contract claim under state law, the two basic principles of contract law discussed in the previous section mandate dismissal for failure to state a claim. The MOU's termination on its express terms in May 1985 not only defeats AGHCA's use of the 1983 MOU as the basis for a sovereign immunity waiver, it defeats the contract theory of liability in its entirety. Similarly, the lack of capacity of Wampanoag Tribal Council of Gay Head Inc., in 1983, to exercise any of the rights and privileges of a federally recognized Indian Tribe, including the capacity to waive tribal sovereign immunity and the capacity to contractually bind a yet-to-be-federally recognized Indian Tribe, defeats any theory of liability sounding in breach of contract. Accordingly, AGHCA's Complaint should also be dismissed for failure to state a claim.

## V. CONCLUSION

For the reasons set forth above, AGHCA's Complaint should be dismissed for lack of an effective waiver of the Tribe's sovereign immunity from unconsented suit and for failure to state a claim upon which relief can be granted.

DATED: August 27, 2014     Respectfully Submitted,


/s/ Scott Crowell
SCOTT CROWELL (pro hac vice)
TRIBAL ADVOCACY GROUP LLP
1487 W. State Route 89A, Suite 8
Sedona, Arizona
Telephone: 425-802-5369
Facsimile: 509-290-6953

BRUCE SINGAL (BBO #464420)
ELIZABETH MCEVOY (BB) # 683191)
DONOGHUE, BARRETT & SINGAL
One Beacon Street, Suite 1320
Boston, MA 02108-3106
Telephone: 617-720-5090
Facsimile 617-720-5092

LAEL R. ECHO-HAWK (pro hac vice)
GARVEY SHUBERT BARER
1191 Second Ave. 18th Floor
Seattle, Washington 98101
Telephone: 206-816-1355
Facsimile: 206-414-0125

JOHN DUFFY (pro hac vice)
JOHN R. CASCIANO, BBO #634725
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., N.W.
Washington, DC 20036
Telephone: 202-429-6268
Facsimile: 202-429-3902

*Attorneys for Proposed Defendants*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)

Undersigned counsel certifies that, pursuant to Local Rule 7.1(a)(2), he has conferred with counsel for the other parties to this action in a good faith effort to resolve or narrow the issue presented by this motion.

Dated: August 27, 2014

/s/ Scott Crowell
SCOTT CROWELL

## CERTIFICATE OF SERVICE

I, Scott Crowell, hereby certify that the MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AGHCA'S COMPLAINT FOR LACK OF JURISDICTION was filed through the ECF System and therefore copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent, via first-class mail, to those indicated as non-registered participants.

Dated: August 27, 2014

/s/ Scott Crowell
SCOTT CROWELL