## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THE COMMONWEALTH OF MASSACHUSETTS,

    *Plaintiff,*

    and

AQUINNAH/GAY HEAD COMMUNITY
ASSOCIATION, INC. and TOWN OF AQUINNAH,

    *Intervenor-Plaintiffs/Counterclaim-Defendants,*

v.

THE WAMPANOAG TRIBE OF GAY HEAD
(AQUINNAH), THE WAMPANOAG TRIBAL
COUNCIL OF GAY HEAD, INC., and THE
AQUINNAH WAMPANOAG GAMING
CORPORATION,

    *Defendants/Counterclaim-Plaintiffs,*

v.

CHARLIE BAKER, in his official capacity as
GOVERNOR, COMMONWEALTH OF
MASSACHUSETTS, et al.,

    *Third-Party Defendants.*

Civil Action
No. 13-13286-FDS

## STIPULATED FACTS NOT IN DISPUTE

Plaintiff Commonwealth of Massachusetts ("Commonwealth"); Defendants-

Counterclaim-Plaintiffs[1] Wampanoag Tribe of Gay Head (Aquinnah) ("Tribe") and the

Aquinnah Wampanoag Gaming Corporation; Intervenor-Plaintiffs/Counterclaim-Defendants the

Town of Aquinnah ("Town") and the Aquinnah/Gay Head Community Association, Inc.

("AGHCA"); and Third-Party Defendants Governor Charlie Baker[2], Attorney General Maura

Healey[3], and Massachusetts Gaming Commission Chairman Stephen Crosby, hereby submit the

following list of stipulated and/or undisputed facts for use for all purposes in this matter.[4]

1.      During all times relevant to this lawsuit—both historically and at the present time
Wampanoag Native Americans have lived on lands on the island of Noepe, also known in
modern times as Martha's Vineyard.  Descendants of those Wampanoag Native Americans, as
well as descendants of other Wampanoag Native Americans in other locales, comprise the
membership of the present day Tribe.

2.      In 1870, the Town was incorporated as Gay Head, Massachusetts; in 1997, its
name was changed to the aboriginal name of Aquinnah.

3.      The Town is located on the western peninsula of Martha's Vineyard.

4.      The Wampanoag Tribal Council of Gay Head, Inc. ("WTCGHI"), a state-
chartered non-profit corporate entity, was founded in 1972.

5.      A true and accurate copy of the WTCGHI's articles of organization are attached

---

[1] Although Plaintiffs named the Wampanoag Tribal Council of Gay Head, Inc.("WTCGHI") as
a party defendant, alleging that Defendant Wampanoag Tribe of Gay Head (Aquinnah)
"includes" Wampanoag Tribal Council of Gay Head, Inc., which no longer exists, Defendants
deny that allegation, but if such allegation is true, and Defendant Wampanoag Tribe of Gay Head
(Aquinnah) has the capacity for pleading on behalf of WTCGHI then this Stipulation shall also
be considered to be filed on behalf of WTCGHI.
[2] Replacing former Governor Deval Patrick
[3] Replacing former Attorney General Martha Coakley
[4] While the parties stipulate to the truth of these facts for all purposes in this matter, they do not
stipulate to their relevance or materiality in connection with this matter.

hereto as Exhibit A.

6.      Although recognized by the Commonwealth of Massachusetts, in 1974, the Tribe was not yet recognized by the United States Government as an Indian tribe with a government to government relationship with the United States.

7.      In 1974, on behalf of the Tribe, the WTCGHI sued the Town in the United States District Court for the District of Massachusetts, asserting aboriginal title to certain lands on Martha's Vineyard and seeking ejectment of record title holders based on violations of the 1790 Non-Intercourse Act. *Wampanoag Tribal Council of Gay Head, Inc. v. Town of Gay Head*, 74-5826-G (D. Mass.) ("1974 Litigation").

8.      The Commonwealth and the AGHCA (as the Taxpayers' Association of Gay Head) intervened in the 1974 Litigation.

9.      In 1981, on behalf of the Tribe, the WTCGHI submitted to the United States Department of the Interior's ("DOI") Bureau of Indian Affairs ("BIA") a petition seeking United States acknowledgment of the Tribe as an Indian tribe with a government to government relationship with the United States.

10.     In 1983, the parties to the 1974 Litigation reached an understanding as to a settlement.

11.     On or about November 25, 1983, the WTCGHI, the Commonwealth, the Town and the AGHCA (as the Taxpayers' Association of Gay Head) entered into a Joint Memorandum of Understanding Concerning Settlement Of The Gay Head, Massachusetts Indian Land Claims ("MOU").[5]

12.     A true and accurate copy of the MOU is attached hereto as Exhibit B.

13.     In 1985, the Commonwealth's General Court enacted "An Act to Implement The Settlement of Gay Head Indian Land Claims," Mass. Stat. 1985, c. 277.

14.     On February 10, 1987, the BIA issued a Final Determination for the Federal

---

[5] This document is also known as "the Settlement Agreement."

Acknowledgment of the Wampanoag Tribal Council of Gay Head, Inc. ("Final Determination").

15.     A true and accurate copy of the February 04, 1987, Final Determination is attached hereto as Exhibit C.

16.     The Tribe achieved federal recognition as an Indian tribe upon publication of the Final Determination in the Federal Register on February 10, 1987.  *See* 52 Fed. Reg. 4193.

17.     A true and accurate copy of the publication of the Final Determination in the Federal Register on February 10, 1987, is attached hereto as Exhibit D.

18.     On August 18, 1987, Congress enacted the Massachusetts Indian Land Claims Settlement Act ("the Federal Act").  *See* Wampanoag Tribal Council of Gay Head, Inc., Indian Land Claims Settlement Act of 1987, Pub. L. No. 100-95, *codified at* 25 U.S.C. §§ 1771-1771i.

19.     Subsequently, title to approximately 485 acres of public and private lands ("the Settlement Lands"), including lands purchased from private parties, were deeded to the United States to hold in trust for the benefit of the Tribe.

20.     True and accurate copies of deeds transferring the Settlement Lands to the United States to be held in trust for the benefit of the Tribe are attached hereto as Exhibit E.

21.     The Settlement Lands are held in trust by the United States for the benefit of the Tribe.

22.     The Commonwealth, the Town, and the Tribe have each exercised jurisdiction over the Settlement Lands pursuant to the provisions of the Federal Act.

23.      In 1988, Congress enacted the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq. ("IGRA").

24.     In 1990, the Tribe adopted the Constitution of the Wampanoag Tribe of Gay Head (Aquinnah).

25.     A true and accurate copy of the Constitution of the Wampanoag Tribe of Gay Head (Aquinnah) is attached hereto as Exhibit F.

26.     In 1997, the Acting Assistant Secretary of Indian Affairs for the DOI, in response

to a request from the Tribe, sent the Tribe a letter addressing whether the Tribe could conduct Class II gaming activities under IGRA on lands it sought to acquire in Fall River, Massachusetts.

27.     A true and accurate copy of the Acting Assistant Secretary of Indian Affairs for the DOI's 1997 letter, addressing whether the Tribe could conduct Class II gaming activities on lands it sought to acquire in Fall River, Massachusetts, is attached hereto as Exhibit G.

28.     On November 22, 2011, Governor Patrick signed into law Chapter 194 "An Act Establishing Expanded Gaming in the Commonwealth."

29.     On March 5, 2012, the Tribe provided correspondence to Governor Deval Patrick requesting that his office negotiate a Class III gaming compact under IGRA. A true and correct copy of this correspondence is attached as Exhibit H.

30.     Also on March 5, 2012, the Tribe provided correspondence to Governor Patrick requesting that his office negotiate a Class III gaming compact under the newly enacted State gaming law. A true and correct copy of this correspondence is attached as Exhibit I.

31.     On March 14, 2012, Governor Patrick, through counsel, requested that the Tribe provide certain additional information in connection with its requests for a compact.  A true and correct copy of this correspondence is attached as Exhibit J.

32.     On March 27, 2012, the Tribe responded to Governor Patrick's letter providing the requested information and further discussing the Tribe's March 5 letters. A true and correct copy of this correspondence is attached as Exhibit K. The Tribe's only existing trust lands are the trust lands on Martha's Vineyard.

33.      On April 20, 2012, Governor Patrick, through counsel, responded by letter to the Tribe's requests for a meeting.  A true and correct copy of this letter is attached as Exhibit L.

34.     On November 12, 2013, the Tribe sent correspondence to Governor Patrick.  A true and correct copy of this letter is attached as Exhibit M.

35.     On December 18, 2013, Governor Patrick, through counsel, wrote to counsel for the Tribe.  A true and correct copy of this letter is attached as Exhibit N.

36.    The Tribe has never applied to the Massachusetts Gaming Commission for a commercial license to operate a gaming establishment of any kind and does not currently possess such a commercial license.

37.    On February 4, 2012, the Tribe passed Resolution 2012-04, adopting Gaming Ordinance No. 2011-01.

38.    A true and accurate copy of Resolution 2012-04, passed by the Tribe on February 4, 2012, is attached hereto as Exhibit O.

39.    A true and accurate copy of Gaming Ordinance No. 2011-01, adopted by the Tribe on February 4, 2012, is attached hereto as Exhibit P.

40.    On November 22, 2011, the Tribe submitted Gaming Ordinance No. 2011-01 to the National Indian Gaming Commission ("NIGC") for review and approval.

41.    A true and accurate copy of the Tribe's cover document accompanying its submissions to the NIGC on November, 22, 2011, in connection with its request for review and approval of Gaming Ordinance No. 2011-01, is attached hereto as Exhibit Q.

42.    On February 21, 2012, the NIGC issued a letter, announcing the approval of Gaming Ordinance No. 2011-01 for gaming on Indian Lands as defined by IGRA.

43.    A true and accurate copy of the NIGC's February 21, 2012, letter relating to Gaming Ordinance No. 2011-01 is attached hereto as Exhibit R.

44.    On April 7, 2012, the Tribe passed Resolution 2012-23, amending Gaming Ordinance No. 2011-01 by changing the definition of "Indian Lands".

45.    A true and accurate copy of Resolution 2012-23, passed by the Tribe on April 7, 2012, is attached hereto as Exhibit S.

46.    On April 12, 2012, the Tribe submitted Resolution 2012-23 and the amended Gaming Ordinance 2011-01 to the NIGC for review and approval.

47.    A true and accurate copy of the Tribe's cover letter accompanying that submission is attached  hereto as Exhibit T.

48.     On July 10, 2012, the Tribe withdrew its request made to the NIGC on April 12, 2012.

49.     A true and accurate copy of the Tribe's correspondence to the NIGC withdrawing its request is attached hereto as Exhibit U.

50.     On May 30, 2013, the Tribe re-submitted a site-specific Gaming Ordinance No. 2011-01, as amended by Resolution 2012-23, to the NIGC for review and approval.

51.     A true and accurate copy of the materials submitted by the Tribe to the NIGC on May 30, 2013, in connection with its request for review and approval of Gaming Ordinance No. 2011-01, as amended by Resolution 2012-23, is attached hereto as Exhibit V.

52.     On August 23, 2013, in response to a June 13, 2013, letter from the NIGC, the DOI's Office of the Solicitor sent a letter to the NIGC regarding "Wampanoag Tribe of Gay Head (Aquinnah) Site-Specific Gaming Ordinance."

53.     A true and accurate copy of the August 23, 2013, letter from the DOI's Office of the Solicitor, regarding "Wampanoag Tribe of Gay Head (Aquinnah) Site-Specific Gaming Ordinance," is attached hereto as Exhibit W.

54.     On August 29, 2013, the NIGC informed the Tribe by letter that Gaming Ordinance 2011-01, as amended by Resolution 2012-23, was approved by the NIGC by operation of law, "to the extent that it is consistent with IGRA."

55.     A true and accurate copy of the NIGC's August 29, 2013, letter relating to Gaming Ordinance 2011-01, as amended by Resolution 2012-23, is attached hereto as Exhibit X.

56.     On August 29, 2013, the Tribe sent a letter to the NIGC's Office of the General Counsel regarding the gaming eligibility of its trust lands.

57.     A true and accurate copy of the Tribe's August 29, 2013, letter to the NIGC's Office of the General Counsel regarding the gaming eligibility of its trust lands is attached hereto as Exhibit Y.

58.     On October 25, 2013, in response to the Tribe's August 29, 2013, letter, the

NIGC's Office of the General Counsel sent a letter to the Tribe regarding "Wampanoag Tribe of Gay Head (Aquinnah) Settlement Lands."

59.    A true and accurate copy of the NIGC Office of the General Counsel's October 25, 2013, letter regarding "Wampanoag Tribe of Gay Head (Aquinnah) Settlement Lands" is attached hereto as Exhibit Z.

The foregoing facts are agreed to and admitted by all parties for all purposes in this matter.[6]  The parties' agreement to this set of stipulated facts shall in no way affect or restrict any party's right to submit additional documents or facts not set forth herein, included but not limited to excerpts from the Congressional Record, other documents constituting legislative history relevant to the enactment of the State and Federal statutes at issue in this matter, and documents created or maintained by relevant Federal agencies such as the DOI and NIGC, nor shall it affect or restrict any party's right to conduct discovery if necessary.

DATED: April 22, 2015                        Respectfully Submitted,

                                             THE WAMPANOAG TRIBE OF GAY HEAD
                                             (AQUINNAH), THE WAMPANOAG TRIBAL
                                             COUNCIL OF GAY HEAD, INC., and THE
                                             AQUINNAH WAMPANOAG GAMING
                                             CORPORATION, by their attorneys,

                                              */s/ Scott Crowell*
                                             SCOTT CROWELL *(pro hac vice)*
                                             CROWELL LAW OFFICE TRIBAL
                                             ADVOCACY GROUP LLP
                                             1487 W. State Route 89A, Suite 8
                                             Sedona, Arizona
                                             Telephone: 425-802-5369
                                             Facsimile: 509-290-6953

                                             BRUCE SINGAL   (BBO #464420)
                                             ELIZABETH MCEVOY   (BBO # 683191)
                                             DONOGHUE, BARRETT & SINGAL
                                             One Beacon Street,Suite 1320

---

[6] While the parties stipulate to the truth of these facts for all purposes in this matter, they do not stipulate to their relevance or materiality in connection with this matter.

Boston, MA 02108-3106
Telephone: 617-720-5090
Facsimile 617-720-5092

LAEL R. ECHO-HAWK (*pro hac vice*)
GARVEY SHUBERT BARER
1191 Second Ave. 18th Floor
Seattle, Washington 98101
Telephone: 206-816-1355
Facsimile: 206-414-0125

JOHN DUFFY (*pro hac vice*)
JOHN R. CASCIANO, (BBO #634725)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., N.W.
Washington, DC 20036
Telephone:  202-429-6268
Facsimile:   202-429-3902


THE COMMONWEALTH OF
MASSACHUSETTS, CHARLIE BAKER,
in his official capacity as GOVERNOR,
COMMONWEALTH OF
MASSACHUSETTS, MAURA HEALEY,
in her official capacity as ATTORNEY
GENERAL, COMMONWEALTH OF
MASSACHUSETTS, and STEPHEN
CROSBY, in his official capacity as
CHAIRMAN, MASSACHUSETTS
GAMING COMMISSION, by their
attorneys

MAURA HEALEY
ATTORNEY GENERAL

*/s/ Juliana de Haan Rice*
Juliana deHaan Rice (BBO # 564918)
Carrie Benedon (BBO # 625058)
Bryan Bertram (BBO # 667102)
Assistant Attorneys General
Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA 02108-1698
(617) 963-2583
Juliana.Rice@state.ma.us
Carrie.Benedon@state.ma.us

9

Bryan.Bertram@state.ma.us

TOWN OF AQUINNAH by its attorneys


*/s/ Ronald H. Rappaport*
Ronald H. Rappaport, (BBO #422260)
Michael A. Goldsmith (558971)
REYNOLDS, RAPPAPORT, KAPLAN
AND HACKNEY, LLC
106 Cooke Street
P.O. Box 2540
Edgartown, MA 02539

AQUINNAH/GAY HEAD COMMUNITY
ASSOCIATION, INC.
By its attorneys,


*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth (BBO# 665232)
Oramel H. Skinner (BBO# 680198)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
Felicia.Ellsworth@wilmerhale.com
Oramel.Skinner@wilmerhale.com

James L. Quarles III (BBO# 408520)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 663-6000
James.Quarles@wilmerhale.com

## CERTIFICATE OF SERVICE

     I, Scott Crowell, hereby certify that the STIPULATED FACTS NOT IN DISPUTE  was filed through the ECF System and therefore copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent, via first-class mail, to those indicated as non-registered participants.

Dated: April 22, 2015

                         */s/ Scott Crowell*
                         SCOTT CROWELL