UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| The COMMONWEALTH OF MASSACHUSETTS,<br><br>    *Plaintiff*,<br><br>and<br><br>The AQUINNAH/GAY HEAD COMMUNITY ASSOCIATION, INC. (AGHCA) and TOWN OF AQUINNAH,<br><br>    *Intervenor/Plaintiffs*,<br><br>v.<br><br>The WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH), et al.,<br><br>    *Defendants*<br><br>and<br><br>CHARLES D. BAKER, in his official capacity as GOVERNOR, COMMONWEALTH OF MASSACHUSETTS, et al.<br><br>    *Third-Party Defendants.* | No: 1:13-cv-13286-FDS |

**COMMONWEALTH OF MASSACHUSETTS' REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# ARGUMENT[1]

I.   **The Testimony Presented to the 1986 Congress Supports a Finding of Congressional Intent that Gaming Would Not Then or in the Future be Permitted on the Settlement Lands.**

In its opening memorandum, the Commonwealth demonstrated that certain Congressional testimony and legislative history indicated a clear Congressional intent not to impliedly repeal the Massachusetts Settlement Act as it related to gaming.  *See* Dkt. # 113, at pp 6-7.  Although the Commonwealth pointed to certain 1986 records of the 99th Congress, and the Massachusetts Settlement Act was subsequently passed in 1987 by the 100th Congress, the legislative history is nonetheless relevant and persuasive.  Congress had been considering legislation relating to Indian gaming since 1983, well before passage of the Massachusetts Settlement Act, 25 U.S.C. § 1771, *et seq.*, and therefore the impact of the Massachusetts Settlement Act on the Tribe's ability to engage in gaming activities on the Settlement Lands was certainly of concern to Congress in 1986 as well as in 1987.

The Wampanoag Tribal Corporation's president, Gladys A. Widdis, testified at a hearing before the Senate Committee on Indian Affairs that "we are aware of the growing concern in Congress regarding the issue of gaming on reservations... We recognize and accept that no gaming on our lands is now or will in the future be possible."  S. Hrg. 99-688, Hearing Before the United States Senate Committee on Indian Affairs on Senate Bill 1452 (Apr. 9, 1986)[2].  The Community Association testified likewise.  *Id.*[3]  Although such testimony was presented to a Senate Committee of the 99th Congress, it nonetheless presents an unequivocal statement of the

---

[1] The Commonwealth incorporates herein by reference the reply memoranda filed by the Aquinnah/Gay Head Community Association, Inc., and the Town of Aquinnah.

[2] Excerpt attached to the Declaration of Bryan Bertram in Support of Plaintiff Commonwealth of Massachusetts' Motion for Summary Judgment, Dkt. # 115-1, p. 99.

[3] Excerpt attached to the Declaration of Bryan Bertram in Support of Plaintiff Commonwealth of Massachusetts' Motion for Summary Judgment, Dkt. # 115-1, pp. 34, 160-161.

Tribe's position and representations to Congress immediately prior to the passage of the Settlement Act the following year. There is no indication that the Tribe's, or anyone else's, position changed in the intervening months.

Furthermore, although the language of the Settlement Act as considered in 1986 was amended before the Settlement Act was ultimately passed in 1987, the amendments indicate that Congress had considered and relied on the testimony of the parties. Specifically, the Settlement Act language was amended in 1987 to expressly subject the Settlement Lands to the Commonwealth's and Town's laws and regulations that "prohibit or regulate the conduct of bingo or any other game of chance," language that had not existed in the 1986 version of the bill (prior to the testimony cited by the Commonwealth). 25 U.S.C. § 1771g. Therefore, far from the 1986 Congressional records being irrelevant, as the Tribe suggests (*see* Dkt. # 133, p. 7), such legislative history suggests that the 100th Congress considered and incorporated the contributions of the previous Congress, and the testimony submitted to it. Moreover, the fact that the 100th Congress incorporated the testimony presented the previous year as to the Massachusetts Settlement Act at the same time it was considering and debating IGRA (also enacted by the 100th Congress) further demonstrates that the 100th Congress intended for both laws to co-exist and be reconciled.

**II.     The First Circuit in *Passamaquoddy* Confirmed That IGRA Does Not Occupy the Field of Indian Gaming When Another Federal Act Also Speaks on the Matter.**

Contrary to the Tribe's assertions that IGRA occupies the field of gaming on Indian lands and preempts state and local jurisdiction over gaming (*See* Dkt. # 133, pp. 14-15), the First Circuit has held in no uncertain terms that IGRA does not occupy the field of Indian gaming when another federal law also speaks to the subject and the two laws can be reconciled. *Passamaquoddy Tribe v. State of Maine*, 75 F.3d 784, 791 (1st Cir. 1996). In *Passamaquoddy*,

the First Circuit rejected the proposition that the comprehensiveness of IGRA indicates an intent to impliedly repeal another federal law that speaks to the same subject matter. *Id.* at 792. The Maine Settlement Act at issue in *Passamaquoddy* did not specifically address gaming, but it did contain a savings clause specifying that no subsequently enacted federal legislation for the benefit of Indian tribes shall be applicable to the State of Maine unless expressly stated. *Id.* at 787. The court, therefore, held that, where IGRA did not expressly and unequivocally apply its terms to the State of Maine, the two laws were not irreconcilable, and IGRA did not impliedly repeal the contested portion of the Maine Settlement Act. *Id.* at 793. Indeed, "Congress has not declared the Gaming Act to be 'exclusive' of other potentially applicable legislation." *Id.* at 792. The Congressional debate over IGRA presented no "signposts" demonstrating an intent to preempt other applicable federal laws. *Id.*

Likewise, the Massachusetts Settlement Act contains a specific provision subjecting the Settlement Lands to State and local "laws and regulations which prohibit or regulate the conduct of bingo or any other game of chance." *See* 25 U.S.C. § 1771e. As was the case with Maine, nothing in IGRA, or in its legislative history, expressly and unequivocally applies its terms to the Massachusetts Settlement Lands so as to impliedly repeal a contrary provision in the Settlement Act. And as was the case for Maine, IGRA is not rendered meaningless if it excludes the Massachusetts Settlement Lands. *See Passamaquoddy*, 75 F.3d at 792. This conclusion finds further support in the D.C. Circuit's decision in *Narragansett Indian Tribe v. Nat'l Indian Gaming Comm'n* ("*Narragansett II*"), which recognized that several tribes, including the Wampanoag Tribal Council (Aquinnah), are excluded from IGRA applicability and are instead subject to exclusive state control over gaming. 158 F.3d 1335, 1341 (D.C. Cir. 1998). This Court can and should easily conclude, as did the First Circuit, that IGRA and the Massachusetts

Settlement Act stand in concert: IGRA applies in all cases except where another federal law provides otherwise. Thus, the two laws stand in concert, there is no irreconcilable conflict, and IGRA neither occupies the field of Indian gaming nor impliedly repeals the Massachusetts Settlement Act.

### III. The Fifth Circuit's Decision in *Ysleta* Further Supports the Conclusion That IGRA Did Not Impliedly Repeal Relevant Portions of the Massachusetts Settlement Act.

The Fifth Circuit's decision in *Ysleta del Sur Pueblo v. State of Texas,* previously cited by the Commonwealth, represents a common-sense approach to gauging implied repeal that is worthy of this Court's consideration. *See* Dkt. # 113 at pp. 10, 12; 36 F. 3d 1332 (5th Cir. 1994). The Tribe does not make its own argument against application of that case in its Opposition, but merely "incorporates by reference" the August 23, 2013, letter of the Department of the Interior ("DOI") that it favors so heavily. The Court has previously recognized that this opinion letter has no legal effect in these proceedings, *see* Dkt. # 31 at p. 7 n.6, and it should decline to be guided by DOI's faulty reading of the *Ysleta* decision.

In the footnote that is its sole mention of *Ysleta*, the Tribe relies on pages 6-7, note 95, page 17, and note 133 of the DOI letter. *See* Dkt. # 133 at p. 5 n.3. At pages 6-7, DOI engages in no discussion of the case, but merely cites it as one of three examples in which circuit courts have considered whether IGRA impliedly repealed state-specific settlement acts (*Narragansett I* and *Passamaquoddy* being the other two). *See* Dkt. # 107-23 at pp. 6-7. Next, in note 95, DOI invokes its own 1997 opinion letter, which is attached to the parties' Stipulated Facts Not in Dispute as Exhibit G. *See* Dkt. # 107-7. That letter, however, lacks any relevance to the present analysis because it was aimed exclusively at considering the permissibility of tribal gaming *outside* the Settlement Lands. *See id.* (considering whether Tribe could game on to-be-acquired Fall River land and drawing distinction between Settlement Lands—which are expressly subject

5

to Massachusetts Settlement Act's "bingo-and-other-games-of-chance" restriction, and other land—which is not).[4]

On page 17 and note 133, DOI finally attempts to distinguish *Ysleta*. This Court should disregard its weakly reasoned, result-driven opinion. As is generally set forth in the Commonwealth's opposition to the Tribe's motion for summary judgment, DOI's letter lacks sufficient analytical rigor to warrant judicial deference. *See* Dkt. # 131 at pp. 14-16. More specifically, its treatment of *Ysleta* dispenses with any recognition of the significant similarities between the settlement act at issue there and the one at issue here.

The Fifth Circuit considered the specific gaming-related language in 25 U.S.C. § 1300g, Ysleta del Sur Pueblo: Restoration of Federal Supervision ("Restoration Act"). *Ysleta*, 36 F. 3d at 1327. The relevant section provides:

> All gaming activities which are prohibited by the laws of the State of Texas are prohibited on the reservation and on the lands of the tribe. Any violation of the prohibition provided in this subsection shall be subject to the same civil and criminal penalties that are provided by the laws of the State of Texas. The provisions of this subsection are enacted in accordance with the tribe's request in Tribal Resolution No. T.C.-02-86 which was approved and certified on March 12, 1986.

*Ysleta*, 36 F.3d. at 1332; 25 U.S.C. § 1300g-6. This language plainly prohibits the Ysleta del Sur Pueblo Tribe from conducting gaming that is not licensed or permitted by the State of Texas. The Fifth Circuit concluded that this prohibition of state-unlicensed gaming rendered the Restoration Act more specific than IGRA on the matter of the tribe's right to conduct gaming and that, as a result, IGRA did not impliedly repeal the Restoration Act. *Ysleta*, 36 F. 3d at 1335 ("With regard to gaming, the Restoration Act is a specific statute, whereas IGRA is a general one.") Where IGRA was enacted less than one year after the Restoration Act and by the same

---

[4] The Commonwealth does not concede that the bingo prohibition of Section 1771g would not apply to lands other than the Settlement Lands, but that question is not presented here.

Congress, the Fifth Circuit reasoned, Congress's "clear intention [was] that IGRA is not to be the one and only statute addressing gaming on Indian lands."). *Id.*

The Massachusetts Settlement Act expressly subjects the Settlement Lands to state and local laws regulating gaming. *See* 25 U.S.C. § 1771g (Settlement Lands in Gay Head "shall be subject to the civil and criminal laws, ordinances, and jurisdiction of the Commonwealth of Massachusetts and the town of Gay Head, Massachusetts (including those laws and regulations which prohibit or regulate the conduct of bingo or other games of chance)." As such, like the Restoration Act, it plainly bars the Tribe from using the Settlement Lands to conduct gaming that is not licensed and permitted by the Commonwealth of Massachusetts and the Town of Aquinnah. The same Congress that had enacted the Restoration Act and IGRA also enacted the Massachusetts Settlement Act. And, as the Commonwealth showed in its motion for summary judgment, this Congress took pains to implement the shared will of the settlement parties with respect to gaming on the Settlement Lands, as it had in the Restoration Act. *See* Dkt. # 113 at pp. 7-8; 25 U.S.C. § 1771g; 25 U.S.C. § 1300-6 (gaming restriction enacted at tribe's request). The Massachusetts Settlement Act is every bit as specific as the Restoration Act with regard to gaming on the Settlement Land and all the reasons that supported the Fifth Circuit's conclusion that IGRA did not impliedly repeal the Restoration Act counsel the same result here. DOI's choice to remain "unconvinced" of the similarity of the statutes at issue, *see* Dkt. # 107-23 at 17, does not warrant this Court's attention.

## **CONCLUSION**

For the reasons set forth above, the Commonwealth of Massachusetts respectfully requests that this Court enter GRANT the Commonwealth's Motion for Summary Judgment and DENY the Tribe's Motion for Summary Judgment.

Respectfully submitted,

>THE COMMONWEALTH OF MASSACHUSETTS,
>
>By and through its attorney,
>
>MAURA HEALEY
>ATTORNEY GENERAL
>
>*/s/ Juliana deHaan Rice*
>Juliana deHaan Rice (BBO # 564918)
>Carrie Benedon (BBO # 625058)
>Bryan Bertram (BBO # 667102)
>Assistant Attorneys General
>Government Bureau
>Office of Attorney General Martha Coakley
>One Ashburton Place
>Boston, MA 02108-1698
>(617) 963-2583
>Juliana.Rice@state.ma.us
>Carrie.Benedon@state.ma.us
>Bryan.Bertram@state.ma.us

Dated:  August 6, 2015


## CERTIFICATE OF SERVICE

I, Bryan Bertram, hereby certify that on this 6th day of August, 2015, I filed the foregoing document through the Electronic Case Filing (ECF) system and thus copies of the foregoing will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent, via first-class mail, to those indicated as non-registered participants.

>*/s/ Bryan Bertram*