UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE COMMONWEALTH OF MASSACHUSETTS, | **CASE NO: 1:13-cv-13286-FDS** |
| *Plaintiff,* | |
| and | [Formerly Supreme Judicial Court for Suffolk County, Massachusetts, CIVIL ACTION NO. 2013-0479 ] |
| AQUINNAH/GAY HEAD COMMUNITY ASSOCIATION, INC. (AGHCA) and TOWN OF AQUINNAH, | |
| *Intervenor-Plaintiffs,* | **AQUINNAH'S MOTION TO RECONSIDER** |
| **vs.** | |
| THE WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH), THE WAMPANOAG TRIBAL COUNCIL OF GAY HEAD, INC., and THE AQUINNAH WAMPANOAG GAMING CORPORATION, | **ORAL ARGUMENT REQUESTED** |
| *Defendants.* | |
| and | |
| DEVAL PATRICK, in his official capacity as GOVERNOR, COMMONWEALTH OF MASSACHUSETTS, MARTHA COAKLEY, in her official capacity as ATTORNEY GENERAL, COMMONWEALTH OF MASSACHUSETTS, and STEPHEN CROSBY in his official capacity as CHAIRMAN, MASSACHUSETTS GAMING COMMISSION, | |
| *Third-Party Defendants.* | |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................ 1

II.     STANDARD OF REVIEW................................................................................4

III.    THE TEXAS DEVELOPMENTS CONSTITUTE NEWLY-DISCOVERED
        EVIDENCE AND NEW DEVELOPMENTS IN THE LAW...........................................5

IV.     ARGUMENT....................................................................................................6

        A.      The October NIGC Approvals and the Solicitor's Opinion re Texas
                Developments Confirm that the United States Will Not Relinquish its
                Jurisdiction over the Tribe's Class II Gaming Activities on Indian Lands.............6

        B.      The October NIGC Approvals and the Solicitor's Opinion re Texas
                Developments Support a Different Interpretation of the Legislative History
                and Sequence of Events in the 100th Congress....................................................12

V.      CONCLUSION................................................................................................15

i

# TABLE OF AUTHORITIES

## CASES

*Akiachak Native Community v. Jewell,*
  995 F. Supp. 2d 1 (D.D.C. 2013) ................................................................. 10

*Alabama-Coushatta Tribes of Texas v. Texas,*
  208 F. Supp. 2d 670 (E.D. Tex. 2002), *aff'd,* 66 Fed. Appx. 525, 2003 WL 21017542 (5th Cir.
  2003) ................................................................................................... 3, 6, 15

*Bitcliffe v. CitMortgage, Inc.,*
  772 F.3d 925 (1st Cir. 2014) ....................................................................... 4

*California v. Cabazon Band,*
  480 U.S. 202 (1987) .................................................................................... 7

*Chevron v. Natural Resources Defense Council,*
  467 U.S. 837 (1984) .................................................................................... 9

*Cochran v. Quest Software, Inc.,*
  328 F.3d 1 (1st Cir. 2003) ........................................................................... 4

*F.D.I.C. v. World Univ., Inc.,*
  978 F.2d. 10 (1st Cir. 1992) ..................................................................... 4, 5

*Jorge Rivera Surillo & Co., Inc. v. Falconer Glass Industries, Inc.,*
  37 F.3d 25 (1st Cir. 1994) ....................................................................... 4, 5

*Mudge v. Bank of America, N.A.,*
  2014 WL 5431357 (D.N.H. 2014) ............................................................... 4

*Nat'l Cable and Telecomms. Ass'n v. Brand X Internet Servs.,*
  545 U.S. 967 (2005) .................................................................................... 8

*National Metal Finishing Co. Inc. v. Barclays American/Commercial, Inc.,*
  899 F.2d 119 (1st Cir. 1990) ................................................................... 4, 5

*Northern Arapaho Tribe v. Hodel,*
  808 F.2d 741 (10th Cir. 1987) .................................................................... 7

*Palmer v. Champion Mortgage,*
  465 F.3d 24 (1st Cir, 2006) ......................................................................... 4

*Passamaquoddy Tribe v. Maine*,
  75 F.3d 784 (1996)........................................................................................ 7, 10

*Rojas-Perez v. Holder*,
  699 F.3d 74 (1st Cir. 2012).............................................................................. 8

*Ruiz Rivera v. Pfizer Pharm., LLC*,
  521 .F.3d 76 (1st Cir. 2008)............................................................................. 4

*Shea v. Porter*,
  56 F. Supp. 3d 65 (D. Mass. 2014) ............................................................... 4, 5

*Skidmore v. Swift Co.*,
  323 U.S. 134 (1944)........................................................................................ 9

*State of Texas v. Ysleta del Sur Pueblo*,
  Case # 3:99-cv-00320-KC (W.D. Tex. filed Sept. 9, 1999) .......................... 6, 7, 15

*Sun Capital Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund*,
  724 F.3d 129 (1st Cir. 2013)............................................................................ 10

*Texas v. Ysleta del Sur Pueblo*,
  36 F.3d 1325 (5th Cir. 1994) ........................................................................... 3, 6

*United States v. Mead Corp.*,
  533 U.S. 218 (2001)......................................................................................... 10

**STATUTES**

5 U.S.C. §§ 701 ET SEQ. ..................................................................................... 9

15 U.S.C. § 1175.................................................................................................... 12

25 U.S.C. § 2 ......................................................................................................... 7

25 U.S.C. § 476...................................................................................................... 10

25 U.S.C. §§ 1701-16 ........................................................................................... 14

25 U.S.C. § 1735.................................................................................................... 14

Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq. ("IGRA").................. *passim*

Texas del Sur Pueblo and Alabama and Coushatta Tribes of Texas Restoration Act, Pub. L. No.
  100-89, 101 Stat. 666 (codified at 25 U.S.C. §§ 1300g et seq. and 25 U.S.C. §§ 731 et seq.)... 2

Wampanoag Tribal Council of Gay Head, Inc., Indian Land Claims Settlement Act of 1987, Pub.L. No. 100-95, 101 Stat. 704 (codified at 25 U.S.C. § 1771 et seq.)................................. 2

**OTHER AUTHORITIES**

Sen. John McCain, 140 C.R. 11235 (1994) ............................................................................... 10

**RULES**

Fed. R. Civ. P. 19(a)(1)(B)(ii)................................................................................................. 9

Rule 52(b) .............................................................................................................................. 5

Fed. R. Civ. P. 59 .......................................................................................................... *passim*

Fed. R. Civ. P. 59(e) ............................................................................................................. 4

Defendants[1] Counterclaimants Wampanoag Tribe of Gay Head (Aquinnah) and the Aquinnah Wampanoag Gaming Corporation (collectively "Aquinnah" or "Tribe"), pursuant to Fed. R. Civ. P. 59, move to alter or amend the February 27, 2015 Order denying the Tribe's Rule 19 Motion (Doc. 95), and the November 13, 2015 Memorandum and Order on Motions for Summary Judgment (Doc. 151) (collectively referred to herein as the "Orders").

## I.      INTRODUCTION

The Tribe seeks reconsideration of the Orders based on the National Indian Gaming Commission's (the "NIGC") October, 2015 approval of separate Class II Gaming Ordinances for the Alabama-Coushatta Tribe of Texas and the Ysleta del Sur Pueblo (collectively referred to herein as the "Texas Tribes", and the approvals by the NIGC relative to the Texas Tribes being collectively referred to herein as the "Texas Developments"). Through the Texas Developments, the federal government has sent a clear message that it intends for the NIGC to exclusively regulate Class II gaming, as defined under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq. ("IGRA"), on the Indian lands of the Texas Tribe to the exclusion of the State of Texas. This newly-discovered evidence and corresponding developments in law compel the Tribe to file for reconsideration of this Court's Orders.[2] The Tribe respectfully believes that several material errors have been committed by the Court in this litigation to date, and the Tribe has respectfully

---

[1] Although Plaintiffs named the Wampanoag Tribal Council of Gay Head, Inc. as a party

[2] Although the Tribe is proceeding on the assumption that the November 13, 2015 Order (Doc. 151) is the final judgment in this matter, triggering the thirty-days by which a Notice of Appeal must be filed, the language of the Order is not clear that it is intended to be a Final Judgment. The Commonwealth's counsel has indicated to the Tribe's counsel that it intends to seek a clarifying Order in the form of an express final judgment. If the Order is, indeed, the Final Judgment, the time for appeal is stayed by the timely filing of this Rule 59 motion. If the Order is not, indeed, the Final Judgment, this motion for reconsideration is timely as being brought in a reasonable amount of time.

determined that it will appeal to the federal Court of Appeals for the First Circuit, assuming that this Court's judgment is not corrected on reconsideration. However, this Rule 59 Motion is properly contained to the impact and application of the newly-discovered evidence and new legal developments. Some overlap of prior arguments is inevitable because the Texas Developments shed new and additional light on the Court's errors.

The parallels between the Texas Developments and the instant case are significant and material. Aquinnah and the Texas Tribes have all grappled with language, contained in federal statutes passed in 1987 (collectively referred to herein as the "Pre-IGRA Statutes"), which the Commonwealth of Massachusetts (the "Commonwealth") and the State of Texas ("Texas"), respectively, maintain excludes Aquinnah and the Texas Tribes from conducting gaming under IGRA. Congress enacted IGRA in 1988, less than a year after passage of each of the Pre-IGRA statutes. The Commonwealth does not object to one Indian tribe, the Wampanoag Mashpee, conducting gaming within the exterior boundaries of the Commonwealth, while simultaneously and vigorously opposing Aquinnah conducting gaming within its exterior state boundaries, just as Texas does not object to one Indian tribe, the Traditional Kickapoo, conducting gaming within the exterior boundaries of Texas, while simultaneously and vigorously opposing the Texas Tribes conducting gaming within its exterior state boundaries. Just as the Commonwealth has massively expanded non-Indian gaming since the passage of the Settlement Act[3], Texas has massively expanded non-Indian gaming since the passage of the Restoration Act[4]. Just as the Commonwealth is litigating the question of whether the Settlement Act precludes Aquinnah from

[3] Wampanoag Tribal Council of Gay Head, Inc., Indian Land Claims Settlement Act of 1987, Pub.L. No. 100-95, 101 Stat. 704 (codified at 25 U.S.C. § 1771 et seq.).

[4] Texas del Sur Pueblo and Alabama and Coushatta Tribes of Texas Restoration Act, Pub. L. No. 100-89, 101 Stat. 666 (codified at 25 U.S.C. §§ 1300g et seq. and 25 U.S.C. §§ 731 et seq.).

conducting gaming under IGRA, without including the federal government in the litigation, Texas has litigated the question of whether the Restoration Act precludes the Texas Tribes from conducting gaming under IGRA, without including the federal government in the litigation. Just as the Commonwealth has currently prevailed in its litigation with Aquinnah (Doc. 151), Texas has prevailed in its litigation with the Texas Tribes. *See Texas v. Ysleta del Sur Pueblo*, 36 F.3d 1325 (5th Cir. 1994); *Alabama-Coushatta Tribes of Texas v. Texas*, 208 F. Supp. 2d 670 (E.D. Tex. 2002), *aff'd*, 66 Fed. Appx. 525, 2003 WL 21017542 (5th Cir. 2003). Just as the NIGC approved the Class II Gaming Ordinance for Aquinnah based upon a formal opinion of the Solicitor for the Department of the Interior (the "DOI"), the NIGC has approved Class II gaming ordinances for the Texas Tribes based upon a formal opinion of the Solicitor for the DOI.

In Section IV(A) below, the Tribe demonstrates that the Texas Developments provide newly-discovered evidence and new legal developments regarding the federal government's position that the Tribe's conduct of gaming remains squarely under IGRA, and not the Settlement Act.  The Texas Developments, when viewed in the proper context, should cause this Court to reconsider its decision (Doc. 95) denying the Tribe's Rule 19 motion that the case be dismissed unless the NIGC is joined as a party.  Further, the NIGC's action of approving Aquinnah's Class II Gaming Ordinance and the opinions issued by the DOI Solicitor and the NIGC General Counsel, where the gaming ordinance approvals in the Texas Developments, were similarly based on an opinion issued by the DOI Solicitor, should cause this Court to reconsider its determination that the NIGC and DOI actions taken in the Fall of 2013 with respect to Aquinnah are to be given no deference by this Court.

In Section IV(B) below, the Tribe demonstrates that the Texas Developments provide newly-discovered evidence and new law that should cause this Court to reconsider its analysis

that the legislative history and context of the Settlement Act and IGRA support a finding of no implied repeal of the Settlement Act, and its determination that the Settlement Act is unambiguous as to the inapplicability of the later-in-time enacted IGRA to Aquinnah Indian lands.

## II.      STANDARD OF REVIEW

This Court has "substantial discretion and broad authority" to grant a motion for reconsideration pursuant to Fed. R. Civ. P 59(e). *Ruiz Rivera v. Pfizer Pharm.*, *LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008); *Shea v. Porter*, 56 F. Supp. 3d 65, 79 (D. Mass. 2014). A motion for reconsideration will be granted upon a showing of (1) a "manifest error of law," (2) new evidence, or (3) a misunderstanding or other error "not of reasoning but apprehension." *Ruiz Rivera*, 521 F.3d at 81-82. *See also Bitcliffe v. CitMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014); *Jorge Rivera Surillo & Co., Inc. v. Falconer Glass Industries, Inc*., 37 F.3d 25, 29 (1st Cir. 1994); *F.D.I.C. v. World Univ., Inc.*, 978 F.2d. 10, 16 (1st Cir. 1992); *National Metal Finishing Co. Inc. v. Barclays American/Commercial, Inc*., 899 F.2d 119, 125 at n.2 (1st Cir. 1990); *Mudge v. Bank of America*, *N.A*., 2014 WL 5431357 (D.N.H. 2014) (reconsideration granted and briefing ordered because of newly-discovered evidence that bank had discharged the mortgage at issue).

The granting of a motion for reconsideration is an "extraordinary remedy" that should be used "sparingly." *Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir, 2006). A Rule 59(e) motion cannot be used to "advance a new argument that could (and should) have been presented prior to the district court's original ruling." *Cochran v. Quest Software, Inc*., 328 F.3d 1, 11 (1st Cir. 2003). *See also Falconer Glass*, 37 F.3d at 29; *World Univ*., 978 F.2d at 16; *National Metal Finishing Co., Inc. v. Barclays American/Commercial, Inc*., 899 F.2d 119, 125, n.2 (1st Cir.

1990); *Shea*, 56 F. Supp. 3d at 79. Nor is a Rule 59 motion an appropriate means to "repeat old arguments previously considered and rejected." *Falconer Glass*, 37 F.3d at 29; *World Univ.*, 978 F.2d at 16; *National Metal Finishing Co.*, 899 F.2d at 123; *Shea*, 56 F. Supp. 3d at 79.

Both Rule 59 and Rule 52(b) allow this Court to alter or amend its judgment, including reversal of the initial judgment. *National Metal Finishing Co.* 899 F.2d at 123-124 (1st Cir. 1990). There is no requirement under Rule 59 that this Court find clear error in its November 13, 2015 Order or prior orders of this Court. *Id.* at 124.

### III.   THE TEXAS DEVELOPMENTS CONSTITUTE NEWLY-DISCOVERED EVIDENCE AND NEW DEVELOPMENTS IN THE LAW

Attached to the November 10, 2015 Declaration of Scott Crowell are true and correct copies of:

> Exhibit One: Letter dated October 5, 2015 from Jonodev O. Chaudhuri, Chairman of the NIGC to Governor Hisa, Ysleta del Sur Pueblo, with Attachment A, an opinion letter dated September 10, 2015, from Venus McGhee Prince, Deputy Solicitor for Indian Affairs, Office of the Solicitor, United States Department of the Interior, to Michael Hoenig, General Counsel, NIGC.

> Exhibit Two: Letter dated October 8, 2015 from Jonodev O. Chaudhuri, Chairman of the NIGC to Nita Battise, Chairperson, Alabama-Coushatta Tribe of Texas, with Attachment A, an opinion letter dated September 10, 2015, from Venus McGhee Prince, Deputy Solicitor for Indian Affairs, Office of the Solicitor, United States Department of the Interior, to Michael Hoenig, General Counsel, NIGC.

The letters attached as Exhibits One and Two to the Declaration of Scott Crowell are hereinafter referred to as the "Texas NIGC Letters".  Attachment A to the two Texas NIGC Letters are the same document, hereinafter referred to as the "Solicitor's Opinion re Texas Developments." The Texas NIGC Letters were initially submitted under seal in the federal District Court for the Western District of Texas, in *State of Texas v. Ysleta del Sur Pueblo*, Case # 3:99-cv-00320-KC

(W.D. Tex. filed Sept. 9, 1999). They became publicly available on October 27, 2015, upon the court granting the Ysleta del Sur Pueblo's motion to unseal the documents.[5]

Cross-motions for summary judgment in the present case were fully briefed, and oral argument occurred on August 12, 2015, when this Court took the matter under advisement (Doc. 148). This Court thereafter, on August 18, 2015, granted the administrative unopposed motion for leave to file a reply brief in excess of the page limitation (Doc. 149), which reply was filed on August 18, 2015 (Doc. 150). The October approvals by the NIGC of the Texas Tribes' gaming ordinances, as well as the Solicitor's Opinion re Texas Developments, were neither complete nor available to Aquinnah at the time the cross-motions for summary judgment were taken under advisement by this Court. Accordingly, the Texas Developments constitute newly-discovered evidence and new developments in the law, justifying reconsideration under Rule 59.

## IV.   ARGUMENT

### A.   The October NIGC Approvals and the Solicitor's Opinion re Texas Developments Confirm that the United States Will Not Relinquish its Jurisdiction over the Tribe's Class II Gaming Activities on Indian Lands.

The position of the United States remains that the Tribe's Class II gaming activities are subject to the regulatory oversight of the NIGC, to the exclusion of the Commonwealth. Significantly similar to this litigation, the Texas Tribes were each involved in litigation with the State of Texas regarding whether the Restoration Act (which provided for federally-recognized status for both Texas Tribes) precluded the Texas Tribes from gaming on their respective Indian lands within the external boundaries of Texas. *Ysleta del Sur Pueblo*, 36 F.3d at 1325; *Alabama-Coushatta*, 208 F. Supp. 2d at 670. Indeed, this Court cited to the *Ysleta* decision at several

---

[5] A copy of the docket sheet in the matter of *State of Texas v. Ysleta del Sur Pueblo*, Case # 3:99-cv-00320-KC (W.D. Tex. filed Sept. 9, 1999) as of December 10, 2015, showing the text of the Order to unseal the document, is attached as Exhibit Three to the December 11, 2015 Declaration of Scott Crowell.

junctures in its November 13, 2015 Order (Doc. 151 at p. 7) ("IGRA was intended to balance the right of tribes to self-government with the need to protect both the tribes and the gaming public from unscrupulous persons"); (Doc. 151 at p. 24) ("IGRA was born out of *Cabazon Band*,[6] which 'led to an explosion in unregulated gaming on Indian reservations'"); (Doc. 151 at p. 31, "Congress . . . explicitly stated in two separate provisions of IGRA that [it] should be considered in light of other federal law"). *Ysleta* was heavily relied upon by the Commonwealth and the Intervenors in their briefs.  In its legal review in the context of the federal action approving the Texas Tribes' Class II gaming ordinances, the Solicitor acknowledged and expressly rejected the *Ysleta* decision:

> [W]e recognize that the Fifth Circuit in *Ysleta del Sur* held that the Restoration Act, and not the IGRA, governs gaming on the Tribe's lands. **However, the Department was not a party to the *Ysleta* litigation and is not bound by the Fifth Circuit's interpretation of the Restoration Act.**

Solicitor's Opinion re Texas Developments at p. 9 (emphasis added).  Significantly, the Solicitor's Opinion re Texas Developments includes a footnote that sets out Supreme Court case law regarding the DOI's prerogative to reject the federal court's interpretation of the statute even where the DOI is a party:

> An agency charged with implementing a statute may "choose a different construction" of the statute than that embraced by a circuit court, "since the agency remains the authoritative interpreter (within the limits of reason) of such statutes." *Nat'l Cable and Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 983 (2005). With regard to the Restoration Act, the Department is the executive agency charged with administering the statute. Restoration Act, *supra* note 2, § 2 ("The Secretary of the Interior or his designated representative may promulgate such regulations as may be necessary to carry out the provisions of this Act."); cf. *Passamaquoddy Tribe v. Maine*, 75 F.3d 784, 794 (1996) (holding that administration of a tribe's settlement act is a "role that belongs to the Secretary of the Interior"). *See also Northern Arapaho Tribe v. Hodel*, 808 F.2d 741, 749 (10th Cir. 1987) ("Congress has delegated to the Secretary [of the Interior] broad authority to manage Indian affairs" (citing 25 U.S.C. § 2)).

---

[6] *California v. Cabazon Band*, 480 U.S. 202 (1987).

**Therefore, the Department may choose a different interpretation of the Restoration Act than the interpretation chosen by the Fifth Circuit. Here, the Department does so.**

Solicitor's Opinion re Texas Developments at p. 9, n.79 (emphasis added).

The First Circuit has adopted and followed *Brand X. See, e.g., Rojas-Perez v. Holder*, 699 F.3d 74, 82 (1st Cir. 2012). Aquinnah is now in the untenable position where proceeding in a manner consistent with this Court's Orders will subject it to enforcement action by the NIGC and also underscores this Court's error in finding that IGRA and the Settlement Act are not repugnant to each other. The Solicitor's Opinion re Texas Developments noted this same dilemma with respect to the Texas Tribes:

> However, the Restoration Act and the IGRA provide for different remedies for gaming conducted in violation of their provisions. The Restoration Act provides that the violations of Section 107(a) "shall be subject to the same civil and criminal penalties that are provided by the laws of the State of Texas." Furthermore, the Restoration Act provides the State with an independent avenue for enforcement of a violation of Section 107(a), to wit, an equitable action in Federal district court to enjoin gaming on the Tribe's reservation or tribal lands that violates Section 107(a). The IGRA and its implementing regulations, on the other hand, provide for an entirely different enforcement scheme. Because the enforcement regime provided in Section 107 of the Restoration Act cannot be reconciled with the enforcement regime provided in the IGRA, we conclude that the two statutes are repugnant to one another.

Solicitor's Opinion re Texas Developments at p. 19.

Aquinnah has throughout this litigation maintained that the Commonwealth's strategy of deliberately avoiding the resolution of its dispute with the NIGC's final agency action of approving Aquinnah's Class II gaming ordinance is unwise and misdirected. Aquinnah attempted to have the United States, namely, the NIGC, brought into this litigation, but this Court denied Aquinnah's motion to that effect (Doc. 95). Aquinnah expressly argued in its motion that the NIGC must be joined in this litigation, because disposing of the action in the NIGC's absence would leave Aquinnah subject to a substantial risk of incurring double, multiple, or otherwise

inconsistent obligations.   Fed. R. Civ. P. 19(a)(1)(B)(ii). This Court, in denying Aquinnah's

motion, reasoned:

> It is unclear how the Tribe would be "required" to violate either state or federal
> law by a ruling in favor of the Commonwealth. Applying for a state gaming
> license would not necessarily violate federal law; in our federal system, parties
> must often comply with the regulations of multiple sovereigns in order to engage
> in certain activities. While it is conceivable that the Tribe's obligations under
> federal and state law could conflict, **the Tribe has not shown that there is a real
> possibility, much less a "substantial risk," that that would occur.**

(Doc. 95 at p. 24) (emphasis added).

The newly-discovered evidence regarding DOI's express rejection of the court decisions

that flow from the dispute between the Texas Tribes and the State of Texas shows that there is a

"real possibility" and a "substantial risk" that the conflict between the Tribe's obligations under

federal and state law will occur. The Texas Tribes' gaming pursuant to a license from the State

of Texas, or Aquinnah's gaming pursuant to a license from the Commonwealth, would

necessarily violate federal law, and would necessarily subject the Tribes to entirely different

enforcement schemes. This Court should reconsider its Order denying the Tribe's Rule 19

motion, and allow the issues to be litigated with all of the necessary parties in the courtroom, all

of which will be bound by the result.  Alternatively, this Court may dismiss or stay the lawsuit

while the Commonwealth pursues an action under the Administrative Procedures Act, 5 U.S.C.

§§ 701 et seq. ("APA") against the NIGC.

Throughout this litigation, Aquinnah has maintained that this Court should give *Chevron*[7]

deference, or alternatively, *Skidmore*[8] deference, to the NIGC's action of approving the Tribe's

Class II Gaming Ordinance, including the DOI Solicitor and NIGC General Counsel opinions

---

[7]  *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

[8]  *Skidmore v. Swift Co.*, 323 U.S. 134 (1944).

that were part of that approval. This Court, without analysis as to why the opinions were not

considered to be part of the NIGC's final agency action of approving the Tribe's Class II Gaming

Ordinance, reasoned:

> But the Tribe is wrong for at least two reasons. First, the letters are only advisory
> opinions on legal issues, not final agency action that carry the "force of law." *See
> United States v. Mead Corp.*, 533 U.S. 218, 229 (2001). Therefore, they are not
> entitled to deference. *See id.; see also Sun Capital Partners III, LP v. New
> England Teamsters & Trucking Indus. Pension Fund*, 724 F.3d 129, 140 (1st Cir.
> 2013) (noting that informal agency opinion letters are not entitled to deference).
> Second, the letters focus predominantly on interpreting *Narragansett* and
> applying its two-step test to the Massachusetts Settlement Act. The First Circuit
> addressed a similar situation in *Passamaquoddy*, and concluded that "deference is
> inappropriate when an agency's conclusion rests predominantly upon its reading
> of judicial decisions" because "courts, not agencies, have special expertise in
> interpreting case law." 75 F.3d at 794. Accordingly, the Court will not give any
> deference to the agencies' conclusions.

(Doc. 151 at p. 32, n. 23).

The newly-discovered evidence regarding DOI's express rejection of the court decisions

that flow from the dispute between the Texas Tribes and the State of Texas shows that the

federal government's interpretive authority regarding both the Settlement Act and IGRA remains

intact, despite this Court's November 13, 2015 Order. Indeed, the Solicitor's Opinion re Texas

Developments expressly notes that the opinion is made in the context of its interpretive authority,

Solicitor's Opinion re Texas Developments at p. 1 and n.4, p. 9 and n.79, p. 10 and n.84, and is

the expression of DOI's position regardless of court decisions to which it is not a party.[9]

---

[9] In 1994, Congress reaffirmed the Department's interpretive authority and directed the
Department that it shall not classify, enhance, or diminish the privileges and immunities
available to a federally recognized Indian tribe relative to the privileges and immunities available
to other federally recognized tribes by virtue of their status as Indian tribes. 25 U.S.C. § 476. *See
also Akiachak Native Community v. Jewell*, 995 F. Supp. 2d 1, 4 n.2 (D.D.C. 2013) (quoting co-
sponsor of the legislation, Sen. John McCain, 140 C.R. 11235 (1994), "our amendment is
intended to prohibit the Secretary or any other Federal official from distinguishing between
Indian tribes or tribes or classifying them based not only on the [Indian Reorganization Act] but
also based on any other Federal law").

The Solicitor's Opinion re Texas Developments will be the basis from which both the DOI and the NIGC will take actions that carry the force of law. Accordingly, this Court should reconsider its finding that the determinations and actions of the United States government, as represented by the NIGC's final agency action in approving Aquinnah's Class II Gaming Ordinance, and the issuance by the DOI and NIGC of formal opinion letters in support of the NIGC's final agency action, are entitled to no deference by this federal Court.

The Solicitor's Opinion re Texas Developments also reaffirms the correctness of the Tribe's argument that the NIGC has the responsibility and authority for making a determination of whether the Tribe (1) possesses jurisdiction over the Tribe's Indian lands, and (2) exercises "governmental power" sufficient for the Tribe's Indian lands to qualify under IGRA. Solicitor's Opinion re Texas Developments at pp. 12-13. This determination is routine in the NIGC's review and fulfillment of its obligations.[10] Even if this Court does not give deference to the DOI Solicitor and the NIGC General Counsel opinions regarding the interpretation of statutes affecting Aquinnah, this Court should give deference to the NIGC's determination as to

_____

[10]  The Tribe's briefing on cross-motions for summary judgment noted that the NIGC's official web page, nigc.gov, provides the official letters regarding gaming ordinances and Indian land determinations wherein the Agency's expertise is routinely applied to determine whether the applicant tribe sufficiently exercises governmental power. (Docs. 146-1 and 150 at pp. 15-16). The Solicitor's Opinion re Texas Developments at p. 13, n.105, cites to nigc.gov for one recent example regarding the Muscogee (Creek) Nation. Other examples posted by the NIGC on its official web page, where NIGC goes into detail regarding the discreet issue of the exercise of governmental power, include:

> November 21, 2014 decision letter re Quapaw Tribe of Indians of Oklahoma
> January 24, 2014 decision letter re Mechoopda Tribe of Chico Rancheria of California
> January 10, 2014 decision letter re Table Mountain Rancheria
> July 18, 2011 decision memorandum re Keetoowah Band of Cherokee Indians
> January 20, 2009 decision letter re Seneca Nation of Indians
> July 11, 2008 decision letter re Lower Elwah Klallam Tribe
> May 19, 2008 decision letter re Poarch Band of Creek Indians

Aquinnah's exercise of governmental power. Accordingly, this Court should reconsider its determination that Aquinnah does not exercise governmental power sufficient for its lands to qualify for gaming.

   **B.  The October NIGC Approvals and the Solicitor's Opinion re Texas Developments Support a Different Interpretation of the Legislative History and Sequence of Events in the 100th Congress.**

   The Solicitor's Opinion re Texas Developments provides context to the legislative history of both the Restoration Act and IGRA. Like the Settlement Act at issue in this lawsuit, both IGRA and the Restoration Act were adopted by the 100th Congress, with the passage of IGRA occurring a matter of months after the passage of the Restoration Act. The Solicitor's Opinion re Texas Developments notes:

> The Restoration Act was enacted in order to restore the Federal trust relationship with the Ysleta del Sur Pueblo and the Alabama and Coushatta Tribes in Texas. Because it was enacted when there was a great deal of uncertainty concerning the law of Indian gaming, section 107 of the Act was drafted to fill any gap in the law. That gap, however, was subsequently filled by the enactment of the IGRA, scarcely one year after the Restoration Act.

Solicitor's Opinion re Texas Developments at p. 21.

   In rejecting the Fifth Circuit opinion is *Ysleta*, the Solicitor's Opinion re Texas Developments expressly takes issue with the Appeals Court's analysis, which was relied upon and cited by this Court in its November 13, 2015 Order. Consistent with this Court's analysis regarding the Settlement Act, the Fifth Circuit reasoned that IGRA's language regarding "other federal law" was meant to include the gaming-specific provisions in the Restoration Act. In rejecting that analysis, the Solicitor's Opinion re Texas Developments concluded:

> We interpret these provisions differently than the Fifth Circuit. The Senate Report on the IGRA explains that this language instead "refers to gaming that utilizes mechanical devices as defined in 15 U.S.C. § 1175." In other words, the language that the Fifth Circuit relied upon in finding that the text of the IGRA expressly exempted tribes for whom prior Federal law addresses gaming was,

instead, intended to make clear that the IGRA did not legalize certain *games* that were already illegal as a matter of federal law.

Solicitor's Opinion re Texas Developments at p. 11 (emphasis in original).

In rejecting the Fifth Circuit opinion, the Solicitor's Opinion re Texas Developments also expressly takes issue with the Appeals Court's conclusion that the 1993 legislation expressly excluding the Catawba Tribe in South Carolina from gaming under IGRA evidences Congress' intent that IGRA not be deemed to be the one and only statute addressing gaming on Indian lands. This Court, in its November 13, 2015 Order, similarly reasoned that the 1996 legislation excluding Narragansett from the operation of IGRA provided similar evidence of legislative intent. (Doc. 151 at pp. 20 and 29). In rejecting that analysis, the Solicitor's Opinion re Texas Developments reasons:

> However, the actions of the 103rd Congress shed no light whatsoever on the intentions of the 100th Congress at the time that it enacted the IGRA; rather, the fact that specific legislation was required to place the Catawba outside of the IGRA's ambit in South Carolina strongly suggests that, absent an explicit act such as that taken with the Catawba, a tribe must be presumed to fall within the IGRA's ambit. Consequently, because no act of Congress expressly places the Tribe outside of IGRA's scope, we interpret IGRA as including the Tribe within its ambit.

Solicitor's Opinion re Texas Developments at p. 12.

These explicit examples in the Solicitor's Opinion re Texas Developments, separately and collectively, provide compelling analysis that this Court should review on reconsideration of its determination that the legislative history supports a finding that Congress did not intend for IGRA to impliedly repeal the Settlement Act. These examples, and the analysis that supports them, stand in sharp contrast to the reasoning set forth in this Court's November 13, 2015 Order (Doc. 151, pp. 37-39).

This Court addressed the legislative history and concluded that the statutes at issue were not ambiguous, avoiding application of the canons of construction discussed in the Solicitor's Opinion re Texas Developments at pp. 9-10 and 20. The Tribe respectfully contends that there is error in the reasoning set out in this Court's November 13, 2015 Order (Doc. 151, pp. 33-37). The purpose of the parenthetical portion of the sentence contained in the Settlement Act was to clarify that gaming laws were included in the civil and criminal laws of the Commonwealth, providing the same meaning where the First Circuit found the Rhode Island Indian Land Claims Settlement Act[11] to include Rhode Island's gaming laws without the use of a parenthetical. To elevate that parenthetical to the point where it is deemed an unambiguous statement that Congress intended for IGRA not to apply to Aquinnah, strains the interpretation of the language and unnecessarily expands its scope beyond what was intended. The Tribe respectfully contends that this Court erred in interpreting the parenthetical language in the Settlement Act to have the very same meaning as the savings clause expressly written into the Maine Indian Claims Settlement Act[12], where Congress considered and rejected that same language in its deliberation of the Settlement Act. The Tribe does not intend to rehash those arguments here, but at a bare minimum, the Texas Developments should cause this Court to reconsider its conclusion that the language and interplay between the Settlement Act and IGRA are unambiguous, and to further reconsider its conclusion regarding application of the proper canons of construction and proper deference to actions of the DOI and NIGC. Careful consideration of the Texas Developments should cause this Court to vacate its November 13, 2015 Order and enter judgment in favor of the Tribe.

---

[11]  25 U.S.C. §§ 1701-16.

[12]  25 U.S.C. § 1735.

**IV. CONCLUSION**

The Texas Developments constitute newly-discovered evidence and new developments in law that are compelling justification for this Court to reconsider its February 27, 2015 Order denying the Tribe's Rule 19 Motion (Doc. 95), and its November 13, 2015 Memorandum and Order on Motions for Summary Judgment (Doc. 151). The DOI's express rejection of the decisions in the *Ysleta* and *Alabama-Coushatta* litigation informs this Court that its November 13, 2015 Order does not dispose of the dispute regarding gaming on Aquinnah's Indian lands. Moreover, the Texas Developments inform this Court that its February 27, 2015 Order denying the Tribe's Motion was wrongly decided because the threat of a conflict between the enforcement schemes under IGRA and the Settlement Act is very real and entails substantial risk. Moreover, the Texas Developments inform this Court that the November 13, 2015 Order's analysis regarding legislative history, deference to official actions of the NIGC and the DOI, and the determination that the language and interplay of the Settlement Act and IGRA are unambiguous, are incorrect. Accordingly, this Court should grant the Tribe's Rule 59 motion for reconsideration and direct the parties to brief the question of how the February 27, 2015 Order denying the Tribe's Rule 19 Motion (Doc. 95), and the November 13, 2015 Memorandum and Order on Motions for Summary Judgment (Doc. 151) should be amended in light of the Texas Developments. Alternatively, this Court should vacate both Orders and dismiss the lawsuit with leave for the Commonwealth to join the NIGC, or stay the lawsuit while the Commonwealth pursues an APA action against the NIGC.

DATED: December 11, 2015                                        RESPECTFULLY SUBMITTED,


                                                               */s/ Scott Crowell*
                                                               SCOTT CROWELL *(pro hac vice)*
                                                               TRIBAL ADVOCACY GROUP LLP

1487 W. State Route 89A, Suite 8
Sedona, Arizona, 86336
Telephone: 425-802-5369
Facsimile: 509-290-6953

BRUCE SINGAL   (BBO #464420)
ELIZABETH MCEVOY   (BB) # 683191)
DONOGHUE, BARRETT & SINGAL
 One Beacon Street,  Suite 1320
Boston, MA 02108-3106
Telephone: 617-720-5090
Facsimile 617-720-5092

LAEL R. ECHO-HAWK (*pro hac vice*)
GARVEY SHUBERT BARER
1191 Second Ave. 18th Floor
Seattle, Washington 98101
Telephone: 206-816-1355
Facsimile: 206-414-0125

*Attorneys for Defendants/Counterclaim-Plaintiffs*


## CERTIFICATION OF CONSULTATION

Counsel to the Tribe certify that, pursuant to Local Rule 7.1 (a)(2) of this Court, counsel to the Tribe has conferred with all counsel for the parties, regarding the forgoing Motion for Reconsideration. Such counsels have advised that they oppose this Motion.

Dated: December 11, 2015

*/s/ Scott Crowell*
SCOTT CROWELL

**CERTIFICATE OF SERVICE**

I, Scott Crowell, hereby certify that I filed through the ECF System and therefore copies of AQUINNAH'S MOTION FOR RECONSIDERATION will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent, via first-class mail, to those indicated as non-registered participants.

Dated: December 11, 2015

> */s/ Scott Crowell*
> SCOTT CROWELL