UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE COMMONWEALTH OF
MASSACHUSETTS,

    Plaintiff, and

AQUINNAH/GAY HEAD COMMUNITY
ASSOCIATION, INC. (AGHCA) and
TOWN OF AQUINNAH,

    Plaintiff-Intervenors,

    v.

THE WAMPANOAG TRIBE OF GAY HEAD
(AQUINNAH), THE WAMPANOAG TRIBAL
COUNCIL OF GAY HEAD, INC., and THE
AQUINNAH WAMPANOAG GAMING
CORPORATION,

    Defendants/Counterclaim-Plaintiffs, and

CHARLES D. BAKER, in his official capacity as
Governor of the Commonwealth of
Massachusetts, MAURA T. HEALEY, in her
official capacity as Attorney General of the
Commonwealth of Massachusetts, and CATHY
JUDD-STEIN, in her official capacity as Chair of
the Massachusetts Gaming Commission,

    Third Party Defendants.

No. 1:13-CV-13286-FDS

**THE TOWN OF AQUINNAH'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR ENTRY OF JUDGMENT**

The Town of Aquinnah (the "Town") requests that this Court enter the proposed final judgment.  Doing so would make clear that while the First Circuit's decision in *Massachusetts v. Wampanoag Tribe of Gay Head (Aquinnah)*, 853 F.3d 618 (1st Cir. 2017), authorizes the Wampanoag Tribe of Gay Head (Aquinnah) (the "Tribe") to construct a gaming facility on the "Settlement Lands" in the Town,[1] it does not authorize the commencement of construction without the Tribe first obtaining a building permit and other required permits from the Town.  Over the course of litigation in this Court, the parties had two separate but related disputes: (i) whether the Tribe may operate a gaming facility on the Settlement Lands pursuant to the Indian Gaming Regulatory Act ("IGRA") without complying with state or local gaming regulations; and (ii) whether the Tribe must obtain a building permit and all other requisite permits from the State and Town before commencing construction of a gaming facility.  The Tribe prevailed in the First Circuit on the first issue, entitling it to operate without complying with State and local gaming regulations.  But this Court resolved the building-permit issue in favor of the State and the Town, and the Tribe never challenged that decision on appeal.  Nonetheless, the Tribe has recently started clearing land and is actively preparing to build a gaming facility without the requisite permits under laws unrelated to gaming.  The Tribe appears to be treating its victory in the First Circuit as allowing it to commence casino construction, despite this Court's order on the building-permit issue, despite the non-gaming local laws and regulations to which it is subject (*e.g.*, the Town's building code and the requirement that the Martha's Vineyard Commission approve large-scale projects on the Island), and despite the public health, public safety, and environmental implications of the Tribe's contemplated gaming operation.  The Tribe's conduct

---

[1] The term "Settlement Lands" is a defined term in the First Circuit's opinion.  The term specifically and exclusively refers to those lands that were put at issue in this litigation, namely the "approximately 485 acres" of land conveyed to the Tribe pursuant to a November 1983 Settlement Agreement involving the Tribe, the Town, the Commonwealth of Massachusetts (the "Commonwealth"), and the Aquinnah/Gay Head Community Association, Inc. ("AGHCA"). *Id.* at 622.

1

threatens irreparable harm to the Town's residents, visitors, and the natural environment.  The

final judgment proposed by the Town would respect the Tribe's right to build a gaming facility

on the Settlement Lands so long as the Tribe respects this Court's Order on the permitting issue

and the Town's right to enforce its health and safety rules and regulations that are not integral to

gaming.

## BACKGROUND

The factual and procedural background of this case is fully laid out in the parties' briefing

on their cross-motions for summary judgment, ECF Nos. 113, 117, 119, 121, the Town's motion

for a preliminary injunction, ECF No. 125, this Court's opinion, ECF No. 151, and the First

Circuit's decision on appeal, *Wampanoag Tribe*, 853 F.3d at 621-24.   The facts recited below

are those most relevant to the Town's motion for entry of final judgment.

The case originated as a dispute between the Tribe and the Commonwealth regarding

whether the Tribe could construct and operate a gaming facility without first receiving a license

from the Massachusetts Gaming Commission.  The Town and the AGHCA intervened as

plaintiffs (in the Town's case, without opposition, ECF No. 55 at 9:14-15, 12:17). The Tribe

claimed that it had the right under IGRA to operate a gaming facility on the Settlement Lands

without State and Town approval, whereas the other parties claimed that the Commonwealth and

Town retained jurisdiction over the Tribe's Settlement Lands pursuant to an earlier settlement

agreement, which has been codified as a matter of state and federal law.  In addition, the Town's

complaint in intervention sought to vindicate its ability to enforce local "regulatory, permitting,

and licensing requirements – including all local zoning ordinances and the term[s] of [the

Tribe's] locally issued land use permits."  ECF No. 52 at 10.  The parties filed cross-motions for

summary judgment on the gaming issue. ECF Nos. 113, 117, 119, 121.

While the parties' cross-motions for summary judgment were pending in this Court, the Town became aware that the Tribe had commenced construction of a Class II gaming facility without first receiving the requisite Town permits, including a building permit. The requisite Town permits are intended to confirm compliance with generally applicable requirements entirely unrelated to gaming. These requirements include provisions of the building code, as enforced by the Town, as well as the requirement that the Martha's Vineyard Commission—the regional planning agency for the County of Dukes County, with responsibility for reviewing and approving certain development projects in light of their potential regional impact—approve large-scale development on the Island. *See* ECF 142 at 7:11-17. Concerned that the Tribe's unapproved project might threaten public health, safety, and the natural environment, the Town filed a motion for a temporary restraining order or a preliminary injunction barring the Tribe from continuing construction without first receiving all requisite Town permits. ECF No. 124.

At the ensuing hearing on the Town's motion, this Court recognized that the local permit issue is distinct from the gaming issue. As the Court put it, "whether the tribe can build a building without applying for a building permit and getting the required inspections . . . and ultimately an occupancy permit" is "not the broad issue of whether gaming is permitted on tribal land." ECF 142 at 36:5-11. The Court entered a preliminary injunction barring the Tribe from "commencing or continuing the construction of a gaming facility . . . without first complying with the permit requirements of the Town of Aquinnah." ECF 140 at 2. The Court further observed that even if the Tribe "wins and they can open a casino, it's going to have to obtain a building permit and comply with all the construction and wiring and plumbing code requirements and to permit inspections and to obtain an occupancy permit before opening it to the public." ECF 142 at 36:18, 37:5-9.

After entering the preliminary injunction on the permitting issue, the Court issued a decision granting summary judgment to the Commonwealth, the Town, and the AGHCA on the gaming issue.  ECF 151.  Soon thereafter, the Court issued a final judgment "consistent with" its summary judgment order and prior preliminary injunction order.  ECF No. 158 at 1-2.  That judgment granted the Commonwealth, the Town, and the AGHCA declaratory and permanent injunctive relief preventing the Tribe from "commencing or continuing construction of and/or opening any gaming facility at or on the Settlement Lands (as those lands are defined in the Summary Judgment Order) without complying with the laws and regulations of the Commonwealth of Massachusetts and the Town of Aquinnah, including any pertinent state and local permitting requirements."  ECF No. 158 at 3 (permanent injunction); *see also id.* at 2 (granting a declaratory judgment that the Tribe "may not construct, license, open, or operate any gaming facility at or on the Settlement Lands (as those lands are defined in the Summary Judgment Order) without complying with the laws and regulations of the Commonwealth of Massachusetts and the Town of Aquinnah, including any pertinent state and local permitting requirements").

The Tribe then appealed.  On appeal, the Tribe argued only that IGRA superseded the settlement agreement and implementing legislation, allowing the Tribe to operate a gaming facility without complying with state and local gaming regulations.  Tribe 1st Cir. Opening Br. 2, 9-10.  The Tribe's briefing never even mentioned the separate Town permitting issue, or the preliminary-injunction proceedings.  The First Circuit reversed on the gaming issue, holding that IGRA had impliedly repealed the codified settlement agreement insofar as IGRA authorized local and state regulation of gaming on the Settlement Lands.  *Wampanoag Tribe*, 853 F.3d at 629.  Like the Tribe's briefing, the First Circuit's opinion made no mention of the permitting

issue, except to note the aspects of the judgment that went beyond the summary-judgment

decision. *Id.* at 624. The First Circuit deemed the entire preliminary-injunction proceeding to be

"not relevant here." *Id.* at 623. The First Circuit remanded the case to this Court "for entry of

judgment in favor of the Tribe" on the single issue on which the Tribe prevailed on appeal. *Id.*[2]

In the months since, the Tribe has not sought a building permit or any other permit from

the Town. But the Town recently became aware that the Tribe has recommenced construction of

its gaming facility, albeit at a different location than the location on the Settlement Lands on

which the Tribe had initially commenced construction. Ex. A at ¶ 4 (Decl. of James Newman);

Ex. B (*Vineyard Gazette* article). Specifically, the Tribe has been clearcutting land, and large

construction vehicles have been driving through the Town regularly on their way to and from the

construction site, and then traveling beyond the construction site to deposit excavated debris. *Id.*

The Tribe has stated that it intends to commence actual construction very soon, and it insists that

it does not need to obtain the requisite approval from the Martha's Vineyard Commission or

building permits from the Town. Ex. A at ¶¶ 5-9.

To prevent the Tribe from continuing to defy this Court's order mandating that it receive

Town permits before commencing construction, the Town seeks entry of final judgment

consistent with the First Circuit's remand order *and* the undisturbed aspects of this Court's prior

final judgment (which incorporated the Court's preliminary injunction decision). The Town's

proposed final judgment recognizes that the Tribe need not comply with State and Town gaming

laws and regulations before operating a gaming facility on the Settlement Lands, but the

---

[2] The Tribe also appealed, unsuccessfully, the denial of its motion to dismiss for failure to join a necessary party. 853 F.3d at 624 n.3.

proposed judgment also requires that the Tribe—like all other entities—receive necessary permits before commencing construction in the Town.[3]

## ARGUMENT

I.    **THE PROPOSED FINAL JUDGMENT IS CONSISTENT WITH THE FIRST CIRCUIT'S DECISION AND WITH THE SEPARATE PERMITTING DECISION OF THIS COURT.**

As this Court recognized in deciding the Town's motion for a preliminary injunction, this case involves two distinct issues:  (1) whether IGRA supersedes state and local gaming regulation pursuant to the codified settlement agreement, such that the Tribe may construct and operate a gaming facility on the Settlement Lands without first complying with State and Town laws and regulations concerning gaming; and (2) whether the Tribe may construct the facility in which gaming would occur without first receiving Town permits.  The Town's proposed final judgment properly reflects the First Circuit's decision in favor of the Tribe on the first issue, and this Court's decision in favor of the Town and the Commonwealth on the second.

The proposed final judgment is fully consistent with the First Circuit's decision, which authorized the Tribe to construct and operate a gaming facility without complying with State and local gaming laws and regulations, but which did not consider the separate permitting issue, much less disturb the district court's declaratory judgment and injunction on the latter issue.  As explained *supra* at 4-5, the Tribe's First Circuit appeal stemmed from this Court's decision on motions that addressed only the gaming issue, not the permitting issue.  For example, in its motion for summary judgment, the Tribe argued that IGRA "impliedly repealed the

---

[3] Although the Town believes that entry of final judgment is appropriate at this stage, if anything remains to be litigated in this Court, the Town is alternatively entitled to a temporary restraining order and/or preliminary injunction requiring the Tribe, during the pendency of those additional proceedings, to obtain all requisite permits prior to commencing construction.  As outlined below, the Town has a strong likelihood of success on the merits of its claim that permits are necessary and required before the Tribe may commence construction, and there is little question that the Town would suffer irreparable injury absent emergency relief.  If directed to file a motion for a temporary restraining order and/or a preliminary injunction, the Town would develop these arguments in more detail.

Commonwealth's gaming jurisdiction," which the Commonwealth and the Town had retained

pursuant to the earlier settlement agreement.  ECF 119 at 23.  The Tribe nowhere suggested that

it should also receive judgment exempting it from generally applicable local building rules—not

even after being enjoined to comply with those same rules.

Since the Tribe never raised the permitting issue on appeal, in its decision, the First

Circuit addressed only whether the IGRA applies to the Settlement Lands and whether it

displaced local and state authority over gaming on those lands.  *See Wampanoag Tribe*, 853 F.3d

at 624 ("we must decide whether IGRA applies to the Settlement Lands," and "whether IGRA

effects a repeal of the Federal Act," which codified the settlement agreement).  After determining

that the Tribe could operate a gaming facility on the Settlement Lands without first complying

with state and local gaming regulations, the First Circuit directed this Court to enter judgment in

favor of the Tribe for the reasons given in the opinion, which (as noted) addressed only the

gaming issue.  *See id.* at 629 (holding that IGRA displaces "Massachusetts jurisdiction over

gaming" with respect to the Tribe's proposed gaming facility and remanding for "entry of

judgment in favor of the Tribe" "[f]or the foregoing reasons").  The Town's proposed final

judgment would give full effect to the First Circuit's mandate:  the Tribe would receive

declaratory and injunctive relief allowing it to operate a gaming facility on the Settlement Lands,

which is all the relief the Tribe sought in its counterclaims against the Town and the

Commonwealth.  ECF 73 at 14 (counterclaim against the Commonwealth); ECF 74 at 11

(counterclaim against the Town).[4]

---

[4] The First Circuit's decision depends on the applicability of IGRA to the land at issue in this litigation—absent
IGRA, the settlement agreement and codifying legislation would authorize local and state regulation of gaming on
the Tribe's land.  *See Wampanoag Tribe*, 853 F.3d at 624.  We note this because the Tribe is currently constructing
its facility on land that was not the subject of the action before this Court, and to which IGRA apparently does not
apply.  IGRA authorizes gaming of the sort the Tribe proposes to offer only on "Indian lands," 25 U.S.C. § 2710(b),
which IGRA defines as lands "within the limits of any Indian reservation," or "any lands title to which is either held
in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual

Although the First Circuit agreed with the Tribe on the gaming issue, the Tribe never

raised and the First Circuit never addressed the separate and independent permitting issue, an

issue on which judgment was entered in favor of the Town.  Specifically, this Court recognized

at the preliminary injunction hearing and in the subsequent final judgment that generally

applicable building rules would continue to apply regardless of whether IGRA displaced local

and state gaming regulation.  ECF 142 at 36:5-11; ECF No. 158 at 2-3.  As the Court stated, the

Town should not have to sit back and allow the Tribe to construct a facility that "ha[s] no sewage

treatment of any kind, no septic or tie into a sewer and [is] discharging waste directly into . . . the

bay," or that is filled with asbestos, or that lacks sufficient fire exits, particularly where the Town

has to foot the bill for fire, police, and other emergency services at the facility.  ECF 142 25:10-

12; *see also Bldg. Inspector & Zoning Officer of Aquinnah v. Wampanoag Aquinnah Shellfish

Hatchery Corp.*, 443 Mass. 1, 17 (2004) (holding that the Town may enforce generally

applicable land-use regulation against the Tribe on the Settlement Lands).  The Court therefore

required that the Tribe, before commencing construction of a gaming facility, acquire all

requisite permits, including a building permit.  ECF No. 158 at 3.

That aspect of this Court's prior judgment is undisturbed, and this Court should enter a

new judgment confirming it.  The Tribe forfeited any objection to the portion of the judgment

addressing permitting requirements by failing to raise the issue at all on appeal.  *See DeCaro v.

Hasbro, Inc.*, 580 F.3d 55, 64 (1st Cir. 2009) ("[C]ontentions not advanced in an appellant's

---

subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental
power." *Id.* § 2703(4).  In addition, IGRA prohibits Class II gaming on lands taken into trust after October 17, 1988,
subject to a few limited exceptions. *Id.* § 2719.  One such exception clearly applies to the Settlement Lands:  they
were taken into trust "as part of the settlement of an Indian land claim." *Id.* § 2719(b)(1)(B)(i).  But the land on
which the Tribe is currently constructing its facility was acquired only recently.  Given the many years that have
elapsed since the settlement agreement, and given that all federal and state money set aside for acquiring new land
pursuant to the settlement agreement appears to have been spent long ago, the Town does not believe that the newly
acquired land on which the Tribe is constructing its facility—which was acquired in 2014—falls within any of the
enumerated exceptions to 25 U.S.C. § 2719.  The Town reserves its right to challenge the Tribe's operation of a
gaming facility on land in the Town where IGRA does not authorize gaming.

opening brief are deemed waived."). Where a legal decision goes "unchallenged in a subsequent appeal despite the existence of ample opportunity to [challenge it]," that decision "becomes the law of the case for future stages of the same litigation." *United States v. Matthews*, 643 F.3d 9, 12 (1st Cir. 2011) (quoting *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993)). Failing to challenge the decision on appeal means "'forfeit[ing] any right to challenge that particular decision at a subsequent date,'" except under "rare" and "exceptional circumstances" such as a "'dramatic[]'" change in the controlling law. *Id.* at 12, 14 (quoting *Bell*, 988 F.2d at 250, 251). At the very least, the Court has discretion to enter the proposed final judgment notwithstanding the First Circuit's decision in favor of the Tribe. *Biggins v. Hazen Paper Co.*, 111 F.3d 205, 209 (1st Cir. 1997) ("[A]lthough the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it leaves to the lower court any issue not expressly or impliedly disposed of on appeal." (internal quotation marks and brackets omitted)).

Here, the permitting issue was neither expressly nor impliedly disposed of on appeal. Indeed, it could not have been as it was never raised on appeal at all. Rather, the permitting issue was disposed of by this Court, and further proceedings on the issue are not necessary. The parties already fully aired their arguments, and the Court determined that the Tribe has no basis to object to the enforcement of generally applicable rules designed to protect public health, safety, and the natural environment. In issuing its final judgment, the Court noted that the judgment incorporated not just its summary judgment order, but also its preliminary injunction order, and required the Tribe to comply with "any pertinent state and local permitting requirements." ECF No. 158. In other words, after full consideration of the permitting issue, this Court determined that it was appropriate for permanent relief.

9

Nothing has changed, and the same result should still hold.  Indeed, even at the preliminary injunction hearing, the Tribe focused on the possibility that the Town might enforce local zoning rules that bar gaming—rules the Town cannot enforce on the Settlement Lands that are subject to IGRA—but expressed little concern about the Town's enforcement of generally applicable building rules.  *Id.* at 24:17-18 (stating that "we probably don't have a dispute at all" if the Town were to enforce generally applicable building permit requirements rather than gaming-specific requirements).  And, as explained *supra* at 8-9, the Tribe forfeited its right to contest the Court's ruling on the permitting issue by not raising it on appeal.  Furthermore, the case on which the First Circuit relied most heavily in its decision—*State of Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 705 (1st Cir. 1994)—stated that IGRA displaces only state and local regulation of "activities deemed integral to gaming," not rules that apply regardless of the gaming purpose of a facility, such as generally applicable building rules.  *See Wampanoag Tribe of Gay Head (Aquinnah)*, 853 F.3d at 624-629 (relying on *Narragansett*).

Accordingly, the Court should enter the Town's proposed final judgment, which allows the Tribe to operate a gaming facility on the Settlement Lands without complying with State and local laws and regulations related to gaming, but requires the Tribe to obtain all requisite permits from the Town before commencing construction of such a facility.

## II.   THE COURT SHOULD ENTER THE TOWN'S PROPOSED FINAL JUDGMENT AS SOON AS POSSIBLE TO PREVENT IRREPARABLE INJURY TO THE TOWN.

Unless the Town's proposed final judgment is entered immediately, the Town and its residents will suffer irreparable injury.  As explained *supra* at 5, the Tribe has already commenced construction of its facility.  Because the Tribe has not sought a building permit or allowed the Town's building inspector to enter the property, the Town has no way of knowing whether the Tribe's construction methods—let alone the design of the facility—pose a direct

threat to public health, public safety, or the natural environment.  For all the Town knows, the

Tribe may be disposing of construction waste improperly, or may be removing trees that play an

important role in flood prevention.  These are not purely hypothetical concerns:  based on

publicly available information, the Town believes that the Tribe has recently made illegal use of

a power source.  *See* Ex. B (describing the illegal power source).  And, as explained *supra* at 5,

8, the design of the ultimate facility may fall far short of basic health and safety standards.

Entering the Town's proposed final judgment would alleviate these concerns by requiring that

the Tribe obtain necessary town permits before continuing construction, thus ensuring that the

Tribe has complied with all generally applicable rules and regulations.

## **CONCLUSION**

For the foregoing reasons, the Town respectfully requests that this Court enter its

proposed final judgment as soon as possible.

Dated: April 4, 2019

Respectfully submitted,

TOWN OF AQUINNAH

By its attorneys,

/s/ *Ronald H. Rappaport*

Douglas J. Kline (BBO No. 556680)
Joshua J. Bone (BBO No. 687722)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
Fax.: +1 617 523 1231
dkline@goodwinlaw.com
jbone@goodwinlaw.com

William M. Jay (*pro hac vice* pending)
GOODWIN PROCTER LLP
901 New York Ave. NW
Washington, DC 20001
Tel.: +1 202 346 4000
wjay@goodwinlaw.com

Ronald H. Rappaport (BBO No. 412260)
Michael A. Goldsmith (BBO No. 558971)
REYNOLDS, RAPPAPORT, KAPLAN &
    HACKNEY, LLC
106 Cooke Street, P.O. Box 2540
Edgartown, MA 02539
Tel.: +1 508 627-3711
rrappaport@rrklaw.net
mgoldsmith@rrklaw.net

12

**CERTIFICATE OF SERVICE**

I, Douglas J. Kline,  certify that this document filed through the ECF system has been sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 4, 2019.

/s/ *Douglas J. Kline*
Douglas J. Kline