UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE COMMONWEALTH OF MASSACHUSETTS,<br><br>*Plaintiff,*<br><br>and<br><br>AQUINNAH/GAY HEAD COMMUNITY ASSOCIATION, INC. (AGHCA) and TOWN OF AQUINNAH,<br><br>*Intervenor-Plaintiffs/Counterclaim-Defendants,*<br><br>vs.<br><br>THE WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH), THE WAMPANOAG TRIBAL COUNCIL OF GAY HEAD, INC., and THE AQUINNAH WAMPANOAG GAMING CORPORATION,<br><br>*Defendants/Counterclaim-Plaintiffs,*<br><br>and<br><br>CHARLIE BAKER, in his official capacity as GOVERNOR, COMMONWEALTH OF MASSACHUSETTS, et al.,<br><br>*Third-Party Defendants*. | **CASE NO: 1:13-cv-13286-FDS**<br><br>[Formerly Supreme Judicial Court for Suffolk County, Massachusetts, CIVIL ACTION NO. 2013-0479]<br><br>**Hearing Date: May 31, 2019**<br>**Place: Courtroom 2**<br>**Time: 9:00 a.m.**<br><br>**HONORABLE JUDGE F. DENNIS SAYLOR IV**<br><br><br>**LEAVE TO FILE GRANTED 5/06/2019** |

**WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH)'S SUR-REPLY IN OPPOSITION TO TOWN OF AQUINNAH'S MOTION FOR ENTRY OF JUDGMENT**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................. 1

II. ARGUMENT ..................................................................... 2

    A. The Tribe's proposed form of final judgment satisfies the mandate; the Town's proposed form of final judgment violates the mandate ................................................................. 2

    B. In the alternative, reconsideration of this Court's analysis regarding the requirement of Town-issued permits is appropriate and should be rescinded. ....... **Error! Bookmark not defined.**

    C. Red herrings should not misdirect this Court from the entry of Final Judgment as proposed by the Tribe .............................. 8

III. CONCLUSION ................................................................. 10

**TABLE OF AUTHORITIES**

**Cases**

*Ex Parte Young*,
  209 U.S. 123 (1908) ............................................................... 10

*Massachusetts v. Wampanoag Tribe of Gay Head (Aquinnah)*,
  853 F.3d 618 (1st Cir. 2017) ............................................. *passim*

*Rhode Island v. Narragansett Indian Tribe*,
  19 F.3d 685 (1st Cir. 1994) ............................................... *passim*

*Sycuan Band of Mission Indians v. Roache*,
  788 F.Supp. 1498 (S.D. Cal. 1992) ............................................. 7

*United Keetoowah Band of Cherokee Indians v. Oklahoma*,
  927 F.2d 1170 (10th Cir. 1991) .................................................. 7

**Statutes**

Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq. ("IGRA")
  ................................................................................. *passim*

**Other Authorities**

A comprehensive list of enforcement action taken by the NIGC is
  located on its official web page at
  www.nigc.gov/commission/enforcement-actions. ........................... 7

Prevailing parties on appeal, Defendants[1] Counterclaimants Wampanoag Tribe of Gay Head (Aquinnah) and the Aquinnah Wampanoag Gaming Corporation ("AWGC") (collectively "Defendants" or "Tribe"), hereby submit this Sur-Reply in opposition to the Motion for Entry of Final Judgment (the "Motion") (Docs. 180-181) filed by Intervenor-Plaintiff/Counterclaim-Defendant the Town of Aquinnah ("Town"). The Town has filed a reply memorandum together with Intervenor-Plaintiff/Counterclaim-Defendant, the Aquinnah/Gay Head Community Association, Inc. ("AGHCA") (Doc. 186-1)[2]. Additionally, Plaintiff Commonwealth of Massachusetts and Third-Party Defendants Governor Charlie Baker, Attorney General Maura Healey, and Massachusetts Gaming Commission Chairman Cathy Judd Stein (collectively referred to as "Commonwealth" or "State") has filed its own limited reply pleading. This Sur-Reply is also intended to be the response to both reply briefs (assuming that leave to file such reply briefs and this Sur-Reply is granted).

I.   INTRODUCTION

The Tribe advocates for the straightforward entry of judgment:

> For the reasons set forth in *Massachusetts v. Wampanoag Tribe of Gay Head (Aquinnah)*, 853 F.3d 618, 629 (1st. Cir. 2017), Final Judgment is entered in favor of the Wampanoag Tribe of Gay Head (Aquinnah) and the Aquinnah Wampanoag Gaming Corporation (collectively "Tribe"). The Commonwealth of Massachusetts, the Town of Aquinnah and the Aquinnah Gay Head Community Association are permanently enjoined from asserting jurisdiction over, or interfering with, the Tribe's rights under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq.

---

[1] The Wampanoag Tribal Council of Gay Head, Inc., which was named as a party defendant, was an entity created under the laws of the Commonwealth and no longer exists.

[2] The full caption in this matter should reflect that the name of Third Party Defendant Chairman of the Massachusetts Gaming Commission has changed to Cathy Judd Stein.

1

Notably, the Tribe's proposed language does not extend to actions by the Tribe that fall outside of the exercise of its rights under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq. ("IGRA"). In contrast, the Town (joined by the AGHCA) advocates for a final judgment that enables the Town and the non-party Martha's Vineyard Commission ("MVC") to interfere with the Tribe's rights under IGRA. In support of their motion, the Town and the AGHCA seek leave to file a reply brief that contains numerous mischaracterizations of the Tribe's position, based on incredulous and internally inconsistent positions. This Sur-Reply is submitted to deconstruct the Town's and the AGHCA's arguments.

## II. ARGUMENT

### A. The Tribe's proposed form of final judgment satisfies the mandate; the Town's proposed form of final judgment violates the mandate

The Tribe sets forth in its Opposition Brief (Doc. 185) that (1) the Town's Proposed Form of Judgment violates the Mandate Rule (Doc. 185 at 5-8), and (2) the Tribe appealed, and did not waive, those legal issues germane to this Court's entry of preliminary injunctive relief (Doc. 185 at 8-14). The Town's and the AGHCA's reply repeats the Town's initial argument that the reach of IGRA's preemptive effect on local permitting laws was not appealed by the Tribe. In doing so, the Town and the AGHCA adopt the classic tactic of recasting the Tribe's position, and then defeat their own re-characterization. To wit: the Town and the AGHCA argue, "In the Tribe's view, a party may lose on two independent issues, appeal only one, and win a back-door reversal on the other so long as an appeals court uses language like 'reverse' with reference to a lower court's order" (Doc. 186-1 at 2). The Tribe makes no such argument. Similarly, the Town and the AGHCA suggest that the First Circuit opinion "unequivocally addresses the gaming issue only" (Doc. 186-1 at 2).

That too is an untrue characterization. Moreover, the Town and the AGHCA mischaracterize the Tribe as stating "The Tribe maintains that the First Circuit held that IGRA preempts all State and local regulation on *all* lands owned by the Tribe" (Doc. 185 at 4 – emphasis in original). That too is grossly incorrect.[3] These blatant mischaracterizations of the Tribe's argument are intended to obfuscate the reality that the Town's Proposed Form of Final Judgment violates the Mandate Rule, and that the legal issues germane to this Court's reasoning in granting preliminary injunctive relief were not waived.

The Town and the AGHCA simply deny, without analysis, that the issues addressed by the First Circuit do not involve the "permitting" issue. The Town relies on some non-existent bright line between "gaming" issues and "permitting" issues, neither of which do they even attempt to define. In its Opposition Brief, the Tribe demonstrates that the term "gaming laws" is contextual under IGRA and encompasses a myriad of issues, including permitting. This is consistent with the First Circuit's analysis of laws "integral" to the exercise of the Tribe's gaming rights. *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 705-06 (1st Cir. 1994).  Ironically, in their effort to defeat the Tribe's argument, the Town and the AGHCA properly cite to and quote *Narragansett* ("that portion of jurisdiction *touching* on gaming") (emphasis added). As discussed further below, the First Circuit reaffirmed *Narragansett*, in which the Appeals Court set forth a specific paradigm for resolving future disputes over the "tenebrous" and nuanced issues of where IGRA's preemption of the Federal Act begins and ends. *Massachusetts v. Wampanoag Tribe of Gay*

---

[3] This mischaracterization of the Tribe's position apparently incented the Commonwealth to seek leave to file its limited reply pleading (Doc. 187-1), although it had not previously weighed in on the propriety of the Town's Motion. Contrary to the assertions in both reply briefs, nothing in the Tribe's Proposed Form of Final Judgment extends to tribal actions then at issue that fall outside of that tribe's rights under IGRA.

3

*Head (Aquinnah)*, 853 F.3d 618, 624-26 (1st Cir. 2017). The Town's Proposed Form of Final Judgment ignores the First Circuit's paradigm, 19 F.3d at 705-06, and advocates for this Court to reject the First Circuit's analysis.

Inconsistent with their own analysis suggesting a bright line defining IGRA's preemption of the Federal Act, the Town and the AGHCA later concede in their reply brief that the line is not "bright," and try to harmonize this Court's preliminary injunction with the First Circuit's distinction between "core" and "peripheral" laws (Doc. 186-1 at 4-5). In doing so, the Town and the AGHCA distort and misstate *Narragansett*. The Town informs this Court that the *Narragansett* court found "zoning, traffic control, advertising [and] lodging to likely fall within the 'peripheral' category" (Doc.186-1 at 5). Actually, the *Narragansett* court identified those laws, as the very type of laws which "may-or may not" be subject to state control in the wake of its decision. 19 F.3d at 705 ("The crucial questions which must yet be answered principally deal with the nature of the regulable activities which may—or may not—be subject to state control, e.g., zoning, traffic control, advertising, lodging"). Such a blatant misstatement by the Town and the AGHCA that *Narragansett* concluded that such laws "would likely fall within the peripheral category" (Doc. 186-1 at 5) is reprehensible. In actuality, the *Narragansett* court was acutely aware that these issues are fact-specific and should be resolved in tribal/state compact negotiations or in future litigation:

> If these criss-crossing lines prove agonizingly difficult to decipher, let alone to administer, they 'are no more or less so than many of the classifications that pervade the law of Indian jurisdiction (citation omitted). And in all events, the jurisdictional issues remain subject to further judicial intervention, pursuant to the Gaming Act, in a more fact-specific context, if the parties' compact negotiations collapse.'

19 F.3d at 706.

The Town and the AGHCA in their reply also deny that the Tribe's "governmental presence" has any bearing on the "permitting" issue (Doc. 186-1 at 3), even though the Town argues the opposite in its initial supporting memorandum (Doc. 181 at 9), and even though the Tribe's governmental presence goes to the crux of the current dispute: tribal and federal law (IGRA), not state or Town law, govern the construction of the gaming facility. Yet again, the Town (and the AGHCA) fail to acknowledge that the Tribe is a functioning government, referring to the Tribe as a "mere land-owner" with a private security force (Doc. 186-1 at 8 and n.5). Their disrespect of the Tribe goes so far as to speculate that the Tribe's hired professional inspectors fail to meet state standards (Doc. 186-1 at 8, n.6), despite the uncontroverted declaration submitted by the Tribe establishing the inspectors' highly-qualified credentials, including their status under Massachusetts law (Doc. 185-1 at ¶¶ 15-17). The First Circuit rejected this Court's analysis criticizing the Tribe's ability to perform basic governmental tasks, and noted that a major purpose of IGRA is to enable tribes, with the governmental revenues generated by tribal gaming facilities, to develop strong tribal governments. *Aquinnah*, 853 F.3d at 626. The First Circuit's rejection of this Court's analysis underscores the issue here: that the legal underpinnings of this Court's order of preliminary injunction were raised by the Tribe and addressed/rejected by the Appeals Court.

### B. In the alternative, reconsideration of this Court's analysis regarding the requirement of Town-issued permits is appropriate and should be rescinded.

The Tribe sets forth in its opposition that the Town's Proposed Form of Final Judgment violates the Mandate Rule, and further sets forth that the legal issues upon which the preliminary judgment was based were not waived (Doc. 185 at 5-14). The Tribe's opposition brief then advocates in the alternative that if this Court otherwise believes that it may enter the Town's Proposed Form of Final Judgment, this Court should reconsider its position based on the First Circuit's analysis (Doc.185 at 14-19). Incredulously, the Town and the AGHCA argue that there is no basis for reconsideration because there is no intervening change in law and any reconsideration would be untimely (Doc. 186-1 at 5-6). The First Circuit's opinion in this matter is the intervening change in law, or more accurately stated, the legal clarification that this Court erred regarding the law. The First Circuit opinion is the intervening statement of the law upon which the motion for reconsideration is based. The Town's and the AGHCA's reply brief repeatedly notes that the Tribe's points regarding reconsideration were previously raised and rejected by this Court (Doc.185-1 at 6-8). By doing so, the Town and the AGHCA concede the point made hereinabove: that the issues germane to the issuance of the preliminary injunction were appealed to and addressed/rejected by the First Circuit. The Tribe seeks reconsideration of those "rejected" arguments because the intervening law, the opinion issued by the First Circuit, demonstrates that this Court got them wrong.

The Town's and the AGHCA's analysis suggesting concurrent state and local jurisdiction with the Tribe and the National Indian Gaming Commission (the "NIGC") (Doc. 186-1 at 6-8) serves as a case in point regarding both this Court's error in ordering

6

preliminary injunctive relief, and regarding the issue not being waived on appeal. The First Circuit found IGRA and the Federal Act to be repugnant to one another. *Aquinnah*, 853 F.3d at 627. IGRA sets forth a comprehensive regulatory scheme that is not compatible with concurrent state jurisdiction. *Narragansett*, 19 F.3d at 705. Implementation of the Town's theory would create a situation where the Tribe could very well face conflicting directives from the NIGC and the Town (or the MVC, or the Commonwealth) – classic repugnancy. The Town's and the AGHCA's unsubstantiated insult to federal and tribal law is extended to the NIGC by speculating that the NIGC is reneging on its statutory and regulatory duties vis-à-vis the Tribe (Doc. 186-1 at 7). The NIGC not only has the capacity to take action, it has indeed taken enforcement action, including closure orders, when public health and safety are not adequately protected. *See* Crowell Declaration, submitted simultaneously herewith at Exhibit A (Order closing of gaming facility operated by the Nooksack Tribe), Exhibit B (Order closing of gaming facility operated by the Picayune Rancheria)[4].

Moreover, the Town's and the AGHCA's analysis that state and local law can be enforced concurrently with federal and tribal law fails to address, and runs counter to, the Tribe's analysis, specific to IGRA, that state laws touching Indian gaming are preempted by IGRA, and state jurisdiction can only be claimed through a gaming compact negotiated in good faith and approved by the Department of the Interior (Doc. 185 at 18, citing *United Keetoowah Band of Cherokee Indians v. Oklahoma*, 927 F.2d 1170, 1177 (10th Cir. 1991), and *Sycuan Band of Mission Indians v. Roache*, 788 F.Supp. 1498, 1504 (S.D. Cal. 1992)).

---

[4] A comprehensive list of enforcement action taken by the NIGC is located on its official web page at www.nigc.gov/commission/enforcement-actions. *See also* Crowell Declaration at Ex. C.

This Court also reasoned in granting preliminary injunctive relief that the Town would act in good faith in the issuance of permits (Doc. 142 at 36, lines 21-23), but the only fact-based issue presented in the current motions is that the Town refused to process a permit requested by the power utility, Eversource. The Tribe submitted an uncontroverted declaration that the Town failed to process the Eversource permit, and instead directed Eversource to shut off power to the Tribe's gaming site (Doc. 185-3 at ¶¶ 6-8). The Town and the AGHCA in their reply attempt to contradict the Declaration by directing this Court to "Town Mem, Ex. B," which is a low-circulation newspaper article that does not even address the application for a Town-issued permit. That is hardly controverting evidence – the Town continues its failure to provide a scintilla of evidence that it will be irreparably harmed by allowing tribal and federal law to govern the construction of the Tribe's gaming facility. The Tribe's concern that the Town will not process permit applications is real and well-justified in the wake of decades of opposition to the Tribe's exercise of its rights under IGRA. The Town's most recent actions regarding the disconnection of power to the Tribe's gaming site serves as a poignant case-in-point.

### C. Red herrings should not misdirect this Court from the entry of Final Judgment as proposed by the Tribe.

The Town and the AGHCA inject several red herrings, and the Commonwealth injects one red herring, that do not bear on the propriety of entering Final Judgment in the form proposed by the Tribe.

The first red herring is the Town's and the AGHCA's analysis as to whether the First Circuit decision applies to Settlement Lands (Doc. 186-1 at 9-10). The Tribe's Opposition rejected the Town's Proposed Form of Final Judgment as an attempt to narrow the scope of the First Circuit's opinion in an manner contrary to the well-reasoned analysis that IGRA's

preemptive effect over the Federal Act is applicable to all eligible lands under IGRA. The Tribe's proposed judgment does not delineate any particular lands, but simply refers to the First Circuit's opinion. The Town is free to file new litigation against the Tribe and/or the NIGC if it believes that the First Circuit opinion and analysis do not apply to lands other than "Settlement Lands," despite the NIGC's and DOI's determination that the Tribe's current proposed gaming site is eligible for gaming under IGRA. Similarly, the Town is free to file new litigation if it believes that the Tribe is violating laws not otherwise preempted by IGRA. But those challenges do not belong in this courtroom, where the First Circuit has issued its clear mandate.

The second red herring is the Town's and the AGHCA's baseless assertion that the Tribe's Proposed Form of Final Judgment would enjoin them from challenging "the Tribe's actions to any gaming facility, on any land, in perpetuity" (Doc. 186-1 at 10). The Tribe's Proposed Form of Final Judgment does no such thing. If the Town or the AGHCA believe that any future actions by the Tribe are beyond the authority provided by the First Circuit opinion, they may seek recourse against the Tribe and/or the NIGC at that time.

The third red herring is the Town's and the AGHCA's footnote (Doc. 186-1 at 8, n.5) that the Tribe has not asserted its sovereign immunity in this lawsuit, which somehow allows the Town and the AGHCA to double-down in characterizing the Tribe as a "mere land owner"). The argument is nonsensical and underscores the correctness of the Tribe's concerns regarding the Town's continued opposition to the Tribe's exercise of its sovereign rights under IGRA. The argument in no fashion bears on the appropriateness of the Tribe's Proposed Final Judgment.

The last red herring is the Commonwealth's concern that the Commonwealth cannot be subject to injunctive relief because of its Eleventh Amendment immunity (Doc. 187-1 at 2-3). However, this Court ruled that the Tribe's counter-claims against the Third Party Defendant State Officials are subject to this Court's jurisdiction for prospective injunctive relief pursuant to *Ex Parte Young*, 209 U.S. 123 (1908) (Doc. 95 at 30-31). Notably, the Commonwealth merely advocates not to be named as a party subject to the injunction, and does not advocate for entry of the Town's Proposed Form of Final Judgment. Although the Commonwealth is bound by the opinion of the First Circuit, its point is well taken as to the Commonwealth being subject to the injunction, but not as to the Third Party Defendant state officials. Accordingly, the Tribe is amenable to the following change in the Proposed Form of Final Judgment to read:

> For the reasons set forth in *Massachusetts v. Wampanoag Tribe of Gay Head (Aquinnah)*, 853 F.3d 618, 629 (1st. Cir. 2017), Final Judgment is entered in favor of the Wampanoag Tribe of Gay Head (Aquinnah) and the Aquinnah Wampanoag Gaming Corporation (collectively "Tribe"). The <u>Third Party Defendant officials of the</u> Commonwealth of Massachusetts, the Town of Aquinnah and the Aquinnah Gay Head Community Association are permanently enjoined from asserting jurisdiction over, or interfering with, the Tribe's rights under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq.

### III. CONCLUSION

For the reasons set forth herein, in the Tribe's Response in Opposition to the Town's Motion, and as set forth in *Massachusetts v. Wampanoag Tribe of Gay Head (Aquinnah)*, 853 F.3d 618, 629 (1st Cir. 2017), the Town's Motion should be denied and final judgment should be entered as proposed by the Tribe.

Dated: May 1, 2019                                               Respectfully Submitted,

                                                            <u>s/ *Scott Crowell*</u>
                                                            SCOTT CROWELL (*pro hac vice*)


CROWELL LAW OFFICE TRIBAL
ADVOCACY GROUP LLP
Sedona, Arizona, 86336
Telephone: (425) 802-5369
Fax: (509) 235-5017
scottcrowell@clotag.net

BRUCE SINGAL (BBO #464420)
ELIZABETH MCEVOY (BB) # 683191)
DONOGHUE, BARRETT & SINGAL
One Beacon Street, Suite 1320
Boston, MA 02108-3106
Telephone: (617) 720-5090
Fax: (617) 720-5092

LAEL R. ECHO-HAWK (*pro hac vice*)
MThirtySix, PLLC
The Yard
700 Pennsylvania Avenue, Second Floor
Washington, D.C. 20003
Telephone: (206) 271-0106
lael@mthirtysixpllc.com

*Attorneys for Defendants/Counterclaim-Plaintiffs*

## CERTIFICATE OF SERVICE

I, Scott Crowell, hereby certify that I filed through the ECF System and therefore copies of the **WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH)'S SUR-REPLY IN OPPOSITION TO TOWN OF AQUINNAH'S MOTION FOR ENTRY OF JUDGMENT** will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). All non-registered CM/ECF participants will receive a copy of this filing via USPS.

Dated: May 1, 2019

*s/ Scott Crowell*
SCOTT CROWELL