**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| **COMMONWEALTH OF MASSACHUSETTS,** | ) |
| | ) |
| **Plaintiff/Counterclaim-** | ) |
| **Defendant,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **THE AQUINNAH/GAY HEAD COMMUNITY** | ) |
| **ASSOCIATION, INC. (AGHCA) and TOWN** | ) |
| **OF AQUINNAH,** | ) |
| | ) |
| **Intervenors/Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE WAMPANOAG TRIBE OF GAY HEAD** | ) |
| **(AQUINNAH), THE WAMPANOAG TRIBAL** | ) |
| **COUNCIL OF GAY HEAD, INC., and THE** | ) |
| **AQUINNAH WAMPANOAG GAMING** | ) |
| **CORPORATION,** | ) |
| | ) |
| **Defendants/Counterclaim-** | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CHARLES BAKER, in his official capacity as** | ) |
| **GOVERNOR, COMMONWEALTH OF** | ) |
| **MASSACHUSETTS, et al.,** | ) |
| | ) |
| **Third-Party Defendants.** | ) |

Civil Action No.
13-13286-FDS

_____)


**MEMORANDUM AND ORDER ON MOTION FOR FINAL JUDGMENT**

**SAYLOR, J.**

     This is a dispute over gaming on Indian lands on Martha's Vineyard.  On November 13,

2015, the Court granted summary judgment against the Tribe, concluding that (1) the Indian

Gaming Regulatory Act ("IGRA") did not apply to the tribal lands at issue, and (2) the IGRA did not repeal, by implication, a statute passed by Congress in 1987 that ratified a settlement agreement requiring the Tribe to adhere to state gaming laws.  On April 10, 2017, the First Circuit reversed the Court's decision as to those two issues.  It subsequently remanded the case for the entry of final judgment.

The present dispute involves the form of that final judgment.  The Court's original judgment was not limited to gaming issues, but more broadly provided that the Tribe must comply with "any state and local permitting requirements."  That judgment reflected a dispute as to whether the Tribe is subject to state and local permitting requirements (such as building permits, zoning, regional commission approval, and the like) not directly involving gaming.  The tribe appealed the judgment as to the two gaming issues; it did not appeal as to the permitting requirements.

The mandate of the First Circuit states that the matter was remanded "for entry of judgment in favor of the Tribe."  The question presented is whether that order applies to that portion of the original judgment from which the Tribe did not appeal.  In simplified terms, the Tribe lost in the District Court as to three principal issues; it appealed only two of them; its appeal was successful as to those two; and it now seeks judgment in its favor as to all three.

For the reasons set forth below, absent clear direction from the Court of Appeals, the Court will not reverse its judgment as to an issue that was never appealed.  The Court will therefore enter a final judgment providing that any gaming facility constructed and operated by the Tribe on the lands at issue is not subject to state and local laws and regulations concerning gaming.  The judgment will further provide, however, that any such facility is otherwise subject to state and local regulation, including any applicable permitting requirements.

2

I.      **Background**

A.      **The 1983 Settlement Agreement and 1987 Federal Settlement Act**

In 1983, the Commonwealth, the Town of Gay Head, the Taxpayers' Association of Gay

Head, Inc. and the Wampanoag Tribal Council of Gay Head, Inc. entered into a Settlement

Agreement.[1]   The Settlement Agreement resolved a land-rights lawsuit that had been filed in

1974.  As part of the settlement, the Town and the Taxpayers' Association conveyed to the

Wampanoag Tribal Council approximately 485 acres of land (the "Settlement Lands") to be held

"in the same manner, and subject to the same laws, as any other Massachusetts corporation."  In

return, the Tribal Council relinquished all claims to other lands and waters in the

Commonwealth.  The Settlement Agreement provided that "[u]nder no circumstances, including

any future recognition of the existence of an Indian tribe in the Town of Gay Head, shall the civil

or criminal jurisdiction of the Commonwealth . . . over the settlement lands . . . be impaired or

otherwise altered" and "no Indian tribe or band shall ever exercise sovereign jurisdiction" over

those lands.  And the Tribe agreed that the Settlement Lands would be "subject to all Federal,

State, and local laws, including Town zoning laws."[2]

The Settlement Agreement was approved by the Massachusetts legislature in 1985 and by

Congress in 1987.  The 1987 federal Settlement Act contained the following language:  "Except

as otherwise expressly provided in this subchapter or in the State Implementing Act, the

settlement lands and any other land that may now or hereafter be owned by or held in trust for

any Indian tribe or entity in the town of Gay Head, Massachusetts, shall be subject to the civil

and criminal laws, ordinances, and jurisdiction of the Commonwealth of Massachusetts and the

---

[1] In 1997, the town of Gay Head changed its name to Aquinnah.

[2] The Settlement Agreement set forth two exceptions to that provision, specifying that the Settlement Lands would be exempt from state property taxes and hunting regulations.

3

town of Gay Head, Massachusetts (including those laws and regulations which prohibit or regulate the conduct of bingo or any other game of chance)."  25 U.S.C. § 1771g.[3]

###### B.        Proceedings in the District Court

On December 2, 2013, the Commonwealth of Massachusetts filed a complaint with the Single Justice of the Supreme Judicial Court for Suffolk County against the Wampanoag Tribe of Gay Head (Aquinnah), the Wampanoag Tribal Council of Gay Head, Inc., and the Aquinnah Wampanoag Gaming Corporation (collectively, "the Tribe").  The complaint asserted a claim for breach of contract and requested a declaratory judgment that the Settlement Agreement allowed the Commonwealth to prohibit the Tribe from conducting gaming on Settlement Lands in Aquinnah.

On December 30, 2013, the Tribe removed the action to this court on grounds of federal-question and supplemental jurisdiction.

On July 10, 2014, both the Aquinnah/Gay Head Community Association, Inc. ("AGHCA") and the Town of Aquinnah filed motions to intervene.  This court granted those motions on August 6, 2014.

On October 24, 2014, the Tribe filed counterclaims against the Commonwealth and claims against three third-party defendants, all of whom are government officials of the Commonwealth sued in their official capacity.[4]

---

[3] As noted, § 1771g applies to "settlement lands" and "any other land that may now or hereafter be owned by or held in trust for any Indian tribe or entity in the town of Gay Head, Massachusetts."  For the sake of convenience, this opinion will refer to all the lands in question as "Settlement Lands."

[4] The original counterclaims named then-Governor Deval Patrick, then-Attorney General Martha Coakley, and Massachusetts Gaming Commission Chairman Stephen Crosby as third-party defendants.  Patrick and Coakley no longer serve in the capacities listed, having been replaced by Governor Charles D. Baker and Attorney General Maura Healey.  Accordingly, Governor Baker, Attorney General Healey, and Crosby are the third-party defendants as the case currently stands.

On May 28, 2015, the Commonwealth, the Town, the AGHCA, and the Tribe all moved for summary judgment on the issue of whether the 1987 Settlement Act allowed the Commonwealth to prohibit the Tribe from conducting gaming on the Settlement Lands.

On July 14, 2015, after learning that the Tribe planned to commence construction of a gaming facility, the Town moved for a temporary restraining order and/or a preliminary injunction enjoining the Tribe from undertaking any further construction.  On July 28, 2015, after a hearing, the Court entered a preliminary injunction enjoining the Tribe from constructing a gaming facility without complying with the permitting requirements of the Town.

Both sides then moved for summary judgment.  On November 13, 2015, the Court issued an order granting summary judgment to the Commonwealth, Town, and the AGHCA.  The order held that the Indian Gaming Regulatory Act ("IGRA") did not apply to the Settlement Lands, and that in any event, the IGRA did not repeal the 1987 Settlement Act and thus the Commonwealth could regulate the Tribe's gaming activity on the lands.

On January 5, 2016, the Court entered final judgment.  In that judgment, the Court "ordered, adjudged, and decreed," "consistent with . . . [its] July 28, 2015 Order entering a preliminary injunction . . . and [its] November 13, 2015 Order addressing the cross-motions for summary judgment" that:

> (1) judgment was entered in favor of the Commonwealth, the AGHCA, and the Town "as to [their] claims for breach of contract and declaratory judgment."

> (2) judgment was entered in favor of the Commonwealth, the AGHCA, the Town and the government officials "as to the Tribe's counterclaims for a declaratory judgment."

> (3) judgment was entered declaring that the Tribe "may not construct, license, open, or operate any gaming facility at or on the Settlement Lands . . . without complying with" state and local laws and regulations, "including any pertinent state and local permitting requirements."

(4) a permanent injunction was entered "enjoining and restraining the Tribe from
commencing or continuing construction of and/or opening any gaming facility at
or on the Wampanoag Community Center building site (as that term is used in the
Preliminary Injunction Order) or on any other Settlement Lands (as those lands
are defined in the Summary Judgment Order), without complying with the laws
and regulations of the Commonwealth of Massachusetts and the Town of
Aquinnah, including any state and local permitting requirements."

(Final Judgment at 1-2).

### C.     The Appeal

The Tribe appealed.  The Tribe's brief in the First Circuit raised three specific issues:

(1) Whether the District Court erred in ruling that MILCSA (Aquinnah)'s
application of the Commonwealth's gaming laws remains in effect; IGRA
preempts prior legislation regarding gaming on Aquinnah Indian lands;

(2) Whether the District Court erred in concluding that the Tribe's struggling
efforts to establish and expand its governmental presence are deficient for the
Tribe's Indian lands to qualify under IGRA; Aquinnah exercises sufficient
governmental power over its Indian lands; and

(3) Whether the District Court erred in concluding that the Commonwealth's
Lawsuit could proceed without the [NIGC] as a party; the United States continues
to assert jurisdiction over gaming activities on Aquinnah Indian lands to the
exclusion of the Commonwealth.

(Tribe's Opening Brief, 2016 WL 3437627 at *2-3).

On April 10, 2017, the First Circuit issued an opinion that almost exclusively addressed

the Tribe's first two issues—that is, "whether [the] IGRA applies to the Settlement Lands," and

"whether [the] IGRA effects a repeal of [the Settlement Act]."  *Massachusetts v. Wampanoag
Tribe of Gay Head (Aquinnah)*, 853 F.3d 618, 624 (1st Cir. 2017).[5]  Answering both of those

questions in the affirmative, the First Circuit reversed the opinion of this court and remanded the

case.  The judgment states as follows:  "The district court's judgment is reversed, and the matter

---

[5] In a footnote, the First Circuit briefly addressed the third issue and concluded that it had found "no error,
let alone abuse of discretion, in [this Court's] decision to proceed without the NIGC as a party."  *Id.* at 624, n. 3.

is remanded to the district for entry of judgment in favor of the tribe." April 10, 2017 Judgment at 1.

## II.  <u>Analysis</u>

The Town has filed a motion for entry of final judgment along with a proposed final judgment.  Essentially, the Town contends that the original final judgment required the Tribe to comply with gaming laws *and* state and local permitting requirements; that the Tribe appealed only the portion of the judgment concerning the gaming laws; that the First Circuit's opinion accordingly did not address the portion of the judgment concerning the permitting requirements; and that therefore this Court's decision that the Tribe must comply with those permitting requirements is not affected by the First Circuit's opinion and should be included in the amended final judgment.

As a general matter, a party's objections to any issue not raised on appeal are waived. *See DeCaro v. Hasbro, Inc.*, 580 F.3d 55, 64 (1st Cir. 2009) ("[C]ontentions not advanced in an appellant's opening brief are deemed waived.").  When a legal decision goes "unchallenged in a subsequent appeal despite the existence of ample opportunity" to do so, the decision "becomes the law of the case for future stages of the same litigation," and a party normally forfeits its right to "challenge that particular decision at a subsequent date."  *United States v. Matthews*, 643 F.3d 9, 12, 14 (1st Cir. 2011), quoting *United States v. Bell*, 988 F.2d 247, 250-51 (1st Cir. 1993). The Tribe, however, offers three reasons why that principle should not apply.

First, the Tribe argues that it appealed from this Court's "[f]inal [j]udgment in its entirety" and raised "three primary errors," two of which (it alleges) were "contentions that directly address whether this Court erred in its reasoning and in issuing a preliminary injunction requiring that the Tribe comply with local permitting law." (Def. Mem. at 9).  But that is not an

accurate description of the issues raised on appeal.  As noted, the Tribe appealed only three specific issues, none of which even arguably concerned this Court's holding as to non-gaming permitting requirements.

Second, the Tribe argues that even "[i]f the question of local permitting was not expressly decided, it was implicitly decided or inferred by the First Circuit."  (Def. Mem. at 13). Essentially, the Tribe contends that the First Circuit "expressly reaffirmed" its reasoning in *Rhode Island v. Narragansett Indian Tribe* "that all local laws that are 'integral' to the exercise of a tribe's gaming laws are preempted by the IGRA."  (Def. Mem. at 13, citing 19 F.3d 685, 705 (1st Cir. 1994)).  It further contends that because compliance with permitting regulations would be necessary to its ability to proceed with its construction and operation of a gaming facility, the First Circuit implicitly decided that all state and local permitting authority was preempted by the IGRA.

There is no question that the First Circuit did not expressly decide the issue.  As noted, the 1987 Settlement Act provided that the Settlement Lands "shall be subject to the civil and criminal laws, ordinances, and jurisdiction of the Commonwealth of Massachusetts and the town of Gay Head, Massachusetts (including those laws and regulations which prohibit or regulate the conduct of bingo or any other game of chance)."  The First Circuit's opinion focused entirely on the "parenthetical" in the statute, which directly addressed state and local regulation of gaming. 853 F.3d at 628-29.  The opinion contains no analysis of the other portions of the statute.

In *Narragansett*, the First Circuit made clear that the IGRA "[left] largely intact the grant of jurisdiction [to the state]" granted by the Settlement Act in that case, and instead only "demand[ed] an adjustment of that portion of jurisdiction touching on gaming."  *Narragansett*, 19 F.3d at 704.  The First Circuit quoted that language in its opinion in this case.  *Wampanoag*

*Tribe*, 853 F.3d at 627 (quoting *Narragansett*, 19 F.3d at 704).  There was no discussion as to whether state and local permitting laws are "integral" to gaming.  Nor was there any discussion of the "tenebrous" line between those activities that state and local authorities may regulate on tribal Settlement Lands and those it may not.  *See Narragansett*, 19 F.3d at 705-06.

In short, because the Tribe did not raise the issue on appeal, the First Circuit said nothing on point.  To the extent it made any implicit ruling, it reaffirmed its holding and reasoning in *Narragansett*.  This Court will not read into its silence a ruling that would essentially overrule *Narragansett*, void significant portions of the Settlement Act, and divest the Commonwealth and the Town of regulatory jurisdiction of any kind.  The Tribe's interpretation would destroy—not "leave . . . intact"—the jurisdiction over the Settlement Lands granted to the Commonwealth and the Town by the Settlement Act.

Finally, the Tribe points to the language of the mandate, which states that "the opinion of the district court is reversed and the case is remanded to the district court for entry of judgment in favor of the Tribe."  It contends that the broad language of that statement serves as an order to this Court that its opinion should be reversed in its entirety.  (Def. Mem. at 5-6, citing *Wampanoag*, 853 F.3d at 629).

In support, the Tribe relies principally on a 1966 opinion from the District of Columbia Circuit, *Hynning v. Partridge*, 359 F.2d 271, 273 (D.C. Cir. 1966).  In *Hynning*, the district court had granted summary judgment for the plaintiff and denied a counterclaim by the defendant for attorney's fees.  The appellate court reversed, and directed that the matter be remanded to the district court "with directions to enter judgment in favor of [the defendant]."  359 F.2d at 272.

On remand, the plaintiff contended that because the appellate opinion "did not mention the District Court's denial of [the defendant's] counterclaim, [its] reversal was limited to the

[underlying] issue," and therefore that the court "had affirmed the District Court's denial of the counterclaim." *Id.* at 272-73.  The defendant, by contrast, contended that the appellate court had reversed the entire judgment.  The district court agreed with the defendant and awarded attorney's fees. *Id.* at 273 (internal citations omitted).

The plaintiff again appealed.  The D.C. Circuit affirmed; it stated that because it had reversed the District Court's first ruling "in its entirety," it had "restored" the parties "to the positions they held prior to" the district court's erroneous original judgment. *Id.*  Doing so, the court continued, permitted the district court to award the defendant attorney's fees. *Id.*

As first blush, the language of *Hynning* appears to lend support to the Tribe's contention—that is, that an opinion "without limitation as to how much of the trial court's decision is [to be] set aside" has the effect of setting aside all of that decision. *Hynning*, 359 F.2d at 273.  However, at least two reasons counsel against following that principle here.

First, as the *Hynning* court itself recognized, "opinion[s] and judgment[s]" are "requir[ed]" to "be read together." *Id.*  In *Hynning*, it made sense that if the district court's judgment in favor of the plaintiff were set aside, the court could reconsider defendant's claim for fees, which could only be awarded if defendant prevailed.  Here, however, the First Circuit's opinion considered only the issue of gaming laws, and there is nothing inconsistent or irrational in denying the Tribe's claims as to the application of permitting regulations.

Second, and more importantly, the First Circuit has made clear that district courts are generally bound only by what the appellate court actually decided, and retain discretion to decide issues that the opinion leaves open. *See Biggins v. Hazen Paper Co.*, 111 F.3d 205, 206 (1st Cir. 1997).  In *Biggins*, the court observed that "[o]n remand, courts are often confronted with issues that were never considered by the remanding court.  And although the mandate of an appellate

court forecloses the lower court from reconsidering matters determined in the appellate court, it 'leaves to the [lower] court any issue not expressly or impliedly disposed of on appeal.'"   111 F.3d at 209 (quoting *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986) (internal citations omitted).   In other words, the court concluded, "mandates require respect for *what the higher court decided, not for what it did not decide*."   *Id.* (emphasis added).   Because the issue in question in that case "had certainly not been addressed in the [appellate] opinion," the lower court was free on remand to reconsider that issue.   *Id.*

Here, the permitting issue was not addressed in the First Circuit's opinion.  This Court therefore remains free to reinstate that portion of its final judgment.  A contrary result would grant the Tribe a victory on an issue that it did not appeal, that the parties did not brief, and that the First Circuit did not decide.  Such a result would be anomalous, and indeed unfair.

In summary, the Tribe could have appealed those portions of the judgment that provided that it must comply with state and local permitting and other regulatory requirements.  Instead, it only appealed those portions addressing gaming issues.  An amended final judgment in favor of the Tribe as to the gaming issues is of course required.  The remainder of the judgment, however, will be reinstated in substance.  If the Tribe seeks to construct and operate a gaming facility, it need not comply with state and local gaming laws, but it must comply with all state and local laws and regulations of general applicability to the construction and operation of a commercial building.

The Court will issue an amended final judgment consistent with this memorandum and order.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: June 19, 2019                                    United States District Judge