UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE COMMONWEALTH OF MASSACHUSETTS,<br><br>    Plaintiff, and<br><br>AQUINNAH/GAY HEAD COMMUNITY ASSOCIATION, INC. (AGHCA) and TOWN OF AQUINNAH,<br><br>    Plaintiff-Intervenors,<br><br>    v.<br><br>THE WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH), THE WAMPANOAG TRIBAL COUNCIL OF GAY HEAD, INC., and THE AQUINNAH WAMPANOAG GAMING CORPORATION,<br><br>    Defendants/Counterclaim-Plaintiffs, and<br><br>CHARLES D. BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts, MAURA T. HEALEY, in her official capacity as Attorney General of the Commonwealth of Massachusetts, and CATHY JUDD-STEIN, in her official capacity as Chair of the Massachusetts Gaming Commission,<br><br>    Third Party Defendants. | No. 1:13-CV-13286-FDS |

**THE TOWN OF AQUINNAH'S AND THE AQUINNAH/GAY HEAD COMMUNITY ASSOCIATION, INC.'S OPPOSITION TO MOTION FOR STAY PENDING APPEAL**

Plaintiff-Intervenors Town of Aquinnah (the "Town") and Aquinnah/Gay Head Community Association, Inc. ("AGHCA") oppose the motion filed by Defendants The Wampanoag Tribe of Gay Head (Aquinnah), The Wampanoag Tribal Council of Gay Head, Inc., and the Aquinnah Wampanoag Gaming Corporation (collectively, the "Tribe") for a stay of the Court's permitting injunction pending appeal. *See* ECF No. 201, at 3-4.[1] The Tribe has come nowhere close to satisfying the familiar four-part standard for this extraordinary relief.

First, the Tribe has no realistic likelihood of success on appeal. The Tribe's procedural challenges to the Court's Opinion are meritless; its substantive challenges—and the procedural arguments that it now raises for the first time—are waived. Second, the Tribe has not demonstrated a substantial risk of irreparable injury absent a stay of the permitting injunction. The Tribe insists that the permitting injunction deprives it of needed revenue, but the permitting injunction does not restrain the Tribe from constructing or operating a gaming facility—as with the preliminary injunction first entered in 2015, the injunction merely requires the Tribe to obtain the same permits that any other construction project requires. The Tribe has never even sought any such permits for the current facility and never explains why it cannot do so. To the extent that delay in construction is harming the Tribe, that delay is of the Tribe's own doing. Third, the balance of equities and the public interest support leaving the injunction in place. Allowing the Tribe to construct a gaming facility without complying with all applicable permitting rules would threaten substantial harm to the Town's visitors and residents (including the AGHCA's members), as well as the natural environment, undermining the public interest. In contrast, simply complying with the requisite permitting requirements would cause no irreparable harm to the Tribe, particularly if, as the Tribe maintains, its own law "more than adequately protects

---

[1] While the Tribe represents that its Motion was filed July 10, 2019, it was filed at 11:52 p.m. and therefore was not timely filed that day under Local Rule 5.4(d). The supporting Memorandum of Law correctly states that it was filed and served July 11, 2019.

public health and safety, and the environment." Memorandum of Law in Support of Tribe's Motion for Stay Pending Appeal ("Mem."), ECF No. 207, at 2.  If the Tribe's representation is true, it should be able to readily comply with all applicable permitting requirements.  The Court should therefore deny the Tribe's motion for a stay of the permitting injunction pending appeal.

## BACKGROUND

The Court's Memorandum Opinion lays out the full background of the current dispute. *See* Memorandum Opinion ("Op."), ECF No. 200, at 3-7.  Simply put, over the course of litigation in this Court, the parties had two separate but related disputes: (i) whether the Tribe may operate a gaming facility on the so-called Settlement Lands pursuant to the Indian Gaming Regulatory Act ("IGRA") without complying with state or local gaming regulations; and (ii) whether the Tribe must comply with all generally applicable (*i.e.*, non-gaming) state and local rules and regulations, including permitting requirements, before constructing, occupying, or operating a gaming facility.  *Id.* at 4-6.  The Tribe took only the first issue to the First Circuit. Although the Tribe prevailed on that issue, entitling it to operate a gaming facility without a gaming license, it never challenged this Court's resolution of the second issue in favor of the Town.  *Id.* at 6-7; *see Massachusetts v. Wampanoag Tribe of Gay Head (Aquinnah)*, 853 F.3d 618 (1st Cir. 2017).

This past April, after the Tribe had begun clear-cutting land in preparation for recommencing construction of its gaming facility, the Town filed a motion for entry of final judgment reflecting both (1) the First Circuit's decision in favor of the Tribe on the gaming issues, and (2) this Court's decision in favor of the Town and the AGHCA on the permitting issues, which the Tribe did not raise on appeal.  Following full briefing and argument, the Court entered an Amended Final Judgment enjoining the enforcement of gaming regulations against the Tribe (the "gaming injunction"), and enjoining the Tribe from "constructing, occupying, and

2

operating a gaming facility on the Settlement Lands"—which, as defined in the Amended Final Judgment, includes the site where the Tribe has proposed to build a gaming facility—"without complying with the General Regulatory Laws" (the "permitting injunction"). ECF No. 201, at 4. The "General Regulatory Laws," in turn, are defined as "the laws, regulations, and ordinances of the Commonwealth of Massachusetts, the Town of Aquinnah, and other state and local governmental authorities other than the Gaming Laws, including but not limited to any state and local permitting requirements." *Id.* at 3. The Tribe has filed an appeal from the permitting injunction. ECF No. 202.[2]

## LEGAL STANDARD

The following four factors apply to a motion for a stay (or an injunction) pending appeal: "(1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent relief; (3) whether issuance of relief will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010) (involving a motion for injunction pending appeal but noting the same factors apply to stays); *see also Rio Grande Cmty. Health Ctr., Inc. v. Armendariz*, 792 F.3d 229, 231 (1st Cir. 2015) (applying these factors and refusing to stay injunction pending appeal). The likelihood of success and irreparable harm prongs are independent, necessary conditions for relief: a movant for a stay pending appeal must demonstrate *both* "more than mere possibility of relief" *and* more than "some possibility of irreparable injury" before the Court should "assess[] the harm to the opposing party and weigh[] the public interest. *Nken v. Holder*, 556 U.S. 418, 434-35 (2009); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (movant for injunction pending appeal "*must* establish

---

[2] The Amended Final Judgment from which the Tribe has appealed has since been further amended. The Second Amended Final Judgment, ECF No. 215, modifies the separate gaming injunction but leaves the permitting injunction unchanged.

that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

The Tribe, citing a First Circuit case from 1990 and an out-of-circuit case from 1985, suggests that the Court should apply a sliding-scale approach, under which a strong showing on the balance of equities might overcome a weak showing on the likelihood of success prong. Mem. at 3. But this approach is inconsistent with *Nken* and *Winter*. *See Respect Maine PAC*, 622 F.3d at 15 ("The first two factors are the most critical. Both require a showing of more than mere possibility. Plaintiffs must show a strong likelihood of success, and they must demonstrate that irreparable injury will be likely absent an injunction.").[3] Even before *Nken* and *Winter*, as the Tribe acknowledges, the First Circuit described a likelihood of success as "the *sine qua non*" (indispensable condition) of the stay standard. Mem. at 3 (citing cases). In any event, as explained below, the Tribe has demonstrated neither a realistic likelihood of success on the merits nor that the equities weigh in its favor, so relief is not warranted regardless of whether the Court applies the "sliding scale" approach or the *Nken*/*Winter* standard.

## ARGUMENT

The Tribe has failed to satisfy either of the separate and independent threshold requirements for the relief it seeks: it has no reasonable likelihood of success on the merits, and it has failed to demonstrate that it is likely to suffer irreparable harm absent a stay of the injunction. Moreover, a stay of the injunction pending appeal would cause the Town and the AGHCA a real risk of irreparable harm and would undermine the public interest, so the balance of equities tips heavily against a stay. The Court should therefore deny the Tribe's motion.

---

[3] The Tribe also cites another pre-*Nken*/*Winter* case, *P.R. Hosp. Supply, Inc. v. Boston Scientific Corp.,* 426 F.3d 503, 506 n.1 (1st Cir. 2005), but the Court in that case was stating the Massachusetts state court standard for preliminary injunctive relief, not the federal standard.

4

**I.      THE TRIBE DOES NOT HAVE A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS APPEAL.**

The Tribe has not shown that it is likely to succeed on appeal.  Its discussion of the merits is misconceived as it focuses on arguing that the permitting injunction never should have entered.  Mem. at 6-12.  But the primary basis for the Court's Opinion was that the Tribe *can no longer attack the permitting injunction*.  The Tribe's failure to appeal the permitting injunction the first time around rendered that injunction law of the case.  Op. 7, 11.  To the extent the Tribe even addresses the Court's actual reasoning, its attacks were long ago forfeited and are, in any event, wrong on the merits.

First, the Tribe all but abandons the lead argument from its opposition to the motion to enter judgment—that it *did* separately appeal the permitting injunction.  *See* Mem. at 13, 15.  That is a wise concession.  As the Court's Opinion recognized (Op. 7-8), the Tribe's submissions to the First Circuit focused solely on the gaming issue and made no mention at all of the separate permitting issue.

Second, the Tribe again invokes *Hynning v. Partridge*, 359 F.2d 271, 273 (D.C. Cir. 1966), to support its argument that the "mandate rule" somehow forecloses the Court from reinstating a portion of its judgment undisturbed by the First Circuit's mandate.  Mem. at 13-14.  But the Court already distinguished *Hynning* and recognized that, as a matter of First Circuit precedent, a lower court remains "free to reinstate" a portion of an earlier judgment that, as here, "was not addressed" on appeal.  Op. 10-11.  The Tribe insists that this rule does not apply because the permitting injunction "disrupts *Narragansett*."  Mem. at 19.  That is just another argument the Tribe could have made on the merits, but did not.  It is not a reason to disregard the law of the case.

Third, the Tribe raises a new procedural objection: that the Town's motion for entry of final judgment was untimely under Federal Rule of Civil Procedure 58(c)(2)(B). The Tribe did not oppose the Town's motion on that basis and is unlikely to succeed on a forfeited argument. *See Eldridge v. Gordon Bros. Grp., L.L.C.*, 863 F.3d 66, 85 (1st Cir. 2017) (noting that "arguments not seasonably advanced below cannot be raised for the first time on appeal" (internal quotation marks omitted)). In any event, the argument is meritless. Rule 58(c)(2)(B) is designed to start the clock for a losing party to file an appeal if, after 150 days, a district court has made a ruling but has still failed to issue a judgment as a "separate document." *See Bos. Prop. Exch. Transfer Co. v. Iantosca*, 720 F.3d 1, 7 (1st Cir. 2013) ("Rule 58(c) details when a judgment has entered, if timing is the only question, but it does not address whether a judgment has entered, when the issue implicates more than timing."). That does not apply here for multiple reasons: Rule 58 governs actions of the district court, not the First Circuit, *see* Fed. R. Civ. P. 1; the First Circuit did not enter judgment, but remanded to this Court to enter judgment; and Rule 58(c)(2) by its express terms did not apply until this Court "entered" its amended "judgment." Although the Tribe suggests (Mem. at 13) that the First Circuit's mandate is self-effectuating—in other words, that it became a binding injunction on its own terms after 150 days had passed—the mandate does not speak with the specificity required of a binding injunction, *see* Fed. R. Civ. P. 65(d). That is why, if the Tribe wanted an injunction in accordance with the First Circuit's decision—and it did—action by this Court was necessary. There was no gaming injunction until this Court entered one. Finally, even if an appellate mandate could be truly self-executing as to the issues encompassed within it, the relevant portion of this Court's *prior* judgment—the permitting injunction—was already binding on the Tribe and never appealed.

Nothing in Rule 58 suggests that the mandate from an appeal on *other* issues could reopen the unappealed portion of a final judgment.[4]

Fourth, even if the Tribe's arguments were not foreclosed by the law of the case, they are wrong on the merits for all of the reasons that the Court gave in its Opinion (*see* Op. at 7-11) and that the Town and the AGHCA set forth in support of the Town's motion for entry of final judgment, in writing (*see* ECF No. 181, at 6-10; ECF No. 197, at 5-12) and at the hearing.  For example, the Tribe repeats at length (Mem. at 6-12) its argument that the permitting injunction is inconsistent with *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685 (1st Cir. 1994).  But as the Court explained, *Narragansett* says nothing about "whether state and local permitting laws are 'integral' to gaming" and thus preempted by IGRA.  Op. 8-9.  The Tribe waived any arguments that the First Circuit should *modify Narragansett* by failing to raise them in the first appeal, and indeed the First Circuit did not modify *Narragansett*.  Op. 9.  That also forecloses the notion (Mem. at 14-15) that the First Circuit in the first appeal "changed the law" in some way that would warrant reconsideration of the permitting injunction.

## II. THE EQUITABLE FACTORS DISFAVOR A STAY OF THE PERMITTING INJUNCTION.

The Court should deny the extraordinary relief the Tribe seeks for the further reason that the Tribe has not demonstrated a likely risk of irreparable injury during the pendency of an appeal.  Moreover, the Town and the AGHCA would suffer significant and irreparable harm were the permitting injunction stayed, and a stay would not be in the public interest.  The balance of equities tips strongly in favor of denying the Tribe's motion.

---

[4] The Tribe also suggests in a footnote that the 1983 Settlement Agreement is "no longer valid," Mem. 12 n.2, but the Tribe acknowledges that the validity of the Agreement is "not at issue in the present Motion," *id.*  As this Court has previously stated:  "In order to make its finding on waiver, the court in *Shellfish Hatchery* necessarily must have determined that the Settlement Agreement was both enforceable (that is, it did not expire in 1985) and binding upon the Tribe." ECF No. 95, at 17.  The Tribe has long since forfeited the ability to challenge the Agreement's validity in this case, and it therefore cannot show likely success on appeal on that basis.

7

The Court has already considered the equities and the public interest, and ruled in favor of the Town and the AGHCA, first when it imposed a preliminary permitting injunction on July 28, 2015, ECF No. 140, and again when it issued a permanent permitting injunction in the final judgment entered January 5, 2016, ECF No. 158.  The Tribe did not even appeal either of these permitting injunctions, much less seek a stay.  In short, the permitting injunction has been the status quo for four years.  This fact alone eviscerates the Tribe's belated assertion that without a stay—*i.e.*, without an undoing of what has been in place for four years—it would suffer imminent irreparable harm and the public interest would be disserved.

### A.   The Tribe Has Not Shown That It Will Suffer Irreparable Injury During The Appeal Absent A Stay Of The Permitting Injunction.

The Tribe rests its irreparable-harm argument on the premise that the permitting injunction harms the Tribe by preventing its construction project from moving forward.  *See* Mem. at 16.  Not so.  It is the Tribe's unwillingness to seek any of the appropriate permits that has halted its project.  *See In re Fuqi Int'l, Inc.*, No. CA 12-01457-LPS, 2012 WL 6589152, at *2 (D. Del. Dec. 17, 2012) (finding no risk of irreparable harm and denying injunction where a party refused to seek administrative relief that could mitigate the harm and therefore had to "accept the consequences of its own choice").  The Tribe may prefer to move forward without seeking permits, but the frustration of that preference is not irreparable harm.

The Tribe seems to assume that its project *could* comply with the Town's generally applicable rules and regulations, *but that the Town would treat its permit application unfairly*. *See, e.g.*, Mem. at 17 (asserting that the Town has a "long-standing hostility to the Tribe's gaming project" and that "key players" intend "to stop the Tribe").  That assertion is baseless. The Tribe has sought other permits from the Town for other projects, and each one has been granted.  *See* Ex. B (Madison Decl.) ¶ 3 n.2.  As the Town has repeatedly explained, *see, e.g.*,

ECF No. 197, at 9, if the Tribe ever submits a permit application for its gaming facility, it will be considered under generally applicable rules, just like any other application from any other applicant. Should the Town fail to do so, the Tribe has recourse to the courts. Unless and until the Town acts inappropriately on a permitting application, the Tribe has no grounds to complain about the mere requirement that it follow the permitting process.[5] Speculation that the Tribe may not receive authorizations that it has never sought is not the basis for a finding of irreparable harm. *See, e.g.*, *In re Fuqi Int'l*, 2012 WL 6589152, at *2. The Tribe says that there is "no evidence" that the Town will follow the law. Mem. at 17. But a stay applicant cannot prove irreparable harm with a silent record, especially given the presumption of regularity to which the Town is entitled. *See, e.g.*, *U.S. Postal Service v. Gregory*, 534 U.S. 1, 10 (2001) ("[A] presumption of regularity attaches to the actions of Government agencies[.]").[6]

Thus, the Tribe's motion should be denied for the separate and independent reason that the Tribe has not demonstrated a likely risk of irreparable harm during the appeal.

---

[5] The Tribe asserts that it has evidence to support its assumption that the Town would enforce its rules unfairly. Specifically, the Tribe states that various representatives of the Town and the AGHCA have expressed opposition to the proposed gaming facility, and that the Town has "refus[ed] to process a permit from an electric utility that inadvertently sought a permit for the gaming site." Mem. at 17. The Tribe misstates the facts. Far from "refusing to process" the electric permit, the Town's electric inspector attempted to access the site for an inspection, but was unsuccessful. *See* Ex. B (Madison Decl.) ¶ 3. After he followed up, he was told by the *Tribe's electrician* that the permit was not necessary. *Id.* As for any alleged statements in opposition to the gaming facility, the Town's and the AGHCA's representatives bear no ill will toward the Tribe—indeed, the Town Administrator and Selectman mentioned in the Tribe's memorandum and the Andrews-Maltais declaration are members of the Tribe. *See id.* ¶ 2, n.1. The Town intends to comply fully with its legal obligation to enforce the law fairly and equitably, in accordance with this Court's gaming and permitting injunctions. *See id.* ¶¶ 4-9; Ex. A (Jason Decl.) ¶¶ 5, 9.

[6] As noted in footnote 5 above, the Tribe's assertions regarding the Town purportedly having acted improperly toward the Tribe and/or applications pertaining to the gaming project are false. *See, e.g.*, Ex. B (Madison Decl.) ¶¶ 2 n.1 & 3; Ex. C (Turner Decl.) ¶¶ 18-39 (explaining the process by which the Tribe's project was referred to the Martha's Vineyard Commission and the Commission's proceedings related to the project). In any event, those assertions are irrelevant to the Tribe's speculation that the Town would act improperly going forward, and are irrelevant to the legal issues presented by the Tribe's motion to stay.

### B. The Balance Of Equities and the Public Interest Weigh Against Staying The Permitting Injunction.

Not only has the Tribe failed to establish any harm, let alone irreparable harm, that would result from maintaining the status quo of the past four years, but a stay of the permitting injunction would threaten substantial and irreparable harm to the Town and the AGHCA.  A stay would allow the Tribe to resume construction of the gaming facility immediately without first providing the Town an opportunity to ensure compliance with rules and regulations applicable to every other construction project of this type.  The Town would therefore be powerless to ensure that the Tribe's construction methods and facility design respect public safety and pose no undue risk to the natural environment.  *See* Ex. A (Jason Decl.) ¶¶ 5, 9.  As this Court has previously recognized, allowing the Tribe to construct a gaming facility without complying with generally applicable rules and regulations would create a risk of "harm" to "public safety."  *See* ECF No. 142 (Transcript of Preliminary Injunction Hearing) at 38:19-21 (Court noting that "it is impossible as a practical matter to check compliance with code after a building has been completed").  Indeed, depending upon the length of the appeal, the requested stay could allow the Tribe to construct and open its gaming facility for business before the Town has had a chance to ensure compliance with basic health and safety standards.  In this regard, the requested stay would create the very real risk that the planned gaming facility could open without the Town having ensured that it is appropriate for public occupation and without a determination that the Tribe has planned adequately for the numerous other potential negative externalities of operating a commercial gaming facility, such as increased traffic and waste disposal.  Ex. A (Jason Decl.) ¶ 9 (describing the risks of irreparable harm to the public that would result from allowing the Tribe's project to proceed without permits); Ex. B (Madison Decl.) ¶¶ 6-9 (same); Ex. C (Turner

Decl.) ¶¶ 5-13, 25, 39 (describing the risks of irreparable harm to the Island from allowing the Tribe's project to proceed without approval from the Martha's Vineyard Commission).

While the Tribe insists that it is capable of enforcing basic health, safety, and environmental standards (Mem. at 17-19), the Town is not required to take a landowner at its word when it comes to risks like these. Furthermore, the risks to public health and safety are not limited to the gaming site itself or to lands where the Tribe has jurisdiction. The Tribe's activities will inevitably have substantial effects—*e.g.*, wetlands, traffic, waste disposal effects—outside Tribal land, where the Tribe has no ability to mitigate the harm regardless of the robustness of its Building Code. The requested stay would eliminate the Town's ability to ensure that these external effects would not improperly harm the Town and its residents and visitors.

In fact, before the Town filed its motion for entry of judgment, the Tribe began clear-cutting on land adjacent to wetlands without a Conservation Commission permit, in apparent violation of multiple Town environmental rules. *See* Ex. B (Madison Decl.) ¶ 4. These wetlands are on adjacent, privately owned property. Whether or not the clear-cutting project complied with the Tribe's own Building Code and any tribal environmental regulations, it threatened permanent damage to a vulnerable ecosystem outside the Tribe's jurisdiction. *See id.*; *see also Sierra Club v. Marsh*, 872 F.2d 497, 504 (1st Cir. 1989) (risk of harm to natural environment may qualify as irreparable harm for purposes of injunctive relief).[7] The Town's conservation permitting requirements serve to protect against such environmental damage.

---

[7] The Tribe also mentions potential oversight from the National Indian Gaming Commission ("NIGC"). Even if the NIGC would oversee compliance with the Tribe's *gaming ordinance*, there is no reason to expect that the NIGC could or would ensure compliance with rules that protect health, safety, and the natural environment in the same manner and to the same extent as the Town. To date, the Town has seen no sign of any NIGC oversight of the Tribe's construction activities. Ex. B (Madison Decl.) ¶ 10.

Thus, the risk of irreparable harm to the Town and the AGHCA if the Tribe is allowed to proceed with construction and potential operation of a gaming facility while this case is on appeal strongly outweighs any harm—all self-inflicted—that the Tribe might suffer from its own refusal to apply for permits.  For the same reasons, the public interest strongly weighs against staying the injunction.  The risks to the public from allowing construction and potential operation to move forward without compliance with important, generally applicable rules and regulations strongly outweigh any interest in allowing the Tribe to proceed without applying for permits.  The Tribe simply assumes that anything that furthers a tribal gaming project is consistent with the public interest.  *See* Mem. at 19.  That overbroad assumption is not correct, but even if it were, it would not apply here, where the Town exercises general regulatory authority unrelated to gaming pursuant to an express settlement agreement with the Tribe and an Act of Congress.

Accordingly, even if the Tribe could satisfy the threshold "likelihood of success" and "irreparable harm" requirements for a stay of the injunction pending appeal, the balance of the equities still strongly disfavors the extraordinary relief the Tribe now seeks.  *See* ECF No. 142, at 39:13-18 (holding at the preliminary-injunction stage that "the balance [of harms] favors the town and the public interest for similar reasons . . . also favors the issuance of an injunction").

## CONCLUSION

For the foregoing reasons, the Town and the AGHCA respectfully request that the Court deny the Tribe's motion for a stay of the permitting injunction pending appeal.

| | |
|---|---|
| Dated: July 25, 2019 | Respectfully submitted, |
| AQUINNAH/GAY HEAD COMMUNITY ASSOCIATION, INC. (AGHCA) | TOWN OF AQUINNAH |
| By its attorneys, | By its attorneys, |
| /s/ *Felicia H. Ellsworth* | /s/ *Ronald H. Rappaport* |
| Felicia H. Ellsworth (BBO No. 665232) | Ronald H. Rappaport (BBO No. 412260) |
| Claire M. Specht (BBO No. 687952) | Michael A. Goldsmith (BBO No. 558971) |
| WILMER CUTLER PICKERING HALE AND DORR LLP | REYNOLDS, RAPPAPORT, KAPLAN & HACKNEY, LLC |
| 60 State Street | 106 Cooke Street, P.O. Box 2540 |
| Boston, Massachusetts 02109 | Edgartown, MA 02539 |
| (617) 526-6000 | Tel.: +1 508 627-3711 |
| Felicia.Ellsworth@wilmerhale.com | rrappaport@rrklaw.net |
| Claire.Specht@wilmerhale.com | mgoldsmith@rrklaw.net |
| | /s/ *Douglas J. Kline* |
| | Douglas J. Kline (BBO No. 556680) |
| | Joshua J. Bone (BBO No. 687722) |
| | GOODWIN PROCTER LLP |
| | 100 Northern Avenue |
| | Boston, Massachusetts 02210 |
| | Tel.: +1 617 570 1000 |
| | Fax.: +1 617 523 1231 |
| | dkline@goodwinlaw.com |
| | jbone@goodwinlaw.com |
| | William M. Jay (*pro hac vice*) |
| | GOODWIN PROCTER LLP |
| | 901 New York Ave. NW |
| | Washington, DC 20001 |
| | Tel.: +1 202 346 4000 |
| | wjay@goodwinlaw.com |

**CERTIFICATE OF SERVICE**

    I, Douglas J. Kline, certify that on July 25, 2019, a true copy of the foregoing document was served by CM/ECF and/or first class mail upon all other counsel of record in this action.

                              /s/ *Douglas J. Kline*
                              Douglas J. Kline