UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE COMMONWEALTH OF MASSACHUSETTS, | **CASE NO: 1:13-cv-13286-FDS** |
| *Plaintiff,* | |
| and | [Formerly Supreme Judicial Court for Suffolk County, Massachusetts, CIVIL ACTION NO. 2013-0479 ] |
| AQUINNAH/GAY HEAD COMMUNITY ASSOCIATION, INC. (AGHCA) and TOWN OF AQUINNAH, | |
| *Intervenor-Plaintiffs,* | |
| **vs.** | |
| THE WAMPANOAG TRIBE OF GAY HEAD (AQUINNAH), THE WAMPANOAG TRIBAL COUNCIL OF GAY HEAD, INC., and THE AQUINNAH WAMPANOAG GAMING CORPORATION, | |
| *Defendants,* | |
| and | |
| CHARLES BAKER, in his official capacity as GOVERNOR, COMMONWEALTH OF MASSACHUSETTS, et al., | |
| *Third-Party Defendants.* | |

**TRIBE'S EMERGENCY MOTION TO ALTER OR AMEND OR, IN THE
ALTERNATIVE, CORRECT THE JULY 19, 2019 SECOND AMENDED FINAL
JUDGMENT**

Pursuant to Fed.R.Civ.P. 59(e), or in the alternative Fed.R.Civ.P. 60(a), prevailing parties on appeal, Defendants[1] Counterclaimants Wampanoag Tribe of Gay Head (Aquinnah) and the Aquinnah Wampanoag Gaming Corporation ("AWGC") (collectively "Defendants" or "Tribe") submit this Emergency Motion to Alter or Amend or, In the Alternative, Correct the July 19, 2019 Second Amended Final Judgment, ECF No. 215 ("Motion to Amend Judgment").

## I.      OVERVIEW

This is an emergency motion that requires immediate action by this Court and cannot wait for responsive pleadings and hearings that would otherwise apply. The Tribe seeks to modify the injunction against it to allow the Tribe to secure and shut down the Site on the Tribe's Indian lands (the "Site") in a safe manner consistent with Massachusetts law. Intervenor-Plaintiff/Counter-Defendant Town of Aquinnah ("Town") expects the Tribe to keep the Site in a condition that endangers public safety, despite the Tribe's commitment to shut down the Site pending either a stay from the First Circuit Court of Appeals ("First Circuit"), reversal of this Court's injunction by the First Circuit, or the issuance of appropriate Town permits. The danger is current and immediate. It is not lost on the Tribe that the first attempt to work in cooperation with the Town in compliance with this Court's Amended Final Judgment has manifested in the Town actually endangering the public, a result that is 180 degrees opposite this Court's stated intent in denying the Tribe's Motion for Stay Pending Appeal.

Additionally, the Tribe seeks to modify the Second Amended Final Judgment to add to Paragraph 5, the individual State officials named in their official capacities, third-party defendants

---

[1] The Wampanoag Tribal Council of Gay Head, Inc., which was named as a party defendant, was an entity created under the laws of the Commonwealth, prior to federal recognition of the Tribe and no longer exist.

Governor Charles D. Baker, Attorney General Maura Healey, and Massachusetts Gaming Commission Chairman Cathy Judd Stein (collectively "State Officials"). The State Officials are not shielded by the State's Eleventh Amendment immunity. Accordingly, when this Court removed the reference to the Commonwealth of Massachusetts' ("State"), in Paragraph 5 of the Amended Final Judgment, it should have been replaced with the State Officials.

The analysis set forth below is laser-focused on allowing the Tribe to secure and shut down the Site in a safe manner and correcting this Court's error regarding paragraph 5. To be clear as a technical matter, however, the Tribe also takes issue with all those portions of the Second Amended Final Judgment entered against the Tribe and enjoining the Tribe from proceeding with the construction, occupancy and operation of its gaming facility unless it complies with all "General Regulatory Laws" of the State and its political subdivisions, and by this motion also seeks the removal of such provisions from the Final Judgment. The reasons for granting such a motion are those set forth in the Tribe's Motion for Stay Pending Appeal and its supporting Memorandum, ECF. Nos. 206 and 207, the Tribe's Response in Opposition to the Town's Motion for Entry of Final Judgment, ECF No. 185, the Tribe's Sur-Reply in Opposition to the Town's Motion for Entry of Final Judgment, ECF No. 196, and of course, the First Circuit's opinion, *Massachusetts v. Wampanoag Tribe of Gay Head (Aquinnah)*, 853 F.3d 618, 629 (1st. Cir. 2017).

The Tribe has no realistic expectation that this Court will grant the motion regarding all portions of the Second Amended Final Judgment other than the entry of Judgment in favor of the Tribe. The Tribe has every expectation that this Court will grant the motion as it regards modifying the injunction to allow the Tribe to secure the Site in a safe manner and naming the State Officials in Paragraph 5, as this Court appears to have invited the Tribe to file such motions. Granting the Tribe's Motion to Amend Judgment will narrow the issues on appeal or to be appealed.

In seeking this limited modification, the Tribe preserves its objections to both the Amended Final Judgment and the Second Amended Final Judgment. The Tribe has appealed this Court's Amended Final Judgment to the First Circuit Appeals Court, ECF No. 202, identifying error to the extent judgment was entered against it and enjoining the Tribe from proceeding with the construction, occupancy and operation of its gaming facility unless it complies with all "General Regulatory Laws" of the State and its political subdivisions. Nothing in the Tribe's Motion to Amend Judgment should be construed as supporting any portions of the Amended Final Judgment against and/or enjoining the Tribe. The instant Emergency Motion to Amend Judgment is sought to correct the immediate safety problem regarding the Site and to narrow the issues on appeal.

## II.    RECENT PROCEDURAL HISTORY

Subsequent to this Court's filing of the June 19, 2019 Amended Final Judgment, ECF No. 201, and the Tribe's June 28, 2019 filing of its Notice of Appeal, ECF No. 202, the State, on July 2, 2019 filed its Motion to Alter or Amend or, In the Alternative, Correct the June 19, 2019 Amended Final Judgment, ECF No. 205. On July 15, 2019, the Tribe filed its response to the State's Motion, expressing qualified opposition stating that if the State is removed from ¶ 5 of the Amended Final Judgment, the State Officials should be added to ¶ 5.

On July 19, 2019 this Court granted the State's Motion, entering a minute entry that states in part:

> The Tribe has requested a further amendment to include an injunction against the Governor, the Attorney General, or the Chair of the State Gaming Commission, acting in their official capacities, from enforcing the Gaming Laws against the Tribe on Settlement Lands. (Docket No. 208). Such an amendment would appear to satisfy the requirement that such relief be limited to prospective injunctive relief against state officers in their official capacities where necessary to protect a federally protected right. See *Ex Parte Young*, 209 U.S. 123 (1908); *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1205−06 (10th Cir. 2002). However, the Tribe has not filed a motion to alter or amend the judgment pursuant to Rule 59(e) or to correct the judgment pursuant to Rule 60(a), and therefore the Court will not act on

4

its request at this time.

ECF No. 214. The Tribe had no reason to seek amendment to paragraph 5 prior to this Court's

decision to jettison the Commonwealth because the inclusion of the Commonwealth, by definition,

included the State Officials. The Tribe is, by this instant Emergency Motion, making the formal

request.

On July 26, 2019, this Court denied the Tribe's Motion to Stay Pending Appeal, ECF No.

218, stating in part:

> If the Town somehow applies those requirements in an unfair or discriminatory
> manner, or otherwise treats the Tribe unfairly, the Tribe can seek appropriate relief
> from this Court. There is no reason, however, at this stage to assume that the Tribe
> will be treated in such a manner.

ECF No. 218 at 2. The Tribe is by this instant motion, seeking such appropriate relief.

Also of note, the Town and Intervenor-Plaintiff/Counter-Defendant Aquinnah/Gay Head

Community Association ("AGHCA") jointly filed a notice of cross–appeal of the Amended Final

Judgment on July 19, 2019, ECF. No. 201, and a notice of cross-appeal for the Second Amended

Final Judgment on July 22, 2019, ECF. No. 216.

## III. ARGUMENT

### A.  Emergency Relief is Needed to Make the Site Safe

An untenable situation has unfolded wherein, at the Town's insistence, the Site is now

indisputably unsafe such that open trenches and exposed rebar steel pose the threat of impalement

and other injury to anyone who ventures onto the site. Attached to this pleading, *inter alia* are (1)

the Declaration of Eric Robitaille, of Williams Building Company, Inc. Project Manager for the

Tribe's gaming facility, and (2) the July 30, 2019 Report of  Felix I. Zimel, MCP, MPH, CBO,

Managing Principal of Municipal Code Consulting, LLC  (Exhibit A to the Declaration of Scott

Crowell). Those two documents evidence the current unsafe condition of the Site, the danger that

exists, and the need to correct it immediately. Both clearly identify the serious safety concerns and consequences of leaving the Site in its current position. Both identify that pouring and backfilling of concrete is needed to cover exposed rebar steel and ensure the structural integrity in order to eliminate the risk of serious injury and impalement. The Tribe strongly encourages this Court to review carefully the pictures attached to the two documents. Those pictures should end any doubt that the Tribe's concerns are justified.

The Town, in the name of "stopping the Tribe,"[2] has issued a cease and desist order (Exhibit B to the Crowell Declaration), with which the Tribe has complied, preventing the Tribe and its state-licensed Project Manager from proceeding with those steps that would be taken in the ordinary course of the construction business to safely shut down and stop work on the gaming facility in a manner that properly protects public health and safety (Robitaille Declaration at ¶ 11). The situation is untenable. This Court's injunction came at a time when rebar steel and footings were being laid. Failing to complete such footings in the event of shutting down a construction site is inconsistent with customary sound, safe industry practices. (Robitaille Declaration at ¶ 7). The Tribe seeks relief from this Court to allow cement to be poured such that the rebar steel is not exposed and the open trenches are filled.

The Tribe attempted to work with Town officials to reach agreement on proceeding with the concrete pours in order to shut down the Site for an unknown period of time while this litigation

---

[2] Attached to the Crowell Declaration as Exhibit C is a July 24, 2019 article in the Martha's Vineyard Times quoting the Town Inspector "I was told to go to the construction site and tell them to stop." This statement contravenes the purported purpose of the Town in its request for the Town Inspector to have access to the site, which was "to verify the need to ensure the site is safely secured before shutting it down." *See* July 12, 2019 email of Lael Echo-Hawk to Joshua Bone, attached to Crowell Declaration as Exhibit D). This is further evidence that the Town's actions are not motivated out of a concern for public safety, but rather, are intended to unduly burden the and interfere with the Tribe's exercise of its rights under the Indian Gaming Regulatory Act ("IGRA").

runs its course. Despite (1) being educated regarding the State's Jackie's Law, 520 CMR 14.00, which addresses exactly this circumstance (Robitaille Declaration at ¶ 10),  (2) being informed that the current condition poses serious fall and impalement risks (*id*.),  (3) trespassing occurring on the property (Robitaille Declaration at ¶ 12) (4) being informed that Martha's Vineyard Steamship Authority restrictions delay the shipping of perimeter fencing by several weeks to two months (Robitaille Declaration at ¶ 11), the Town's sole response has been "the site is safe" (Robitaille Declaration at ¶ 10), so no, the Tribe may not proceed to complete the concrete pours and shut down the Site in a manner that eliminates the exposed rebar steel and open trenches.

The Site is not currently safe. It is disturbing that, prior to being informed by the Tribe's Project Manager, the Town's Inspector was completely unaware of Jackie's Law (Robitaille Declaration at ¶ 10), 520 CMR § 14.00, the Massachusetts statute specifically designed to ensure that any construction site NOT be left in the condition that currently exists at the Tribe's Site. Jackie's  law, enacted in 2009, is named after a Bridgeport ten-year old who died when an open trench collapsed on her.  If such a tragic incident repeats itself on the Site, responsibility and fault would lie solely and completely on the Town for its refusal to allow the Tribe's general contractor to properly secure and close the Site. Jackie's Law mandates that  "wherever an unattended trench exists, the operation shall be secured in a safe manner and suitable protection for the general public shall be provided," 520 CMR § 1404(1). Significantly, Jackie's Law provides that corrective action to secure a site may be taken without obtaining a permit in the event of an "emergency", defined as "an unforeseen condition in which the safety of the public is in imminent danger because of a threat to life or health"  520 CMR § 1402. Such an emergency is certainly present in the instant circumstance; hence, the Town's cease and desist order goes beyond even this Court's expansive injunction against the Tribe.

The Town's resistance to the Tribe's efforts with respect to this issue is baffling. The Town

7

has what it wants from this Court, an order that has resulted, at least temporarily, in the Tribe

shutting down the Site. Even if the Tribe's instant Motion is granted, construction and completion

of the gaming facility will still not occur unless the First Circuit issues a stay, the First Circuit

reverses this Court's entry of the Amended Final Judgments, or the Tribe obtains the referenced

permits. What is at issue in the instant Motion is whether the Site will be made safe or left

dangerously unsafe, in stark contradiction of Massachusetts General Law.

The irony of the current situation is not lost on the Tribe. This Court denied the Tribe's

Motion for Stay Pending Appeal reasoning that by granting the stay "the resulting facility

presumably will be in full compliance with the safety, health, environmental, and other

requirements of the Town and the Commonwealth" (ECF No 218 at 3).   Yet here we are, with the

stay having been denied, the Town has forced the Site to be in violation of the safety, health,

environmental, and other requirements of the State and the Tribe. The Tribe rightfully seeks

compliance with Jackie's law; the Town insists on non-compliance with Jackie's law. And so it

goes. The Tribe implores this Court to embrace the commitment made in its Order denying the

stay and enter "appropriate relief" by modifying the injunction to allow the Tribe to proceed to

complete the necessary work, including the pouring of concrete, solely for the purpose of closing

the trenches such that rebar steel is not exposed in a manner that risks serious injury or impalement,

without otherwise being in violation of the Amended Final Judgment and Second Amended Final

Judgment, to complete the critical necessary work, including the pouring of concrete, solely for

the purpose of closing the trenches such that rebar steel in not exposed in a manner that risks

serious injury or impalement.

### B. The State Officials Should be Expressly Named on Paragraph 5 of the Second Amended Final Judgment

The State's Motion to Amend was based on this Court's determination that the Tribe's counterclaims against the State are shielded by the State's Eleventh Amendment immunity. However, this Court ruled (ECF No. 95 at 29-31) that the State Officials named in their official capacities, the Governor, Attorney General and the Massachusetts Gaming Commission Chairman, are not protected by Eleventh Amendment immunity from the Tribe's counterclaims per *Ex Parte Young*, 209 U.S. 123 (1908), and its progeny.

This Court violated even its narrow view of the First Circuit's Mandate by removing the Commonwealth from ¶ 5 of the Final Judgment and not replacing the Commonwealth with the named State Officials. If ¶ 5 of the Second Amended Final Judgment is not corrected, it will not be binding on the Governor, Attorney General and Massachusetts Gaming Commission Chairman, even though the First Circuit has mandated that this Court enter such final judgment in favor of the Tribe. The granting of the State's Motion without adding the State Officials to ¶ 5 is clear error, and the instant Motion is an opportunity to simply correct that error. That this Court looks to the fact that the Tribe raised the argument in response to the State's Motion rather than file its own motion, as the basis for not including the State Officials in the Second Amended Final Judgment is baffling. There was no need for the Tribe to seek such alteration in the Amended Final Judgment as the inclusion of the Commonwealth, by definition, also included the State Officials. Given the First Circuit's Mandate, this Court should have included the State Officials in compliance with the Mandate and/or added the State Officials *sua sponte*. The Tribe is now making the request being demanded of it by this Court, so the Tribe asks that the State Officials be expressly subjected to the injunction set forth in ¶ 5 of the Second Amended Final Judgment.

The Tribe seeks only prospective equitable relief, which the State concedes is available against the named state officials pursuant to *Ex Parte Young*.  A state official's conduct does not have to rise to the level of a criminal or civil violation of a federal statute to be the target of injunctive relief.  It is sufficient if the state official interferes with, or can be anticipated to interfere with, a plaintiff's federal right. *Timpanogos Tribe v. Conway*, 286 F.3d 1195 (10th Cir. 2002) (injunctive relief sought to stop officials from imposing state hunting, fishing, and gathering regulations on Indian land); *McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 437 (6th Cir. 2000) (suit against Attorney General of Ohio to enjoin enforcement of state laws alleged to violate plaintiff's federal constitutional rights).  *See also White Earth Band of Chippewa Indians v. Cnty. of Mahnomen, Minn.*, 605 F. Supp. 2d 1034 (D. Minn. 2009).

Accordingly, the State Officials should be added such that Paragraph 5 reads:

5. The Town of Aquinnah, and the individual officials of the Commonwealth named in their official capacities, third-party defendants Governor Charles D. Baker, Attorney General Maura Healey, and Massachusetts Gaming Commission Chairman Cathy Judd Stein are permanently enjoined and restrained from enforcing the Gaming Laws against the Tribe on the Settlement Lands.

## CONCLUSION

For the reasons set forth above and the pleadings referenced herein, the Tribe seeks to remove all references in the Second Amended Final Judgment that enter judgment against the Tribe or enjoin the Tribe from exercising its rights under IGRA, including the need for complying with the laws of the State and its political subdivisions regarding the construction, occupancy and operation of the Tribe's gaming facility.  Knowing that this Court is not inclined to grant such relief, the Tribe asks this Court to alter or modify the Second Amended Final Judgment: (1) to allow the Tribe to complete the shut down of the Site by taking the urgently needed safety steps, including the pouring of concrete, solely for the purpose on closing trenches in a manner that

eliminates the risk of serious injury or impalement due to open trenches and exposed rebar steel; and (2) to expressly amend paragraph 5 of the Second Amended Final Judgment to include enjoining the State Officials "from enforcing the Gaming Laws against the Tribe on the Settlement Lands."

Dated: August 2, 2019                              Respectfully submitted,

                                        /s/ *Scott Crowell*
                                        SCOTT CROWELL (pro hac vice)
                                        CROWELL LAW OFFICE-TRIBAL
                                        ADVOCACY GROUP LLP
                                        Sedona, Arizona, 86336
                                        Telephone: 425-802-5369
                                        Fax: 509-235-5017

                                        BRUCE SINGAL (BBO #464420)
                                        ELIZABETH MCEVOY (BB) # 683191)
                                        DONOGHUE, BARRETT & SINGAL
                                        One Beacon Street, Suite 1320
                                        Boston, MA 02108-3106
                                        Telephone: 617-720-5090
                                        Fax: 617-720-5092

                                        LAEL R. ECHO-HAWK (pro hac vice)
                                        MThirtySix, PLLC
                                        The Yard
                                        700 Pennsylvania Avenue, Second Floor
                                        Washington, D.C. 20003
                                        Telephone: (206) 271-0106
                                        lael@mthirtysixpllc.com

                                        *Attorneys for Defendants/Counterclaim-*
                                        *Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Scott Crowell, hereby certify that I filed through the ECF System and therefore copies of the **Tribe's EMERGENCY MOTION to Alter or Amend or, In the Alternative, Correct the July 19, 2019 Second Amended Final Judgment** will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent, via first-class mail, to those indicated as non-registered participants.

Dated: August 2, 2019.

/s/ *Scott Crowell*
SCOTT CROWELL